IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, individually and as President and Manager of Ghost Industries, LLC, and GHOST INDUSTRIES, LLC, an Illinois limited liability company, ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No: 1:11-cv-03871 |
| ) | |
| VILLAGE OF NORRIDGE, an Illinois) municipal corporation, RONALD A.) OPPEDISANO, individually and as ) President of the Village of ) Norridge, JAMES J. JOBE, Chief ) of Police of the Village of ) Norridge, JUDITH D. BERNARDI, ) Clerk of Village of Norridge, ) URSULA A. KUCHARSKI, DENNIS H. ) STEFANOWICZ, DOMINIC SULIMOWSKI,) DOMINIC S. FALAGARIO, JACQUELINE) GREGORIO, AND ROBERT MARTWICK, ) individually and as Trustees of ) the Village of Norridge and ) MARK V. CHESTER, individually ) and as Village Attorney of the ) Village of Norridge, ) | Hon. Charles R. Norgle, Sr. U.S. District Judge Hon. Morton Denlow U.S. Magistrate Judge |
| ) | |
| Defendants. ) | |

AMENDED COMPLAINT

NOW COME Plaintiffs, TONY KOLE, individually and as President of GHOST INDUSTRIES, LLC, and GHOST INDUSTRIES, LLC, an Illinois limited liability company, and by and through their undersigned counsel, WALTER P. MAKSYM, JR., and complaining of and seeking relief from Defendants, VILLAGE OF NORRIDGE, an Illinois municipal corporation, RONALD A. OPPEDISANO, President of the Village of Norridge, URSULA A. KUCHARSKI, DENNIS H. STEFANOWICZ, DOMINIC SULIMOWSKI, DOMINIC S. FALAGARIO, JACQUELINE GREGORIO, and ROBERT MARTWICK, individually and as

Trustees of the Village of Norridge, JAMES J. JOBE, Chief of Police of the Village of Norridge, JUDITH D. BERNARDI, Village Clerk of the Village of Norridge, and MARK V. CHESTER, Village Attorney of the Village of Norridge, and allege:

<u>PARTIES</u>

1.   Plaintiff TONY KOLE ("KOLE") is a natural person, a citizen of the United States, a law-abiding resident of the County of Cook, State of Illinois, who, individually and as President and sole owner of GHOST INDUSTRIES, LLC, an Illinois limited liability company, was and is entitled to, has done and continues to do business and engages in local, internet and interstate commerce as a duly federally licensed firearms and ammunition products dealer by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") pursuant to Title I, Gun Control Act of 1968 (the "GCA"), and the regulations issued thereunder (27 C.F.R., part 478) (the "REGS"), 18 U.S.C. Chapt. 44 (the "FEDERAL LAW"), via Federal Firearms License No. 3-36-031-01-4B-02885 (the "FFL"), a copy which is attached hereto as Exhibit "A". Further, at all times relevant KOLE has been possessed of a duly issued and valid State of Illinois Firearms Owner Identification Card (the "FOID CARD") and was trained and experienced in the safety and use of various firearms or ammunition products.

2.   Plaintiff GHOST INDUSTRIES, LLC ("GHOST INDUSTRIES"), was at all times relevant, an Illinois limited liability company and a citizen of the United States, that has done and continues to do business at 7601 West Montrose Ave, Suite 2, in the Village of Norridge, Illinois (the "Premises") and engages in local, internet and interstate commerce as a duly federally licensed firearms or ammunition products dealer by the ATF pursuant the GCA, the REGS, 18 U.S.C. Chapt. 44 and its FFL. Under its FFL Plaintiffs are granted the right, *inter alia*, to

sell and transfer new and used firearms to lawfully qualified individuals.

3.  Defendant VILLAGE OF NORRIDGE (the "VILLAGE") is an Illinois municipal corporation organized under the laws of the State of Illinois with offices located within the County of Cook, State of Illinois at 4000 N. Olcott Avenue, Norridge, Illinois.

4.  Defendant RONALD A. OPPEDISANO (the "PRESIDENT"), is, and was at all times relevant, the President of the Village of Norridge, and as such is responsible for executing, and administering its laws, ordinances, business licenses, customs, practices, and policies. In that capacity, he enforces the laws, customs, agreements, practices and policies complained of in this action. He is sued in both his individual and official capacities.

5.  Defendants URSULA A. KUCHARSKI, DENNIS H. STEFANOWICZ, DOMINIC SULIMOWSKI, DOMINIC S. FALAGARIO, JACQUELINE GREGORIO, and ROBERT MARTWICK, (the "TRUSTEES"), were at all times relevant, Trustees of the Village of Norridge, and as such were responsible for executing, and administering its laws, ordinances, customs, practices, and policies. In that capacity, they presently enforce the laws, customs, agreements, practices and policies complained of in this action. They are sued in their individual and official capacities.

6.  Defendant JAMES J. JOBE (the "CHIEF"), is and was at all times relevant, the Chief of Police of the Village of Norridge, and as such is responsible for executing, enforcing, and administering its laws, ordinances, customs, practices, and policies. In that capacity, he also presently enforces the laws, ordinances, customs, agreements, practices and policies complained of in this action. He is sued in his individual and official capacities.

7.     Defendant JUDITH D. BERNARDI (the "VILLAGE CLERK"), is, and was at all times relevant, the Village Clerk of the Village of Norridge, and as such is responsible for executing, enforcing, and administering its laws, ordinances, customs, agreements, practices, and policies. In that capacity, she implements and maintains the laws, customs, practices and policies complained of in this action. She is sued in her individual and official capacities.

8.     Defendant MARK V. CHESTER (the "VILLAGE ATTORNEY"), is, and at all times relevant was, a licensed Illinois attorney who had a primary practice in, *inter alia,* governmental litigation and municipal law, and served as the chief legal counsel for the VILLAGE, and as such has been and is responsible for executing, enforcing, and prosecuting its laws, ordinances, customs, practices, and policies and collecting sums that may be claimed, due or owing under the VILLAGE'S ordinances. In that capacity, he drafts, defends, enforces the laws, customs, practices and policies complained of in this action. He is sued in his individual and official capacities.

<u>JURISDICTION</u>

9.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, 42 U.S.C. § 1983, 15 U.S.C. § 1, 15 U.S.C. § 15. Pendent jurisdiction exists pursuant to 28 U.S.C. § 1367.

<u>VENUE</u>

10.     Venue lies and is proper in the Eastern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391(a) because all Plaintiffs reside within this District and their claims all arise from conduct of the Defendants, as herein complained of, that occurred in and about the County of Cook, State of Illinois, as is hereinafter alleged, and all of the Defendants reside in and do business within this District.

## NATURE OF THE ACTION

11. Plaintiffs bring their claims against the Defendants seeking the recovery of their lost profits, damages, equitable, declaratory, and other relief under, *inter alia*, 18 U.S.C. § 1983 et. seq., 42 U.S.C. § 1985 et. seq., 42 U.S.C. § 1988, et. seq., 15 U.S.C. § 1, et. seq., the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, the Illinois Constitution and Illinois law.

## FACTS COMMON TO All CLAIMS

12. Recently, the U.S. Supreme Court rendered its landmark decisions in *McDonald v. City of Chicago*, ___ U.S. ___ 561 U.S. ___, 130 S.Ct. 3020 (2010) *("McDonald")* wherein it held that Chicago's handgun ban violated the Second Amendment rights established in the Court's prior landmark decision in *District of Columbia v. Heller,* 554 U.S. 570 (2008) *("Heller"),* recently clarified by the Seventh Circuit in *National Rifle Association of America, Inc., et. al., v. City of Chicago, et. al.,* ___ F.3d ___ (Slip. Opin. June 2, 2011) *("N.R.A")* and *Ezell v. City of Chicago*, Appeal No. 10-3525, __ F.3d ___ (Slip Opin. July 6, 2011)("*Ezell*"), by holding that the Second Amendment to the United States is incorporated in the Fourteenth Amendment and therefore guarantees a fundamental personal right of citizens to keep and bear arms made applicable to the states and their political subdivisions, officers and employees, such as the Defendants hereto, noting that the right to keep and bear arms necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and, as concomitant necessities, to purchase and provide ammunition suitable for such arms and to keep them in repair.

13. At all times relevant, the GCA, the REGS, 18 U.S.C. Chapt. 44 governed the licensure of Federal Firearms Dealers and was, at all times relevant, applicable to the States under

Article VI of the United States Constitution, which states, *inter alia*, "This Constitution, and the Laws of the United States … shall be the supreme law of the Land; and the Judges in every State shall be bound thereby" (the "Supremacy Clause").

14. After the Supreme Court rendered its ruling in *Heller* and *McDonald*, Plaintiffs decided, after extensive research, to start a business selling firearms to law enforcement officers, hunters, sportsmen, and other law-abiding citizens in the VILLAGE, a municipality adjacent to Chicago (it's total ban on handguns was held unconstitutional in *McDonald*) that had a VILLAGE'S home-rule ordinance permitting weapons dealers that superseded Cook County Ordinances. Prior to securing and leasing a commercial space, Plaintiffs contacted the VILLAGE in attempt to initiate dialog so as to address any safety and other concerns. Thereafter, a VILLAGE representative then confirmed that engaging in such business was a permitted business and provided Plaintiffs with zoning requirements applicable to the premises that allow such business to operate at the premises they selected.

15. That, at all time relevant, Defendants knew or should have known of, *inter alia,* the law well established and set forth in *Heller*, *McDonald*, the GCA, the REGS, 18 U.S.C. Chapt. 44, 15 U.S.C. § 7901 (the "Federal Law"), and should now be aware and know of *Ezell*.

16. After relying on said confirmation and information, on or about November 16, 2010 Plaintiffs applied to the VILLAGE for issuance of a Weapons Dealers Business License under the Norridge, Illinois, Code of Ordinances, Chapter 22 - Businesses, Article VIII - Weapons Dealers (the "Original Weapons Dealer Ordinance"), a copy which is attached hereto as Exhibit "B", seeking to obtain weapons dealer business licenses to permit Plaintiffs, as a duly licensed federal firearms or ammunition

products dealers, to open and operate a gun shop at 7601 W. Montrose Ave, Suite 2, within the Village of Norridge and executed a lease for the premises and waited processing of their FFL application by the ATF and their weapons dealer business license by the VILLAGE.

17. On or about November 2, 2010 the ATF arranged a routine inspection of the leased premises so that it could issue a FFL to Plaintiffs. When en route to the ATF inspection, Plaintiffs were informed by the ATF that the inspection was cancelled because the VILLAGE had refused to give a routine approval to proceed and its representative delayed issuance of a license and told Plaintiffs that the PRESIDENT and TRUSTEES, who were or should have been familiar with the law previously established in *Heller, McDonald*, and said Federal Law, would not be allowed transfers on said premises.

18. Thereafter, Plaintiffs caused a letter to be sent to the VILLAGE demanding compensation for the financial damages Plaintiffs business had suffered. The letter was ignored.

19. Shortly thereafter, the VILLAGE ATTORNEY contacted Plaintiffs on behalf of the VILLAGE, the PRESIDENT and the TRUSTEES, acknowledging that their proposed business was a lawful permitted occupation, and told KOLE that, regardless of the fact it was legally permitted under the VILLAGE'S ordinance, the resistance and delay that the VILLAGE, PRESIDENT and TRUSTEES were putting up with respect to Plaintiffs becoming licensed by the ATF and the VILLAGE was because "they wanted to protect their political careers - God forbid something should ever happen", and that the "reason this law was on the books is because a large retailer, K-Mart, had earlier approached the VILLIAGE, PRESIDENT and TRUSTEES, lobbying them to permit the sale of firearms and ammunition in the VILLAGE or else they would relocate their store which would cause the VILLAGE to lose

tax revenues", but, eventually, K-Mart voluntarily ceased selling and transferring firearms and ammunition, though the Original Weapons Dealer Ordinance remained in effect until February 11, 2011 and such business activities were, and continue to remain, lawful.

