FILED
9/29/2011
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONY KOLE, individually and as President
and Manager of Ghost Industries, LLC, and
GHOST INDUSTRIES, LLC, an Illinois
limited liability company,

                Plaintiffs,

        v.

VILLAGE OF NORRIDGE, an Illinois
municipal corporation, RONALD A.
OPPEDISANO, individually and as President
of the Village of Norridge, JAMES J. JOBE,
Chief of Police of the Village of Norridge,
JUDITH D. BERNARDI, Clerk of Village of
Norridge, URSULA A. KUCHARSKI,
DENNIS H. STEFANOWICZ, DOMINIC
SULIMOWSKI, DOMINIC S. FALAGARIO,
JACQUELINE GREGORIO, AND ROBERT
MARTWICK, individually and as Trustee of
the Village of the Norridge and MARK V.
CHESTER, individually and as Village
Attorney of the Village of Norridge,

                Defendants.

No. 11-CV-03871

Hon. Charles R. Norgle, Sr.
U.S. District Judge

Hon. Morton Denlow
U.S. Magistrate Judge

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

**I.  INTRODUCTION**

On November 16, 2010, plaintiffs Tony Kole and Ghost Industries, LLC, filed an

application with defendant Village of Norridge (the "Village") for a Weapons Dealers Business

License under Chapter 22 of the Village of Norridge Code of Ordinances ("Village Code").

(Am.Compl. ¶ 16).  Less than two weeks after filing their license application, plaintiffs entered

into an agreement ("Operations Agreement") with the Village (together, "the parties") which

outlines the parties' understanding of the proposed operation, establishes clear conditions and

arranges for licensing and renewal.  (Am. Compl. ¶ 23; Ex. C (Agreement dated November 29, 2010)).  For example, the Operations Agreement provides agreed delivery methods for the weapons, hours of operation, and limits on overnight storage of weapons in the dealership office. (Am. Compl., Ex. C, ¶¶ 1-2.)

Notably, in the Operations Agreement plaintiff Ghost Industries agrees that it "will not maintain a sales or retail display of firearms or ammunition on the Premises" and "will not post or erect any exterior signage indicating that its offices are located on the Premises . . . provided, however, that Ghost will be allowed to put its name on one or more interior door to Premises." (Am. Compl. Ex. C, ¶¶ 3-4).  The parties understood that the license would be renewed annually for two years and would be expressly exempt from any subsequent repeal of the Village's Weapons Dealers Licensing ordinance for the term of its license. (Am. Compl., Ex. C, ¶ 13).

After the Village's 13-day review, plaintiffs waited another six weeks before receiving their requisite Federal Firearms License (FFL) from the Bureau of Alcohol, Tobacco and Firearms (ATF).  (Am. Compl. Ex. A (Federal Firearms License approved on January 18, 2011)). Even with a local permit, Ghost Industries could not have opened its gun dealership until plaintiffs' FFL was issued on January 18, 2011. (Am. Compl., ¶ 16 (admitting that, during the Village review, plaintiffs *waited processing* of their FFL application by the ATF.") )

On February 9, 2011, over two months after processing and approving Ghost Industries' license, the Village reviewed and revised its Weapons Dealers Licensing Ordinance.  The Revised Ordinance phases out gun dealership licenses within the Village limits by 2013.  (Am. Compl. Ex. D.)  As stated in the Operations Agreement, the Revised Ordinance expressly exempts Ghost Industries' for the duration of Ghost Industries' two-year license. (Am. Compl. Ex. D, Sec. 22-362 (exempting persons that are "currently licensed by the Village as a weapons

dealer as of January 1, 2011.")) On June 7, 2011, plaintiffs filed a Complaint alleging injuries caused by the Village's 13-day Review, the Operations Agreement and Revised Ordinance, followed by an Amended Complaint currently before the Court.

### Overview of Plaintiffs' Amended Complaint

In their Amended Complaint, plaintiffs claim that the Village's 13-day review of their weapons dealership licensing application: 1) Was the product of a conspiracy between the Village President, six Trustees, and the Village Attorney to "deter and prevent Plaintiffs from opening [their dealership]" (Am. Compl. ¶ 20); 2) caused "economic distress" on plaintiffs' business (*Id.*, ¶ 23); 3) created an "unlawful delay" and " [held] hostage" the license application (*Id.*, ¶¶, 20, 23); and 4) led plaintiffs to "reluctantly" sign the Operations Agreement (*Id.*, ¶ 23).

Additionally, plaintiffs claim that the Operations Agreement, signed by plaintiffs 13 days after submitting their application, is invalid and unconstitutional because it limits plaintiffs' constitutional rights. (Am. Compl. ¶ 23.) Finally, plaintiffs claim that the Revised Ordinance, although it expressly exempts Ghost Industries for the duration of its license, is unconstitutional and creates a "fear" that it could be applied to Ghost Industries at any time. (Am. Compl. ¶ 26.)

Plaintiffs' shotgun Amended Complaint contains 18 separate counts alleging a smattering of federal constitutional and statutory violations and state law claims. The counts are styled as follows:

1. FIRST CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983 INFRINGEMENT OF PLAINTIFFS' FUNDIMENTAL [sic] CONSTITUTIONAL RIGHTS TO SELL, TRANSFER, ADVERTISE, MARKET, DEAL IN FIREARMS, KEEP AND BEAR ARMS AND OTHER RIGHTS GURANTEED BY U.S. CONST. AMENDS. I, II, IV, V & XIV AND FEDERAL LAW

2. SECOND CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983 IMPOSITION OF UNLAWFUL BURDEN ON INTERSTATE COMMERCE – INFRINGEMENT OF PLAINTIFF'S FUNDAMENTAL [sic] RIGHTS TO ACQUIRE, MARKET, TRANSFER, KEEP AND BEAR ARMS

UNDER ARTICLE I, § 8, CL. 3, ARTICLE VI OF THE U.S. CONST. AMENDS. I, II, IV, V & XIV

3.  THIRD CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983 ABRIDGEMENT OF PLAINTIFFS' FUNDAMENTAL FIRST AMENDMENT CONSTITUTIONAL RIGHTS BY PRIOR RESTRAINT OF PLAINTIFF'S EXERCISE OF COMMERCIAL SPEECH

4.  FOURTH CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983 ABRIDGMENT OF PLAINTIFFS' FIRST AMEMDMENT RIGHTS BY RETALIATION FOR THEIR ATTEMPT TO EXERCISE PROTECTED COMMERCIAL SPEECH

5.  FIFTH CLAIM FOR RELIEF DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983 UNLAWFUL RESTRAINT OF TRADE IN RETALIATION FOR PLAINTIFF'S ATTEMPT TO EXERCISE THEIR FUNDAMENTAL RIGHTS TO ADVERTISE, SELL, TRANSFER, MARKET AND KEEP AND BEAR ARMS UNDER U.S. CONST. ART. I, § 8, CL. 3 AND ART. VI AND U.S. CONST. AMENDS. I, II, IV, V & XIV

6.  SIXTH CLAIM FOR RELIEF 42 U.S.C. § 1985 CONSPIRACY TO VIOLATE PLAINTIFF'S FUNDAMENTAL RIGHTS TO ADVERTISE, SELL, TRANSFER, MARKET AND KEEP AND BEAR ARMS UNDER ARTICLE I, § 8, CL. 3, ARTICLE VI OF THE U.S. CONST. AMENDS. I, II, IV, V & XIV

7.  SEVENTH CLAIM FOR RELIEF 42 U.S.C. § 1983 MONELL CLAIM

8.  EIGHT CLAIM FOR RELIEF ANTI-TRUST – UNLAWFUL COMBINATION AND CONSPIRACY TO RESTRAIN FREE TRADE IN VIOLATION OF 15 U.S.C. § 1, *et. seq.*

9.  NINTH CLAIM FOR RELIEF COMMERCIAL DISPARAGEMENT – VIOLATION OF LANHAM ACT, 15 U.S.C. 1125 (a)(1)(B)

10. FIRST PENDANT CLAIM FOR DECLARATORY JUDGMENT

11. SECOND PENDANT CLAIM RECISSION OF ILLEGAL AND OPPRESIVE CONTRACT

12. THIRD PENDANT CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

13. FOURTH PENDANT CLAIM ULTRA VIRES SPECIAL LEGISLATION IN VIOLATION OF THE ILLINOIS CONSTITUTION

14. FIFTH PENDANT CLAIM UNLAWFUL RETALIATION IN VIOLATION OF §§ 2 & 4, ARTICLE 1 OF THE ILLINOIS CONSTITUTION

15.       SIXTH PENDENT CLAIM – COMMON LAW CONPSIRACY

16.       SEVENTH PENDENT CLAIM – VIOLATION OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT

17.       EIGHT PENDANT CLAIM- COMMON LAW COMMERCIAL DISPARAGEMENT

18.       EIGHT [sic] PENDENT CLAIM – COMMON LAW FALSE LIGHT IN PUBLIC EYE

Despite plaintiffs' exhaustive effort to cover the entire field of possible causes of action imaginable, many of them quite clearly frivolous, the Amended Complaint should be dismissed for failure to state a claim upon which relief could be granted.

