IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONY KOLE, individually and as President
and Manager of Ghost Industries, LLC, and
GHOST INDUSTRIES, LLC, an Illinois
limited liability company,

                Plaintiffs,

     v.

VILLAGE OF NORRIDGE, an Illinois
municipal corporation, RONALD A.
OPPEDISANO, individually and as President
of the Village of Norridge, JAMES J. JOBE,
Chief of Police of the Village of Norridge,
JUDITH D. BERNARDI, Clerk of Village of
Norridge, URSULA A. KUCHARSKI,
DENNIS H. STEFANOWICZ, DOMINIC
SULIMOWSKI, JACQUELINE GREGORIO,
AND ROBERT MARTWICK, individually
and as Trustees of the Village of the Norridge
and MARK V. CHESTER, individually and as
Village Attorney of the Village of Norridge,

                Defendants.

No. 11-CV-03871

# FILED

FEB 2 1 2012

FEB 2 1 2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## DEFENDANTS' MOTION FOR LEAVE TO FILE OVERSIZED REPLY, *INSTANTER*

NOW COME the Defendants, VILLAGE OF NORRIDGE, RONALD A.

OPPEDISANO, JAMES J. JOBE, JUDITH D. BERNARDI, URSULA A. KUCHARSKI,

DENNIS H. STEFANOWICZ, DOMINIC SULIMOWSKI, DOMINIC S. FALAGARIO,

JACQUELINE GREGORIO, ROBERT MARTWICK and MARK V. CHESTER, by and

through their counsel, ANCEL, GLINK, DIAMOND, BUSH, DiCIANNI & KRAFTHEFER,

P.C., and move this Court for leave to file their oversized Reply to Plaintiffs' Response to

Defendants' Motion to Dismiss, *instanter*, and in support of that motion, state the following:

1.     Pending before the court is defendants' Motion to Dismiss plaintiffs' Amended Complaint, which contains 15 separate counts, alleging violations of nine constitutional provisions, three federal statutes, and making six separate state law claims, and which seeks injunctive relief and money damages against nine defendants.

2.     Defendants' Motion to Dismiss and supporting Memorandum of Law were filed with the court on September 29, 2011.  The court allowed defendants to file an oversized memorandum of law of 43 pages.

3.     After four extensions, plaintiffs filed their response on January 10, 2012, and defendants were granted 21 days, until January 31, 2012, to reply.  Plaintiffs' response is 48 pages long.

4.     Given the size and structure of plaintiffs' response, defendants requested and were granted until February 17, 2012, to file their Reply, and granted leave to file a 25-page Reply.

5.     Defendants worked diligently to edit and limit their Reply to meet the 25-page limit, but in the end found they needed 29 pages.

WHEREFORE, Defendants pray this Court grant leave to file a 29-page Reply *instanter*.

/s/ Thomas G. DiCianni

Thomas G. DiCianni (ARDC #03127041)
tdicianni@ancelglink.com
***ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.***
Attorney for Defendants
140 South Dearborn Street, 6th Floor
Chicago, Illinois  60603
(312) 782-7606
(312) 782-0943 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONY KOLE, individually and as President
and Manager of Ghost Industries, LLC, and
GHOST INDUSTRIES, LLC, an Illinois
limited liability company,

        Plaintiffs,

    v.

VILLAGE OF NORRIDGE, an Illinois
municipal corporation, RONALD A.
OPPEDISANO, individually and as President
of the Village of Norridge, JAMES J. JOBE,
Chief of Police of the Village of Norridge,
JUDITH D. BERNARDI, Clerk of Village of
Norridge, URSULA A. KUCHARSKI,
DENNIS H. STEFANOWICZ, DOMINIC
SULIMOWSKI, JACQUELINE GREGORIO,
AND ROBERT MARTWICK, individually
and as Trustees of the Village of the Norridge
and MARK V. CHESTER, individually and as
Village Attorney of the Village of Norridge,

        Defendants.

No. 11-CV-03871

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record herein, hereby certifies that on February 21, 2012, the foregoing **DEFENDANTS' MOTION FOR LEAVE TO FILE OVERSIZED REPLY, *INSTANTER*** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following:

Walter Peter Maksym , Jr.
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Email: wmaksym@gmail.com

/s/ Thomas G. DiCianni

THOMAS G. DiCIANNI, (ARDC# 03127041)
One of the attorneys for Defendants

ANCEL, GLINK, DIAMOND, BUSH, DICIANNI
& KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:     (312) 782-7606
Facsimile:     (312) 782-0943
E-Mail:        tdicianni@ancelglink.com

\\agdom1\files\users\DHincks\Mydocs\Hincks\1. TGD\Kole\Defs' Mot for Lv to File Oversized Reply Instanter.doc  1340000.0001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, individually and as President and Manager of Ghost Industries, LLC, and GHOST INDUSTRIES, LLC, an Illinois limited liability company,<br><br>        Plaintiffs,<br><br>   v.<br><br>VILLAGE OF NORRIDGE, an Illinois municipal corporation, RONALD A. OPPEDISANO, individually and as President of the Village of Norridge, JAMES J. JOBE, Chief of Police of the Village of Norridge, JUDITH D. BERNARDI, Clerk of Village of Norridge, URSULA A. KUCHARSKI, DENNIS H. STEFANOWICZ, DOMINIC SULIMOWSKI, DOMINIC S. FALAGARIO, JACQUELINE GREGORIO, AND ROBERT MARTWICK, individually and as Trustee of the Village of the Norridge and MARK V. CHESTER, individually and as Village Attorney of the Village of Norridge,<br><br>        Defendants. | No. 11-CV-03871<br><br>Hon. Charles R. Norgle, Sr.<br>U.S. District Judge<br><br>Hon. Morton Denlow<br>U.S. Magistrate Judge |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

**I.    INTRODUCTION**

In their 48-page Response brief ("Response"),[1] plaintiffs offer the court a manifesto on

their extreme, political view of absolutist Second Amendment rights and government regulation

in general. (*See i.e.*, Response, p. 1 ("No man's life, liberty or property is safe so long as the

---

[1] Plaintiffs' 48-page brief violates this Court's Order granting leave to file a brief of 43 pages or less. (Doc. No. 18.) Moreover, Plaintiffs' Response brief violates Local Rule 5.2 by using 10.5 point (smaller than the required 12 point font) and smaller spacing than the 2.0 spacing allowed. A quick comparison to Defendants' memoranda highlights the stark difference in formatting. These violations make their brief even more difficult to read and understand, further highlighting the grounds for dismissal under Federal Rules of Civil Procedure Rule 8 and 10.

**EXHIBIT**

**A**

legislature is in session").) Our country's greatest humorist had a license for hyperbole, but a serious litigant should be constrained by the facts and precedent. Instead of outlining factual and legal grounds for each claim, plaintiffs provide a chaotic—often unintelligible—treatise on the broad notion of liberty. Plaintiffs' unstructured, evasive Response underscores the merits of defendants' Motion to Dismiss. In the end, plaintiffs have not set forth a viable legal claim which would entitle them to relief. Defendants' Motion to Dismiss should be granted.

