# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 11 C 3871 | DATE | 3/28/2012 |
| CASE TITLE | Tony Kole vs. Village of Norridge | | |

**DOCKET ENTRY TEXT**

Defendants' motion to dismiss the complaint [13] is granted in part. Defendants Jobe and Bernardi are dismissed in both their official and individual capacities. Defendant Chester is dismissed in his individual capacity. The rest of the motion remains under advisement.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Before the court is Defendants' motion to dismiss Plaintiffs Tony Kole and Ghost. Industries, LLC's complaint. For the following reasons, the motion is granted in part.

The facts of this case are detailed in an earlier order. See Minute Order (Mar. 22, 2012). In short, Plaintiffs claim the Village of Norridge is trying to unlawfully legislate it out of existence. The court has dismissed the Village of Norwood's Board of Trustees ("Board Members") on grounds of legislative immunity. Id. Plaintiffs also sue Village Police Chief James J. Jobe ("Jobe"), Village Clerk Judith D. Bernardi ("Bernardi"), and Village Attorney Mark V. Chester ("Chester"). The amended complaint, which the court takes as true on this motion, alleges Chester and the Board Members conspired to unconstitutionally regulate Plaintiffs' firearms dealer business, first by forcing them to sign an operating agreement and then by amending the Village gun shop ordinance.

As to Jobe and Bernardi, the amended complaint mentions neither in its statement of facts. Instead, in the "Parties" section, Jobe is sued because in his capacity as Police Chief he "presently enforces the laws, ordinances, customs, agreements, practices and policies complained of in this action." Compl. ¶ 6. In the same section, Bernardi is sued because in her capacity as Clerk she "implements and maintains the laws, customs, practices and policies complained of in this action." Compl. ¶ 7. Plaintiffs level no specific allegations against either Jobe or Bernardi.

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 767 (7th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 n.14 (2007)). Plaintiffs accuse Jobe and Bernardi of working for the Village at the same time the Village was doing things Plaintiffs think are unlawful, nothing more. Any claims against Jobe and Bernardi that the Plaintiffs might intend would require robust speculation. The complaint therefore has not raised a right to relief against Jobe or Bernardi "above a speculative level." Id. Under Twombly, Plaintiffs have not stated a claim against Jobe or Benrardi. The motion to dismiss in both their individual and official capacities is granted.

Plaintiffs' allegations against Chester, the Village Attorney, are more developed. Chester allegedly

## STATEMENT

"contacted plaintiffs on behalf of the village, the president, and the trustees," conveying that although the proposed gun shop use was legal, the "the resistance and delay that the village, president and trustees were putting up . . . was because 'they wanted to protect their political careers—God forbid something should ever happen,'" and that gun shops were only permitted in the Village because K-Mart had lobbied Village leaders with the threat of closing their big-box store. Compl. ¶19. Chester and the Board Members conspired to "hold Plaintiffs' license application hostage." Id. ¶ 20. Chester also "on behalf of the village, its president and trustees, demanded, under color of law and using their offices, as an unlawful condition for the approval of Plaintiffs' application" that Plaintiffs enter into an agreement with the Village governing their business operations. Id. ¶ 22. Chester was, along with the Board Members, "planning and plotting to revise their then existing Weapons Dealers Ordinance," but the open-ended delay forced Plaintiffs to sign the operations agreement. Id. ¶ 23. Pursuant to the operations agreement and the revised ordinance, Chester and the Board Members used the police to enforce the gun shop regulations. Id. ¶ 44.

In sum, Plaintiffs allege Chester acted at the behest of Board Members. The Board is a legislative body and its members may receive legislative immunity, but legislative immunity may extend further. "More generally, an act by a local executive official that reflects a 'discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents' is a legislative act that is entitled to absolute immunity." Arlin-Golf, LLC v. Vill. of Arlington Heights, No. 09 C 1907, 2010 WL 918071, at *7 (N.D. Ill. Mar. 9, 2010) (quoting Bogan v. Scott-Harris, 523 U.S. 44, 55-56 (1998)). In the Seventh Circuit, under Bogan "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bagley v. Blagojevich, 646 F.3d 378, 391 (7th Cir. 2011) (quoting Bogan, 523 U.S. at 54). This court has already found both the operations agreement and the amended ordinance to be legislative acts under Bogan. See Minute Order (Mar. 22, 2012). The question is whether Chester is entitled to immunity under federal and state law.

The Board regulated a gun shop in its Village by way of an agreement that served as a precursor to ordinance revision. Informal negotiations are invariably part of the legislative process. See Bogan, 523 U.S at 46-47, 55-56; see also Biblia Abierta v. Banks, 129 F.3d 899, 903 (7th Cir. 1997) ("Any restriction on a legislator's freedom undermines the public good by interfering with the rights of the people to representation in the democratic process."). The Board's action to amend the gun shop ordinance was a "discretionary, policymaking decision implicating . . . the services" the Village provides. Bogan, 523 U.S. at 55-56. Plaintiffs allege no more than that Chester was a "local executive official" who furthered and enforced the type of legislative activity Bogan protects. Id.

Plaintiffs simply disagree with the legislative actions. Absent a specific delegation of power, see Vergara v. City of Waukegan, 590 F. Supp. 2d 1024, 1051 (N.D. Ill. 2008), a local municipal attorney does not act unilaterally or set municipal policy, see Smith v. Flaxman, 962 F.2d 11, at *1 (7th Cir. 1992) (unpublished table decision). Legislative immunity extends to "activities that could not give rise to liability without inquiring into legislative acts and the motives behind them; and . . . activities essential to facilitating or preventing the core legislative process." Biblia Abierta, 129 F.3d at 903. Moroever, officials "outside the legislative branch are entitled to absolute liability under § 1983 for their legislative actions." Bogan, 523 U.S. at 55. Here, Chester conveyed information from the Board to Plaintiffs regarding the operations agreement and the new ordinance. He worked with law enforcement to implement regulations. Plaintiffs acknowledge Chester acted "on behalf of the village, its president and trustees." Compl. ¶ 22. Chester's actions were "integral steps in the legislative process." Bogan, 523 U.S. at 55. "The doctrine of absolute legislative immunity recognizes that when acting collectively to pursue a view of the public good through legislation, legislators must be free to represent their constituents without fear of outside interference that would result in private lawsuits." Biblia Abierta, 129 F.3d at 903 (quotation omitted). Chester is immune from state and federal claims regardless of motive. See Wilson v. New York, 1 Denio 595 (1845) ("If corrupt, he may be impeached or indicted, but the law will not tolerate an action to redress the individual wrong which may have been done."); see also 745 ILCS 10/2-201, 202, 203, 205 (Illinois Tort Immunity Act provisions shielding pubic officials from liability under state law). Chester's motion to dismiss in his individual capacity is granted.

IT IS SO ORDERED.