IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, et. al., ) | |
| ) | Civil Case No: 1:11-cv-03871 |
| Plaintiffs, ) | |
| ) | Hon. Charles R. Norgle, Sr. |
| v. ) | U.S. District Judge |
| ) | |
| VILLAGE OF NORRIDGE, et. al., ) | Hon. Morton Denlow |
| ) | U.S. Magistrate Judge |
| Defendants. ) | |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO RECONSIDER DISMISSAL ORDERS

NOW COME Plaintiffs, TONY KOLE and GHOST INDUSTRIES, LLC, by and through their attorney, Walter P. Maksym, Jr., and submit this Memoranda of Law in Support of his Motion to Reconsider (Doc. 56) the Order of Dismissal entered on March 22, 2012 (Doc. 54) and the Order of Dismissal entered on March 28, 2012 (Doc. 55), stating as follows:

BACKGROUND

1. On March 22, 2012 this Court entered an order (Doc. 54) granting Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 11) in part by dismissing Defendants Kucharski, Stefanowicz, Sulimowski, Falagario, Regorio, and Martwick (the "Board Members") "in their official and individual capacities" and Defendant Chester "in his individual capacity" ("Dismissal Order No. 1").

2. On March 22, 2012 this Court entered a second order (Doc. 55) granting Defendant's Motion to Dismiss Plaintiffs'

Amended Complaint (Doc. 11) in part by dismissing Defendants Jobe and Bernardi in their individual capacities ("Dismissal Order No. 2").

3. For the reasons hereinafter stated, Plaintiffs respectfully maintain that said Dismissal Order No. 1 (Doc. 54) and Dismissal Order No. 2 (Doc. 55) (collectively "Dismissal Orders Nos. 1 and 2") misapprehended and/or overlooked the matters set forth therein and should therefore be reconsidered.

ARGUMENT

4. First and foremost, the Board of Trustees NEVER voted on, to approve or even ratify the *Ultra Vires* Agreement. (Amend. Comp. Ex. "C", Doc. 11) was NEVER voted on by the Board of Trustees. Indeed, this is the very reason the Agreement has been characterized from the onset as "*Ultra Vires*[1]". (Amend. Comp. Ex.

---

[1] *Ultra Vires* is defined online at *http://legal-dictionary.thefreedictionary.com/ultra+viresas* as follows:

"[Latin, Beyond the powers.] *The doctrine in the law of corporations that holds that if a corporation enters into a contract that is beyond the scope of its corporate powers, the contract is illegal.*

The doctrine of *ultra vires* played an important role in the development of corporate powers. Though largely obsolete in modern private corporation law, *the doctrine remains in full force for government entities.* …

Government entities created by a state are public corporations governed by municipal charters and other statutorily imposed grants of power. These grants of authority are analogous to a private corporation's articles of incorporation. Historically, the *ultra vires* concept has

2

"C", Doc. 11) Indeed, the record is clear that none of the Defendants have not maintained or shown it was. In order to claim legislative immunity, the Trustees would have necessarily have had to have performed a specific, identifiable legislative act. Defendants have made no such showing with respect to the *Ultra Vires* Agreement. Simply stated, no legislative act, no legislative immunity. Thus, the orders were erroneous insofar as they granted legislate immunity to the Defendant and to the extent it dismissed them from this case. *Critically, the Ultra Vires* Agreement (Amend. Comp. Ex. "C", Doc. 11), which involved no vote/legislative action or formal approval whatsoever by any Defendant is distinct from the Amended Ordinance (Amend. Comp. Ex. "D", Doc. 11) that only involved legislative action by the Board of Trustees – not Defendant Chester.

5. Secondly, the record shows unequivocally that Defendant Chester is an agent but not an elected official of the Defendant Village. While a legislative immunity argument, even if incorrect, might be applied to the elected Trustees and with respect to the fact that the Mayor and Clerk both signing the

---

been used to construe the powers of a government entity narrowly. Failure to observe the statutory limits has been characterized as *ultra vires*. …"

… With a government entity, … to prevent a contract from being voided as *ultra vires*, it is normally necessary to prove that the employee actually had authority to act. Where a government employee exceeds her authority, the government entity may seek to rescind the contract based on an *ultra vires* claim. (Emphasis supplied)

3

*Ultra Vires* Agreement as elected office holders without Board approval, Defendant Chester was not an elective or legislative office holder of any kind. So, simply, because he was not an elective legislated office holder — he no right to claim legislative immunity. He represented elected legislative office holders who, with respect to the *Ultra Vires* Agreement failed to commit a legislative act, he should then remain personally liable for his part in the conspiracy.

    6.   Nevertheless, though he was unelected and had *no vote*, he was at the forefront of imposing the unconstitutional conditions that Plaintiffs was coerced into agreeing to in order to obtain a weapons dealer's license. Defendant Chester constantly made false statements to Kole in an attempt to convince him to sign the *Ultra Vires* Agreement. Statements such as: "If you sign this Agreement, you will be GRANDFATHERED in. Any changes of law will not affect your business…. Because you will be GRANDFATHERED." He also made the statement to pressure and induce Plaintiffs to sign, by telling Kole: "Time is of the essence. The Board will be meeting next week. Without a signed Agreement, they cannot VOTE and APPROVE it." (This was during Thanksgiving week.) He also stated that, "if you do not sign the Agreement before the next Board meeting, you will be delayed another month before he (Defendant Chester) would instruct the Village to allow ATF to proceed with the premises inspection."

