IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, *et al.*, | |
| Plaintiffs, | No. 11-CV-03871 |
| v. | Hon. Judge Thomas M. Durkin<br>U.S. District Judge |
| VILLAGE OF NORRIDGE, *et al.*, | |
| | Hon. Morton Denlow<br>U.S. Magistrate Judge |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF NEW CASES FOLLOWING BRIEFING ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

## I. INTRODUCTION

On February 21, 2012, the parties completed briefing on the Defendants' Motion to Dismiss the Amended Complaint. On February 8, 2013, this matter was reassigned, and the Court requested memoranda from the parties summarizing new cases decided during the year that has passed since the Defendants' filed their Reply Brief in support of their Motion to Dismiss. The recent cases described below are relevant to the instant case.

## II. DISCUSSION

### a. *Moore v. Madigan*, 702 F.3d 988 (7th Cir. 2012).

Perhaps the most high-profile Second Amendment decision from the past year is *Moore v Madigan,* 702 F.3d 988 (7th Cir. 2012). While it is necessary to include this case in any summary of recent Second Amendment cases, this decision on gun "possession" has limited relevance to the Plaintiffs' claimed "right to sell" handguns under the Second Amendment. In *Moore*, plaintiffs challenged the constitutionality of Illinois' ban on carrying concealed guns. The district court concluded that, based on *District of Columbia v. Heller*, 554 U.S. 570 (2008),

the core Second Amendment right only exists inside the home. *Id.* at 935. On appeal, the Seventh Circuit disagreed.

In rejecting the ban on concealed gun possession, the Seventh Circuit noted that *Heller* simply indicated that the need for defense of self, family, and property is *most* acute in the home. *Moore*, 702 F.3d at 935. Therefore, "[a] right to bear arms thus implies a right to carry a loaded gun outside the home . . . ." and the Illinois conceal-carry law directly impacted this core right. *Id.* at 936. Consequently, the Court applied the means-end analysis identified in *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011), and concluded that the State failed to make the required "strong showing" of empirical evidence that the ban on concealed gun possession was vital to public safety. *Id.* at 940. The Court noted there is no need for empirical evidence to support possession bans for obviously dangerous people, citing *Heller*'s "presumptively lawful regulatory measures," which includes "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27, n.26 (emphasis added). In the *Moore* decision the Seventh Circuit reaffirmed its distinction between "presumptively lawful regulatory measures," such as limits on commercial gun sales, and the right of concealed gun possession at issue in the case.

> b. *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012).

In *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, the N.R.A. and other plaintiffs sued the A.T.F. and other agencies on behalf of its member federal firearms licensees prohibited from making firearm sales to 18-to-20 year old adults under federal statutes and regulations. 700 F.3d 185, 188 (5th Cir. 2012). The district court found that the plaintiffs' Second Amendment claim failed on the merits, and the Fifth Circuit agreed. *Id.* In finding that restrictions on sales to persons under the age of 21 fell outside the Second

Amendment's protection, the Fifth Circuit reviewed the longstanding nature of such restrictions on commercial sales, found in 19 states by the end of the 19th century, and 22 states by 1923. *Id.* at 202-04. Even if the Second Amendment guarantee was implicated, the sales restrictions survived because Congress established a reasonable fit between the restriction of young people's access to handguns, and the important government interest in curbing violent crime perpetrated by young people. *Id.* at 208-09. It was not enough that 18-to-20 year olds were mildly inconvenienced, as they were still allowed to possess handguns, but simply had to acquire them in other ways. *Id.* at 209.

    c. *Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012).

The recent decision in *Nordyke v. King* seemingly puts to rest the Ninth Circuit's alternative framework for Second Amendment cases, the "substantial burden" test. 681 F.3d 1041 (9th Cir. 2012). The question in *Nordyke* was whether the Second Amendment prohibits a local government from banning gun shows on its property. 644 F.3d 776, 780 (9th Cir. 2011). In evaluating an ordinance that generally prohibited the possession of a firearm or ammunition on county property, making no exception for gun shows, the Ninth Circuit held that only regulations which substantially burden the right to keep and to bear arms should receive heightened scrutiny. *Id.* at 782. During last summer's *en banc* rehearing for *Nordyke*, the Ninth Circuit declined to apply any test in affirming the dismissal of the plaintiffs' Second Amendment challenge, after the County reinterpreted its ordinance to permit gun shows on County property under certain conditions. 681 F.3d at 1044. Where the competing "substantial burden" framework remains unsettled at best, the Seventh Circuit's two-part analytical framework remains applicable to the case at bar. *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011).

    d. *U.S. v. Conrad*, No. 1:11CR00042, 2013 WL 546373 (W.D. Va. Feb 13, 2013).