20. On information and belief, at or about the time Plaintiffs applied for a weapons dealers license, the PRESIDENT, the TRUSTEES and their VILLAGE ATTORNEY entered into a combination, conspiracy and scheme to devise a plan to use their offices in concerted action to circumvent the Supreme Court's ruling in *McDonald,* the Supremacy Clause, hold Plaintiffs' license application hostage and deter and prevent Plaintiffs from opening and conducting a lawful weapons dealer business in the VILLAGE and deliberately deny Plaintiffs' their constitutional rights and ability to acquire, obtain, advertise for sale, market, keep and bear arms, as an unlawful condition for the approval of Plaintiffs' application and issuance of a Weapons Dealers Business License under the Original Weapons Dealer Ordinance and to make it impossible for them to conduct a profitable concern and eventually drive them out of business.

21. As a result of the economic distress imposed on Plaintiffs caused by PRESIDENT, the TRUSTEES and their VILLAGE ATTORNEY'S conspiracy by their willful and intentional delay and refusal imposed on their efforts to commence a lawful business within the VILLAGE, achieve an ATF inspection and obtain a VILLAGE weapons dealers license, Plaintiffs were forced by the PRESIDENT, the TRUSTEES and VILLAGE ATTORNEY as a prerequisite to doing business and obtaining such license to submit and capitulate to unlawful conditions and concessions not imposed on any other license applicant nor required by any of the VILLAGE'S ordinances or other law.

22. Despite knowing such *ultra vires* lack of lawful

authority, the VILLAGE ATTORNEY, on behalf of the VILLAGE, its PRESIDENT and TRUSTEES, demanded, under color of law and using their offices, as an unlawful condition for the approval of Plaintiffs' application, licensure and doing business in the VILLAGE, and, in order to prevent Plaintiffs from doing business, drive them out of business and deprive them of their livelihood and, potentially, thousands of dollars per day of anticipated sales and profits thereby circumventing the Supreme Court's rulings in *Heller* and *McDonald,* the Supremacy Clause, Plaintiffs' constitutional rights and the Federal Law, and deliberately deny Plaintiffs the ability to acquire, obtain, advertise for sale, market, keep and bear arms by willfully and intentionally withholding issuance of a Weapons Dealers Business License under the Original Weapons Dealer Ordinance, and not approving Plaintiffs' application or issue such license, unless and until, without legal authority or any lawful consideration therefore, Plaintiffs would execute an "Agreement Between the Village of Norridge & Ghost Industries, LLC" (the "*ULTRA VIRES* AGREEMENT"), a copy of which attached hereto as Exhibit "C", conditioning Plaintiffs' doing business, obtaining and exercising the rights he enjoyed as a federally licensed firearms or ammunition products dealer only upon their execution and compliance with additional terms, conditions and restrictions and waiver of their constitutional rights provided for therein, never before imposed by law or upon any other licensee.

23. Having no recourse and facing the certain and unavoidable prospect of VILLAGE, its PRESIDENT AND TRUSTEES' continued unlawful delay and withholding of the processing and approval of Plaintiffs' application, licensure and doing business in the VILLAGE application, and improperly undermine and cause withholding and approval of their ATF application and issuance of FFL and forestall and prevent their ability and

right to engage in and lawfully do business in the VILLAGE, Plaintiffs, while laboring under such economic distress and not knowing that the VILLAGE, PRESIDENT, VILLAGE TRUSTEES and VILLAGE ATTORNEY were, on information and belief, conspiring, planning and plotting to revise their then existing Weapons Dealers Ordinance, reluctantly succumbed to signing the following unlawful, unconscionable, restrictive *ULTRA VIRES* AGREEMENT on November 29, 2010 in order to have the ATF conduct the necessary inspection of their premises to obtain their FFL and get their business open and operating that, arbitrarily, capriciously, unreasonably and without lawful consideration, unconstitutionally, in the nature of a prohibited special legislation requirement not then contained in any VILLAGE ordinance, *inter alia*:

  a. imposed a total ban on physical deliveries of firearms or ammunition on the premises – not even to Law Enforcement; and requiring that all deliveries sent from the Plaintiffs' premises be by unmarked packaging if the delivery is of a "used" firearm and shall be delivered in original packaging as provided by the manufacturer, wholesaler, or distributor if it is a "new" firearm and be in secure packaging sent via post office or courier to a licensed federal firearms dealer (FFD);

  b. imposed a total ban on storage of ammunition or firearms on the premises thereby requiring Plaintiffs needing to first receive payment from a customer, then order a weapon from their supplier, receive it, inventory, label and rush to send it out the same day; by prohibiting Plaintiffs from storing firearms or ammunition on the Premises overnight or longer than twelve (12) hours during any day and that any firearms in Plaintiffs' inventory on the premises will either be disabled by a locking device made for use on firearms or secured in a locked cabinet;

  c. imposed a total ban on the commercial display of Plaintiffs' lawful products by prohibiting Plaintiffs from maintaining a sales or retail display of any firearms or ammunition on the premises;

d.   prohibited Plaintiffs from posting or erecting any exterior signage indicating to the public that its offices are located on the premises or indicating the business of Plaintiffs (i.e. weapons sales), requiring the limitation interior signage to that required by state and federal law and only allowing Plaintiffs to put its name on one or more interior door to premises;

e.   required Plaintiffs to ensure that the only authorized person to receive shipments of firearms and ammunition on behalf of Plaintiffs will be its President and Owner (until Plaintiffs can afford to employ others that pass a Criminal Background Investigation and any other applicable requirements of the United States, the state of Illinois, and any other jurisdiction having authority over the premises);

f.   required that all of Plaintiffs officers and employees on the premises submit to an annual Criminal Background Investigation;

g.   required that, without any lawful authority or consideration, Plaintiffs provide the VILLAGE with such releases as are necessary to effectuate the investigation;

h.   required that Plaintiffs install and maintain a video surveillance system at their expense to record and monitor its office within the limits of its lease agreement for the premises;

i.   required that Plaintiffs "voluntarily" offer its President, KOLE, and all of its employees for a fingerprinting by the VILLAGE Police;

i.   limited the amount of firearms and ammunition Plaintiffs could receive per month;

j.   limited Plaintiffs' license term to two (2) years;

k.   limited the amount of firearms and ammunition Plaintiffs received per month by requiring that Plaintiffs agree to receive no more than forty (40) long guns or hand guns at the Premises per month for the first twelve (12) months following the date of the *ULTRA VIRES* AGREEMENT and the above-referenced amounts shall increase by ten (10) percent twelve (12) months,

and twenty four (24) months thereafter, and to have no more than twenty (20) firearms in the premises at any one time;

l.    required that Plaintiffs agree to receive no more than four thousand (4,000) rounds per month for the first twelve (12) months following the date of the *ULTRA VIRES* AGREEMENT and the above-referenced amounts shall increase by ten (10) percent twelve (12) months and twenty four (24) months thereafter, and to have no more than one thousand (1,000) rounds on the premises at anyone time. Provided, however, larger quantities (not in excess of the monthly amount) may be on the premises for no longer than one (1) hour after they are delivered from the distributor, wholesaler or manufacturer;

m.    Required Plaintiffs to abide by all local, state and federal laws governing its business including, but not limited to Chapter 22, Article VIII of the VILLAGE Code of Ordinances - 2002, *as may be amended from time to time*, so that the VILLAGE, its PRESIDENT AND TRUSTEES could implement their conspiracy to drive Plaintiff out of business by enacting *an unconstitutional* Revised Weapons Dealer Ordinance, that, *inter alia*, arbitrarily dictated that VILLAGE'S only current weapons dealer, licensee (Plaintiffs) must cease doing business no later than April 30, 2013.

n.    imposed random and unannounced inspections of Plaintiffs' premises by VILLAGE Police by requiring that Plaintiffs submit, without prior notice, to one (1) random and unannounced on-site inspection of the premises per month by the VILLAGE inspectors or police at any time during regular business hours or whenever the Premises are occupied, in each case solely to monitor compliance with the *ULTRA VIRES* AGREEMENT and, additionally, requiring that Plaintiffs will allow two (2) such on-site inspections per month during regular business hours which must be scheduled with Plaintiffs at least twenty-four (24) hours in advance;

o.    required that the VILLAGE will only renew Plaintiffs' license twice annually provided that Plaintiffs remain in compliance with the *ULTRA VIRES* AGREEMENT and to exempt Plaintiffs from any change in its business license ordinances and rules in any amendments the

12

VILLAGE may make to its Code of Ordinances which directly or indirectly impacts Plaintiffs' business under the Weapons Dealer License granted by the VILLAGE and requiring that the VILLAGE on the event that the VILLAGE repeals its Weapons Dealer Ordinance within thirty six months of the execution of the *ULTRA VIRES* AGREEMENT, the VILLAGE will exempt the Plaintiffs from the repeal during that period; and

p.  required that in the event that Plaintiffs breach any of the conditions of the *ULTRA VIRES* AGREEMENT to do business as a weapons dealer in the VILLAGE and such breach is not cured within three (3) business days after the VILLAGE'S delivery of written notice to the PLAINTIFFS specifying the breach, its license will become forfeit and Plaintiffs will cease doing business under that license.

24.  As a result Plaintiffs fear prosecution under the REVISED ORDINANCE, arbitrary revocation of the license eventually issued them by the VILLAGE, as well as interference, prohibition and the unlawful elimination of their otherwise lawful business activities, and reprisals by the Defendants, should they undertake such conduct in and about the VILLAGE or with respect to their suppliers and customers that may in any way be considered or construed by Defendants to be a breach of said *ULTRA VIRES* AGREEMENT or a violation of the REVISED ORDINANCE.

25.  Thereafter, the VILLAGE, PRESIDENT and TRUSTEES, in order to willfully and intentionally circumvent the Supreme Court's ruling in *McDonald,* the Supremacy Clause and the Plaintiffs' constitutional rights and knowingly and deliberately deny Plaintiffs the ability to acquire, obtain, advertise for sale, market, keep and bear arms revised the Norridge Weapons Dealers Licensing Ordinance by, under color of law but without the authority thereof, arbitrarily, capriciously, unreasonably and without lawful unconstitutionally adopted and enacted "An Ordinance Repealing and Reenacting Chapter 22, Article VIII, and

13

Amending Chapter 38, Section 22 of the Revised Municipal Code of the Village of Norridge — 2002 An Ordinance Reenacting Weapons Dealers Licensing and Amending Associated Fees and Penalties, Ordinance No. 1697-11" adopted on or about February 9, 2011 (the "REVISED ORDINANCE"), a copy of which is attached hereto as Exhibit "D", the adoption of which was accompanied by the PRESIDENT stating, *inter alia,* "It's so strong, I don't think anybody would want to come here. We only have the one weapons business here that we are aware of." (referring to GHOST INDUSTRIES), and TRUSTEE FALAGARIO, stating, *inter alia,* referring to the VILLAGE, PRESIDENT and TRUSTEE as "we" and KOLE as "a fellow". "We had a fellow who wanted to open a gun selling business and we said no way,".... "We fought him on it. We went back and forth. Our ordinance was not enough to keep him out and now he has a gun selling business he opened last year in Norridge on conditions and we now have a much stronger ordinance." Thereafter, since being aware and knowing of *Ezell* Defendants have persisted in said practices and enforcing said ULTRA VIRES AGREEMENT and REVISED ORDINANCE.

26. Plaintiffs, fearing prosecution under the REVISED ORDINANCE and being unable to operate their lawful business or fully use their FFL under the ULTRA VIRES AGREEMENT, after reviewing them and consulting with their corporate attorney, were advised that their only recourse was to retain a constitutional attorney for representation and institute litigation to redress and protect their rights.

27. As a direct and proximate result of Defendants unlawful impositions, Plaintiffs business and the expansion thereof have essentially been severely confined to only conducting online sales and shipping from suppliers and other out of area dealers thereby resulting in the potential loss of tens of thousands of dollars in sales and thousands of dollars

in profits per day.