To state a claim, a complaint needs to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To satisfy this standard, the allegations in the complaint must (1) describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests;" and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' " *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, (2007)).  Specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 127 S.Ct. 1955 (2007).  See also, *Ashcroft v. Iqbal*, ___ U.S. _____ , 129 S. Ct. 1937 (2009)

When ruling on a motion to dismiss under Rule 12(b)(6), courts accept all well-pleaded facts in the complaint as true, and draw all reasonable inferences from those facts in the plaintiff's favor. Fed.R.Civ.P. 12(b)(6); *Tamayo v. Blagojevich,* 526 F.3d 1074 (7th Cir. 2008). However, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the courts.'" *Bell Atlantic Corp.,* 550 U.S. 544.

Plaintiffs fail to set forth a constitutional violation or legal injury caused by the Village's licensing of Ghost Industries' gun dealership or processing of its license application. The Amended Complaint fails to allege facts showing that the Village's 13-day review was anything but a standard—if not shortened—review of a licensing application, and the conclusory claims of a coerced agreement and sinister conspiracy lack plausibility. Moreover, plaintiffs fail to allege any injury caused by the Village's review, openly admitting that its opening was delayed by its failure to obtain *federal* permits until January 18, 2011. (Am. Compl. ¶ 16.) Plaintiffs also fail to allege facts demonstrating they could be entitled to relief under state law. Plaintiffs' claims are factually and legally unsupported and should be dismissed.

## II. PLAINTIFFS' FIRST CLAIM FAILS TO IDENTIFY A CONSTITUTIONAL DEPRIVATION WHICH WOULD ENTITLE THEM TO RELIEF[1]

### 1. Neither *Heller* Nor *McDonald* Create a Second Amendment Right To Sell Weapons

To state a §1983 claim, plaintiffs must establish that defendants deprived plaintiffs of a right secured by the United States Constitution or laws. *Justice v. Town of Cicero*, 577 F.3d 768, 774 (7th Cir. 2009). Plaintiffs First Claim is premised on the conclusion that they have an unfettered right to *sell* arms, which they belief is infringed by the Operations Agreement and Revised Ordinance. (Am. Compl. ¶ 33 ("the sale and purchase of firearms . . . is protected by the Second Amendment"); ¶ 34 (Defendants' conduct "infringes the fundamental right . . . to sell, transfer [and] purchase . . . arms"); ¶ 38 (the Constitution "guarantees individuals a

---

[1] To the extent that plaintiffs repeat allegations in multiple claims, defendants' arguments apply equally to the multiple claims.

fundamental right to sell, deal in, transfer, purchase, keep and bear firearms and ammunition products.") This premise is false.

Plaintiffs allege that their right to sell firearms is protected under various constitutional amendments. However, it is clear that the only serious analysis here is the extent to which plaintiffs can claim a violation of their Second Amendment rights. They allege a First Amendment violation, but there is no support whatsoever in any precedent that selling firearms is a form of expression protected under the First Amendment. Plaintiffs also allege Fourth, Fifth, and Fourteenth Amendment violations, but aside from incorporation of the Second Amendment through the Fourteenth, no right relating to a right to bear arms can be found in any of those provisions. The proper analysis here is under the Second Amendment and plaintiffs' Amended Complaint fails to state a violation of any Second Amendment rights.

In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), and *McDonald v. City of Chicago*, ____ U.S. ___, 130 S.Ct. 3020 (2010), the Supreme Court held that the Second Amendment guarantees a person's right to possess arms for self-defense in their home. *See Heller*, 554 U.S. 570, 595, 628–30; *McDonald v. City of Chicago,* 130 S.Ct. 3020, 3036 (2010) ("[I]n *Heller,* we held that individual self-defense is 'the *central component* [ ]' of the Second Amendment right.") (emphasis in original); *United States v. Barton,* 633 F.3d 168, 170–71 (3d Cir.2011) ("At the 'core' of the Second Amendment is the right of 'law-abiding, responsible citizens to use arms in defense of hearth and home'"); *Nordyke v. King*, 644 F.3d 776, 783 (9th Cir. 2011)("The Supreme Court's reasoning in *Heller* and *McDonald* suggests that heightened scrutiny *does not apply* unless a regulation substantially burdens the right to keep and to bear arms for self-defense"); *United States v. Masciandaro,* 09 Civ. 4839, 2011 WL 1053618, at *9 (4th Cir. 2011) ("[T]here now exists a clearly-defined fundamental right to possess firearms for

self-defense within the home[,]" but that there remains uncertainty as to the "scope of that right beyond the home"); *United States v. Yancey,* 621 F.3d 681, 683 (7th Cir. 2010) (noting that *Heller* "holds that the Second Amendment preserves an individual's right to keep handguns *for self-defense*") (emphasis added); *United Stales v. Reese,* 627 F.3d 792, 800 (10th Cir. 2010) ("[T]he [*Heller* ] Court suggested that the core purpose of the [Second Amendment] right was to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home.' "); *See, also Justice v. Town of Cicero*, 577 F.3d 768, 774 (7th Cir. 2009).

Contrary to plaintiffs' claim, neither *Heller* nor *McDonald* recognized a Second Amendment right to commercially *sell* weapons. Just the opposite - - in both cases, the Court held that state and local laws restricting the "commercial sale of arms" are "*presumptively lawful* regulatory measures." *McDonald,* 130 S.Ct. at 3036; *Justice,* 577 F.3d at 774. In the wake of *Heller* and *McDonald*, numerous courts have exempted commercial sale restrictions from constitutional scrutiny unless the regulation substantially burdened an individual's right to possess arms for self-defense. *Nordyke v. King*, 644 F.3d at 783; See also *United States v. Marzzarella*, 595 F.Supp.2d 596, 606 (W.D. Pa. 2009) aff'd, 614 F.3d 85, 95 (3d Cir. 2010) (suggesting that a ban on guns with obliterated serial numbers should be reviewed as "content-neutral time, place and manner restrictions," and upholding the ban partly because it leaves "ample opportunity for law-abiding citizens to own and possess guns"); see also, *United States v. Masciandaro*, 638 F.3d 458, 469–70 (4th Cir. 2011).

While the Seventh Circuit has not directly addressed the constitutionality of gun sales ordinances, it has identified a standard that would similarly uphold such restrictions. *Ezell v. City of Chicago*, 2011 WL 2623511 (7th Cir. 2011). In *Ezell*, the Seventh Circuit adopted the

following "means-end" justification standard, modeled after the court's approach in First Amendment cases:

> First, a severe burden on the core Second Amendment right *of armed self-defense* will require an extremely strong public-interest justification and a close fit between the government's means and its end. Second, laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right.

*Ezell v. City of Chicago*, 2011 WL 2623511 (7th Cir. 2011) (emphasis added).

Under the *Ezell* standard, the Operations Agreement and Revised Ordinance in this case would require little, if any, justification. Consistent with the above decisions, the *Ezell* standard expressly recognizes that gun sales are not a "core Second Amendment right" and, thus, require far less justification than an ordinance restricting possession. Id. Moreover, plaintiffs fail to identify any indirect burden on any individual's right to possess a firearm for self-defense (even their own). The Village recognizes four dealerships in close proximity to the Village available to serve residents. (Am. Compl. Ex. D); See *Nordyke v. King*, 644 F.3d at 787 (upholding gun sales prohibition because there is no allegation of a "shortage of places to purchase guns in or near the [municipality]".).

The right identified in *Heller* and *McDonald*— the right to possess arms for self-defense—is fully preserved in full by both the Operations Agreement and Revised Ordinance. *See*, *Justice v. Town of Cicero*, 577 F.3d 768, 774 (7th Cir. 2009) *cert. denied,* 130 S. Ct. 3410 (U.S. 2010) ("[T]he Cicero ordinance, which leaves law-abiding citizens free to *possess* guns, appears to be consistent with the ruling in *Helle*r."). What little justification is required to support any of the Village's regulatory efforts here is clearly met on the face of the Complaint. Plaintiffs recognize that the Village passed the ordinance to "improve the health, safety and

welfare" by reducing the number of dealerships in the region. (Am. Compl. Ex. D.)   Given no support for a Second Amendment claim, plaintiffs' First Claim should be dismissed.