## Background

Plaintiffs' extreme arguments bear little relationship to the admitted facts in this case. Less than two weeks (13 days) after applying for a local weapons dealer license, plaintiffs entered into an agreement ("Operations Agreement" or "Agreement") with the Village of Norridge ("Village"), which ended the Village's application review and secured a license for two years. (Am. Compl. ¶ 23; Ex. C (Agreement dated November 29, 2010)). In the Agreement, plaintiffs agreed to a series of limits on their operations. (*See e.g.*, Am. Compl. Ex. C, ¶ 4 (limit signage to their internal office suite doors); ¶ 12 (inspections and limits on hours of operations).)

Plaintiffs then claimed they signed the Agreement because they were told an agreement was necessary to get a license. (Am. Compl. ¶¶ 19-23.) What is missing is any authority supporting that the terms of the Operations Agreement were Constitutionally prohibited or that the 13-day application review period was "excessive," particularly since plaintiffs admit it had no impact. Plaintiffs could not have opened their dealership any faster, because they lacked federal permits. (Am. Compl. Ex. A (Ghost's FFL Permit signed on January 18, 2011).) After receiving the local license, plaintiffs waited two months for federal permits before opening their business in late January, 2011. (*Id.*)

Finally, plaintiffs challenge the Village's Revised Ordinance, which, by April 30, 2013, phases out gun dealership licenses within the 1.8 square-mile Village limits. (Am. Compl. Ex. D). This Revised Ordinance has no effect on plaintiffs' two-year license. (Am. Compl., Ex. C, ¶ 13)(License term ends prior to April 30, 2013). Plaintiffs agreed that there would only be two annual renewals of plaintiffs' license, and expressly recognized pending revisions to the licensing ordinance at the time their license was issued. (Id., Ex. C, ¶ 13.) Despite the above, plaintiffs claim that the Operations Agreement and Revised Ordinance violate their rights under federal and State law, and request financial "compensation."

## II. PLAINTIFFS FAIL TO SET FORTH A "SHORT AND PLAIN STATEMENT"

Plaintiffs' Amended Complaint is difficult enough to understand, but their Response is obtuse. Throughout both, they make numerous constitutional and state law claims, without categorizing these claims into discrete counts with supporting allegations. (*See e.g.*, Am. Compl. ¶ 23.) The free-form approach of the Amended Complaint is not elucidated in any way by their Response. The contrary is true.

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Moreover, "[e]ach allegation must be simple, concise, and direct." Fed.R.Civ.P. 8(d)(1). Rule 10 requires the pleader to state his claims in separate numbered paragraphs, "each limited as far as practicable to a single set of circumstances," and also requires that "each claim founded on a separate transaction or occurrence" be "stated in a separate count" if "doing so would promote clarity." *Id.* 10(b). The primary purpose of these rules is to give the defendant fair notice of the claims against it and the grounds supporting the claims. *Stanard v. Nygren*, 658 F.3d 792, 797-98 (7th Cir. 2011) (dismissing similarly-styled complaint for "lack of organization

and basic coherence"). Apart from its substantive failures, the Amended Complaint could be dismissed based on its lack of coherence and violations of federal pleading standards alone.

## III. PLAINTIFFS' FIRST CLAIM FAILS TO IDENTIFY A CONSTITUTIONAL DEPRIVATION WHICH WOULD ENTITLE THEM TO RELIEF [2]

### A. Neither *Heller* Nor *McDonald* Create a Second Amendment Right To Sell Weapons

Plaintiffs' First Claim relies on the existence of a Second Amendment constitutional right to sell firearms. (*See e.g.*, Am. Compl., ¶ 37.) Plaintiffs suggest that the Second Amendment right to possess firearms, as outlined in *Heller*, *McDonald* and *Ezell*, also includes constitutional rights to "sell, purchase, transfer sale, transfer, keep, [and] display . . . firearms." (Response, p. 6.); *See*, *District of Columbia v. Heller*, 554 U.S. 570, 574, 628–30 (2008); *McDonald v. City of Chicago*, 130 S.Ct. 3020, 3036 (2010); *Ezell v. City of Chicago*, 651 F.3d 684, 703-04 (7th Cir. 2011). It does not. The First Claim should be dismissed for failure to state a claim.

Plaintiffs cannot cite a single federal case supporting a constitutional "right to sell" firearms. (*See*, Response, p. 9 (admitting that "the Seventh Circuit has not yet specifically addressed the constitutionality of gun sales ordinances . . .").) In fact, federal courts have reached the opposite conclusion. For example, in *United States v. Chafin*, the Fourth Circuit Court of Appeals recently rejected the "right to sell" argument, finding:

> [Plaintiff] has not pointed this court to any authority, and we have found none, that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm. Indeed, although the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm. *Cf. United States v. 12 200–Foot Reels of Super 8mm. Film*, 413 U.S. 123, 128, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) ("We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others."). Accordingly,

---

[2] Again, to the extent that plaintiffs repeat allegations in multiple claims, defendants' arguments apply equally to the multiple claims.

4

[Plaintiff's] argument that [the criminal code on weapon sales] is unconstitutional under *Heller* must be rejected.

*United States v. Chafin*, 423 F. Appx. 342, 344 (4th Cir. 2011)(emphasis in original).

The Fourth Circuit's holding is consistent with the Supreme Court's view in *Heller* and *McDonald*. Unlike restrictions on gun possession, restrictions on gun sales are "presumptively lawful." *McDonald*, 130 S.Ct. at 3036. Moreover, the Fourth Circuit's general framework on Second Amendment issues, post-*Heller*, has been expressly adopted by the Seventh Circuit. *Ezell*, 651 F.3d at 703-04 (adopting a "general framework" that "has been followed by the Third, *Fourth* and Tenth Circuits in other Second Amendment cases"). Therefore, while the Seventh Circuit has not reviewed a "right to sell" claim, their approach clearly signals rejection.

Under the above-referenced framework (i.e. *Ezell* review), the Seventh Circuit first "decide[s] whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee [i.e. possession of arms for self-defense] . . . . If it does not, [the court's] inquiry is complete." *Ezell*, 651 F.3d at 703-04 (citing *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). As the Fourth Circuit recognized, the commercial sale of weapons is not "conduct falling within the scope of the Second Amendment's guarantee" of personal possession of arms for self-defense. *Id*; *Chafin*, 423 F. Appx. at 344; *See also*, *McDonald*, 130 S.Ct. at 3036.

Plaintiffs attempt to manufacture support for their "right to sell" claim by combining numerous unrelated (and misinterpreted) constitutional theories. For example, plaintiffs claim that: "infringement on plaintiffs' fundamental right to engage and continue to pursue, engage in and expand a lawful licensed livelihood triggers and [sic] '*Ezell* review' because municipality cannot prevent or condition the expansion of a business that otherwise would comport with existing law." (Response, p. 11 (citing *Dolan v. City of Tigard*, 512 U.S. 374 (1994), a case

involving "exactions").) Plaintiffs' scattered argument exposes the meritless nature of their "right to sell" claim. There is no legal or logical connection between Second Amendment "*Ezell* review*" and *Dolan v. City of Tigard*—a case discussing Fifth Amendment takings claims. Similarly, neither *Heller*, *McDonald*, nor *Ezell* identify a Second Amendment right to "engage in and expand" one's "livelihood."