7. Defendant Chester is alleged to have conspired with the Mayor, Board of Trustees, and then Chief of Police (Charles Ghiloni) to spearhead their combined effort to deliberately deprive Plaintiffs of their constitutional rights via the *Ultra Vires* Agreement and the unconstitutional conditions imposed by it as a condition of licensure. As an experienced municipal attorney, Defendant Chester knew or should have known very well that the Weapons Dealer Ordinance had NO requirement whatsoever of applicants to enter into any type of Agreement nor any of the extra conditions imposed by it in order to receive a business license or to allow ATF to proceed. In my opinion, his actions — along with the actions of his co-conspirators — were malicious.

8. Norridge's one (1) page Weapons Dealer Ordinance (Amend. Comp. Ex. "B", Doc. 11) had been law for a decade. They had an *entire decade* to repeal or amend the ordinance if they truly (though unconstitutionally) felt that having a licensed firearms business in the Village was a threat to public safety. Yet, only after the U.S. Supreme Court spoke twice, in *Heller* and *McDonald* and Plaintiffs filed an application for a Weapons Dealer's License did they do so, only when they developed subjective and personal concern that their political careers might have been placed at risk. Their actions show without a doubt that their political careers took a greater priority over public safety.

9. *Ultra vires* actions are those "without any authority whatever". <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 101-102, n. 11 (1974) Indeed, municipalities regularly argue[2] that where contracts were, as in the instant case, never authorized by an ordinance they represent the *ultra vires* acts of village officials and are unenforceable and the law is that they and their officers have only those powers conferred by the Illinois Constitution (Art. 7, § 7) and by statute, and a municipality cannot be bound by an agreement that does not comply with prescribed conditions to the exercise of its power. *Ad-Ex, Inc. v. City of Chicago,* 297 Ill.App.3d 163 (1st Dist. 1990) Only an act *by a governmental body,* such as adopted legislation, can bind that body, a government is not bound to unauthorized acts of its officers. *Lake Shore Riding Academy, Inc. v. Daley,* 38 Ill. App. 3d 1000 (1st Dist. 1976); *People ex rel. American National Bank & Trust Co v. Smith,* 110 Ill. App. 2d 354 (1st Dist. 1969) Because no ordinance ever authorized execution of the *Ultra Vires* Agreement (Amend. Comp. Ex. "C", Doc. 11), it was *ultra vires* and void as a matter of law.

10. Finally, as additional supplemental authority in opposition to the rest and remainder of Defendants pending but

---

[2] See e.g., Village of Lake Zurich's Motion for Summary Judgment recently filed in *LaSalle Bank National Association v. Village of Lake Zurich, et. al.,* Case No. 08 CH 3290 (19th Cir. Ill. 2009) found on line at: *www.carelakezurich.org/index2.php?option=com_docman&task=doc_view&gid=109&Itemid=34*

6

not fully decided Motion to Dismiss that remains under advisement per this Court's said orders (Docs. 54 & 55), Plaintiff cite *Woollard v Sheridan, et. al.,* U.S. Dist. Ct. Case No. 2:09 CR 00222, Memorandum Opinion and Order - Doc. 2906 (S.D.W.V. March 6, 2012) ("Wollard"), rendered after Plaintiffs' Memorandum of Law in Opposition (the "Memo" - Doc. 36) was filed in response to said Motion.

11. As previously argued, the Plaintiffs complain of activities, their *Ultra Vires* Agreement (Amend. Comp. Ex. "C", Doc. 11) and Amended Ordinance (Amend. Comp. Ex. "D", Doc. 11) violate and unconstitutionally and unduly burden Plaintiffs' First Amendment Rights, Second Amendment right as incorporated pursuant to either the Privileges or Immunities or Due Process Clauses of the Fourteenth Amendment. See Plaintiff's Memo (Doc. 36)

12. Defendants have utterly failed to even attempt to articulate any compelling interest, which would justify their burdens in view the relevant logic and reasoning of *Ezell* (cited in Defendants Memo (Doc. 36) and *Woollard* that Plaintiffs respectfully submit extend to the matter at bar.

## CONCLUSION

Based on the foregoing argument and authorities, Plaintiffs respectfully pray that this Court; A.) reconsider said Dismissal Orders Nos. 1 and 2 (Docs. 54 & 55); B.) upon reconsideration

this Court enter an order vacating said Dismissal Orders Nos. 1 and 2, denying Defendants' Motions to Dismiss Plaintiffs' Amended Complaint (Docs. Nos. 13 & 30) in all respects with respect to said Defendants, and C.) consider *Woodard* as supplemental authority with respect to the rest and remainder of that ortion of Defendants' Motion to Dismiss currently under advisement, and granting Plaintiffs such other further relief as this Court may deem fair, just and proper in the premises.

                        Respectfully submitted,

                        TONY KOLE and GHOST INDUSTRIES, LLC, Plaintiffs,

                        By */s/ Walter P. Maksym, Jr.*
                          WALTER P. MAKSYM, JR., their attorney

Walter P. Maksym, Jr.
Attorney at Law
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (312) 218-4475
e-mail: wmaksym@gmail.com