The decision *U.S. v. Conrad* is relevant to the instant case because it approves of the Fourth Circuit's analysis rejecting a claimed "right to sell" under the Second Amendment. In *Conrad*, a Virginia district court denied the defendant's motion to dismiss a criminal charge of knowingly disposing of firearms to a prohibited person, based on the Second Amendment. 1:11CR00042, 2013 WL 546373 (W.D. Va. Feb. 13, 2013). The district found *U.S. v. Chafin* to be persuasive, which stated "the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm . . . ." *United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir.2011)(unpublished). The District Court observed that "[i]n this case, the defendant is not accused of actually selling a firearm, but the distinction is immaterial. An individual's decision to give or sell a firearm to another person does not directly bear on the individual's capacity to possess firearms in her own right." *Id.* at 7-8.

    e.   **Dearth v. Holder, No. 9-CV-587 (RLW), 2012 WL 4458447 (D.D.C. Sep. 27, 2012).**

The relevant issue in *Dearth v. Holder* was whether federal law could permissibly prohibit the sale of firearms to non-residents within the bounds of the Second Amendment. 9-CV-587 RLW, 2012 WL 4458447 (D.D.C. Sept. 27, 2012). An American citizen residing in Canada attempted to purchase firearms in the United States, and challenged the provision based on the Second Amendment; but the district court upheld the laws, in part because:

> "the right to purchase a firearm is *only a corollary* to the right to possess a firearm for self-defense; the two rights are *not synonymous*. Nor could they be, given the distinction between the regulation of firearms possession and the regulation of commercial firearms sales that was made by the Supreme Court in *Heller* and recognized by our Court of Appeals in *Heller II* . . ." *Id.* at 7 (emphasis in original).

*Dearth* is relevant to the instant case because it confirms that there is not a fundamental "right to sell" or purchase handguns under the Second Amendment.

f.  *U.S. v. Nowka*, **5:11-CR-00474-VEH, 2012 WL 2862061 (N.D. Ala. May 10, 2012)** *report and recommendation adopted*, **5:11-CR-474-VEH-HGD, 2012 WL 2862053 (N.D. Ala. July 11, 2012)**.

Finally, in *Nowka* the defendant sought dismissal of his indictments for selling firearms without a license, based on the Second Amendment. *U.S. v. Nowka*, 5:11-CR-474-VEH-HGD, 2012 WL 2862053, at 1 (N.D. Ala. July 11, 2012). The district court upheld the underlying statutes imposing "conditions and qualifications on the commercial sale of arms" as "presumptively lawful regulatory measures," and noted that the laws do not restrict any law-abiding citizen's right to possess firearms for self-defense. *Id.* at 5-6. Even if the federal laws regulated conduct within the scope of the Second Amendment, the statutes satisfied traditional means-end scrutiny because the laws were reasonably related, but not necessarily perfectly related, to the compelling governmental objectives in preventing violent crime and assisting the States in regulating the firearms traffic within their borders, by merely limiting the universe of lawful suppliers of firearms. *Id.* at 7-8.

Respectfully submitted:

By:   /s/ Thomas G. DiCianni
One of Defendants attorneys

Thomas G. DiCianni / ARDC #03127041
tdicianni@ancelglink.com
Brent O. Denzin / ARDC #6294953
bdenzin@ancelglink.com
***ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.***
Attorney for Defendants
140 South Dearborn Street, 6th Floor
Chicago, Illinois  60603
(312) 782-7606
(312) 782-0943 Fax

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2013, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF NEW CASES FOLLOWING BRIEFING ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Walter Peter Maksym , Jr.
Attorney at Law
2056 North Lincoln Avenue
Chicago, IL 60614-4525
wmaksym@gmail.com

/s/ Thomas G. DiCianni
THOMAS G. DiCIANNI, Attorney Bar # 03127041
One of the attorneys for Defendants

ANCEL, GLINK, DIAMOND, BUSH,
DICIANNI & KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:    (312) 782-7606
Facsimile:    (312) 782-0943
E-Mail:       tdicianni@ancelglink.com

\\agdom1\files\users\DHincks\Mydocs\Hincks\1. TGD\Kole\Memo New Cases 022213.doc  1340000.0001