FIRST CLAIM FOR RELIEF<br>
DEPRIVATION OF CIVIL RIGHTS<br>
42 U.S.C. § 1983 INFRINGEMENT OF<br>
PLAINTIFFS' FUNDIMENTAL CONSTITUTIONAL RIGHTS<br>
TO SELL, TRANSFER, ADVERTISE, MARKET, DEAL IN<br>
FIREARMS, KEEP AND BEAR ARMS AND OTHER RIGHTS GURANTEED<br>
BY U.S. CONST. AMENDS. I, II, IV, V & XIV AND FEDERAL LAW

1-27.   Plaintiffs, complaining of Defendants, and reallege and incorporate the foregoing paragraphs 1 through 27 as if fully stated herein.

28. 42 U.SC. § 1983 provides in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…."

29. The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

30. Under the Fourteenth Amendment to the United States Constitution the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE deprive, or as applied, and will continue to deprive, Plaintiffs and their customers and prospective customers, their right to engage in commerce, businesses, liberty, and property, without due process of law or equal protection of the laws.

31. Pursuant to *Heller* and *McDonald,* the Second Amendment right to keep and bear arms is a fundamental individual right and a privilege and immunity of United States citizenship

pursuant to its incorporation under the Due Process Clause of the Fourteenth Amendment, that applies to and may not be infringed by the states and their political subdivisions, officers and employees, such as the Defendants herein.

32. Further, pursuant to *Heller* and *McDonald*, and the Federal Law, the sale and purchase of firearms by and between law-abiding adult citizens is protected by the Second Amendment right to keep and bear arms and may not be infringed.

33. The VILLAGE, its PRESIDENT, TRUSTEES and ATTORNEY by their *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE have and continue to overly, unduly and unreasonably restrict Plaintiffs' ability to conduct commercial sales, and the transfer of and/or the lawful acquisition of firearms and ammunition, lawful products, by Plaintiffs.

34. Plaintiffs therefore maintain that the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE are vague, arbitrary, capricious, overly broad, unduly restrictive and infringes the fundamental right of the law-abiding citizens to sell, transfer, purchase and keep and bear arms, as is guaranteed by the Second Amendment of the Constitution of the United States, in that it contains, *inter alia,* the following unconstitutional prohibitions and restrictions on the sale, possession and use of firearms and ammunition products within said Village that are designed and intended not to reasonably regulate but to infringe on and unduly and unreasonably burdens, restricts and suppresses such free exercise of the fundamental right guaranteed by the Second Amendment of law-abiding citizens to keep and bear arms within the VILLAGE.

35. The *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE are arbitrarily, capriciously and unreasonably prohibiting weapons dealers and other persons from selling, purchasing, transferring, dealing in, marketing, advertising or otherwise

transferring firearms or ammunition, lawful products, in the VILLAGE, pursuant to federal law; with the intent and purpose of denying and interfering with the exercise of Plaintiffs' fundamental Constitutional rights and federal firearm's dealer's licensure.

36. The REVISED ORDINANCE and the provisions thereof are arbitrary, capricious, unduly and unreasonably burdensome, vague, overly broad or narrow and therefore deny due process and infringe on the right of law-abiding citizens in the VILLAGE to sell, advertise, transfer, purchase, keep and bear arms and is unconstitutional because it unduly and unreasonably burdens, defeats and infringes upon Plaintiffs' aforesaid fundamental rights as guaranteed under the U.S. Constitution, and impermissibly burdens interstate commerce and conflicts with federal law.

37. Pursuant to *McDonald* the holdings in *Heller* is applicable to, and the Second Amendment is incorporated in and made applicable by the Fourteenth Amendment to the states and these Defendants, guarantees individuals a fundamental right to sell, deal in, transfer, purchase, keep and bear firearms and ammunition products.

38. Under Illinois statutory and case law all persons possessed of a valid Illinois FOID Card, including KOLE and Plaintiffs' customers, may acquire by any lawful means as many firearms as they wish and may freely possess, transport and transfer them, along with ammunition, throughout Illinois, including the VILLAGES, for lawful purposes.

39. By arbitrarily, capriciously and unreasonably imposing the obligations and limitations of the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE on Plaintiffs as aforesaid, including unlimited indemnification, the VILLAGE, its PRESIDENT and TRUSTEES and the VILLAGE ATTORNEY currently maintain and/or

actively enforce a set of laws, customs, practices, and policies under color of state law that deprive Plaintiffs of their right to keep and bear arms, and engage in commerce by selling, transferring, possessing, using and dealing them, lawful products for protected purposes, and engage in a lawful business in violation of the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Federal Law.

40. The REVISED ORDINANCE adopted by the VILLAGE, its PRESIDENT and TRUSTEES is designed to illegally eliminate and outlaw any and all weapons dealers within the VILLAGE.

41. Plaintiffs verily believe that any further effort or request to have VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY cease or forego enforcement of the *ULTRA VIRES* AGREEMENT or the REVISED ORDINANCE would be futile.

42. As a result of the foregoing, Plaintiffs have been and will continue to be damaged in violation of 42 U.S.C. § 1983 and are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' said unconstitutional *ULTRA VIRES* AGREEMENT, REVISED ORDINANCE, customs, policies, and practices.

43. As a consequence of the *ULTRA VIRES* AGREEMENT and the REVISED ORDINANCE'S inevitable unreasonable and unlawful total ban on the sales of lawful products, i.e., new and used firearms, ammunition, and related accessories, in the Defendants and their defiance and circumvention of the Supreme Court's rulings in *Heller, McDonald* and Federal Law, Plaintiffs will suffer damages including but not limited to a loss of profits, goodwill, and other general and economic damages as the proofs will show at trial.

44. Pursuant to VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY have and continue to, without lawful authority or

probable cause by arbitrary and capricious use of the VILLAGE'S
Police, repeatedly conduct suspicionless searches of and invade,
disrupt and search Plaintiffs' place of business, require the
fingerprinting of KOLE, impose unlimited indemnification and
liability in perpetuity and impose daily reporting requirements
thereby causing interference with and rendering normal retail
business extremely difficult if not impossible to conduct.

45. Plaintiffs desire to sell, transfer, market and
advertise their lawful products that Defendants purport to limit
or prohibit under the VILLAGE'S *ULTRA VIRES* AGREEMENT and
REVISED ORDINANCE.

46. Plaintiffs maintain that requiring them to conform
with the *ULTRA VIRES* AGREEMENT or the REVISED ORDINANCE and the
other above-referenced and complained of limitations,
prohibitions, restrictions and requirements imposed upon them,
that Defendants currently maintain and actively enforce are a
set of laws, customs, practices, and policies under color of
state law that deprive Plaintiffs and other individuals, their
right to keep and bear arms, in violation of the Second and
Fourteenth Amendments to the United States Constitution.
Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.

47. Plaintiffs assert that they can succeed on the merits
because:

    a.    the First, Second, Fourth and Fifth Amendments as
applied to the states and these Defendants via the
Fourteenth Amendment, and said Federal Law is
relatively clear as to what constitutes free
commercial speech, the right to deal in, sell,
transfer and keep and bear arms.

    b.    when the requirements of the Fourteenth Amendment and
the *Mathews v. Eldridge* test (at 424 U.S. 319 (1976))
are applied to the facts in the instant matter, it is
clear that Plaintiffs' rights has been violated by
state actors acting under color of law.

    c.    irreparable harm will result to Plaintiffs without

injunctive relief, because Plaintiffs can show their business may collapse and KOLE will deprive him and his business, GHOST INDUSTRIES, of their ability to fully use their FFL, lose their livelihood and suffer the financial losses, including Kole's investment of time and capital in Ghost Industries, should they be driven out of business by Defendants said unlawful and oppressive conduct.

d.      the balancing of harms between Defendants and the Plaintiffs reveal that the Defendants will not suffer any harm if they are restrained and enjoined from enforcing said *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE.

e.      the impact on the public interest favors governmental policies that encourage Defendants to act in accordance with the United States Constitution and Federal Law.

48.   Plaintiffs therefore maintain that they are thus entitled to the return and restitution of damages, declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices along with reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A.   enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B.   awarding Plaintiffs declaratory relief against the Defendants consistent with the injunction and declaring that the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE be adjudged and decreed to be unconscionable and not to constitute

reasonable or permissible lawful regulations or limitations, but rather to be against public policy and violative of Amendments I, II, IV, V, XIV and the Due Process and Takings Clauses of the United States Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable.

C. awarding Plaintiffs damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY including but not limited to their loss of profits, loss of goodwill, and other general and economic damages, as their proofs will justify at trial;

D. awarding Plaintiffs reasonable attorney fees and costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY pursuant to 42 U.S.C. § 1988; and

E. granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

SECOND CLAIM FOR RELIEF
DEPRIVATION OF CIVIL RIGHTS
42 U.S.C. § 1983 IMPOSITION OF UNLAWFUL
BURDEN ON INTERSTATE COMMERCE — INFRINGEMENT OF
PLAINTIFF'S FUNDIMENTAL RIGHTS TO ACQUIRE, MARKET,
TRANSFER, KEEP AND BEAR ARMS UNDER ARTICLE I, § 8, CL. 3,
<u>ARTICLE VI OF THE U.S. CONST. AMENDS. I, II, IV, V & XIV</u>

1-48. Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 48 of their First Claim, as though fully stated herein.

49. Defendant's *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE, limitations and policies as aforesaid affect interstate commerce however, they do not pursue and are not rationally related to a legitimate state concern and create an undue and unreasonable burden on interstate commerce and their objectives could be achieved by less restrictive means and the regulatory burden imposed on the interstate commerce are not outweighed by a legitimate interest in enforcing its regulation of Plaintiffs'

rights to do business under their federal firearms license and be encouraged to participate in free market interstate commerce.

50. The *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE further conflict, interfere with, and/or are preempted by federal law, i.e. Federal Firearms Act of 1938, as amended, [Ch. 850, 52 Stat. 1252], 18 U.S.C. Ch. 44, and 15 U.S.C. § 7901 that provide:

(a) Findings
Congress finds the following:
(1) The Second Amendment to the United States Constitution provides that the right of the people to keep and bear arms shall not be infringed.
(2) The Second Amendment to the United States Constitution protects the rights of individuals, including those who are not members of a militia or engaged in military service or training, to keep and bear arms.
(3) Lawsuits have been commenced against manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.
(4) The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act [26 U.S.C. 5801 et seq.], and the Arms Export Control Act [22 U.S.C. 2751 et seq.].
(5) Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.
(6) The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil

liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an undue and unreasonable burden on interstate and foreign commerce of the United States.

(7) The liability actions commenced or contemplated by the Federal Government, States, municipalities, and private interest groups and others are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law. The possible sustaining of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States. Such an expansion of liability would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution.

(8) The liability actions commenced or contemplated by the Federal Government, States, municipalities, private interest groups and others attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

(b) Purposes

The purposes of this chapter are as follows:

(1) To prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

(2) To preserve a citizen's access to a supply of firearms and ammunition for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting.

(3) To guarantee a citizen's rights, privileges, and immunities, as applied to the States, under the

Fourteenth Amendment to the United States Constitution, pursuant to section 5 of that Amendment.

(4) To prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce.

(5) To protect the right, under the First Amendment to the Constitution, of manufacturers, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

(6) To preserve and protect the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States.

(7) To exercise congressional power under article IV, section 1 (the Full Faith and Credit Clause) of the United States Constitution.

and otherwise impedes the objectives of federal law and violates the Dormant Commerce Clause of the United States Constitution.

51. Pursuant to VILLAGE'S unconstitutional *ULTRA VIRES* AGREEMENT Plaintiffs place of business was thereafter illegally invaded and searched by the VILLAGE'S Police.

52. Plaintiffs maintain that requiring them to comply with the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE limitations, obligations, prohibitions, restrictions and requirements are a set of laws, customs, practices, and policies under color of state law that deprive Plaintiffs and other individuals, their right to keep and bear arms, in violation of, *inter alia*, the First, Second, Fourth, Fifth and Fourteenth Amendments to the United States Constitution thus having damaged Plaintiffs in violation of 42 U.S.C. § 1983.