### 2.    Plaintiffs Fail to Identify an Actionable Injury

Even if plaintiffs could identify a Second Amendment constitutional right that was infringed—which they cannot—they fail to identify an actionable injury caused by either the Operations Agreement or Revised Ordinance.  As addressed above, plaintiffs admit that their proposed dealership was "waiting" for federal permits throughout, and long after, the Village's review. (Am. Compl. ¶ 16.)  The Village's review could not have caused plaintiffs to lose any profits or economic opportunities.   Moreover, while plaintiffs claim that the Operations Agreement "imposes" limits on them, their own exhibits show that they voluntarily agreed to limit the scope and operation of their business only 13 days into the Village's review.  (Am. Compl. Ex. C.)  It is not plausible to conclude that an agreement reached after a 13-day review was not the product of some arm's length negotiation.  That some terms plaintiffs might not have favored going in were eventually agreed to is endemic to any regulatory process.  Finally, plaintiffs admit that their business license is exempt from the Revised Ordinance.  Nevertheless, they "fear" that, despite the clear exemption, action will be taken against them under it. (Am. Compl. ¶ 24).  Plaintiffs' "fear" of a possible injury is not itself an actionable injury under the law.  *Schmidling v. City of Chicago*, 1 F.3d 494, 499 (7th Cir. 1993)("[B]ecause the plaintiffs have not alleged sufficient facts to show that the City has threatened them with prosecution under the current . . . ordinance, we find their claims of 'genuine fear' unrealistic.")

Under the Supreme Court holdings in *Heller* and *McDonald*, the limits contained in the Operations Agreement are presumptively lawful.  *McDonald,* 130 S.Ct. at 3036.  Plaintiffs provide no factual allegations to rebut this presumption, let alone to support an independent,

constitutional right to commercially sell weapons. Plaintiffs have failed to state grounds entitling them to relief and, thus, their First Claim should be dismissed.

### 3.    Plaintiffs Lack Standing to Seek Relief on Behalf of Third Party Customers

Alternatively, plaintiffs claim that the Village's Revised Ordinance violates their *customers'* Second Amendment rights. (Am. Compl. ¶ 31.)   Plaintiffs lack standing to bring a cause of action to redress a third party's constitutional injuries and, therefore, such claims should be dismissed with prejudice.

In *Kowalski v. Tesmer*, the Supreme Court held:

> [The Supreme Court] ha[s] adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.' This rule assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation. It represents a "healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed," the courts might be "called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.

*Kowalski*, 543 U.S. 125, 128-29 (2004)(internal citations omitted)

In *Kowalski*, a group of criminal defense attorneys challenged an amendment to the Michigan Constitution which eliminated assigned counsel for their clients— indigent criminal defendants. *Id*, 543 U.S. at 127.   The plaintiffs claimed the amendment violated the indigent defendants' constitutional right to counsel. *Id*.   The plaintiffs argued that third party standing had been extended by the Court in situations where "the party asserting the right has a 'close' relationship with the person who possesses the right and there is a 'hindrance' to the possessor's

ability to protect his own interests." *Id.* (citing *Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

In rejecting this argument, the Court clarified the general rule and the narrow exception addressed in *Powers*. While third party standing has been extended in rare cases (i.e. doctors charged in patient abortion cases), prospective or "hypothetical" customer relationships fall far short of the "close" relationship required. *Kowalski*, 543 U.S. at 131 ("The attorneys before us do not have a "close relationship" with their [prospective] "clients"; indeed, they have no relationship at all.") Moreover, the Court found that even indigent defendants with no attorney have the ability to bring their own case—albeit far more difficult—and thus are not sufficiently "hindered" to warrant third party standing. *Kowalski*, 543 U.S. at 131, 134. The Court dismissed the attorneys' constitutional claims with regard to the third party indigent defendants' rights for lack of standing. *Kowalski*, 543 U.S. at 134.

Plaintiffs' Amended Complaint does not support third party standing in this case. Plaintiffs set forth no facts that would otherwise support standing for customer injuries and none could be deduced from the facts alleged. There is no reason to believe that gun enthusiasts in the Village could not assert their own rights if a Village regulation overly-burdened their Second Amendment rights.

The Court's framework in *Kowalski* rules out any potential third party standing for gun customers in this case. Gun customers certainly do not have as close a relationship with their dealers than criminal defendants have with their attorneys, and thus clearly fall short of the requisite "closeness" needed for third-party standing. *See*, *Kowalski*, 543 U.S. at 131. Additionally, gun customers have far greater access and resources to seek relief than do indigent criminal defendants, and thus lack the requisite "hindrance" to bring their own cases. *Id.*

12

Plaintiffs have no constitutional right to sell weapons and lack standing to pursue their customer's Second Amendment rights to possess arms. Therefore, plaintiffs' First Claim fails to state a claim and should be dismissed.

**4. Claim One Fails to Identify a Fourth or Fifth Amendment Violation, or State Grounds Entitling Plaintiffs to Relief**

In their First Claim, plaintiffs also allege—although indirectly—that the Village deprived them of their Fourth and Fifth Amendment rights. (Am. Compl. ¶¶ 40, 48(a).) Plaintiffs provide no factual or legal support for these claims, but rather simply list the Amendments allegedly violated. (*Id*.) A listing of constitutional amendments falls far short of the "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and cannot survive a motion to dismiss. *Twombly*, 550 U.S. at 554-56. Defendants should not be required to piece together possible grounds for plaintiffs' claims in order to defend against them. *Id*. These failures alone are sufficient for the court to dismiss any Fourth and Fifth Amendment[2] claims hidden within plaintiffs' First Claim.

Moreover, to the extent that a basis for these claims can be pieced together, they fail as a matter of law. For example, it appears plaintiffs may be challenging the Village's licensing inspections of its gun dealership as an alleged Fourth Amendment violation. (*See e.g.*, Am. Compl. ¶ 23(n).) Plaintiffs claim that the Operations Agreement is unlawful because, in part, it allows three on-site inspections. (Am. Compl.¶ 23; Ex. C). They claim that these licensing inspections—one random and two scheduled—violate the Fourth Amendment. (Am. Compl. ¶ 53.) They do not.

---

[2] Defendants can find no plausible basis for plaintiffs' Fifth Amendment claim. To the extent the court can identify such a claim, it is insufficient in that it fails to provide "fair notice of what the ... claim is and the grounds upon which it rests." *Concentra Health Servs., Inc.*, 496 F.3d at 776.

As the Supreme Court and Seventh Circuit have repeatedly held, inspections conducted pursuant to commercial licensing are lawful and, thus, consistent with the Fourth Amendment. *See e.g.*, *United States v. Biswell*, 406 U.S. 311, 316, 92 S.Ct. 1593, 1596 (1972) (random inspections of gun dealers pursuant to federal firearms license are constitutional); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 76, 90 S.Ct. 774, 777 (1970) (random inspections of liquor stores pursuant to a license are constitutional); *Bionic Auto Parts & Sales, Inc. v. Fahner*, 721 F.2d 1072, 1078 (7th Cir. 1983) (upholding administrative inspections of auto parts dealer because "the inspection program . . . define[s] clearly what is to be searched, who can be searched, and the frequency of such searches"). "When a dealer chooses to engage in [a] pervasively regulated business and to accept a [gun dealership] license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." *Biswell*, 406 U.S. at 316.

Here, plaintiffs were clearly notified of the inspection requirement prior to signing the Operations Agreement and accepted those inspections as part of their business license:

> Ghost will allow without prior notice one (1) random unannounced on site inspection of the Premises per month by Norridge inspectors or police at any time during regular business hours or whenever the Premises are occupied, in each case solely to monitor compliance with this Agreement. Additionally, Ghost will allow two (2) such on-site inspections per month during regular business hours which must be scheduled with Ghost at least twenty-four hours in advance.

(Am. Compl. Ex. C.)

Consistent with the above constitutional standards, the Village's licensing inspection "define[s] clearly what is to be searched, who can be searched, and the frequency of such searches." *Bionic Auto Parts & Sales, Inc.*, 721 F.2d at 1078.; (Am. Compl. Ex. C., ¶ 12) (identifying number of inspections, timeframe for inspections, identity of inspectors, "sole" basis

and purpose of the inspections, and scheduling procedures for the inspections.) Any argument that the above commercial inspection procedure is somehow unconstitutional has been rejected by the Supreme Court and should be rejected here as a matter of law. *Biswell*, 406 U.S. at 316; *Colonnade Catering Corp.*, 397 U.S. at 76.

For all of the above reasons, independently and collectively, plaintiffs' Fourth and Fifth Amendment claims are factually and legally insufficient and should be dismissed.

## III. PLAINTIFFS' SECOND CLAIM FOR RELIEF FAILS TO IDENTIFY COMMERCE CLAUSE OR FEDERAL FIREARMS ACT VIOLATIONS, AND THUS FAILS TO STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

### 1. Plaintiffs Provide No Support for a Commerce Clause Claim

In their Second Claim, plaintiffs argue that the Operations Agreement and Revised Ordinance impose an "unlawful burden on Interstate Commerce" and "conflict with the Federal Firearms Act of 1938." (Am. Compl. ¶¶ 51-52.) Plaintiffs provide no factual or legal support for either claim. Given no grounds entitling plaintiffs to relief, the Second Claim should be dismissed.