Finally, lacking legal support, plaintiffs distort the facts. Most notably, plaintiffs repeatedly claim that the Village is regulating the public's right to possess firearms. (*See, e.g.*, Response, p. 8 (suggesting that, unlike the ordinance in *Justice v. Town of Cicero*, 577 F.3d 768, 774 (7th Cir. 2009), the Revised Ordinance does not leave "citizens free to *possess* guns, . . . consistent with *Heller*").) Plaintiffs' characterization is disingenuous. Just like the Cicero gun registration ordinance in *Justice*, the Village's Revised Ordinance leaves all law-abiding citizens free to own and possess guns, consistent with *Heller* and *McDonald*. *Justice*, 577 F.3d at 774 (upholding gun registration regulation).

Plaintiffs' Second Amendment claims should be dismissed for lack of coherence (Fed. R. Civ. P. Rules 8 and 10) and failure to state a claim (Fed. R. Civ. P. Rule 12(b)(6)).

**B.     Plaintiffs Lack Standing to Seek Relief on Behalf of Third-Party Customers**

In addition to their "right to sell" claim, plaintiffs argue that third-party Village residents will be injured by the Revised Ordinance. (*See e.g.*, Response, pp. 6, 26.) Specifically, plaintiffs argue that unnamed residents' Second Amendment rights are burdened by limits on commercial gun sales within the Village limits. (*Id.*) As discussed in the Motion to Dismiss, plaintiffs lack standing to raise and litigate theoretical injuries to third-party residents. *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (requiring, *inter alia*, that the plaintiff demonstrate a 'hindrance' to the third party's ability to protect his [or her] own interests"). In Response, plaintiffs now argue that they should be granted third-party standing because the Village's "scheme is targeted to

keep the public in general and potential gun purchasers in particular by depriving them of information and dark by suppressing plaintiffs speech." (Response, p. 26.) Although difficult to understand their point, plaintiffs seem to suggest, without any factual support, that Village residents do not have access to information regarding the Village's Revised Ordinance.

This argument fails on its face. Plaintiffs do not allege in their Complaint that residents are unaware of the Village's Revised Ordinance, which remains publicly posted on the Village's website.[3] Moreover, plaintiffs do not allege that Village residents lack access to State and federal courts to challenge the Revised Ordinance. In sum, there is no justification for extending third-party standing to Ghost Industries to file suit on behalf of fully-informed and capable Village residents. All claims for alleged violations of third-party residents' Second Amendment rights should be dismissed.

**C.    No Burden on Residents' Core Second Amendment Rights**

Even if the court were to consider alleged injuries to third party Village residents—which would be in error—plaintiffs still fail to state a claim. *Ezell*, 651 F.3d at 703-04. It is unclear from plaintiffs' Amended Complaint and Response how the Operations Agreement or Revised Ordinance would impose a burden on any individual's right to possess firearms for self-defense. *Id.* (holding that a Second Amendment claim must show that action "imposes a burden on conduct falling within the scope of the Second Amendment's guarantee[d]" right to possess a firearm for self-defense). Again, the Village has no local restrictions on owning and possessing handguns, as was challenged in *McDonald* and *Heller*. *See, Heller*, 554 U.S. 570, 574; *McDonald*, 130 S.Ct. at 3036. There is no local licensing requirement for gun ownership or possession, as was analyzed in *Ezell*. 651 F.3d at 689. Village residents are able to access,

---

[3] *See*, Village of Norridge Website, Code of Ordinances,
www.villageofnorridge.com/resident_information/Ordinances.asp.

purchase, own and keep guns in their home for self-defense with or without a physical gun dealership within the 1.8 mile Village limits. (Am Compl. Ex. D. (recognizing four gun shops in close proximity which serve Village residents, in addition to on-line sales).) Plaintiffs even admit that residents in Norridge can access and purchase weapons from them on-line, regardless of the terms of the Agreement or Revised Ordinance. (Am. Compl. ¶1 (engages in "internet" sales, in addition to "local" sales).)

Nevertheless, plaintiffs repeatedly state, without support, that the Village has created a "severe burden" on residents' right to possess firearms. (*See e.g.*, Response, pp. 6, 11.) Conclusory statements are insufficient to show plaintiffs "are entitled to relief." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"). Given no alleged facts demonstrating a burden on the core Second Amendment right to possess firearms, the Operations Agreement and Revised Ordinance should not be subject to the Second Amendment "means-end" analysis. *Ezell*, 651 F.3d at 703-04 (If no burden on core activity, court's review is complete).

### D.    Village's Revised Ordinance is "Easily Justified."

In the alternative, even if the court applied a "means-end" analysis—which, again, would be improper (see above)—the scrutiny for such a marginal impact would be "easily justified." *Ezell,* 651 F.3d at 708 ("[L]aws restricting activity lying closer to the margins of the Second Amendment right . . . may be more easily justified."). Courts have repeatedly recognized public concerns posed by gun dealerships. *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1123 (7th Cir. 1983)("The sale of guns is fraught with both short-term and long-term danger to the public-or so at least the [municipal] authorities could rationally conclude."); *Illinois Sporting Goods Ass'n v.*

8

*County of Cook*, 845 F. Supp. 582, 587 (N.D. Ill. 1994) (accepting County gun shop prohibition around schools and parks as reasonably related to a legitimate government interest.)

In this case, the Village passed the Revised Ordinance to "improve the health, safety and welfare" of Village residents by reducing the number of gun warehouses and dealerships in the area. (Am. Compl. Ex. C, D.)   The concerns recognized by the Seventh Circuit and district courts are sufficient to justify the minor inconvenience of having to venture outside of the 1.8 square mile Village corporate limits (or on-line) to purchase guns.   Again, this issue is not properly before the court (no standing, no Second Amendment burden, etc.), and plaintiffs' claims should be dismissed long before the court weighs into this theoretical legal issue.

## IV. PLAINTIFFS' COMPLAINT FAILS TO IDENTIFY A DUE PROCESS VIOLATION OR TAKINGS CLAIM WHICH WOULD ENTITLE THEM TO RELIEF[4]

Throughout their Amended Complaint and Response, plaintiffs make due process and takings arguments without reference to any count in their complaint.   As a result, it is nearly impossible for defendants to decipher which arguments support which claims. *Stanard*, 658 F.3d at 797 (dismissing complaint for similar flaws).   Even when corralled and pieced together, plaintiffs' due process and takings arguments fail to set forth grounds that would entitle them to relief.

To prove a due process violation under the Fourteenth Amendment, plaintiffs must first establish that they were "deprived of property." *Baer*, 716 F.2d at 1121-22 (revoking weapons dealership license not a deprivation of "property"). A permit or license is deemed "property" if it is held "securely as a result of state or federal law." *Id.* Moreover, the license "cannot be taken away from the holder before the end of a definite period without proof of misconduct on his part,

---

[4] Again, to the extent that plaintiffs repeat allegations in multiple claims, defendants' arguments apply equally to the multiple claims.

so that if [the owner] keeps out of trouble he knows he can hold on to the license for that period."
*Id.*; *Board of Regents v. Roth,* 408 U.S. 564, 577 92 S.Ct. 2701, 2709 (1972).

In this case, plaintiffs admit in their Amended Complaint that the license in question is a local weapons dealership license, and not issued or held as a "result of [any] state or federal law."; *Baer,* 716 F.2d at 1121-22; (*See,* Am. Compl. ¶ 16 (admitting it was a license created by local ordinance, not state or federal law)). Plaintiffs admit that "Illinois has no weapons dealers licensing statute," (Response, p. 13), and that the Federal Firearms License program (FFL) is administered by the federal Bureau of Alcohol Tobacco and Firearms — not the Village of Norridge (Am. Compl., Ex. A (FFL Application)). The Village's decision with regard to the local license in no way confers or denies any state or federal property rights.