53. Plaintiffs therefore maintain that they are thus entitled to the return and restitution of damages, declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices along with reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B. awarding Plaintiffs declaratory relief against Defendants consistent with the injunction and declaring, *inter alia*, that the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE do not constitute reasonable or permissible lawful regulations but, rather, is against public policy and violative of the First, Second, Fourth, Fifth, Fourteenth Amendments and Due Process and takings clauses of the United States Constitution rendering them unconstitutional, void *ab initio*, and unenforceable.

C. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D. awarding Plaintiffs reasonable attorney fees and costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY pursuant to 42 U.S.C. § 1988; and

E. granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

THIRD CLAIM FOR RELIEF
DEPRIVATION OF CIVIL RIGHTS
42 U.S.C. § 1983 ABRIDGEMENT OF PLAINTIFFS'
FUNDAMENTAL FIRST AMENDMENT CONSTITUTIONAL RIGHTS BY
PRIOR RESTRAINT OF PLAINTIFF'S EXERCISE OF COMMERCIAL SPEECH

1-53. Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 53 of their Second Claim, as though fully stated herein.

54. In violation of 42 U.S.C. 1983, the VILLAGE its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY, under color of law, by the imposition of the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE and other acts aforesaid intended to and did impose and continue to impose an unlawful prior restraint on Plaintiffs' commercial speech and thereby abridging their First Amendment rights.

55. The VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY did thereby harm and continue to harm Plaintiffs and that such harm includes loss of profits, good will and other ongoing damages.

56. Plaintiffs' injuries were proximately caused by said Defendants' actions and policy-level decisions, including the custom and practice of deliberate indifference and efforts to thwart their rights by preventing them from engaging in and driving them out of a lawful business licensed by Federal Law.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. finding and decreeing that the *ULTRA VIRES* AGREEMENT be adjudged and decreed, *inter alia*, not to constitute reasonable, or permissible lawful regulations or limitations, but rather, to be lacking lawful or sufficient consideration, oppressive, against public policy and violative of the Illinois Constitution and public policy, thus rendering it illegal, null and void *ab initio*, and unenforceable;

B. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE; and enjoining and restraining Defendants,

*pendant lite* and permanently, from placing any prior restraint upon Plaintiffs' exercise of commercial speech or otherwise interfering or preventing Plaintiffs from displaying any signage, advertising or identifying or providing commercial information in or about their commercial premises promoting or relating to their business.

C. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D. awarding Plaintiffs reasonable attorney fees and costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY pursuant to 42 U.S.C. § 1988; and

E. granting Plaintiffs such other and further relief against all Defendants as this Court may deem just and proper in the premises.

FOURTH CLAIM FOR RELIEF
DEPRIVATION OF CIVIL RIGHTS
42 U.S.C. § 1983 ABRIDGMENT OF
PLAINTIFFS' FIRST AMEMDMENT RIGHTS
BY RETALIATION FOR THEIR ATTEMPT TO
EXERCISE PROTECTED COMMERCIAL SPEECH

1-56. Plaintiffs incorporate paragraphs 1 through 56 of their Third Claim by reference, as if fully set forth herein.

57. Under color of law, the VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY willfully and intentionally combined, conspired in concert to and did deprive Plaintiffs of their aforesaid rights under the U.S. Constitution and Federal Law in retaliation for Plaintiffs having been persistent in their attempt to exercise them in connection with their pursuit of a lawful business they disapproved.

58. The VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY did thereby harm and continue to harm Plaintiffs and that such harm includes loss of profits, good will and other

ongoing damages.

59. Plaintiffs' injuries were proximately caused by said Defendants' actions and policy-level decisions, including the custom and practice of deliberate indifference and efforts to thwart their rights by preventing them from engaging in and driving them out of a lawful business licensed by Federal Law.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B. awarding Plaintiffs declaratory relief against Defendants consistent with the injunction and declaring, *inter alia*, that the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE do not constitute reasonable or permissible lawful regulations but, rather, is against public policy and violative of the First, Second, Fourth, Fifth, Fourteenth Amendments and Due Process and takings clauses of the United States Constitution rendering them unconstitutional, void *ab initio*, and unenforceable.

C. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D. awarding Plaintiffs reasonable attorney fees and costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY pursuant to 42 U.S.C. § 1988; and

E. granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the

premises.

FIFTH CLAIM FOR RELIEF
DEPRIVATION OF CIVIL RIGHTS
42 U.S.C. § 1983 UNLAWFUL RESTRAINT
OF TRADE IN RETALIATION FOR PLAINTIFF'S
ATTEMPT TO EXERCISE THEIR FUNDAMENTAL RIGHTS
TO ADVERTISE, SELL, TRANSFER, MARKET AND KEEP AND
BEAR ARMS UNDER U.S. CONST. ART. I, § 8, CL. 3 AND
ART. VI AND U.S. CONST. AMENDS. I, II, IV, V & XIV

1-59.  Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 59 of their Fourth Claim, as though fully stated herein.

60.  The VILLAGE, PRESIDENT, VILLAGE TRUSTEES and VILLAGE ATTORNEY'S conduct under color of law and their offices, as aforesaid, constituted and continues to constitute an unlawful restraint of trade in retaliation for Plaintiff's attempt to exercise their fundamental rights to acquire, market, keep and bear arms under ARTICLE I, § 8, CL. 3, ARTICLE VI of the U.S. CONST. and U.S. CONST. AMENDS. I, II, IV, V & XIV in violation of 42 U.S.C. § 1983.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B. awarding Plaintiffs declaratory relief against Defendants consistent with the injunction and declaring, *inter alia*, that the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE do not constitute reasonable or permissible lawful regulations but, rather, is against public policy and violative of the First, Second, Fourth, Fifth, Fourteenth Amendments and Due Process and takings clauses of the United States Constitution rendering them

29

unconstitutional, void *ab initio*, and unenforceable.

C.   awarding Plaintiffs their lost profits, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D.   awarding Plaintiffs reasonable attorney fees and costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY pursuant to 42 U.S.C. § 1988; and

E.   granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

SIXTH CLAIM FOR RELIEF
42 U.S.C. § 1985 CONSPIRACY TO VIOLATE
PLAINTIFF'S FUNDAMENTAL RIGHTS TO ADVERTISE, SELL,
TRANSFER, MARKET AND KEEP AND BEAR ARMS UNDER ARTICLE I, § 8,
CL. 3, ARTICLE VI OF THE U.S. CONST. AMENDS. I, II, IV, V & XIV

1-60.   Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 60 of their Fifth Claim, as

61.   On information and belief, the PRESIDENT, TRUSTEES and ATTORNEY, individually and in combination and conspiracy with each other in violation of 42 U.S.C. § 1985, by their overt acts committed set forth above, in order to, by their concerted action, restrain trade, violate and infringe Plaintiff's fundamental rights to acquire, market, keep and bear arms under Article I, § 8, cl. 3, Article VI of the U.S. Const., Amends. I, II, IV, V & XIV, thereby causing them the loss of liberty and other losses as hereinabove described.

62.   On information and belief, the PRESIDENT, TRUSTEES and ATTORNEY, individually and in combination and in furtherance of said conspiracy with each other in violation of 42 U.S.C. § 1985 on or about February 9, 2011 by TRUSTEE FALAGARIO, individually and in his capacity as VILLAGE TRUSTEE on behalf of himself and

the VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY, maliciously communicated to a reporter for Norridge Harwood Heights News (the "Newspaper"), a publication of general circulation distributed in and about the VILLAGE and on or about February 14, 2011, having reason to know his statement would be published in said Newspaper and on the Internet, and thereby reported, which it was, to the public, that included one or more actual or potential customers of Plaintiffs, substantially the following false statement and misrepresentation in disregard for its falsity, "…the one current Village weapons dealer licensee has agreed that it will cease doing business in the village no later than April, 30, 2013" with the intent to call into question, of and concerning Plaintiffs, the then only one current Village weapons dealer licensee in the VILLAGE, the viability of their business, and availability of their goods, services and commercial activities in order to inflict pecuniary harm on them so as to deter and dissuade potential customers from doing business with them and to reduce the marketability of their lawful products.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B. awarding Plaintiffs declaratory relief against Defendants consistent with the injunction and declaring, *inter alia*, that the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE do not constitute reasonable or permissible lawful regulations but,

rather, is against public policy and violative of the First, Second, Fourth, Fifth, Fourteenth Amendments and Due Process and takings clauses of the United States Constitution rendering them unconstitutional, void *ab initio*, and unenforceable.

C.   awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D.   awarding Plaintiffs reasonable attorney fees and costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY pursuant to 42 U.S.C. § 1988; and

E.   granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

SEVENTH CLAIM FOR RELIEF
42 U.S.C. § 1983 MONELL CLAIM

1-61.   Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 61 of their Sixth Claim, as though fully stated herein.

62.   On information and belief, the PRESIDENT and TRUSTEES were, by operation of state law and as a matter of fact, the final decision makers with regard to actions and decisions that they made and/or participated in by them as hereinabove alleged.

63.   That said acts and decisions directly and proximately caused the constitutional violations of Plaintiff's rights, deprivation of their full use of the FFL, lost profits, loss of good will, and other injuries and damages to Plaintiffs and their business as hereinabove alleged and are directly chargeable to Defendant VILLAGE because of the PRESIDENT and TRUSTEES status as its final decision makers.

64.   The VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY'S said actions, policies, practices, and customs directly and proximately caused the constitutional violations

and injuries to Plaintiffs, thereby making them directly chargeable to the VILLAGE.

65. That these policies, practices, and customs directly and proximately injured Plaintiffs as hereinabove alleged.

66. As a result of the foregoing infringement, Plaintiffs have been and will continue to be damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B. awarding Plaintiffs declaratory relief against Defendants consistent with the injunction and declaring, *inter alia*, that the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE do not constitute reasonable or permissible lawful regulations but, rather, is against public policy and violative of the First, Second, Fourth, Fifth, Fourteenth Amendments and Due Process and takings clauses of the United States Constitution rendering them unconstitutional, void *ab initio*, and unenforceable.

C. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D. awarding Plaintiffs reasonable attorney fees and costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY

pursuant to 42 U.S.C. § 1988; and

E. granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

EIGHT CLAIM FOR RELIEF<br>
ANTI-TRUST — UNLAWFUL COMBINATION AND CONSPIRACY TO<br>
<u>RESTRAIN FREE TRADE IN VIOLATION OF 15 U.S.C. § 1, et. seq.</u>

1-66. Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 66 of their Seventh Claim, as though fully stated herein.

67. At all times relevant 15 U.S.C. § 1, et. seq. (the "Sherman Antitrust Act") prohibited "[e]very contract, combination or conspiracy in restraint of trade or commerce among the several States…"

68. The Sherman Antitrust Act, is applicable not only to the activities of private industry and individuals, but also, under the facts set forth above, to those in government, such as the Defendants, who by economic regulation, as alleged herein, have and continue to unreasonably restrain competition and trade that affects interstate commerce.

69. The foregoing acts and decisions constitute a combination, conspiracy and scheme that through their concerted action produced and imposed the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE on the Plaintiffs that constituted and continue to constitute ongoing violations of the Sherman Antitrust Act that directly interfered with Plaintiffs full lawful use of their FFL and has caused and continues to cause Plaintiffs to suffer deprivation of the full use of their FFL, lost profits, loss of good will, loss of freedom and liberty and other injuries and damages as hereinabove alleged and are directly chargeable to the VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY.

70. As a result of the foregoing, Plaintiffs have been and will continue to be damaged in violation of Sherman Antitrust Act, and are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional and illegal customs, policies, practices, *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B. awarding Plaintiffs declaratory relief against Defendants consistent with the injunction and declaring, *inter alia*, that the *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE do not constitute reasonable or permissible lawful regulations but, rather, are preempted by and violative of the Sherman Antitrust Act, are against public policy thus rendering them illegal; void *ab initio*, and unenforceable.

C. granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

NINTH CLAIM FOR RELIEF
COMMERCIAL DISPARAGMENT – VIOLATION
OF LANHAM ACT, 15 U.S.C. 1125(a)(1)(B)

1-65. Plaintiffs, complaining of all Defendants, reallege and incorporate paragraphs 1 through 65 of their Seventh Claim, as though fully stated herein.

66. 15 U.S.C. 1125(a)(1)(B), The Lanham Act, § 43(a) provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word,…, or any combination thereof, …, false or misleading description of fact, or false or misleading representation of fact, which …

(B) … misrepresents the nature, characteristics, qualities, … of … another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this Act in the same manner and to the same extent as any nongovernmental entity.

67. That in violation of 43(a)(1)(B) of the Lanham Act, 15 U.S.C. 1125(a)(1)(B), on information and belief, on or about February 9, 2011 by TRUSTEE FALAGARIO, individually and in his capacity as VILLAGE TRUSTEE on behalf of himself and the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, maliciously communicated to a reporter for Norridge Harwood Heights News (the "Newspaper"), a publication of general circulation distributed in and about the VILLAGE and on or about February 14, 2011, having reason to know his statement would be published in said Newspaper and on the Internet, and thereby reported, which it was, to the public, that included one or more actual or potential customers of Plaintiffs, substantially the following false statement and misrepresentation in disregard for its falsity, "…the one current Village weapons dealer licensee has agreed that it will cease doing business in the village no later than April, 30, 2013" with the intent to call into question, of and concerning Plaintiffs, the then only one current Village weapons dealer licensee in the VILLAGE, the viability of their

business, and availability of their goods, services and commercial activities in order to inflict pecuniary harm on them so as to deter and dissuade potential customers from doing business with them and to reduce the marketability of their lawful products.

68. That VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY knew or should have known or recognized that when said false statement was made it could or would be likely to cause harm to the interests of the plaintiffs having a pecuniary value.

69. That said false communication commercially disparaged Plaintiffs in their business thereby causing them direct pecuniary loss to be suffered by them as a result of the disparagement including lost profits, loss of good will and other damages.

70. Defendants' actions constitute tortious Interference with prospective economic advantages that Plaintiffs would have otherwise enjoyed: Defendants' actions have caused and will continue to cause damage to Plaintiff as above described, and continues to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a judgment in their favor as follows:

A. finding Defendants have commercially disparaged Plaintiffs in their business;

B. issuing a preliminary and permanent injunction, enjoining and prohibiting the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY and their agents, servants, employees, officers, attorneys, successors and assigns from commercially disparaging Plaintiffs in their business;

C. awarding Plaintiffs their lost profits, loss of good will, general, compensatory, economic, punitive and treble damages against VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, as

the proofs will show at trial;

D.     awarding Plaintiffs costs against VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY; and

E.     granting Plaintiffs such other and further relief against Defendants as may be just and proper in the premises.

FIRST PENDANT CLAIM<br>FOR DECLARATORY JUDGMENT

1-49.     Plaintiffs incorporate paragraphs 1 through 49 of their Second Federal Claim by reference, as if fully set forth herein.

50.  That by reason of the foregoing an actual controversy exists and Plaintiffs are therefore entitled to a judicial declaration of his rights pursuant to 735 ILCS 5/2-701 and declaratory relief in connection therewith because said *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE are oppressive, lack lawful or adequate consideration, are illegal, against public policy, forced on Plaintiffs and adopted by Defendants in bad faith and are therefore null and void *ab initio*, and unenforceable.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A.     Declaring pursuant to 735 ILCS 5/2-701 their rights and that above-referenced *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE be adjudged and decreed, *inter alia*, not to constitute reasonable or permissible lawful regulations or limitations, but rather, to be against public policy and violative of Article I. §§ 1, 2, 4, 6, 12, 15, 22, 24, and Due Process, Equal Protection and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable;

B.     enjoining and restraining *pendent lite* and permanently, Defendants, their officers, agents, servants, employees, and all persons in active concert or participation

with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

C.   awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D.   awarding Plaintiffs costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY; and

F.   granting Plaintiffs such other and further relief against all Defendants as this Court may deem just and proper in the premises.

SECOND PENDANT CLAIM
RECISSION OF ILLEGAL AND OPPRESIVE CONTRACT

1-50.   Plaintiffs incorporate paragraphs 1 through 50 of their First State Claim by reference, as if fully set forth herein.

51. That by reason of the foregoing, the *ULTRA VIRES* AGREEMENT was *ultra vires*, illegal, oppressive, made without lawful or sufficient consideration, was against public policy and void *ab initio*.

52. That by reason of the foregoing Plaintiffs suffered and continues to suffer lost profits, loss of good will, and damages to be shown at trial.

53. That by reason of the foregoing Plaintiffs are entitled to a judicial declaration decreeing that said Agreement is illegal, made without sufficient and lawful consideration and is therefore null and void *ab initio*.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a judgment in their favor as follows:

A.   finding and decreeing that the *ULTRA VIRES* AGREEMENT be adjudged and decreed, *inter alia*, not to constitute

reasonable, or permissible lawful regulations or limitations, but rather, to be lacking lawful or sufficient consideration, oppressive, against public policy and violative of 15 U.S.C. § 1, et. seq., thus rendering it illegal, null and void *ab initio*, and unenforceable;

B. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

C. awarding Plaintiffs costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY; and

D. granting Plaintiffs such other and further relief against all Defendants as this Court may deem just and proper in the premises.

THIRD PENDANT CLAIM
FOR TORTIOUS INTERFERENCE
WITH PROSPECTIVE ECONOMIC ADVANTAGE

1-50. Plaintiffs incorporate paragraphs 1 through 50 of their First State Claim by reference, as if fully set forth herein.

51. Plaintiffs, at all times relevant, had a reasonable expectancy of entering into a valid business relationships with qualified prospective customers eligible to buy their lawful firearms and related products (the "expectancies").

52. The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY, at all times relevant, knew or should have known of Plaintiffs' possessed a FFL and had such expectancy and prospective business relationships.

53. The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY intentionally and with willful disregard for Plaintiff's rights, purposefully interfered and continue to interfere with the Plaintiffs' legitimate expectancies for the prospective transfer, sale of their lawful products to qualified individuals

and business relationships such that they never materialized or were substantially reduced.

54. The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY'S conduct as alleged above constituted and continues to constitute a willful and intentional interference with their ability to conduct their lawful business and engage interstate commerce thereby causing them to have lost and continue to lose customers, sales, and the opportunity to expand and grow their business and suffer lost profits and other injuries and damages resulting from said interference.

55. The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY'S actions constitute tortious interference with prospective economic advantages that Plaintiffs would have otherwise enjoyed: Defendants' actions have caused and will continue to cause damage to Plaintiff as above described, and continues to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a judgment in their favor as follows:

A. finding the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY have willfully interfered with Plaintiffs economic advantage under Illinois law;

B. issuing a preliminary and permanent injunction, enjoining and prohibiting each of the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY and their agents, servants, employees, officers, attorneys, successors and assigns from any such further tortious interference;

C. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D. awarding Plaintiffs costs against the VILLAGE,

PRESIDENT, TRUSTEES and VILLAGE ATTORNEY; and

E.  granting Plaintiffs such other and further relief against Defendants as may be just and proper in the premises.

FOURTH PENDANT CLAIM<br>
<em>ULTRA VIRES</em> SPECIAL LEGISLATION<br>
<u>IN VIOLATION OF THE ILLINOIS CONSTITUTION</u>

1-50.  Plaintiffs incorporate paragraphs 1 through 50 of their First State Claim by reference, as if fully set forth herein.

51. That, the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE, as alleged above, constituted and continues to constitute unconstitutional and *ultra vires* special legislation.

52. That, by reason of the foregoing, Plaintiffs suffered and continues to suffer damages to be shown at trial.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a judgment in their favor as follows:

A.  enjoining and restraining *pendent lite* and permanently, the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE;

B.  awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

C.  awarding Plaintiffs costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY; and

D.  granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

FIFTH PENDANT CLAIM
UNLAWFUL RETALIATION IN VIOLATION OF
§§ 2 & 4, ARTICLE 1 OF THE ILLINOIS CONSTITUTION

1-52.    Plaintiffs incorporate paragraphs 1 through 52 of their Fourth State Claim by reference, as if fully set forth herein.

53. That, in violation of Illinois Constitution, under color of law, the VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY intended to and did deprive Plaintiffs of their state constitutional rights and such deprivation was, and continues to be imposed in retaliation for Plaintiffs having been persistent in their attempt to sign, advertise, promote and identify their lawful business.

54. The VILLAGE, its PRESIDENT, TRUSTEES and VILLAGE ATTORNEY did thereby harm and continue to harm Plaintiffs and that such harm includes loss of profits, good will and other ongoing damages.

55. Plaintiffs' injuries were proximately caused by said Defendants' actions and policy-level decisions, including the custom and practice of deliberate indifference and efforts to thwart their rights by preventing them from engaging in and driving them out of a lawful business licensed by Federal Law.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a judgment in their favor as follows:

A.    finding and decreeing that the *ULTRA VIRES* AGREEMENT be adjudged and decreed, *inter alia*, not to constitute reasonable, or permissible lawful regulations or limitations, but rather, to be lacking lawful or sufficient consideration, oppressive, against public policy and violative of the Illinois Constitution and public policy, thus rendering it illegal, null and void *ab initio*, and unenforceable;

B.    enjoining and restraining *pendent lite* and permanently, The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY,

their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the VILLAGE'S *ULTRA VIRES* AGREEMENT and REVISED ORDINANCE; and enjoining and restraining The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY, *pendant lite* and permanently, from placing any prior restraint upon Plaintiffs' exercise of commercial speech or otherwise interfering or preventing Plaintiffs from displaying any signage, advertising or identifying or providing commercial information in or about their commercial premises promoting or relating to their business.

C. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

D. awarding Plaintiffs costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY; and

E. granting Plaintiffs such other and further relief against all Defendants as this Court may deem just and proper in the premises.

SIXTH PENDANT CLAIM –
COMMON LAW CONSPIRACY

1-52. Plaintiffs incorporate paragraphs 1 through 52 of their Fourth State Claim by reference, as if fully set forth herein.

53. On information and belief, the PRESIDENT, TRUSTEES and VILLAGE ATTORNEY, individually and in combination and conspiracy with each other, by their concerted actions as set forth above, committed the overt acts as hereinabove set forth that caused Plaintiffs the loss of liberty and other deprivations, losses and damages as hereinabove described.

54. That by reason of the foregoing Plaintiffs suffered

Case: 1:11-cv-03871 Document #: 11 Filed: 09/06/11 Page 45 of 73 PageID #:125

and continue to suffer lost profits, loss of good will and other damages.

WHEREFORE, PLAINTIFFS PRAY that this Court enter a judgment in their favor as follows:

A. awarding Plaintiffs their lost profit, loss of good will, general, compensatory, economic and punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY as the proofs will show at trial;

B. awarding Plaintiffs costs against the VILLAGE, PRESIDENT, TRUSTEES and VILLAGE ATTORNEY; and

C. granting Plaintiffs such other and further relief against Defendants as this Court may deem just and proper in the premises.

SEVENTH PENDANT CLAIM —
VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT

1-54. Plaintiffs, complaining of the VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY and reallege and incorporate paragraphs 1 through 54 of their Sixth Claim, as though fully stated herein.

55. Under the Illinois Deceptive Trade Practices Act, "a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person disparages the goods, services, or business of another by false or misleading representation of fact." 815 ILCS 510/2

56. That in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, on information and belief, on or about February 9, 2011 by TRUSTEE FALAGARIO, individually and in his capacity as VILLAGE TRUSTEE on behalf of himself and the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, maliciously communicated to a reporter for Norridge Harwood Hieghts News (the "Newspaper"), a publication of general circulation distributed in and about the VILLAGE and on or about February 14, 2011, having reason to know his statement would be published

in said Newspaper and on the Internet, and thereby reported, which it was, to the public, that included one or more actual or potential customers of Plaintiffs, substantially the following false statement and misrepresentation in disregard for its falsity, "…the one current Village weapons dealer licensee has agreed that it will cease doing business in the village no later than April, 30, 2013" with the intent to call into question, of and concerning Plaintiffs, the then only one current Village weapons dealer licensee in the VILLAGE, the viability of their business, and availability of their goods, services and commercial activities in order to inflict pecuniary harm on them so as to deter and dissuade potential customers from doing business with them and to reduce the marketability of their lawful products.