To set forth a valid Dormant Commerce Clause claim, plaintiffs must demonstrate that either the local law "discriminates on its face against interstate commerce," *American Trucking Assns., Inc. v. Michigan Pub. Serv. Comm'n,* 545 U.S. 429, 433, 125 S.Ct. 2419, 2423 (2005); or imposes a "burden . . . on [interstate] commerce [that] is clearly excessive in relation to the putative local benefits," *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 848(1970). *See*, *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338, 127 S.Ct. 1786, 1793 (2007). In either case, plaintiffs must demonstrate some form of "discrimination" against interstate commerce—a mere impact is not enough. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 126, 98 S.Ct. 2207, 2214 (1978) ("[t]he fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a

claim of *discrimination* against interstate commerce."); *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131 (7th Cir. 1995) ("[L]aws that affect commerce without any reallocation among jurisdictions—that do not give local firms any competitive advantage over those located elsewhere—are constitutional if supported by a mere rational basis.")

Plaintiffs provide no legal or factual allegation to support a claim of discrimination against interstate commerce. They fail to identify a single provision in either the Operations Agreement or Revised Ordinance that affects or limits interstate commerce in any way. *See*, *Nat'l Paint & Coatings Ass'n*, 45 F.3d at 1131. The Revised Ordnance regulates only gun dealerships in the Village. (Am. Compl. Ex. D.) Local restrictions on commerce between local business and local residents are well within the bounds of the Commerce Clause. *Buck v. People of State of Cal.,* 343 U.S. 99, 102-03, 72 S.Ct. 502, 504 (1952) (holding local licensing restrictions on taxicabs constitutional because they affect all companies, in-state and out-of-state, equally); *Illinois Restaurant. Ass'n v. City of Chicago,* 492 F. Supp. 2d 891, 899 (N.D. Ill. 2007) (upholding City's ban on sale of foie gras in City restaurants because the local ban does not "govern foie gras *production* or *pricing* [and] [t]hus, it neither regulates nor discriminates against interstate commerce.")

The Operations Agreement is limited to Ghost Industries—an Illinois company—and, at most, would impact street-level customers in the Village. (Am. Compl. Ex. C.) Plaintiffs fail to state grounds for their claim that the Agreement's site-specific conditions—i.e. the number of guns allowed on the premises, signage, hours, displays—would impact their ability to sell weapons to customers in other states. Moreover, even if plaintiffs could demonstrate an impact on interstate sales, the impact in no way favors commerce from one state over another or

discriminates against non-Illinois businesses. *See*, *Nat'l Paint & Coatings Ass'n*, 45 F.3d at 1131; *Illinois Rest. Ass'n,* 492 F. Supp. 2d at 899.

Plaintiffs make no attempt to connect either the Revised Ordinance or Operations Agreement to interstate sales, let alone demonstrate discrimination against non-Illinois businesses. Having failed to provide sufficient factual support, plaintiffs' commerce clause claim should be dismissed.

### 2.    Plaintiffs Provide No  Support for a Federal Statutory Claim

Plaintiffs' list of federal firearms statutes similarly fails to state a claim entitling them to relief. Plaintiffs' only support for a federal statutory claim against the Village is a recitation of 15 U.S.C. § 7901, which primarily restricts unrelated tort claims against gun manufacturers. (Am. Compl. ¶ 52.) The § 7901 preamble does not identify any legal grounds for a claim against defendants. *Bell Atlantic Co.*, 550 U.S. at 554-56 (a plausible complaint requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."). Plaintiffs also list other federal statutes, such as the Federal Firearms Act, however they provide no legal or factual allegations that would support a claim or entitle plaintiffs to relief based on that law. (Am. Compl. ¶ 52.) In fact, plaintiffs' cited authority contradicts their claim that these statutes "pre-empt" State and local regulation of firearms dealers. 18 U.S.C. Ch. 44 § 927  ("No provision of this [Federal Firearms Act] shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter . . .")

In the end, plaintiffs have failed to identify a basis for either a Commerce Clause or federal statutory claim against defendants. The Federal Rules of Civil Procedure do not require defendants to *guess* plaintiffs' legal claim or the basis for the claim. Rather, plaintiffs are

required to state, and provide "grounds" for, a claim that would entitle them to relief. Plaintiffs'

Second Claim provides nothing more than legal citations and, therefore, should be dismissed.

## IV. PLAINTIFFS' THIRD CLAIM FAILS TO IDENTIFY A FIRST AMENDMENT VIOLATION, OR STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

In their Third Claim, plaintiffs argue that the Operations Agreement and Revised

Ordinance impose "unlawful prior restraint[s] on the plaintiffs' commercial speech and thereby

abridg[es] their First Amendment rights." (Am. Compl. ¶ 57.)    As discussed further below,

plaintiff's Third Claim should be dismissed.

### 1.    Plaintiffs Fail to Identify an Unlawful Prior Restraint

Plaintiffs fail to adequately allege how either the Operations Agreement or the Revised

Ordinance constitutes an "unconstitutional prior restraint." A "prior restraint" exists when a law

gives "public officials the power to deny use of a forum in advance of actual expression."

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). Prior restraints are not per

se unconstitutional. *City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 783-84, 124 S.

Ct 2219, 2225-26 (2004).    Licensing requirements—especially regarding "commercial

speech"—are permissible prior restraints as long as public officials apply "reasonably objective,

nondiscretionary criteria unrelated to the content of the expressive speech" and conduct the

review in a reasonable time period. *City of Littleton*, 541 U.S. at 783-84; See also, *Cent. Hudson*

*Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 571, 100 S.Ct. 2343, 2354

(1980) ("Commercial speech is such a sturdy brand of expression that traditional prior restraint

doctrine may not apply to it."); *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council,*

*Inc.*, 425 U.S. 748, 771 n. 24, 96 S.Ct. 1817, 1831(1976) ("[C]ommercial speech may be more

durable than other kinds [of speech]. Since advertising is the sine qua non of commercial profits,

there is little likelihood of its being chilled by proper regulation and forgone entirely. . . [These

attributes] may also make inapplicable the prohibition against prior restraints.") (emphasis added.)

A licensing law or other "prior restraint" becomes unconstitutional when it exhibits one of the following two characteristics: 1) it places "'unbridled discretion in the hands of a government official' and might result in censorship;" or 2) it "fails to place time limits within which a decision maker must issue the license." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226, 110 S. Ct. 596, 605 (1990); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1045 (7th Cir. 2002). In addition to the above factors, the Seventh Circuit looks for the following elements when identifying unconstitutional prior restraints: "(1) the speaker must apply to the decision maker before engaging in the proposed communication; (2) the decision maker is empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves 'appraisal of facts, the exercise of judgment, and the formation of an opinion' by the decision maker." *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008).

Neither the Operations Agreement nor Revised Ordinance constitutes an unconstitutional prior restraint under the above legal standards. As discussed further below, both expressly limit the Village's discretion over gun dealer licensing decisions, and apply clear, objective, content-neutral standards to guide the licensing process. *See*, *City of Littleton*, 541 U.S. at 783-84.

### i. *Operations Agreement*

The Operations Agreement expressly eliminates both elements of an unconstitutional prior restraint—unbridled discretion to limit speech; and unlimited delay of the review process. *FW/PBS, Inc*, 493 U.S. at 226. The Operations Agreement ended the Village's license

19

review after only 13 days and established clear, content-neutral limits (i.e. limiting time, place and manner of signs and displays). *See Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746 (1989) (upholding time, place and manner restrictions on speech). The Village and plaintiffs agreed to objective standards, which offered no room for Village discretion or delay. (Am. Compl. Ex. C); *City of Littleton*, 541 U.S. at 783-84. The Operations Agreement even includes automatic renewal of plaintiffs' license for two years—eliminating future licensing processes altogether. (Am. Compl. Ex. C, ¶ 13.)

As the Court discussed in *City of Littleton*, these concrete parameters are "simple enough to apply and their application simple enough to review that their use is unlikely in practice to suppress totally the presence of any specific [content]." *City of Littleton*, 541 U.S. at 783-84 (finding that simple, objective conditions "do not present the grave dangers of a censorship system.") Plaintiffs can navigate the terms of the Operation Agreement and express a commercial message in numerous other fora—including the "internet" market that they expressly target. (Am. Compl. ¶2.)

Plaintiffs make no attempt to identify an unconstitutional prior restraint using the Supreme Court or Seventh Circuit factors for prior restraint—and for good reason. The Operations Agreement does not require plaintiffs to "apply to the [Village] before engaging in any proposed communication." *See*, *Samuelson,* 526 F.3d at 1051. Nothing in the Operations Agreement "empowers the [Village] to determine whether [Ghost Industries] should be granted permission" to engage in any protected speech based on the "content of the communication." *Id*. Plaintiffs cannot support one, let alone all, of the elements for an unconstitutional prior restraint.