Moreover, plaintiffs had no expectation that their license would be renewed indefinitely absent cause. *See contra, Club Misty, Inc. v. Laski,* 208 F.3d 615, 618 (7th Cir. 2000). The local license issued to Ghost Industries was expressly limited to two annual renewals and has not been altered or revoked during this limited term. (Am. Compl. Ex. B ¶ 13.); *Baer,* 716 F.2d at 1122 (7th Cir. 1983) (Gun dealer had "no expectation reasonably grounded in law that he would be able to retain [a local] license for a fixed term during good behavior, [and thus] was not deprived of property . . .").

In this case, plaintiffs' license has not been revoked, but rather set to sunset after the fixed license term expires. Plaintiffs had no "expectation reasonably grounded in law that [they] would be able to retain the license" past the two annual renewals. *Baer,* 716 F.2d at 1122. Therefore, the sunset provision does not deprive plaintiffs of any property right.

Conditions on such licenses are similarly permissible. Plaintiffs concede that they are "aware that requiring *keeping records* of the sales of dangerous products and *inspections* have

been upheld, as the Seventh Circuit did in *Biswell*, '[w]hcn a dealer chooses to engage in [a] pervasively regulated business and to accept a [gun dealership] license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection.'"(Response, p. 27 (emphasis in original)(citing *United States v. Biswell*, 406 U.S. 311, 316 (1972).) Despite admitting that reporting and inspection conditions are constitutional, plaintiffs provide the following unintelligible argument in support of their Fourth and Fifth Amendment claims:

> Defendants appear to be unaware that the Illinois Supreme Court long ago held that an ordinance, much less burdensome than the RO, requiring a business' records to merely be the subject *inspection*, but go so far as to affirmatively require that they deliver quarterly reports to a municipality of the kinds and quantities of intoxicating products sold and to whom and names of customers to unreasonable, oppressive, an invasion of the sanctity of private business, and void. *City of Clinton v. Phillips*, 58 Ill. 102 (1875). By stark contrast and presumably as a result of this precedent, Illinois law (720 ILCS 5/24-4)[Illinois' Criminal Offense for Weapons Sales] requires no such oppressive and burdensome *reporting*, only that a seller on demand of a peace officer shall produce for *inspection* their sales register and allow such peace officer to inspect it and all stock on hand. For the above reasons, the Fourth and Fifth Amendment Claims are sufficient and should be upheld.

(Response, p. 27 (emphasis in original).)

Plaintiffs' confusing description of the 1875 Illinois Supreme Court ruling in *City of Clinton* in no way undermines the clear support for reporting and inspection conditions expressed in *Bissel* and other federal cases in this Circuit. *Id*, 406 U.S. at 316; *Bionic Auto Parts & Sales, Inc v. Fahner*, 721 F.2d 1072, 1078 (7th Cir. 1983). Similarly, Illinois' criminal laws on gun sales (720 ILCS 5/24-4) are irrelevant to any civil or constitutional claim before this court. For all of the above reasons, independently and collectively, plaintiffs' due process and takings arguments are factually and legally insufficient and should be dismissed.

## V. PLAINTIFFS' SECOND CLAIM FAILS TO IDENTIFY COMMERCE CLAUSE OR FEDERAL FIREARMS ACT VIOLATIONS, AND THUS FAILS TO STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

### A. Plaintiffs Provide No Support for a Commerce Clause Claim

Plaintiffs argue that the Village's regulation of local businesses violates the Constitution's Dormant Commerce Clause because local businesses (in this case, local gun dealerships) buy and stock products from other states. (Response, p. 29.) Under plaintiffs' theory, all state and local regulations are unconstitutional if they indirectly cause any local business to stock less of any good produced out-of-state. (*Id.*) Plaintiffs' theory has no support in fact or law and should be dismissed.

Local restrictions on commerce between local businesses and local residents are well within the bounds of the Commerce Clause. *Illinois Restaurant. Ass'n v. City of Chicago,* 492 F. Supp. 2d 891, 899 (N.D. Ill. 2007) (upholding City's ban on local sale of foie gras in City restaurants because the local ban does not "govern foie gras *production* or *pricing* [and] [t]hus, it neither regulates nor discriminates against interstate commerce."); *see also, Buck v. People of State of Cal.,* 343 U.S. 99, 102-03, 72 S.Ct. 502, 504 (1952) (local licensing restrictions on taxicabs constitutional). "The fact that [an] Ordinance prevents some interstate companies from selling firearms, does not show that the Ordinance impermissibly burdens interstate commerce overall." *Illinois Sporting Goods Ass'n v. County of Cook,* 845 F. Supp. 582, 587 (N.D. Ill. 1994)(rejecting dormant commerce clause claim involving ban of gun shops within .5 miles of parks and schools). If anything, local restrictions on local commercial sales traditionally *benefit* out-of-state businesses because they push residents to purchase these products from *outside* dealers. *Tennessee Scrap Recyclers Ass'n v. Bredesen,* 556 F.3d 442, 450 (6th Cir. 2009) (finding that Memphis' regulation of local scrap metal operations "is *beneficial* to out-of-state scrap dealers, as this ordinance burdens their competitors in Memphis. Indeed, unlike the typical

dormant commerce clause case, this ordinance is challenged by *in-state* parties because it disadvantages *them*") (emphasis in original).

In this case, like *Tennessee Scrap Recyclers, Assn.*, an Illinois corporation is suing to address perceived in-state, Illinois impacts. (Am. Compl. ¶ 27 (alleging that the Village's regulations cost Ghost Industries, an Illinois corporation, "tens of thousands of dollars in sales and thousands of dollars in profits per day," but conceding that Ghost continues to "conduct[] online sales and ship[] from suppliers and other *out of area* dealers." (emphasis added).) Moreover, even assuming, for the purposes of this motion, that out-of-state manufacturers lose sales due to the loss of one dealership in Norridge, the burden would be negligible and far out-weighed by the Village's legitimate interest in regulating local land use. *See, Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970)(burden on out-of-state businesses not "clearly excessive" compared to local interest); *Illinois Sporting Goods Ass'n*, 845 F. Supp. at 587 (upholding County gun shop prohibition as reasonably related to legitimate government interest). Plaintiffs' repeated references to unrelated commerce clause cases are unsupportive of a claim in this case. (*See e.g.*, Response, p. 29 (citing *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 521, 55 S. Ct. 497 (1935) (New York directly regulating the price to be paid in Vermont for milk acquired in Vermont; not regulating local businesses).)

Despite the above flaws, plaintiffs argue that the court is "required to accept" their bald claims. (Response, p. 29 ("At this stage in the case, courts are required to accept these allegations as true: the UVA and RO burden interstate commerce by suppressing the interstate trade in a lawful product in the absence of any putative local benefit.") The court has no such obligation. Without sufficient grounds for such a claim, the Amended Complaint fails to satisfy federal

pleading requirements and fails to demonstrate that plaintiffs are entitled to relief. Fed. R. Civ. P.

Rules 8, 12(b)(6). Given no support, the Second Claim should be dismissed.