57. That the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY knew or should have known or recognized that when said false statement was made it could or would be likely to cause harm to the interests of the plaintiffs having a pecuniary value.

58. That said false communication commercially disparaged Plaintiffs in their business thereby causing them direct pecuniary loss to be suffered by them as a result of the disparagement including lost profits, loss of good will and other damages.

59. The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY'S actions constitute tortious Interference with prospective economic advantages that Plaintiffs would have otherwise enjoyed and their actions have caused and will continue to cause damage to Plaintiff as above described, and continues to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a judgment in their favor as follows:

46

A.   finding  that  the  VILLAGE,  PRESIDENT,  TRUSTEES  and ATTORNEY have engaged in a deceptive trade practice with respect to Plaintiffs in their business;

B.   issuing   a   preliminary   and   permanent   injunction, enjoining and prohibiting the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY  and  their  agents,  servants,  employees,  officers, attorneys,  successors  and  assigns  from  commercially  disparaged Plaintiffs in their business;

C.   awarding  Plaintiffs  their  lost  profits,  loss  of  good will,  general,  compensatory,  economic,  punitive  and  treble damages against the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, as the proofs will show at trial;

D.   awarding   Plaintiffs   costs   against   the   VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY; and

E.   granting  Plaintiffs  such  other  and  further  relief against Defendants as may be just and proper in the premises

EIGHT PENDANT CLAIM —
COMMON LAW COMMERCIAL DISPARAGMENT

1-54.   Plaintiffs,  complaining  of  The  VILLAGE,  the PRESIDENT,  TRUSTEES  and  ATTORNEY,  reallege  and  incorporate paragraphs 1 through 54 of their Sixth Claim, as though fully stated herein.

55.   That under the Illinois Deceptive Trade Practices Act, "a person engages in a deceptive trade practice when, in the course  of  his  or  her  business,  vocation,  or  occupation,  the person disparages the goods, services, or business of another by false or misleading representation of fact." 815 ILCS 510/2

56. That, on information and belief, on or about February 9, 2011 by TRUSTEE FALAGARIO, individually and in his capacity as  VILLAGE  TRUSTEE  on  behalf  of  himself  and  the  VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, maliciously communicated to a reporter for Norridge Harwood Hieghts News (the "Newspaper"), a publication of general circulation distributed in and about the

VILLAGE and on the on or about February 14, 2011, having reason to know his statement would be published in said Newspaper and on the Internet, and thereby reported, which it was, to the public, that included one or more actual or potential customers of Plaintiffs, the substantially the following false statement and misrepresentation in disregard for its falsity, "…the one current Village weapons dealer licensee has agreed that it will cease doing business in the village no later than April, 30, 2013" with the intent to call into question, of and concerning Plaintiffs, the then only one current Village weapons dealer licensee in the VILLAGE, the viability of their business, and availability of their goods, services and commercial activities in order to inflict pecuniary harm on them so as to deter and dissuade potential customers from doing business with them and to reduce the marketability of their lawful products.

57. That The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY knew or should have known or recognized that when said false statement was made it could or would be likely to cause harm to the interests of the plaintiffs having a pecuniary value.

58. That said false communication commercially disparaged Plaintiffs in their business thereby causing them direct pecuniary loss to be suffered by them as a result of the disparagement including lost profits, loss of good will and other damages.

59. The VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY'S actions constitute tortious Interference with prospective economic advantages that Plaintiffs would have otherwise enjoyed, Defendants' actions have caused and will continue to cause damage to Plaintiff as above described, and continues to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a

judgment in their favor as follows:

A. finding Defendant have commercially disparaged Plaintiffs in their business;

B. awarding Plaintiffs their lost profits, loss of good will, general, compensatory, economic, punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, as the proofs will show at trial;

C. awarding Plaintiffs costs against the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY and the VILLAGE; and

D. granting Plaintiffs such other and further relief against Defendants as may be just and proper in the premises.

EIGHT PENDANT CLAIM —
COMMON LAW FALSE LIGHT IN PUBLIC EYE

1-59. Plaintiffs, complaining of the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, reallege and incorporate paragraphs 1 through 59 of their Seventh Claim, as though fully stated herein.

60. That, on information and belief, on or about February 9, 2011 by TRUSTEE FALAGARIO, individually and in his capacity as VILLAGE TRUSTEE on behalf of himself and the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, maliciously communicated to a reporter for Norridge Harwood Hieghts News (the "Newspaper"), a publication of general circulation distributed in and about the VILLAGE and on the on or about February 14, 2011, having reason to know his statement would be published in said Newspaper and on the Internet, and thereby reported, which it was, to the public, that included one or more actual or potential customers of Plaintiffs, the substantially the following false statement and misrepresentation in disregard for its falsity, "…the one current Village weapons dealer licensee has agreed that it will cease doing business in the village no later than April, 30, 2013" with the intent to call into question, of and concerning Plaintiffs, the then only one current Village weapons dealer

licensee in the VILLAGE, the viability of their business, and availability of their goods, services and commercial activities in order to inflict pecuniary harm on them so as to deter and dissuade potential customers from doing business with them and to reduce the marketability of their lawful products.

61. That the VILLAGE, the PRESIDENT, TRUSTEES and ATTORNEY knew or should have known or recognized that when said false statement was made it could or would be likely to cause harm to the interests of the plaintiffs having a pecuniary value and place them in a false light in the public eye.

62. That said false communication placed Plaintiffs in their business place them in a false light in the public eye thereby causing them direct pecuniary loss to be suffered by them as a result of the disparagement including lost profits, loss of good will and other damages.

WHEREFORE, PLAINTIFFS PRAYS that this Court enter a judgment in their favor as follows:

A. finding said the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY have placed Plaintiffs in their business in a false light in the public eye;

B. awarding Plaintiffs their lost profits, loss of good will, general, compensatory, economic, punitive damages against the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY, as the proofs will show at trial;

C. awarding Plaintiffs costs against the VILLAGE, PRESIDENT, TRUSTEES and ATTORNEY; and

D. granting Plaintiffs such other and further relief against Defendants as may be just and proper in the premises.

JURY TRIAL DEMANDED

Plaintiffs hereby requests a trial by jury of all issues that may be so triable.

Dated and filed electronically at Chicago, Illinois using

the United States District Court for Northern District of Illinois "CM/ECF System" this 6th day of September 2011.

Respectfully submitted,

TONY KOLE and GHOST INDUSTRIES, LLC, Plaintiffs,

By /s/ Walter P. Maksym, Jr.
    WALTER P. MAKSYM, JR., their attorney

## PLAINTIFF'S RULE 11 CERTIFICATION

The undersigned certifies that they are Plaintiffs in that above-captioned cause, that they have read the foregoing complaint, that to the best of their knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation and that the exhibits attached, if any are true and correct copies of the documents they purport to be.

/s/ Tony Kole
    TONY KOLE, individually and as
    President of GHOST INDUSTRIES, LLC

## ATTORNEY'S RULE 11 CERTIFICATION

The undersigned attorney certifies that he has read the foregoing complaint, that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

/s/ Walter P. Maksym, Jr.
    WALTER P. MAKSYM, JR., Plaintiffs' attorney

Walter P. Maksym, Jr.
Attorney for Plaintiffs
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (312) 218-4475
e-mail: wmaksym@gmail.com

EXHIBIT "A"

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Federal Firearms License
## (18 U.S.C. Chapter 44)

In accordance with the provisions of Title I, Gun Control Act of 1968, and the regulations issued thereunder (27 CFR Part 478), you are licensed to engage in the business specified in this license, within the limitations of Chapter 44, Title 18, United States Code, and the regulations issued thereunder, until the expiration date shown. See "WARNINGS" and "NOTICES" on reverse.

| | |
|---|---|
| Direct ATF Correspondence To | ATF - Chief, FFLC<br>244 Needy Road<br>Martinsburg, WV 25405-9431 |
| License Number | **3-36-031-01-4B-02885** |
| Chief, Federal Firearms Licensing Center (FFLC) | |
| Expiration Date | **February 1, 2014** |

Name

GHOST INDUSTRIES LLC

Premises Address (Changes? Notify the FFLC at least 30 days before the move.)

**7601 W MONTROSE AVE SUITE 2**
**NORRIDGE, IL 60706-**

Type of License

01-DEALER IN FIREARMS OTHER THAN DESTRUCTIVE DEVICES

Purchasing Certification Statement

The licensee named above shall use a copy of this license to assist a transferor of firearms to verify the identity and the licensed status of the licensee as provided by 27 CFR Part 478. The signature on each copy must be an original signature. A faxed, scanned or e-mailed copy of the license with a signature intended to be an original signature is acceptable. The signature must be that of the Federal Firearms Licensee (FFL) or a responsible person of the FFL. I certify that this is a true copy of a license issued to the licensee named above to engage in the business specified above under Type of License.

_Tony Cure_
Licensee/Responsible Person Signature

TONY KOLE
Printed Name

_PRESIDENT_
Position/Title

1-18-11
Date

Previous Edition is Obsolete

GHOST INDUSTRIES LLC 7601 W MONTROSE AVE SUITE 2 3-37-031-01-4B-02885 February 1, 2014 01-DEALER IN FIREARMS OTHER THAN DESTRUCTIVE DEVICES

Mailing Address (Changes? Notify the FFLC of any changes.)

GHOST INDUSTRIES LLC
7601 W MONTROSE AVE SUITE 2
NORRIDGE, IL 60706-

_Tony Cure_
1-21-11

ATF Form 8 (5310.11)
Revised September 2008

## Federal Firearms License (FFL) Customer Service Information

| | | |
|---|---|---|
| Federal Firearms Licensing Center (FFLC)<br>244 Needy Road<br>Martinsburg, WV 25405-9431 | Toll-free Telephone Number: (866) 662-2750<br>Toll-free Fax Number: (866) 257-2749<br>E-mail: NLC@atf.gov | ATF Homepage: www.atf.gov<br>FFL eZ Check: www.atfonline.gov/fflezcheck |

**Change of Address** *(27 CFR 478.52).* Licensees may during the term of their current license remove their business or activity to a new location at which they intend regularly to carry on such business or activity by filing an Application for an Amended Federal Firearms License, ATF Form 5300.38, in duplicate, not less than 30 days prior to such removal with the Chief, Federal Firearms Licensing Center. The application shall be executed under the penalties of perjury and penalties imposed by 18 U.S.C 924. The application shall be accompanied by the licensee's original license. The license will be valid for the remainder of the term of the original license. (**The Chief, FFLC, shall, if the applicant is not qualified, refer the application for amended license to the Director of Industry Operations for denial in accordance with § 478.71.**)

**Right of Succession** *(27 CFR 478.56).* (a) Certain persons other than the licensee may secure the right to carry on the same firearms or ammunition business at the same address shown on, and for the remainder of the term of, a current license. Such persons are: (1) The surviving spouse or child, or executor, administrator, or other legal representative of a deceased licensee; and (2) A receiver or trustee in bankruptcy, or an assignee for benefit of creditors. (b) In order to secure the right provided by this section, the person or persons continuing the business shall furnish the license for that business for endorsement of such succession to the Chief, FFLC, within 30 days from the date on which the successor begins to carry on the business.

*(Continued on reverse side)*

Cut Here ✂ — — — — — — — — —

| Federal Firearms License (FFL) Information Card | |
|---|---|
| License Name: | **GHOST INDUSTRIES LLC** |
| Business Name: | |
| License Number: | **3-36-031-01-4B-02885** |
| License Type: | **01-DEALER IN FIREARMS OTHER THAN DESTRUCTIVE DEVICES** |
| Expiration: | **February 1, 2014** |

Please Note: Not Valid for the Sale or Other Disposition of Firearms.