Instead, the Amended Complaint suggests that the Operations Agreement's condition that plaintiffs "will not" have exterior signs or displays is itself a form of "prior restraint." (Am.

Compl. p. 26, ¶ B.) It is not. The Operations Agreement's limit on exterior signs and displays is objective, content neutral and limited in scope. The limit does not grant "unbridled discretion" to regulate content of other speech or advertisement, including internet or other forms of marketing. As stated above, the Operations Agreement provides clear limits and eliminates the possibility of an unreasonably vague or protracted review process. Moreover, plaintiffs admit that they voluntarily, though "reluctantly," agreed to all of the conditions in the Operation Agreement. (Am. Compl. ¶ 23.) Thus, despite plaintiffs' characterization, these conditions were not "imposed" as license requirements.

### ii. *Revised Ordinance*

Similarly, the Revised Ordinance—an ordinance *ending* the dealership licensing program—bares no relation to the unconstitutional "prior restraints" barred by the Supreme Court. Under the Revised Ordinance, the Village eliminates the licensing process and removes all discretion over gun dealerships. (Am. Compl. Ex. D.) At no point in time will the Revised Ordinance require plaintiffs to apply for permission to engage in free speech or "empower the [Village] to determine whether an applicant be granted permission." *See*, *Samuelson,* 526 F.3d at 1051. While plaintiffs may disagree with the Revised Ordinance's elimination of the gun dealerships licensing program after 2013, they fail to state a First Amendment claim. The *lack* of a discretionary licensing program is not a prior restraint of any kind, let alone an unconstitutional prior restraint. Thus, plaintiffs are not entitled to relief under a First Amendment prior restraint theory.

### 2. Plaintiffs Fail to Identify a "Deprivation" of First Amendment Rights

In addition to their lack of support for a "prior restraint" claim, plaintiffs fail to plausibly plead that they were "deprived" of First Amendment Rights by the Village. As discussed above,

to state a §1983 claim, plaintiffs must allege sufficient facts establishing that defendants deprived plaintiffs of commercial speech rights protected by the Constitution or laws. *Justice v. Town of Cicero*, 577 F.3d 768, 774 (7th Cir. 2009). Plaintiffs do not allege that Ghost Industries ever requested the Village's approval for any exterior sign or display and plaintiffs do not allege that they were prevented from erecting any proposed outdoor display, or from otherwise engaging in any commercial speech. Rather, plaintiffs admit that, a mere 13 days into the review process, they signed an Operations Agreement stating that their operations "will not" include outdoor displays and signs. (Am. Compl. Ex. C, ¶¶ 3-4.) Even if plaintiffs theoretically had a right to exterior signs and displays—which they have not established—the "right" was not "deprived," but rather waived. See, *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. at 756) ("Freedom of speech presupposes a willing speaker."); *Forbes v. Milwaukee County*, 2007 WL 41950, * 10 (E.D. Wis. 2007) (finding no deprivation of First Amendment rights when "plaintiffs voluntarily chose not to be willing speakers" by agreeing by contract not to speak.)

Parties can, and often do, agree not to exercise constitutional rights. *Snepp v. United States*, 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 766 (1980) (confidentially clauses and First Amendment rights); *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 782 (1972); *Forbes v. Milwaukee County*, 2007 WL 419, *10 (E.D. Wis. 2007). Plaintiffs cannot be deprived of an alleged right that they agree they "will not" exercise. Having failed to identify a "deprivation" of rights and resulting injury (i.e. abandoned plans for exterior signs and display), plaintiffs' § 1983 claim is insufficient. The Third Claim for relief should be dismissed.

**V.    CLAIMS FOUR AND FIVE FAIL TO IDENTIFY AN ADVERSE, RETALIATORY ACTION, AND THUS FAIL TO STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF**

In their Fourth and Fifth Claims, plaintiffs allege that defendants unlawfully retaliated against them for exercising constitutional rights (both Fourth and Fifth Claim) and engaging in interstate commerce under the Commerce Clause (Fifth Claim). (Am. Compl. ¶¶ 60-65.) To state a § 1983 retaliation claim, plaintiffs must allege facts sufficient to show: (1) they engaged in activity protected by the Constitution; (2) they suffered a deprivation that would likely deter constitutionally protected activity in the future; and (3) a causal connection between the two. *Watkins v. Kasper,* 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009). Plaintiffs' fail on all three levels.

First, plaintiffs fail to identify an activity that they *engaged in* that was protected by the Constitution. Rather, plaintiffs base their claim on their "*attempt"* to exercise constitutional rights. (Am. Compl. ¶¶ 61, 65) (emphasis added). An "attempt" to engage in activity is an insufficient basis for a retaliation claim and, thus, both claims fail as a matter of law. *Watkins,* 599 F.3d at 794 (must initially engage in a protected activity which spawns retaliation). Second, plaintiffs fail to identify an adverse or retaliatory action (*i.e.* a deprivation caused by the Village) that would likely deter future protected activity. Plaintiffs admit that they were not subjected to an extended review (13 days) or ultimately deprived a license to operate.

Finally, even if plaintiffs could support the first two factors—which they cannot—they would have to demonstrate a causal connection between the two. Plaintiffs eliminate this element on the face of the Amended Complaint. They allege that the licensing conditions were a product of (or "caused" by) Village officials' political and policy concerns about guns and gun dealerships in the community. (Am. Compl. ¶ 19 ("God forbid something should happen.")) Plaintiffs do not allege that defendants knew of, or were responding in any way to, plaintiffs' exercise of First or Fifth Amendment rights in the past.

With no protected activity, adverse response, or retaliatory motive, plaintiffs cannot support a §1983 retaliation claim. For all of the above reasons, plaintiffs' Fourth and Fifth Claims should be dismissed.

## VI. PLAINTIFFS' SIXTH CLAIM FAILS TO IDENTIFY A § 1985 CONSPIRACY, OR STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

In Claim Six, plaintiffs attempt to allege a conspiracy under 42 U.S.C. §1985. At the outset, Claim Six should be dismissed based on the intra-corporate conspiracy doctrine. *Hartman v. Bd. of Trustees of Community College Dist. #508*, 4 F.3d 465 (7th Cir. 1993); *Doe v. Bd. of Educ. of Hononegah Comm. High School Dist. #207*, 833 F.Supp. 1366 (N.D. Ill. 1993). Even apart from that doctrine, plaintiffs fail to state a plausible §1985 conspiracy claim in their Sixth Claim for Relief.

To support a §1985 claim, plaintiffs must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3355-56 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102-103, 91 S.Ct. 1790, 1798 (1971).

Plaintiffs fail to allege facts or grounds supporting the four elements of a § 1985 conspiracy claim. Instead, plaintiffs simply state a legal conclusion—that "on information and belief," the Village President, six Trustees and Village attorney "scheme[d] to devise a plan to use their offices in concerted action" to deter and prevent plaintiffs from opening their dealership. (Am. Compl. ¶ 20.) Plaintiffs provide absolutely no factual support for this claim,

let alone "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007) (citing *Bell Atlantic Corp. v. Twombly).* Moreover, plaintiffs do not allege or support any act in furtherance of the "conspiracy" as is required to state a § 1985 conspiracy claim. For the above reasons, plaintiffs' Sixth Claim for Relief should be dismissed.

## VII.    PLAINTIFFS' *MONELL* CLAIM IS NOT A SEPARATE AND DISTINCT CAUSE OF ACTION, BUT RATHER IS SUBSUMED WITHIN PLAINTIFFS' § 1983 CLAIMS IN OTHER COUNTS

In their Seventh Claim, plaintiffs assert a separate § 1983 claim against defendant Village under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978) ("*Monell* claim"). (Am. Compl. ¶¶ 69-73.) A *Monell* claim, however, is not a separate cause of action. Rather, "*Monell* claim" is shorthand for a §1983 claim against a governmental body, which purports to satisfy the governmental action requirement of the *Monell* decision. *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). Plaintiffs' First Claim to Sixth Claim all contain *Monell* claims against the Village, so the separate *Monell* claim in plaintiffs' Seventh Claim is duplicative and should be dismissed.

## VIII.    PLAINTIFFS' EIGHT CLAIM FOR RELIEF FAILS TO STATE AN ANTITRUST CLAIM

In their Eighth Claim for Relief, plaintiffs allege that defendants violated the Sherman Antitrust Act (15 U.S.C. §1), in their regulation of plaintiffs' firearms business. They allege that the licensing "act and decision constitute a combination, conspiracy and scheme" restraining trade in violation of the Sherman Act. (Am. Compl. ¶77). They seek in the Eighth Claim, as in all other claims, injunctive relief and damages.

There are several overlapping reasons why plaintiffs' Eighth Claim for Relief should be dismissed. First, the Eighth Claim for Relief fails to allege the elements of an Anti-Trust Claim.