> **B. The Federal Firearms License (FFL) Program Does Not Negate Local Zoning and Business Regulations**

Plaintiffs argue that the Village must allow plaintiffs to sell weapons in their community

because the ATF approved a federal license to sell guns (i.e. Federal Firearms License (FFL)).

(Response, p. 32.) Like most federal permits and licenses, an FFL merely authorizes gun sales—

it does not grant or guarantee a right to sell guns in all state and local jurisdictions. Just the

opposite, ATF's FFL regulations expressly state:

> A license issued under this part confers *no right or privilege to conduct business* or activity contrary to State or *other* [i.e. local] law. The holder of such a license is not by reason of the rights and privileges granted by that license immune from punishment for operating a firearm or ammunition business or activity in violation of the provisions of any State or other law.

27 C.F.R. § 478.58 (emphasis added)

Plaintiffs' arguments are frivolous and their Second Claim should be dismissed.

## VI. PLAINTIFFS' THIRD CLAIM FAILS TO IDENTIFY A FIRST AMENDMENT VIOLATION, OR STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

> **A. Plaintiffs Have Failed to Identify an Unconstitutional "Prior Restraint"**

In their Response, plaintiffs repeatedly confuse restraints on business practices (i.e.

selling weapons) with unconstitutional "prior restraints" on speech (i.e. provide unbriddled

discretion over permits for *speech-related* activity). *FW/PBS, Inc. v. City of Dallas*, 493 U.S.

215, 225-26 (1990) (elements of unconstitutional prior restraint include: 1) unbridled discretion

over speech which could lead to censorship; and 2) unlimited time to delay approval for speech-

related activity); *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008).

Neither the Operations Agreement nor Revised Ordinance provide local officials with any

discretion over plaintiffs' future speech content. The Revised Ordinance does not contain a

single provision which addresses, let alone restricts, speech-related activity. (Am. Compl. Ex. D.) (notably, signs advertising for guns or gun dealerships are not restricted in any way). The Revised Ordinance simply addresses the commercial practice of selling guns—a practice which is not protected by the First Amendment. (*Id.*)

The Operations Agreement similarly steers clear of any discretionary, content-based review process by agreeing that there will be no "exterior signage" to review. (Am. Compl. Ex. C, ¶¶ 3, 4.); *See, FW/PBS, Inc.*, 493 U.S. at 225-26. As plaintiffs recognize in their Response, the "Village and plaintiffs agreed to objective standards, which offered no room for Village discretion or delay." (Response, p. 35-36.) The Village has no discretion to approve or deny signs based on content, nor does it have unlimited time to withhold approval of any sign based on content. *See, FW/PBS, Inc.*, 493 U.S. at 225-26. Moreover, the Operations Agreement paved the way for an expedited license decision (13 day review)—far from the delay in permitting that is seen in most "prior restraint" cases. *See, Samuelson,* 526 F.3d at 1051. For these reasons, plaintiffs' prior restraint claim should be dismissed. *Id.*

## B. Plaintiffs Fail to Identify a "Deprivation" of First Amendment Rights

Plaintiffs claim that the Operations Agreement deprived them of their First Amendment rights because it states that the proposed dealership "will not post or erect any exterior signage." (Am. Compl. Ex. C, ¶ 4.) Plaintiffs' decision to proceed without exterior signage was a choice—not a government deprivation of their First Amendment rights. *Snepp v. United States,* 444 U.S. 507, 509 n. 3 (1980) (parties can decide not to exercise First Amendment rights); *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185 (1972); *Forbes v. Milwaukee County*, 2007 WL 41950, *10 (E.D. Wis. 2007). As discussed above, plaintiffs do not allege that they requested exterior signs, let alone that the Village rejected any sign request. Rather, plaintiffs agreed that its business— which has interior doors (Suite 2) in the 7601 Montrose Avenue office building—would only

have interior signs around the actual entrance. (Am. Compl. Ex. C, ¶ 4.) By agreeing to move forward with interior signage only, plaintiffs sped up the Village's review and avoided any additional review under the Village's Sign Ordinance. Village of Norridge Code § 74-2.

Plaintiffs also allege that the "Village Attorney" told them that Ghost Industries would not receive a permit without signing an agreement. (Am. Compl. ¶ 22.) Even if assumed to be true for purposes of this motion, this statement by the Village Attorney is insufficient to support a claim that the Village or any of the individual defendants deprived plaintiffs of their right to commercial speech. Weapons dealers licenses are issued by the Village through the Village Clerk. (Am. Compl., Ex. B) The Village Attorney has no authority over licenses and his comments, alone, do not represent a Village "action." *See, Fyfe v. City of Fort Wayne*, 241 F.3d 597, 602 (7th Cir. 2001) (recognizing that "discriminatory statements are relevant ... only if they are both made by the decision-maker and related to the decision at issue."). Plaintiffs do not allege that the Village took any action in support of the attorney's alleged comments, or any actions to block plaintiffs' application and force an agreement.

In sum, plaintiffs do not allege they applied for an exterior sign, or otherwise sought Village's permission to include an exterior sign. If plaintiffs wanted an exterior sign, there is nothing in the Amended Complaint that suggests they could not have included signage in its proposal. Plaintiffs' Third Claim for relief should be dismissed.

## VII. CLAIMS FOUR AND FIVE FAIL TO IDENTIFY AN ADVERSE, RETALIATORY ACTION, AND THUS FAIL TO STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

Plaintiffs fail to identify a "constitutionally-protected" action for which they were allegedly retaliated against. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010)(requires showing that the plaintiff: 1) engaged in a constitutionally protected activity; 2) suffered a deprivation that deters constitutionally protected activity; and 3) a causal connection between the

two.) Contrary to plaintiffs' claim, "applying for, obtaining and taking steps to commence operating business" is not a constitutionally-protected activity. (Response, p. 38.) The Commerce Clause does not create an individual constitutional "right" to "operate a business," but rather reserves to the federal government the authority to regulate interstate commerce. U.S. Const. Art I, Sec. 8, Cl. 3. Moreover, defendants' review of plaintiffs' license application is not, on its own, retaliation for the exercise of any right. *See, Woodruff v. Mason*, 542 F.3d 545, 552 (7th Cir. 2008) (the plaintiff must allege some act "beyond the typical 'antagonism that arises between a regulator and a regulated.'") Plaintiffs' retaliation claims are frivolous and should be dismissed.

Finally, contrary to plaintiffs' repeated claim, the Village did not "put plaintiffs out of business as a weapons dealer." (*See*, Response, p. 38.) Plaintiffs admit in their Amended Complaint that they "continue to do business and engage in local, internet and interstate commerce . . ."). (Am. Compl. ¶ 1.) There are no alleged facts which suggest that plaintiffs are, or will be, out of business regardless of the Village's actions in Norridge.

Plaintiffs fail to identify a protected activity, adverse response, or causal connection—let alone all three—and thus cannot support a §1983 retaliation claim. *Watkins*, 599 F.3d at 794. For all of the above reasons, plaintiffs' Fourth and Fifth Claims should be dismissed.