FFL Newsletter - Electronic Version Available

Sign-Up Today!

FFLs interested in receiving the electronic version of the FFL Newsletter, along with occasional additional information, should submit name, FFL number, and e-mail address to: FFLNewsletter@atf.gov.

The electronic FFL Newsletter will enable ATF to communicate information to licensees on a periodic basis.

EXHIBIT "B"

Norridge, Illinois, Code of Ordinances >> - REVISED MUNICIPAL CODE >> Chapter 22 - BUSINESSES >> ARTICLE VIII. - WEAPONS DEALERS >>

### ARTICLE VIII. - WEAPONS DEALERS[*]

**State law reference—Weapons, 720 ILCS 5/24-1 et seq.**

Sec. 22-361. - License.
Sec. 22-362. - Report of sale.

### Sec. 22-361. - License.

**A.** *Required.* It shall be unlawful for any person to engage in the business of selling, or to sell, loan or give to any person, within the village, any pistol, revolver, derringer, rifle, shotgun, or other firearm, Bowie knife, dirk, air rifle or air gun, or any toy firearms or other toy in the nature of a firearm in which any explosive substance can be used, or any weapon of like character, without securing a license so to do as provided in this section.

**B.** *Application.* Any person desiring to sell or offer for sale firearms or other dangerous weapons in the village shall make application in writing to the village clerk for a license, which application shall state the name of the applicant, the residence and business addresses of the applicant and such other information as the village clerk shall desire.

**C.** *Revocation.* If the board of trustees is satisfied that such applicant has violated any provisions of this section, it may revoke the license of such person for the selling of such weapons. In such a case, the money paid for such license shall be forfeited to the village, and no other such license shall be issued to such licensee for a period of three years thereafter.

*(Code 1972, ch. 7, art. 11, § 3)*

### Sec. 22-362. - Report of sale.

Every person who is licensed to deal in the deadly weapons described in section 22-389A., shall make out and deliver to the chief of police every day before the hours of 12:00 noon, a legible and correct report of every sale or gift made under authority of such license during the preceding 24 hours, which report shall contain the date of such sale or gift, the name of the purchaser or donee with his address and age, his nationality and citizenship, the number, kind, description and price of such weapon, the number of the purchaser's permit and the purpose given by such person for the purchase of such weapon, which report shall be substantially in the following form:

  Number permit
  Number of weapon
  Name of purchaser
  Address of purchaser
  Citizen or alien
  If alien, name of country subject of
  Age of purchaser
  Kind or description of weapon
  For what purpose purchased
  Price

If no such sale has been made during the preceding 24 hours, then it shall not be necessary to file the report for such period.

*(Code 1972, ch. 7, art. 11, § 3)*

**State law reference—Register of sales of concealable firearms required, 720 ILCS 5/24-4.**

EXHIBIT "C"

AGREEMENT BETWEEN THE

VILLAGE OF NORRIDGE

&

GHOST INDUSTRIES, LLC


WHEREAS, GHOST INDUSTRIES, LLC ("Ghost") is an Illinois limited liability company which seeks to operate a business at 7601 W. Montrose Ave, Suite 2 (the "Premises") in the Village of Norridge, Illinois ("Norridge");

WHEREAS, Ghost wishes to operate as a weapons dealer out of the Premises;

WHEREAS, Norridge has restrictions on the operation of weapons dealers within its borders in order to safeguard the health and safety of its citizens and their invitees;

WHEREAS, Norridge has enacted an ordinance specifically regulating weapons dealers conduct in Norridge, which ordinance is codified in Chapter 22, Article VIII of the Norridge Code of Ordinances 2002, as amended;

WHEREAS, Ghost recognizes Norridge's concerns about weapons dealers and agrees that the following terms be agreed to in connection with its application for a license to do business as a weapons dealer in Norridge; and

WHEREAS, Norridge and Ghost agree that the following terms will be applied to any license to do business as a weapons dealer in Norridge granted to Ghost.

NOW THEREFORE, Norridge and Ghost agree any license granted to Ghost to do business as a weapons dealer in Norridge be conditioned upon Ghost's compliance with the following terms at all times:

1.      Ghost will not physically deliver any firearm or ammunition to any recipient in the Premises other than to its President and Owner and to its employees that successfully pass a Criminal Background Investigation and possess a valid Illinois FOID card. All deliveries sent from the Premises shall be by unmarked packaging if the delivery is of a "used" firearm and shall be delivered in original packaging as provided by the manufacturer, wholesaler, or distributor if it is a "new" firearm and be in secure packaging sent via post office or courier to a licensed federal firearms dealer (FFL);

2.      Ghost will not store firearms or ammunition on the Premises overnight or longer than twelve (12) hours during any day. Additionally, any firearms in Ghost's inventory on the Premises will either be disabled by a locking device made for use on firearms or secured in a locked cabinet;

3.     Ghost will not maintain a sales or retail display of any firearms or ammunition on the Premises;

4.     Ghost will not post or erect any exterior signage indicating to the public that its offices are located on the Premises or indicating the business of Ghost (i.e. weapons sales) and will limit interior signage to that required by state and federal law.  Provided, however, that Ghost will be allowed to put its name on one or more interior door to Premises;

5.     Ghost will ensure that the only authorized person to receive shipments of firearms and ammunition on behalf of Ghost will be the President and Owner of Ghost (until Ghost can afford to employ others that pass a Criminal Background Investigation and any other applicable requirements of the United States, the state of Illinois, and any other jurisdiction having authority over the Premises);

6.     All officers and employees of Ghost on the Premises will submit to an annual Criminal Background Investigation at Norridge's expense and will provide Norridge with such releases as are necessary to effectuate the investigation;

7.     Ghost will install and maintain a video surveillance system to record and monitor its office within the limits of its Lease Agreement for the Premises;

8.     Ghost will voluntarily offer its President and all of its employees for a fingerprinting by the Norridge Police Department at Norridge's expense;

9.     Ghost will agree to receive no more than forty (40) long guns or hand guns at the Premises per month for the first twelve (12) months following the date of this Agreement and the above-referenced amounts shall increase by ten (10) percent twelve (12) months, and twenty four (24) months thereafter, and to have no more than twenty (20) firearms in the Premises at any one time;

10. Ghost will agree to receive no more than four thousand (4,000) rounds per month for the first twelve (12) months following the date of this Agreement and the above-referenced amounts shall increase by ten (10) percent twelve (12) months and twenty four (24) months thereafter, and to have no more than one thousand (1,000) rounds on the Premises at any one time.  Provided, however, larger quantities (not in excess of the monthly amount) may be on the Premises for no longer than one (1) hour after they are delivered from the distributor, wholesaler or manufacturer;

11. Ghost will abide by all local, state and federal laws governing its business including, but not limited to Chapter 22, Article VIII of the Norridge Code of Ordinances – 2002, as may be amended from time to time.

12. Ghost will allow without prior notice one (1) random and unannounced on-site inspection of the Premises per month by Norridge inspectors or police at any time during regular business hours or whenever the Premises are occupied, in each case solely to monitor compliance with this Agreement. Additionally, Ghost will allow two (2) such on-site inspections per month

during regular business hours which must be scheduled with Ghost at least twenty-four (24) hours in advance ;

13. Norridge will renew Ghost's License twice annually provided that Ghost remains in compliance with this Agreement and to exempt Ghost from any change in its business license ordinances and rules in any amendments Norridge may make to its Code of Ordinances which directly or indirectly impacts Ghost's business under the Weapons Dealer License granted by Norridge. In the event that Norridge repeals its Weapons Dealer Ordinance within thirty six months of the execution of the Agreement, Norridge will exempt Ghost from the repeal during that period; and

14. In the event that Ghost breaches any of the conditions of this Agreement to do business as a weapons dealer in Norridge and such breach is not cured within three (3) business days after Norridge's delivery of written notice to Ghost specifying the breach, its license will become forfeit and Ghost will cease doing business under that license.

IN WITNESS WHEREOF, the Village and Ghost Industries LLC have caused this instrument to be executed by their appropriate representatives on the day and year first above written.

THE VILLAGE OF NORRIDGE, ILLINOIS a municipal corporation

By: _____ Village President

Dated: 11-30-10

ATTEST:

By: _____ Village Clerk

Dated: 30 November 2010

GHOST INDUSTRIES, LLC an Illinois Limited Liability Company

By:_____

President

Dated:_____

EXHIBIT "D"

O R D I N A N C E  NO.  1697-11

AN ORDINANCE REPEALING AND REENACTING CHAPTER
22, ARTICLE VIII, AND AMENDING CHAPTER 38, SECTION 22 OF
THE REVISED MUNICIPAL CODE OF THE VILLAGE OF NORRIDGE - 2002

An Ordinance Reenacting Weapons Dealers Licensing
and Amending Associated Fees and Penalties

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RONALD A. OPPEDISANO, PRESIDENT

URSULA A. KUCHARSKI, TRUSTEE     ROBERT MARTWICK, TRUSTEE
DOMINIC S. FALAGARIO, TRUSTEE     DENNIS H. STEFANOWICZ, TRUSTEE
JACQUELINE GREGORIO, TRUSTEE     DOMINIC SULIMOWSKI, TRUSTEE

JUDITH DUNNE BERNARDI, VILLAGE CLERK

O R D I N A N C E  NO.  1697-11

AN ORDINANCE REPEALING AND REENACTING CHAPTER
22, ARTICLE VIII, AND AMENDING CHAPTER 38, SECTION 22 OF
THE REVISED MUNICIPAL CODE OF THE VILLAGE OF NORRIDGE - 2002

An Ordinance Reenacting Weapons Dealers Licensing
and Amending Associated Fees and Penalties

WHEREAS, the Village of Norridge (Village), as a home rule municipality in accordance with Article VII Section 6(a) of the Constitution of the State of Illinois of 1970, is enacting this Ordinance pursuant to its home rule authority; and

WHEREAS, the 2002 Revised Municipal Code of the Village (Code) contains regulations governing the licensing of weapons dealers in Chapter 22, Article VIII and setting a fee for such licenses in Chapter 38, Section 22; and

WHEREAS, there is currently one firearms dealer licensed to do business in the Village and at least four other firearms dealers within close proximity to the Village in the suburbs of Lincolnwood, Elmwood Park, Des Plaines and Melrose Park, who can serve Village residents' needs; and

WHEREAS, the Board wishes to set the number of available weapons dealers licenses to one license and to terminate that category of business license no later than April 30, 2013; and

WHEREAS, the one current Village weapons dealers licensee has agreed that it will cease doing business in the Village no later than April 30, 2013; and

WHEREAS, the Village Board of Trustees (Board) also wishes to update and enhance the current Weapons Dealers Licensing regulations in Chapter 22 and to include a provision repealing the weapons dealers licensing regulations no later than April 30, 2013 without further action of the Board; and

WHEREAS, Board further wishes to amend Chapter 38, Section 22 of the Code to include a provision repealing the weapons dealers licensing fee no later than April 30, 2013 without further action of the Board; and

1

WHEREAS, the amendments set forth hereinbelow improve the health, safety and welfare of the Village.

NOW THEREFORE, BE IT ORDAINED by the President and Board of Trustees of the Village of Norridge, Cook County, Illinois:

### Section 1.

The facts and statements contained in the preamble to this Ordinance are found to be true and correct and are hereby adopted as part of this Ordinance.

### Section 2.

Chapter 22, Article VIII be and hereby is repealed and Chapter 22, Article VIII shall be reenacted in its place as follows:

### ARTICLE VIII. WEAPONS DEALERS

Sec. 22-361.    Definitions.
Sec. 22-362.    Weapons dealers prohibited.
Sec. 22-363.    License.
Sec. 22-364.    Conditions for issuance and maintenance of license.
Sec. 22-365.    Report of sale.
Sec. 22-366.    Denial; revocation.
Sec. 22-367.    Administrative appeal.
Sec. 22-368.    Construction.
Sec. 22-369.    Severability.
Sec. 22-370.    Preemption.
Sec. 22-371.    Sunset provision.