25

It fails to allege a "combination" or "conspiracy" or any anticompetitive conduct or restraint of trade resulting from it. Moreover, a plausible argument exists that defendants' actions fall within the state action immunity doctrine for anti-trust liability. Moreover, at a minimum, defendants are immune from damages liability under the Local Government Anti-Trust Act.

Section 1 of the Sherman Anti-Trust Act states as follows:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. 1. Plaintiffs' Amended Complaint fails to allege a "combination" or "conspiracy" under the Act. Plaintiffs allege in a conclusory statement that defendants "conspired" and "combined," but defendants are all members of the same organization. Their combined actions are the actions of the Village, not "a combination" acting to restrain trade. Plaintiffs complain only of unilateral action by the Village, through its officials who are authorized to act for it, but there is no allegation of any conduct involving any other party so as to constitute a "true combination or conspiracy") under the Act. *Fisher v. City of Berkeley, CA.,* 475 U.S. 260, 267, 106 S.Ct. 1045, 1049 (1986). ("A restraint imposed unilaterally by government does not become concerted-action within the meaning of the statute simply because it has a coercive effect on parties who must obey the law. The ordinary relationship between the government and those who must obey its regulatory command whether they wish to or not is not enough to establish a conspiracy." See also, *Copperweld Corp., v. Independent Tube Corp.*, 467 U.S. 752, 769, 104 S.Ct. 2731, 2741 ("[O]fficers or employees of the same firm do not provide the plurality of actions imperative for a §1 conspiracy.")

26

Plaintifs' Eighth Claim also fails to state a restraint of trade by defendants' actions. The Sherman Act is designed to combat agreements which restrict free trade or improperly give a competitive edge to the conspiring entities. Plaintiffs fail to make any allegation showing how anything done by defendants reduced competition. Merely saying it does not make it a plausible pleading. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007). If the mere licensing and regulation of a business can reduce competition for antitrust purposes, then all municipal licensing is anti-competitive and in violation of the Sherman Act. *Bell Atlantic* addressed precisely the type of claim at issue in this case, and plaintiffs' Eight Claim fails to satisfy the plausibility standard set in that case.

Moreover, there is a good faith argument that defendants' conduct falls within the state action immunity to federal anti-trust liability. States are immune from anti-trust liability, but municipalities only share that immunity if they act pursuant to specific state granted authority, such that it can be concluded that the state intended and expected municipalities to engage in anti-competitive conduct in the furtherance of that state-granted authority. *Unity Ventures v. County of Lake*, 841 F.2d. 770 (7th Cir. 1988); *Campbell v. City of Chicago*, 823 F. 2d 1182 (7th Cir. 1987). There is no express statutory grant of authority to regulate firearms dealers in Illinois. However, the Village, as a home rule municipality, has power as broad as the state to regulate on matters of local concern not expressly preempted. The Supreme Court has held that a grant of broad home rule power does not in itself confer state action anti-trust immunity on a municipality. *Community Communications, Inc., v. City of Boulder, Colo.*, 455 U.S. 40, 102 S.Ct. 835 (1982). However, the Illinois General Assembly has since amended the home rule provision of the Illinois Municipal Code to specify that it intended to confer state action anti-trust immunity to municipalities by the grant of home rule powers. (65 ILCS 5/1-1-10) That act

can only be interpreted as a recognition by the General Assembly that broad use of regulatory powers by home rule municipalities is consistent with state policy, and that the state recognizes that anti-competitive conduct may occur by a municipality's exercise of home rule powers. Although no case has specifically held such, the only logical conclusion is that this amendment of the Municipal Code conferred state action immunity to home rule municipalities in Illinois.

At a minimum, plaintiffs' claims for damages in the Eighth Claim are defeated by the Local Government Antitrust Act (LGAA), which states that "No damages, interest on damages, costs, or attorneys' fees may be recovered under Section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, or official or employer thereof acting in an official capacity." 15 U.S.C. §35(a). "Official capacity" as used in the LGAA is given broad interpretation, much more expansive than the official capacity concept which equates an "official capacity" lawsuit against a government official as solely a claim against the government entity for purposes of *Monell* liability, but which leaves viable a damages claim against officials sued in an "individual" capacity. Under the LGAA, "official capacity" means that the official acted within the scope of his or her employment or public duties. *GF Gaming Corp. v. City of Black Hawk*, 405 F.3d 876 (10th Cir. 2005). *Pelfresne v. Village of Rosemont*, 174 F.R.D. 72 (N.D. Ill. 1997) There can be no doubt, and there is no allegation to the contrary, that the individual defendants here acted only in their official capacities as that concept applies under the LGAA. As a result, all claims for damages in the Eighth Claim for Relief must be dismissed.

## IX.  PLAINTIFFS' NINTH CLAIM FOR RELIEF, ALLEGING A VIOLATION OF THE LANHAM ACT IS FRIVOLOUS

In plaintiffs' Ninth Claim for Relief, they allege that defendants violated the Federal Lanham Act, based on a statement made by defendant Trustee Falagario, on February 9, 2011, that " the one current village weapons dealer licensee has agreed that it will cease doing business

in the village no later than April 30, 2013."  (Am. Compl. ¶ 67).  Plaintiffs allege that Trustee

Falagario, acted in concert with all other defendants, and with "the intent to call into question . . .

the viability of their [plaintffs'] business, and availability of their goods, services, and

commercial activities in order to inflict pecuniary harm on them, so as to deter and dissuade

potential customers from doing business with them and to reduce the marketability of their

lawful product."  (Am. Compl. ¶67)

Plaintiffs' Lanham Act claim is, quite simply, ludicrous.  First, Section 1125 (a)(1)(b)

applies to statements made in "commercial advertising or promotion."  Trustee Falagario's

statement alleged in the Amended Complaint had no relation whatsoever to a commercial

endeavor by any defendant, nor could it have been for advertising or promotion.  Moreover, the

alleged statement is not about plaintiff's products or services but about the effect of an

ordinance, so that the statement could not even be considered disparaging.  The statement that is

attributed to Trustee Falagario is a comment on the impact of an ordinance, not the products or

services delivered by plaintiffs.  Plaintiffs' Lanham Act claim in the Ninth Claim for Relief

should be dismissed.

## X.  THE INDIVIDUAL DEFENDANTS CANNOT BE LIABLE FOR DAMAGES UNDER THE FEDERAL CLAIMS

All nine of plaintiffs' federal claims seek money damages from the individual defendants,

along with the Village.  The defendant board members and Village President, however, have

absolute legislative immunity from liability, and all the individual defendants have qualified

immunity from liability.

**The Village Board Member Defendants have Absolute Immunity for their Legislative Acts**

The Amended Complaint establishes that the trustee defendants, Ursula A. Kucharski,

Dennis H. Stefanowicz, Dominic Sulimowski, Dominic S. Falagario, Jacqueline Gregorio,

Robert Martwick, and Village President Ronald A. Oppedisano, are all members of the Village's legislative body. (Am. Compl. ¶¶ 4, 5) Members of the legislative body of a local government have absolute immunity from liability for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966 (1998); *Reed v. Village of Shorewood*, 704 F.2d. 943 (7th Cir. 1983). To determine whether an allegedly wrongful act is "legislative" and subject to absolute immunity, courts apply a functional test. *Bogan*, 532 U.S. 44; *Rateree v. Rachett*, 852 F.2d. 946 (7th Cir. 1988); *Cathy's Tap, Inc. v. Village of Mapleton*, 65 F. Supp. 2d 874 (C.D. Ill. 1999)

The passage of the Operations Agreement, approved by the Village Board, and the Revised Ordinance, are classic legislative acts. The hallmarks of legislative action are discretionary, policy-based decisions which have impact on community concerns wider than the impacted plaintiff and have prospective implications. *Bogan*, at 55. The Amended Complaint speaks only of defendants' interest in licensing and regulating a weapons selling business, directed only to plaintiffs because they were the only weapons dealers to be addressed in this instance. The issues addressed were wide ranging, and not limited to circumstances affecting only these particular plaintiffs. The interests at issue involved the effective regulation of a gun selling business within the Village. The Operations Agreement addresses measures to assure sales to legal and responsible purchasers, security of on-site weapons and ammunition, and compliance with the law and safe practices. The Revised Ordinance addresses the same concerns, along with a legislative finding of adequate access to arms purchases for residents in the Village and surrounding communities. The Amended Complaint itself discusses defendants' concerns as policy based, not generated by any particular attribute of plaintiffs, and therefore

clearly legislative. As a result, defendant Trustees and the Village President[3] have absolute legislative immunity.