## VIII. PLAINTIFFS' SIXTH CLAIM FAILS TO IDENTIFY A § 1985 CONSPIRACY, OR STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

Plaintiffs fail to explain how their conspiracy claim survives the intracorporate conspiracy doctrine. *Doe v. Bd. of Educ. of Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. 1366, 1381 (N.D. Ill. 1993). Instead, plaintiffs simply state that the doctrine "should not apply" in this case. (Response, p. 39) (citing *Wessel v. Vill. of Monee*, 04 C 3246, 2010 WL 2523574 (N.D. Ill. 2010), which does not mention or analyze the doctrine). The decision to

apply the legal doctrine is not discretionary. All alleged "participants" in the alleged "conspiracy" were officials for the Village, acting in their official capacity. (Am. Compl. ¶¶ 4-8.) Municipal officials who are jointly pursuing the municipality's business "do not become conspirators for purposes of section 1985 if acts within their employment are said to be discriminatory or retaliatory." *Bd. of Educ. of Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. at 1381.

Even aside from the doctrine, plaintiffs' § 1985 conspiracy claim is unsupported. Plaintiffs simply state the elements and suggest that it is "plausible" they could be met, without reference to any supporting grounds. (Response, p. 39.) In the end, there is no legal basis for a conspiracy claim against individual Village officials in this case. Plaintiffs' Sixth Claim for Relief should be dismissed.

## IX. PLAINTIFFS' *MONELL* CLAIM IS NOT A SEPARATE AND DISTINCT CAUSE OF ACTION, BUT RATHER IS SUBSUMED WITHIN PLAINTIFFS' §1983 CLAIMS IN OTHER COUNTS

Plaintiffs' Seventh Claim does not set forth any substantive claim against the Village, but rather simply discusses the *Monell* analysis that would apply to the other claims. The Seventh Claim is duplicative and should be dismissed. Moreover, given that plaintiffs have failed to properly state a §1983 claim against any defendant in any of the other counts (as discussed above), the *Monell* analysis is moot. For both of these reasons, plaintiffs' Seventh Claim should be dismissed.

## X. PLAINTIFFS' EIGHTH CLAIM FOR RELIEF FAILS TO STATE AN ANTITRUST CLAIM

Defendants established in their Motion to Dismiss that plaintiffs' Eighth Claim, a purported antitrust claim, should be dismissed because it alleges nothing more than mere regulation based on unilateral action by the Village. Defendants also raise for consideration state

action immunity from antitrust liability, and that under the Local Government Antitrust Act, 15 U.S.C. §35(a), (the LGAA) the individual defendants are immune from liability. Plaintiffs agree that the LGAA defeats their claim against the individuals, but pursue a hyperbolic argument about the regulation of their gun selling business being "severe," and therefore they are for some reason relieved from their obligation to plead facts to show the elements of an antitrust action against defendants.

Defendants cited to *Fisher v. City of Berkeley, California*, 475 U.S. 260, 267, 106 S.Ct. 1045, 1049 (1986), and its unequivocal language that restraints imposed unilaterally by a government in "the ordinary relationship" between the government and its subjects, do not qualify as a combination in restraint of trade sufficient to state an antitrust action. Plaintiffs argue that *Fisher* is inapplicable because, in their view, the "relationship" between plaintiffs and the Village was severe, not "ordinary." This distinction must be tongue-in-cheek. Surely plaintiffs know that they cannot negate the rule of *Fisher* merely by characterizing the Village's licensing as containing "severe," rather than "ordinary," restrictions on their business. Plaintiffs give no explanation for why the regulation they complain about is anything more than a unilateral action of the Village, endemic to any municipal or state licensing program, and therefore exempt under *Fisher* from the reach of federal antitrust laws.

Regarding the potential application of state action immunity to plaintiffs' claim, plaintiffs make a perplexing argument without authority that state action immunity only applies to state law antitrust claims, not federal ones. Defendants can only ask where such a view may come from. State action immunity is established in federal case law, addressing federal antitrust claims, and holding that state regulatory action is not subject to antitrust liability. *Justice v.*

*Town of Cicero*, 577 F.3d 768 (7th Cir. 2009); *Campbell v. City of Chicago*, 823 F.2d 1182 (7th Cir. 1987).

Plaintiffs also argue that defendants are not entitled to state action immunity because they failed to act in "good faith." The Amended Complaint, aside from its outlandish conclusions, fails to establish any bad faith by defendants. Nevertheless, the objective motivations of Village officials have nothing to do with state action immunity. If the State of Illinois granted the Village the power to regulate gun sales businesses, which defendants submit it did, the immunity applies, and subjective good faith is not an issue.

Finally, plaintiffs argue that state action immunity would not be applicable because the Village has banned plaintiffs from commerce that the state allows. This allegation, again, is unsupported. The State of Illinois has not passed any type of legislation regulating transactions in weapons, other than Criminal Code prohibitions on the sales of certain types of weapons, such as machine guns, sawed off shotguns and bombs (720 ILCS 5/24-1(a)(7), or sales to particular persons, such as felons, gang members and narcotic addicts (720 ILCS 5/24-3). Illinois leaves municipal home-rule powers available to home-rule municipalities to enact their own regulations to enforce state criminal laws regarding weapon sales and enhance local public safety. No state law prohibits any of the regulations at issue here. Indeed, the application of the federal concept of state action immunity to federal antitrust liability arises out of the state's grant of home-rule powers for local regulation. *Justice v. Town of Cicero*, 577 F.3d 786 (7th Cir. 2009). Plaintiffs' arguments in support of their Eighth Claim are meritless.

## XI.   PLAINTIFFS' NINTH CLAIM FOR RELIEF, ALLEGING A VIOLATION OF THE LANHAM ACT, IS FRIVOLOUS

In their Motion to Dismiss, defendants show that plaintiffs' Lanham Act claim is frivolous. One defendant's alleged comment that the Village's current unnamed weapons dealer

"has agreed that it will cease doing business in the Village no later than April 30, 2013," cannot violate the Lanham Act, because such a statement is, by its own nature, not commercial advertising or promotion, and not a disparagement of anyone's goods or services. Plaintiffs' one-paragraph response does nothing more than say "yes it is." Plaintiffs state no cogent reason for why a statute that protects trademarks, and prohibits false advertising and commercial disparagement of products and services, applies to a statement by a Village trustee about when a business plans to close.

## XII. THE INDIVIDUAL DEFENDANTS CANNOT BE LIABLE FOR DAMAGES UNDER THE FEDERAL CLAIMS.

In their Motion to Dismiss, the individual defendants (all but the Village), move for dismissal of all damages claims against them, based on absolute and qualified immunity. Moreover, the non-Village Board defendants (Chester, Jobe and Bernardi), move additionally for dismissal because in their respective roles as Village Attorney, Police Chief, and Village Clerk, they would not have been participants in any of the actions which plaintiffs allege violated their constitutional or statutory rights. Plaintiffs' Response to defendants' motion regarding immunity demonstrates, to the extent that can be discerned in some intelligible way from their unstructured arguments, a lack of understanding of the concept of governmental immunity to federal claims.

### The Village Board Member Defendants have Absolute Immunity for their Legislative Acts

Defendants established in their Motion to Dismiss that the Board Member defendants, the trustees and Village President Oppedisano, have legislative immunity for any acts that could be attributed to them in the Amended Complaint. Plaintiffs sue the Board Member defendants for passage of the Operations Agreement granting a license and regulating a business, and the Revised Ordinance, both classic legislative acts. They involve the use of discretion, they are

policy-based considerations of community concerns wider than their impact on plaintiffs and they have prospective implications. Plaintiffs' Response begins with the mistaken notions that defendants have the burden of establishing entitlement to immunity, which they say should never be decided on the pleadings, that in any event the acts they complain of are not legislative, and if they were, defendants acted with malicious motives which, plaintiffs argue, overcomes the immunity.