**Sec. 22-361. Definitions.**
The following words, terms and phrases as used in this article shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning.

*Air rifle* means and includes any pneumatic gun, air gun, air pistol, spring gun, spring pistol, B-B gun, paintball gun, pellet gun or any similar device which uses a spring, pneumatic device, compressed air or compressed gas to impel a pellet constructed of hard plastic, steel, lead or other hard materials with a force that reasonably is expected to cause bodily harm. Paintball guns are defined separately herein.

*Ammunition* means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding, however:

2

1. Any ammunition exclusively designed for use with a device used exclusively for signaling or safety and required by the United States Coast Guard or the Interstate Commerce Commission;

2. Any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

*Code* means the Revised Municipal Code of the Village of Norridge - 2002, as may be amended from time to time.

*Firearm* means any device, by whatever name known, which is designed or may be readily converted to expel a projectile or projectiles by the action of an explosive or propellant, or by an expansion or escape of gas generated by the process of combustion or ignition, or the component parts of the foregoing, or any combination of component parts either designed or intended for use in converting any device into a firearm as described herein. The definition of "firearm" excludes:

1. Any safety device used exclusively for signaling or safety and required or recommended by the U.S. Coast Guard;

2. Any device used exclusively for the firing of stud cartridges, explosive rivets or similar construction or industrial ammunition;

3. Model rockets designed to propel a model vehicle in a vertical direction;

4. Any air rifle, pneumatic gun, spring gun, paintball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors.

*Licensee* means a person granted a license as a weapons dealer by the Village pursuant to the Code.

*Paintball gun* means any air gun, air pistol or similar device that is designed and intended to use compressed air or gas to discharge a globular projectile filled with paint or similar marking liquid, or another liquid or substance.

*Person* means any individual, corporation, company, limited liability company, association, firm, partnership, club, society or joint stock company.

*Weapons dealer* means any person who:

1. Sells, rents or transfers firearms or their component parts, including any person who is a pawnbroker;
2. Engages in the business of manufacturing firearms or their component parts for remuneration;

3

3.      Sells or transfers ammunition at wholesale or retail;

4.      Engages in the business of repairing firearms or making or fitting special barrels, trigger mechanisms, stocks or grips for firearms for remuneration;

5.      Sells, rents, or transfers any dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1 as may be amended from time to time, or their component parts, including any person who is a pawnbroker.

**Sec. 22-362.    Weapons dealers prohibited.**

No person shall engage in the business of selling, loaning, renting, exchanging, giving away, or otherwise transferring for consideration within the Village:

A.       any dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1 (collectively, "deadly weapons"); or

B.      any other deadly weapon which can be carried or concealed on the person; or

C.      any firearm or ammunition as those terms are defined in Chapter 22, Section 22-361 of the Code as may be amended from time to time,

unless such person is currently licensed by the Village as a weapons dealer as of January 1, 2011.

**Sec. 22-363.  License.**

A.      *Required.*  No person may engage in the business of a weapons dealer as set forth in this article within the corporate limits of the Village, without first having secured from the Village a weapons dealers license.

B.      *Application.*

1.      An application for a weapons dealers license shall be made in conformity with the general requirements of this Code relating to applications for licenses and this article.

2.      All applications shall be made on the forms provided by the Village and shall include, at a minimum, the following information:

a.      The full name and address of the applicant, or, if a corporation, the name and address thereof and the names of its principal officers and their residence addresses, or, if a partnership or unincorporated association, the name and address thereof and the names and residence addresses of each

4

partner or member thereof; if a limited liability company, the names and residence addresses of each member of the limited liability company.

b.    The location of the weapons dealers establishment at which the sale of dangerous weapons, firearms and/or ammunition is proposed.

c.    Evidence that the applicant has a current and valid firearms license issued by the United States Department of Treasury, Bureau of Alcohol, Tobacco and Firearms, along with the following information concerning the license:

    i.    The federal firearms license number;

    ii.    The class of such license; and

    iii.    The expiration date of such license.

d.    A certification that no employee of the applicant actually involved in the sale or handling of the dangerous weapons, firearms and/or ammunition has been convicted of a felony.

e.    A properly executed agreement to indemnify, save and hold harmless the Village from any and all loss, cost, damage, expense, liability or other claim whatsoever related to any claim filed in connection with the sale or use of a firearm, ammunition, or deadly weapon, or the issuance of a weapons dealers license by the Village.

f.    A sworn statement that the applicant will abide by and comply with the local, state and federal laws associated with the sale of firearms and deadly weapons.

C.    *Maximum number of licenses.* No more than one weapons dealers license shall be issued by the Village.

D.    *Fee.* The fee for a weapons dealers license shall be as established by the fee ordinance in Chapter 22 of the Code.

E.    *License term.* The term of a license issued pursuant to this article shall be as established by Chapter 22 of the Code.

F.    *Renewal.* A weapons dealer licensed hereunder may apply to renew its weapons dealers license prior to the end of the initial license term, and prior to the end of the second license term, but not thereafter. The right to apply for any renewal provided herein shall not be construed as a vested right to renewal. There shall be no renewal of any weapons dealer license for any period after the expiration of the license term ending April 30, 2013.

G.     *Transfer restrictions.*  A weapons dealers license shall be purely a personal privilege and shall expire at the end of the standard license term occurring next after issuance unless sooner revoked.  It shall not constitute property, shall not be subject to attachment, garnishment or execution, and shall not be alienable or voluntarily or involuntarily transferable,

**Sec. 22-364.   Conditions for issuance and maintenance of license.**  A weapons dealers license shall not be issued to, or maintained by a licensee unless the following conditions are met:

A.     *Qualifications.*  The licensee and all employees actually involved in the sale or handling of any inventory specified in this article herein must be (i) at least twenty-one (21) years of age and (ii) certified by the Village Chief of Police or his or her designee, as being reasonably knowledgeable about the use and operation of such weapons, and (iii) have successfully passed a criminal background investigation, and any other applicable requirements of the United States, the State of Illinois, Village, and any other jurisdiction having authority over the premises where the licensee is conducting a weapons dealers business;

B.     *Storage of inventory.*  All inventory subject to this article shall be stored, maintained and displayed in locked cases at all times;

C.     *Separate register.*  A separate register shall be provided and used for all transactions related to the inventory subject to this article;

D.     *Release required; FOID requirements.*  The licensee shall require the purchaser of each firearm or ammunition to sign a release statement certifying that the purchaser is familiar with, and reasonably knowledgeable about, the use and operation of such firearms and ammunition and is authorized to possess such firearms and ammunition as set forth in state law, 430 ILCS 65/0.01 *et seq.* the Firearm Owners Identification Card Act as may be amended from time to time;

E.     *Inspections.*  The licensee shall permit the Village to inspect, during regular business hours, all records relating to the sale of firearms required to be maintained pursuant to the Federal Firearms Act, the Federal Gun Control Act, the State of Illinois Firearms Act, and any rules prescribed by the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms;

F.     *Alarm system.*  The licensee shall maintain an operating twenty-four (24)-hour burglar and fire alarm system on the licensed premises and the alarm must registered with the Village Police Department;

G.     *Location.*  A licensee hereunder may locate its business only in the Village's B-3 Zone;

H.     *No expansion.*  A licensee may not expand its operation beyond boundaries of the premises described in the license application.

**Sec. 22-365.  Report of sale.**

Every weapons dealer licensed pursuant to this article shall make out and deliver to the Village Chief of Police every day before the hours of 12:00 noon, a legible and correct report of every sale or gift made under authority of such license during the preceding 24 hours, which report shall contain the date of such sale or gift, the name of the purchaser or donee with his address and age, his nationality and citizenship, the number, kind, description and price of such weapon, the number of the purchaser's permit and the purpose given by such person for the purchase of such weapon, which report shall be substantially in the following form:

Number of permit.............................................................................
Number of weapon............................................................................
Name of purchaser.............................................................................
Address of purchaser..........................................................................
Citizen or alien...............................................................................
If alien, name of country subject of..........................................................
Age of purchaser..............................................................................
Kind or description of weapon................................................................
For what purpose purchased..................................................................
Price...........................................................................................

If no such sale has been made during the preceding twenty-four (24) hours, then it shall not be necessary to file the report for such period.

**Sec. 22-366.  Denial; revocation.**

A license issued pursuant to this article may be temporarily suspended, or revoked, or an application for issuance or renewal of a such license may be refused, by the Village if:

A.      The application for the license contains any false, fraudulent or misleading material statement; or

B.      The license applicant has made any false, fraudulent or misleading material statement, or has been convicted of perpetrating a fraud upon any person or has committed a felony; or

C.      The license applicant has conducted any business in an unlawful manner or in such manner as to constitute a breach of the peace or a menace to the health, safety or general welfare of the public; or

D.      The licensee has violated any of the provisions of this article or of any other code, ordinance, resolution, rule or regulation of the Village.

An applicant or licensee aggrieved by the action of the Village in refusing to issue any license or in suspending or revoking any license already issued shall have the right to appeal such decision in accordance with, and as provided by, section 22-367 below.

### Sec. 22-367.   Administrative appeal.

A.      *Procedure.*   If any license issued hereunder shall have been suspended or revoked, the licensee shall be notified in writing of the reasons for such denial, suspension or revocation by the Village. Within ten (10) days thereafter, the licensee may request an administrative hearing pursuant to Chapter 2, Article VII of the Code.

B.      *Revocation.*   If the hearing officer is satisfied that such applicant or licensee has violated any provisions of this article, he or she may revoke the license of such person for the selling of such weapons.   In such a case, the money paid for such license shall be forfeited to the Village, and no other such license shall be issued to such licensee.

### Sec. 22-368.   Construction.   Nothing in this article shall be construed or applied to necessarily require or excuse noncompliance with any provision of the laws of the State of Illinois or to the laws of the United States. This article and the penalties prescribed for violation hereof, shall not supersede, but shall supplement all statutes of the State of Illinois or of the United States in which similar conduct may be prohibited or regulated.

### Sec. 22-369.   Severability.   If any provisions of this article or the application thereof to any person or circumstance is held invalid, the remainder of this article and the applicability of such provisions to other persons not similarly situated or to other circumstances shall not be affected thereby.

### Sec. 22-370.   Preemption.   This article shall pre-empt all Cook County licensing or other regulatory schemes for firearms, and firearms dealers. As provided in Article VII, Section 6(c) of the State of Illinois Constitution of 1970, if a county ordinance conflicts with an ordinance of a municipality, the municipality's ordinance shall prevail within its jurisdiction.

### Sec. 22-371.   Sunset provision.   This article shall remain in effect only until midnight on April 30, 2013 and as of that date and time this article is hereby repealed and there shall be no weapons dealers licensed within the Village.   In the event that any licensee granted a weapons dealers license ceases to hold such license for any reason prior to April 30, 2013, this article is automatically repealed upon termination of such license.

<u>Section 3.</u>

Chapter 38, Section 22 be and hereby is amended as follows:

### Sec. 38-22.  Businesses.

The fines, fees or charges required by or referenced in Chapter 22 are as follows:

[. . .]

8

| Category | Annual Fee |
|---|---|
| Weapons, guns, firearms (Repealed effective April 30, 2013) | 425.00 |

[. . .]

Section 4.

    If any section, paragraph, clause or provision of this Ordinance shall be held invalid, the invalidity thereof shall not affect any of the other provisions of this Ordinance.

Section 5.

    All ordinances or parts of ordinances in conflict herewith are hereby repealed.

Section 6.

    This Ordinance shall be in full force and effect from and after its passage, approval, and publication in pamphlet form as provided by law.

[This space intentionally left blank.]

9

PASSED by the President and Board of Trustees of the Village of Norridge, Cook County, Illinois, this 9th day of February 2011.

_____
VILLAGE CLERK

APPROVED by me this 9th day of February 2011.

_____
PRESIDENT

PUBLISHED by me this 9th
day of February 2011 in
pamphlet form.

_____
VILLAGE CLERK

10