**All Individual Defendants have Qualified Immunity**

In addition, all of the individual defendants have qualified immunity. Plaintiffs have resorted to the questionable tactic of suing "everyone in sight." *Nisenbaum v. Milwaukee County*, 333 F.3d. 804, 806, (7th Cir. 2003). Qualified immunity is the most effective protection a government official has from such a tactic. Apart from all the reasons why plaintiffs' claims lack merit already addressed in this Memorandum, qualified immunity protects the individual defendants from damages liability here. The threshold question regarding qualified immunity is: (1) Does the complaint state a violation of a right; and (2) was that right clearly established at the time of the complained of action? *Saucier v. Katz*, 553 U.S. 194, 121 S.Ct 2151 (2001).

Regarding the first prong, the sections of this Memorandum addressing the substance of Claims First to Ninth establish why plaintiffs have not stated a violation of a constitutional (or statutory) right, and additional reasons apply to the claims against the Village Attorney, Mark Chester, the Police Chief, James J. Jobe, and the Village Clerk, Judith Bernardi. First, these defendants could be responsible for the licensing/regulation at the core of the Amended Complaint. Individual and personal participation is necessary for §1983 liability to attach. *Rascon v. Hardiman*, 803 F. 2d. 269 (7th cir. 1986) Employment by or affiliation with the allegedly offending entity is not enough. *Id*. at 273. Defendant Mark Chester, as Village attorney, provides legal counsel to the Village and its officials. He is not a decision-maker, nor does he make policy for the Village. His legal consultation to the Village, even if wrong, cannot

---

[3] Village President Oppedisano, as a member of the Village Board along with his executive functions as President, is equally protected by legislative immunity. *Reed v. Village of Shorewood*, 704 F.2d. 943 (7th Cir. 1983); *Schor v. Daley*, 563 F. Supp. 2d. 803 (N.D. Ill. 2008)

be deemed as a causative act exposing him to §1983 liability.  See, *e.g.*, *Gordon v. Degelman*, 29 F.3d. 295 (7th Cir. 1999)

Other than legal advice, the only other action attributed to Chester is that he repeated certain statements to plaintiffs which they allege indicated improper purposes for the regulation. Plaintiffs allege that Chester told plaintiff Kole that the delay in licensing was because "they [the Board and President] wanted to protect their political careers - - God forbid something should happen . . . . " (Am. Compl. ¶9)   That allegation does nothing to establish personal involvement by Chester in any challenged action sufficient to confer §1983 liability.  First, it is questionable whether this statement is even admissible since as legal counsel for the Village, Chester is not a public spokesman authorized to pronounce Village policy.  Moreover, the statement is either hearsay or Chester's own speculation, or even inadmissible under Federal Rule of Evidence 408 as a statement made in "compromise negotiations."

Regarding Police Chief Jobe, there are no actions alleged in the Amended Complaint that could impose liability on him individually.  Even if unannounced, random inspections could be attributed to him, as discussed in earlier sections of this brief, no constitutional rights are violated by such a practice.  Absent the Amended Complaint specifying any other particular action attributed to the police chief, he does not belong in the case as a defendant under any circumstances.

The same is true of Village Clerk Bernardi.  A municipal clerk's duties in Illinois are to keep the corporate papers of the municipality and a record of meetings of the corporate authorities.  65 ILCS 5/3.1 – 35-90.  The clerk has no role in licensing or regulation decisions.

Even if plaintiffs had plead a constitutional or statutory violation, defendants are entitled to qualified immunity from liability because no such rights have been clearly established.  A

public official is entitled to qualified immunity from civil rights liability unless the law is so clearly established that the official is bound to understand how it applies to the situation at hand. *West v. Schwebke*, 333 F.3d. 745 (7th Cir. 2003), citing *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001) and *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034 (1987). Whether an official is entitled to qualified immunity is a legal issue that can be decided with reference to undisputed facts and in isolation from the remaining issues of the case. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806 (1985).

Public officials require some form of immunity from suits for damages to insulate them from undue influence in performing their duties and from the potentially disabling threat of liability. *Jackson v. Elrod*, 881 F.2d. 441, 442 (7th Circ. 1989, citing *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727 (1982). *Townsend v. Vallas*, 256 F.3d. 661 (7th Cir. 2002). Determining whether a right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). The right must be clear enough that a reasonable official would understand that what he is doing violates that right. Id.

At this point in time, the state of the law on the parameters of a municipality's constitutional power to regulate a firearms dealer could not be more unsettled. The ink is barely dry on *Heller* and *McDonald*, and both cases recognized that the Second Amendment does not prohibit regulation of the business of selling firearms. No case has ever suggested, expressly or by implication, let alone clearly established, that any provision of the Operations Agreement or Revised Ordinance are illegal.

Indeed the Seventh Circuit, in excusing a misapplication of the law in *Ezell* by the very capable district court judge, recognized that "To be fair, the standards for evaluating Second

Amendment claims are just emerging, and this type of litigation is quite new." (Slip. Op. at 9) If the parameters for evaluating the Second Amendment rights of the gun owner plaintiffs in *Ezell* is unsettled, the rights of commercial sellers of guns are even more undefined. With the law far from clearly established, the individual defendants are entitled to qualified immunity on all damages claims against them.

## XI.     THERE IS NO BASIS FOR PLAINTIFFS' FIRST PENDENT CLAIM.

In plaintiffs' First Pendent Claim, they seek a declaratory judgment under the Declaratory Judgment section of the Illinois Code of Civil Procedure (735 ILCS 5/2-701). That section governs declaratory judgment actions in Illinois courts. It has no application to a federal action. The federal courts have their own provision governing a declaratory judgment action. 28 U.S.C. §2201. If plaintiffs suggest that §2-701 of the Illinois Code of Civil Procedure creates substantive rights in this court, they are wrong.

All that can be discerned from plaintiffs' First Pendent Claim is that somehow they seek a declaratory judgment about the Village's power to regulate plaintiffs' business under state law. If defendants have misinterpreted what is intended in the First Pendent Claim, presumably plaintiffs will shed light on it at some point. Nevertheless, there can be no question that the Village has the power to regulate plaintiffs' business under state law. The Village is a home-rule municipality, which has wide ranging powers to take action to protect the health and welfare of the community. The only restriction on its home rule powers is where the state has preempted those powers by an express expression of the intent to do so, and the constitutional limitation that home rule powers be exercised solely for local rather than broader state-wide matters. *Scadron v. City of Des Plaines*, 153 Ill.2d. 164, 606 N.E.2d. 1154 (2001) Illinois has not preempted a home-rule municipality's ability to regulate a gun selling business. Moreover, there is no question that the regulation of a weapons business in a municipality is a matter of local concern

falling within home rule powers.  In *Kalodimos v. Village of Morton Grove*, 103 Ill.2d. 483, 470 N.E.2d. 266 (1984), the Illinois Supreme Court held that a home rule municipality had the power to ban possession of handguns in its limits.  That ban might not be upheld today from a Second Amendment perspective, based on *McDonald* and *Heller*, but what it says about a village's home-rule powers would be no different. Quite simply, if banning handgun ownership and possession is "local" enough to fall within a municipality's home-rule powers, so is selling weapons within that community.  There is no basis for a declaratory judgment under state law challenging the Village's power to license and regulate plaintiffs' business.

## XII.   PLAINTIFFS' FAIL TO STATE A BASIS FOR RESCISSION OF THE OPERATIONS AGREEMENT IN THE SECOND PENDENT CLAIM

In their Second Pendent Claim, plaintiffs seek rescission of the Operations Agreement. The Amended Complaint, however, fails to establish a basis for rescission.  Rescission is only available when a contract is procured by fraud or misrepresentation, or a total failure of consideration negates the purpose of the contract.  *United City of Yorkville, v. Village of Sugar Grove*, 376 Ill. App. 3d 9, 875 N.E. 2d. 118 (2d Dist. 2007); *Puskar v. Hughes*, 179 Ill. App. 3d 522, 533 N.E. 2d. 962 (2d. Dist. 1989).   Plaintiffs' Amended Complaint makes no allegations of fraud, misrepresentation, or failure of consideration.

Moreover, if plaintiffs seek rescission, they must restore the status quo and return the consideration received under the contract. *United City of Yorkville,* at 22. That cannot be done because plaintiffs have operated under the terms of the Operations Agreement for several months.  Consequently, there is no basis for rescission and plaintiffs' Second Pendent Claim should be dismissed.

## XIII.   PLAINTIFF'S THIRD PENDENT CLAIM SHOULD BE DISMISSED

In what plaintiffs call their Third Pendent Claim, they allege the state law tort of intentional interference with prospective economic advantage (IIPEA). That tort, however, cannot be established here. The elements of that tort are: 1) the existence of a valid business relationship or expectancy; 2) knowledge of it by the alleged interferor; 3) intentional interference causing loss of the expectancy; and 4) damages. *Galinski v. Kessler*, 134 Ill. App. 3d 602, 480 N.E.2d. 1176 (1st Dist. 1985). There are questions about whether plaintiffs have plausibly plead any of these elements – nevertheless, the tort cannot be established here because IIEPA only occurs when the actions of the defendant are directed toward interfering with third-parties in business with the plaintiff. *Id.*; *Laser Industries, Ltd., v. Eder Instrument Co., Inc.*, 573 F.Supp. 987 (N.D. Ill. 1983). Defendants' actions here were directed only to plaintiffs in negotiating and eventually coming to an agreement on the terms and conditions regarding plaintiffs' license. There is no allegation of any action directed toward a third party which caused an economic disadvantage to plaintiffs.