Each of plaintiffs' contentions were dismissed in *Bogan v. Scott Harris*, 523 U.S. 44, 118 S.Ct. 966 (1998), cited in defendants' Memorandum supporting their Motion to Dismiss. The proposition that a party asserting governmental absolute immunity bears the burden to establish the justification for it applies only to expansions of an immunity beyond recognized categories. *Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 113 S. Ct. 2167 (1993)*, which plaintiffs cite to support their argument, addressed a court reporter's defense that the well-established absolute immunity for judicial acts applied to her failure to fulfill the duties of her office to provide a transcript to a criminal appellant. The Court placed the burden of justifying expansion of the judicial immunity on the court reporter who proposed it. Here, the absolute immunity of legislators for legislative acts has been clearly established, particularly after *Bogan.*

Equally wrong is plaintiffs' contention that legislative immunity should not be decided on the complaint, especially since they have alleged that defendants acted with malicious motives toward plaintiffs. It should first be noted that plaintiffs' allegations of malicious motives are nothing but conclusory, and under the plausibility standard make no sense. What malice would defendants possibly have toward plaintiffs? If ever a case strikes one in the face as involving concerns over the impact of the granting of a license, as opposed to malice toward the person who wanted the license, it would involve the sales of guns in a community. Nevertheless, *Bogan*

22

also settles this point. The Court in *Bogan* observed that "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. The privilege of absolute immunity would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." 523 U.S. at 53. Plaintiffs want precisely what *Bogan* prevents, that absolute immunity be cancelled based on their implausible conclusory allegations.

Regarding plaintiffs' argument that the challenged acts were not legislative, *Bogan* once again settles it. Plaintiffs complain of the passage of an ordinance and an agreement regarding the licensing of their business. In *Bogan*, the Court stated that the act of voting for an ordinance is "quintessentially legislative." Plaintiffs speculate that the Board members never voted on the Operations Agreement. If not, why are they sued for it? The Amended Complaint alleges quintessentially legislative acts by defendants which invokes their absolute immunity from liability. *Biblia Abierta v. Banks,* 129 F.3d 899 (7th Cir. 1997.

The cases plaintiffs cite are completely inapposite. *Aboufariss v. City of DeKalb*, 305 Ill.App.3d. 1054, 713 N.E.2d. 804 (2d. Dist. 1999), addressed the absolute immunity of prosecutors for acts in the course of a prosecution. It did not address legislative immunity at all. Plaintiffs quote from that case, that "to be protected, a public officials' actions must fall within the scope of an official's authority and should not be the result of malicious motives . . ." referred solely to public official immunity under Illinois law against state law claims against a prosecutor for malicious prosecution. The citation is an attempt to pull the wool over the court's eyes.

Likewise, *Ex Parte Young*, 209 U.S. 123 (1908), and *Mathews v. Eldridge*, 424 U.S. 319 (1976), have nothing to do with the case at bar. *Ex Parte Young* is the seminal decision on a state's 11th Amendment immunity from suit in federal court. *Mathews* addressed the procedural due process required to terminate social security disability benefits.

**All Individual Defendants have Qualified Immunity**

The first prong of the qualified immunity analysis, why constitutional or statutory claims have not been stated against defendants, is addressed in the earlier sections of defendants' Reply. Regarding the additional reasons why such claims have not been stated against the non-board member defendants, Chester, Jobe and Bernardi, plaintiff first asserts that Clerk Bernardi could be liable because she signed the Revised Ordinance and Operations Agreement, oblivious to her signature being nothing more than an attestation to the signature of the Village President that appears on each. Plaintiffs explain in their Response that their complaint against Chief Jobe is that he received the daily reports which were part of the original ordinance that plaintiffs complain was supplanted by the revised application. Plaintiffs have not demonstrated how collecting reports pursuant to an ordinance could possibly violate their constitutional rights.

Regarding Village Attorney Chester, plaintiffs hyperbolically describe Chester's representation of Village officials as part of a "conspiracy." Certainly private individuals can conspire with public officials to violate a person's constitutional rights, but to say that an attorney's representation of his governmental client constitutes a conspiracy makes the concept of conspiracy meaningless. An attorney/client relationship, part contractual, part fiduciary, is not a conspiracy. *Heffernan v. Hunter*, 189 F.3d. 405 413 (3rd Cir. 1999); *Evans v. Chichester School District*, 533 F.Supp.2d. 523 (E.D. Pa. 2008). The cases plaintiffs cite do not establish anything close to the contrary. *Deck v. Leftridge*, 771 F.2d. 1168 (8th Cir. 1985), held that

ineffective assistance of counsel by a public defender was not conspiracy with the judge to convict the plaintiff. *Hughes v. Tarrant County*, 948 F.2d. 918 (5th Cir. 1991), held that a County District Attorney was not entitled to quasi-judicial immunity for advice given to the County. *Wade v. Byles*, 83 F.2d. 902 (7th Cir. 1996), held that a private security guard at a CHA building was not a state actor under §1983. No case plaintiffs cite establishes that providing legal advice could establish a conspiracy for §1983 liability.

Plaintiffs also argue that Chester told plaintiff "they [the Board and President] wanted to protect their political careers – God forbid something should happen . . ." and cites to the Amended Complaint, ¶9. (Resp. p. 46) Plausibility is strained by a theory that an attorney explaining why his clients are acting on an application could implicate the attorney in unconstitutional conduct. Lawyers offer explanations for their client's actions all the time. Indeed, the quoted statement, even if it occurred, which must be accepted at this point, shows Chester speaking on behalf of his clients, and relaying their reservations and concerns, not acting on his own behalf. Chester is entitled to dismissal.

Going beyond the specific actions of any defendant, plaintiffs fail the second prong of the qualified immunity test because they fail to demonstrate that the rights they claim were violated were clearly established. Plaintiffs demonstrate a clear lack of understanding of the concept of qualified immunity, particularly that determining whether a right is clearly established must be judged in the specific context of the case, not by broad propositions. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). Plaintiffs resort to the broadest of broad proclamations for clearly established rights. They speak of their right "to follow any lawful calling . . ." (Resp. p. 22), and their right to "life, liberty, or property" (Resp. p. 43). Qualified immunity would be meaningless if such broad protection substituted for clearly established rights.

25

Finally, it appears that plaintiffs argue, as with their argument against absolute immunity, that defendants acted with malicious motives, which they contend, defeats qualified immunity. There has not been a subjective component to qualified immunity since 1982, when the Supreme Court, in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982), held that qualified immunity is based solely on an objective assessment of the law, not on the subjective good faith of the defendant. Shame on plaintiffs for not knowing that, and dragging these defendants through this harsh and already expensive lawsuit, with absolutely no support for their argument to overcome qualified immunity other than general principles of law that are no more specific than citing the Constitution itself. Plaintiffs even argue the benefit of the principals of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957), that a complaint should not be dismissed if any set of facts can be proven to support it, which was supplanted by the plausibility rule in *Bell Atlantic v. Twombly*. All of the individual defendants either have absolute or qualified immunity, or both, and should be dismissed from this lawsuit.