In addition, as with the federal claims, defendants Jobe, Bernardi, and Chester, as non-decision makers, lacked any capacity to commit IIPEA in this context. Moreover, all defendants are immune from liability for IIPEA. The individual defendants are immune from liability pursuant to the following provisions of the Illinois Tort Immunity Act (745 ILCS 10/1-101, *et. seq.*):

> (a) §2-201 (discretionary immunity);

Section 2-201 of the Tort Immunity Act states as follows:

> Except as otherwise provided by statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for any injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/-2-201. Section 2-201 applies when a public official is determining policy and exercising discretion, a two part test that turns on the nature of the action being performed. *Harinek v. 161 N. Clark Street, Ltd. Partnership*, 181 Ill.2d 335, 692 N.E.2d 1177 (1998); *Harrison v. Hardin County Community Unit School Dist. No. 1*, 197 Ill.2d 466, 758 N.E.2d 848 (2001). Each prong, a policy decision and the exercise of discretion, must be satisfied for §2-201 to apply. *Harinek*, supra.

Policy decisions are those that require the balancing of competing interests and a judgment by the government official as to what solutions will best serve each interest. *Id*. The exercise of discretion involves choices between courses of conduct that are more than ministerial, that is, actions that need not be performed in a prescribed way pursuant to law or rules or regulations with the binding effect of law. *In re Chicago Flood Litigation*, 176 Ill.2d 179, 680 N.E.2d 265 (1997); *Hill v. Galesburg Community Unit School Dist. 205*, 346 Ill.App.3d 515, 805 N.E.2d 299 (3rd Dist. 2004); *Albers v. Dreen*, 346 Ill.App.3d 799, 806 N.E.2d 667 (4th Dist. 2004).

Both prongs of the §2-201 analysis apply here. Certainly, defendants weighed competing interests, and thereby determined policy, in all actions alleged in the Amended Complaint. Their actions also constituted the exercise of discretion under §2-201. There are no laws, rules or limitations having the force of law restricting their discretion so as to make their choices about gun sales regulation only ministerial.

(b) §2-202 (execution or enforcement of the law);

Section 2-202 of the Tort Immunity Act states as follows:

> A pubic employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.

The Amended Complaint fails to allege facts sufficient to constitute willful and wanton conduct by defendants.

> (c) §2-203 (acts under unconstitutional, invalid or inapplicable enactment;

Section 2-203 of the Tort Immunity Act states as follows:

> If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable.

Passage or enforcement of an unconstitutional or invalid law cannot impose liability on defendants.

> (d) §2-205 (adoption of enactment).

Section 2-205 of the Tort Immunity Act states as follows:

> A public employee is not liable for any injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law.

The Amended Complaint does nothing except to seek to impose liability on the individual defendants for their adoption of an enactment

The Village is also immune from liability based on all of the immunities available to the individual defendants, pursuant to §2-109 of the Tort Immunity Act (745 ILCS 10/2-109). *Snyder v. Curran Tp.*, 167 Ill. 2d. 466, 657 N.E.2d. 988 (1995). In addition, the Village is immune from liability pursuant to §2-103, which provides direct municipal immunity for an adoption or failure to adopt an enactment, and §2-104, for issuance or denial of a license or approval.

For all of the foregoing reasons, plaintiff's Third Pendent Claim should be dismissed.

## XIV. PLAINTIFFS' FOURTH PENDENT CLAIM SHOULD BE DISMISSED

In the Fourth Pendent Claim, plaintiffs allege that the Revised Ordinance is special legislation prohibited by Article 4, Section 13 of the Illinois Constitution. That section of the Constitution states as follows:

> The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination.

By its own language, that section of the Illinois Constitution applies only to the General Assembly, not to local governments. As a result, plaintiff's Fourth Pendent Claim should be dismissed.

## XV. PLAINTIFFS' FIFTH PENDENT CLAIM SHOULD BE DISMISSED

In their Fifth Pendent Claim, plaintiffs' allege that they were retaliated against in violation of Article 1, Sections 2 and 4 of the Illinois Constitution. Illinois courts have never recognized a cause of action for retaliation based on an exercise of constitutional rights. Indeed, there are no general private rights of action implied from the Illinois Constitution. *Teverbaugh v. Moore*, 311 Ill. App. 3d 1, 724 N.E.2d. (225 (1st Dist. 2000)

Moreover, as explicated completely in Section V of this Memorandum, the Amended Complaint fails to allege any retaliatory conduct. Moreover, the statutory immunity which protects defendants from plaintiffs' IIPEA claim in the Third Pendent Claim immunizes defendants for the Fifth Pendent Claim as well.

## XVI. PLAINTIFFS' SIXTH PENDENT CLAIM SHOULD BE DISMISSED

Plaintiffs' Sixth Pendent Claim purports to allege common law conspiracy under state law. For all of the reasons plaintiffs' federal conspiracy claim fails, as discussed earlier, and because defendants are protected from such liability under the Tort Immunity Act, this claim should be dismissed.

## XVII. PLAINTIFFS' SEVENTH AND TWO EIGHTH PENDENT CLAIMS SHOULD BE DISMISED

Plaintiffs continue their onslaught of meritless state law damages claims in their Seventh and two Eighth Pendent Claims.  The Seventh claim alleges commercial disparagement under the Illinois Uniform Deceptive Trade Practices Act, and the first Eighth Claim under the common law.  As discussed in response to plaintiffs' Federal Landham Act count, no commercial venture is identified in the Amended Complaint, and the alleged disparagement is not disparaging at all.

Plaintiffs second Eighth Pendent Claim purports to state a claim for false light invasion of privacy under the Illinois common law.  Defendants can only respond that their imaginations are not vivid enough to discern how defendants could have committed that tort.

Plaintiffs' commercial disparagement and false light claims are also subject to all of the Tort Immunity Act protections from liability applicable to plaintiffs' IIPEA claim in their Third Pendent Claim.   As a result, plaintiffs' Seventh and two Eighth Pendent Claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request this Court dismiss the Amended Complaint.

_____
 /s/ Thomas G. DiCianni

Stewart H. Diamond (ARDC # 0629650)
sdiamond@ancelglink.com
Thomas G. DiCianni (ARDC #03127041)
tdicianni@ancelglink.com
Brent O' Denzin (ARDC # 6294953)
bdenzin@ancelglink.com
*ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.*
Attorney for Defendants
140 South Dearborn Street, 6th Floor

Chicago, Illinois  60603
(312) 782-7606
(312) 782-0943 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONY KOLE, individually and as President
and Manager of Ghost Industries, LLC, and
GHOST INDUSTRIES, LLC, an Illinois
limited liability company,

          Plaintiffs,

    v.                            No. 11-CV-03871

VILLAGE OF NORRIDGE, an Illinois           Hon. Charles R. Norgle, Sr.
municipal corporation, RONALD A.            U.S. District Judge
OPPEDISANO, individually and as President
of the Village of Norridge, JAMES J. JOBE,
Chief of Police of the Village of Norridge,     Hon. Morton Denlow
JUDITH D. BERNARDI, Clerk of Village of    U.S. Magistrate Judge
Norridge, URSULA A. KUCHARSKI,
DENNIS H. STEFANOWICZ, DOMINIC
SULIMOWSKI, DOMINIC S. FALAGARIO,
JACQUELINE GREGORIO, AND ROBERT
MARTWICK, individually and as Trustee of
the Village of the Norridge and MARK V.
CHESTER, individually and as Village
Attorney of the Village of Norridge,

          Defendants.

## CERTIFICATE OF SERVICE

      The undersigned, one of the attorneys of record herein, hereby certifies that on September

27, 2011, the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**

**MOTION TO DISMISS AMENDED COMPLANIT** was electronically filed with the Clerk of

the U.S. District Court using the CM/ECF System, which will send notification of such filing to

the following:

Walter Peter Maksym , Jr.
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Email: wmaksym@gmail.com

/s/ Thomas G. DiCianni

THOMAS G. DiCIANNI, (ARDC# 03127041)
One of the attorneys for Defendants

ANCEL, GLINK, DIAMOND, BUSH, DICIANNI
& KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:      (312) 782-7606
Facsimile:      (312) 782-0943
E-Mail:         tdicianni@ancelglink.com

\\agdom1\files\Users\DHincks\Mydocs\Hincks\1. TGD\Kole\Memo of Law 092711.doc  5868809.0000