### XIII. THERE IS NO BASIS FOR PLAINTIFFS' FIRST PENDENT CLAIM

In their Motion to Dismiss, defendants demonstrate that plaintiffs' First Pendent Claim, which purports to be brought under the declaratory judgment section of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), should be struck because it is procedurally deficient, in that it attempts to import a portion of the Illinois Code of Civil Procedure, which provides the procedural law for a declaratory judgment action in the Illinois state courts, to federal court. Plaintiffs' First Pendent Claim is also substantively deficient, in that to the extent that plaintiffs are seeking a declaratory judgment challenging the Village's power to regulate plaintiffs' business under state law (apart from the improper procedural statute under which it is brought), the Village's power to license and regulate gun sales businesses is uninhibited.

Plaintiffs provide only a one-paragraph perfunctory response to defendants' motion regarding the First Pendent Claim, merely saying, without support, that they can bring an action under §2-701 of the Illinois Code of Civil Procedure in federal court, because the court has supplemental jurisdiction over state law claims that are related to federal claims. Plaintiffs' Response entirely begs the question regarding the procedural deficiency in their First Pendent Claim, and totally ignores the substantive basis for dismissal of that claim. Plaintiffs' non-response regarding dismissal of the First Pendent Claim is reason enough to dismiss it.

### XIV. PLAINTIFFS FAIL TO STATE A BASIS FOR RESCISION OF THE OPERATIONS AGREEMENT IN THE SECOND PENDENT CLAIM.

Defendants established in their Motion to Dismiss that plaintiffs have not stated any basis for rescission, nor have they restored the status quo to perfect their rescission claim. Again, plaintiffs filed a perfunctory response that merely says that the Village lacked the authority to regulate their business, and a conclusory argument that plaintiffs were "illegally manipulated" into signing the Operations Agreement. There could have been no illegal manipulation or coercion if the Village had the power to regulate plaintiffs' gun selling business, which defendants have demonstrated it did. Plaintiffs fail to elaborate in any way, either in the Amended Complaint or in their Response, how they otherwise could have been illegally manipulated here. Plaintiffs provide only an incomplete string cite to cases that supposedly support their rescission claim. One of them, *"Coregis Insurance,"* cannot be found anywhere in their brief, and the others, *Ahern v. Knecht*, 202 Ill. App. 3d. 709 (1990), and *Menominee River Co., v. Augustus Spies, L&C, Co.*, 132 N.W. 1122 (Wis. Sup. Ct. 1912), which apparently refer to cases cited on Page 22 of their Response, provide no support for their position. Plaintiffs' Second Pendent Claim should be dismissed.

## XV.   PLAINTIFFS' THIRD PENDENT CLAIM SHOULD BE DISMISSED

In their Motion to Dismiss, defendants establish that plaintiffs' Third Pendent Claim, which purports to allege intentional interference with prospective economic advantage (IIPEA), is not sufficiently plead in the Amended Complaint, and that defendants have immunity under the Illinois Tort Immunity Act for those allegations.   Plaintiffs argue they have plead the elements of that cause of action because defendants' actions would "cut off prospective business and customers as well as inter-state trade." Again plaintiffs beg the question.  Any government regulation of a commercial business might limit in some way the ability to deal to certain potential customers.  However, that does not make an IIPEA claim.   Plaintiffs are required to show that defendants' actions interfered with a specific business opportunity by action directed at the persons doing business with plaintiffs, not at plaintiffs themselves.

Plaintiffs also do not address the immunity questions raised.  They cite a district court decision, *McGovern v. Pacetti*, which has absolutely no application to the case, and contrary to their assertion, willful and wanton conduct does not defeat the discretionary or legislative immunities raised. *See, In Re Chicago Flood Litigation,* 176 Ill.2d 179, 680 N.E.2d 265 (1997). Plaintiff's Third Pendent Claim should be dismissed.

## XVI.   PLAINTIFFS' FOURTH PENDENT CLAIM SHOULD BE DISMISSED

Plaintiffs concede that their Fourth Pendent Claim is improper, but seek leave to amend it to allege other violations of the Illinois Constitution.  They fail to say what they would allege, so their request to amend should be denied.

## XVII.  PLAINTIFFS' FIFTH PENDENT CLAIM SHOULD BE DISMISSED.

Defendants show that plaintiffs have no private right of action for damages under the Illinois Constitution.  *Teverbaugh v. Moore*, 311 Ill.App.3d.1, 724 N.E.2d. 225 (1st Dist. 2000).

Plaintiffs provide no authority for such a right of action and as a result, their Fifth Pendent Claim should be dismissed.

## XVIII. PLAINTIFFS' SIXTH PENDENT CLAIM SHOULD BE DISMISSED

Plaintiffs' Response to the Sixth Pendent claim is again perfunctory. They do not demonstrate why the Sixth Pendent claim should not be dismissed because of a lack of plausible allegations of conspiracy, the intra-corporate conspiracy doctrine, and the cited provisions of the Illinois Tort Immunity Act.

## XIX. PLAINTIFFS' SEVENTH AND TWO EIGHTH PENDENT CLAIMS SHOULD BE DISMISSED

Again, plaintiffs' only state the most perfunctory Response to the Motion to Dismiss plaintiffs' Seventh and two Eighth Pendent Claims. Therefore, they should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed.

/s/ Thomas G. DiCianni

Stewart H. Diamond (ARDC # 0629650)
sdiamond@ancelglink.com
Thomas G. DiCianni (ARDC #03127041)
tdicianni@ancelglink.com
Brent O' Denzin (ARDC # 6294953)
bdenzin@ancelglink.com
*ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.*
Attorney for Defendants
140 South Dearborn Street, 6th Floor
Chicago, Illinois 60603
(312) 782-7606
(312) 782-0943 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONY KOLE, individually and as President
and Manager of Ghost Industries, LLC, and
GHOST INDUSTRIES, LLC, an Illinois
limited liability company,

Plaintiffs,

v.

VILLAGE OF NORRIDGE, an Illinois
municipal corporation, RONALD A.
OPPEDISANO, individually and as President
of the Village of Norridge, JAMES J. JOBE,
Chief of Police of the Village of Norridge,
JUDITH D. BERNARDI, Clerk of Village of
Norridge, URSULA A. KUCHARSKI,
DENNIS H. STEFANOWICZ, DOMINIC
SULIMOWSKI, DOMINIC S. FALAGARIO,
JACQUELINE GREGORIO, AND ROBERT
MARTWICK, individually and as Trustee of
the Village of the Norridge and MARK V.
CHESTER, individually and as Village
Attorney of the Village of Norridge,

Defendants.

No. 11-CV-03871

Hon. Charles R. Norgle, Sr.
U.S. District Judge

Hon. Morton Denlow
U.S. Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record herein, hereby certifies that on February
21, 2012, the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS AMENDED COMPLAINT** was electronically filed with the Clerk of the U.S.
District Court using the CM/ECF System, which will send notification of such filing to the
following:

Walter Peter Maksym , Jr.
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Email: wmaksym@gmail.com

/s/  Thomas G. DiCianni
THOMAS G. DiCIANNI, (ARDC# 03127041)
One of the attorneys for Defendants

ANCEL, GLINK, DIAMOND, BUSH, DICIANNI
& KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:     (312) 782-7606
Facsimile:     (312) 782-0943
E-Mail:        tdicianni@ancelglink.com