IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, et. al., ) | |
| ) | Civil Case No: 1:11-cv-03871 |
| Plaintiffs, ) | |
| ) | Hon. Thomas M. Durkin |
| v. ) | U.S. District Judge |
| ) | |
| VILLAGE OF NORRIDGE, et. al., ) | Hon. Morton Denlow |
| ) | U.S. Magistrate Judge |
| Defendants. ) | |

PLAINTIFFS' MEMORANDUM
OF SUPPLEMENTAL AUTHORITIES REPORTED
SINCE BRIEFING OF DEFENDANTS' MOTION TO DISMISS

NOW COME Plaintiffs, TONY KOLE and GHOST INDUSTRIES, LLC, by and through their attorney, Walter P. Maksym, Jr., and pursuant to order of this court, submit the following four (4) relevant supplemental case authorities decided and reported since the filing of their Memorandum in Opposition to Defendants Motion to Dismiss (Doc. 36) on January 10, 2012:

    I.    *NATIONAL RIFLE ASSOCIATION, ET. AL., V. BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, ET AL.,* APPEAL NO. 11-10959, SLIP OPIN. FILED 10/25/12 (5TH CIR. 2012) ("*NRA*")

Plaintiff submits that the Fifth Circuit's recent ruling in *NRA* supports is position that the Defendant's actions and Ordinance impermissibly infringe on their and their patrons' rights under the Second Amendment to purchase, keep and bear arms.

*NRA* involved a challenge to a federal law[1] that prohibited, *inter alia,* "engag[ing] in the business of … "dealing in firearms," unless a person is a …"licensed dealer." (Thus, not a total ban as the total ban on weapons sales planned to be imposed in the instant case, but rather,

---

[1] 18 U.S.C. § 922(b)(1)

"[e]ssentially, [a]…safety-driven, age-based categorical restrictions on handgun access." i.e., based on "majority or minority is a status," rather than, as here, a "fixed or vested right" to advertise, market, sell and purchase firearms. Id at p. 29.

In *NRA* the Fifth Circuit held that, under *Heller*, to deny the right to purchase (or here, sell) firearms would essentially constitute a total ban on sales of firearms to "law-abiding, *responsible*" citizens would "violate the central concern of the Second Amendment, i.e., the ability of "law-abiding, *responsible*" citizens to purchase firearms. *See Heller*, 554 U.S. at 635 (emphasis supplied). Id. at p. 31. Plaintiff draws this Courts attention to the Court's holding:

> The crux of Appellants' position on the merits is that the federal ban at bar violates their rights under the Second Amendment, given the holding in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Appellants urge that, by preventing an 18-to-20-year-old from purchasing handguns from FFLs, the laws impermissibly infringe on that individual's right under the Second Amendment to keep and bear arms. Id at p. 8.
>
> * * *
>
> A regulation that threatens a right at the core of the Second Amendment—for example, the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family, *see Heller*, 554 U.S. at 635—triggers strict scrutiny. *See Heller II*, 670 F.3d at 1257; *Masciandaro*, 638 F.3d at 470; *Chester*, 628 F.3d at 682. Id at p. 13.

II. *MOORE, ET. AL. V. MADIGAN, ET. AL.,* APPEAL NOS. 12-1269 & 12-1788, SLIP OPIN. FILED 12/11/12, REHG. DEN. 2/22/13 (7TH CIR. 2012) ("*MOORE*")

Most recently, in *Moore*, the Seventh Circuit declared an Illinois law unconstitutional that forbade persons, with exceptions mainly for police and other security personnel, hunters, and members of target shooting clubs to carry a gun ready to use (loaded, immediately accessible — that is, easy to reach—and uncased) because it substantially curtailed, as Plaintiffs maintain Norridge's broad infringing ban does, the right of armed self-defense of the right of armed self-defense the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family both in an out of one's home. Judge Posner wrote:

> … a ban as broad as Illinois's can't be upheld merely on the ground that it's not

2

irrational. *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011); *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010) (*per curiam*); see also *Heller v. District of Columbia*, *supra*, 554 U.S. at 628 n. 27; *United States v. Chester*, 628 F.3d 673, 679–80 (4th Cir. 2010). …

In *Skoien*² we said that the government had to make a "strong showing" that a gun ban was vital to public safety—it was not enough that the ban was "rational." 614 F.3d at 641. A blanket prohibition on carrying gun in public prevents a person from defending himself anywhere except inside his home; and so substantial a curtailment of the right of armed self-defense requires a greater showing of justification than merely that the public *might* benefit on balance from such a curtailment, though there is no proof it would. Id at p. 14.

Plaintiff submits that the Seventh Circuit's recent ruling in *Moore* similarly supports their position that Defendants' actions and Ordinance substantially curtails and infringes their and their patrons' rights, as responsible adult, law-abiding citizens, to armed self-defense and to possess and use a handgun to defend their homes and families both in an out of their homes.

  III. NATIONAL ASSOCIATION OF TOBACCO OUTLETS, INC. V. CITY OF WORCESTER, 4:11CV40110-DWP, SLIP OPIN. 3/31/12 (U.S. DIST. CT. MASS. 2012) ("*NATO*")

Following a relatively straightforward application of U.S. Supreme Court precedent, on March 31, 2012 the Court ruled in *NATO* that ban on the sale of cigarettes and other tobacco products by local health-care providers, including chain pharmacies and other drugstores, along with the outdoor advertising of tobacco products in the City of Worcester was unconstitutional restriction on tobacco manufacturers' and retailers' free speech rights.

"The broad sweep of the ordinance suggests that the (city) did not consider how to tailor the restrictions so as not unduly to burden the plaintiffs' free speech rights and the rights of adults to truthful information about tobacco products," the U.S. District Court held. "Neither the city's goal to prevent tobacco-related health problems among adults, nor its correlative goal regarding minors, provides a basis for the ordinance," it added.

---

² *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*).

The District Court made reference to a decision recently rendered by the Supreme Court in *Sorrell v. IMS Health Inc.*, ___ U.S. ___, 131 S. Ct. 2653 (2011) that effectively prohibits the city from seeking to remove "a popular but disfavored type of product," such as tobacco, from the marketplace by prohibiting truthful, non-misleading advertisements directs to adults. Under that court decision, "Worcester may not prohibit tobacco advertisements in order to prevent adults from making the choice to legally purchase tobacco products."

*The ruling in NATO* supports plaintiffs position that they have a constitutional right to communicate with adult consumers through retail advertising because the First Amendment guarantees us the right to communicate with adult consumers and advertise to and sell another perfectly lawful products – here firearms that made be used for Second Amendment protected purposes. To allow otherwise would be to give *carte blanch* to governments to effectively defeat those right by eliminating commercial access to the very product that must be employed for such constitutionally protected purposes.

    IV.    *G*OWDER *v*. C*ITY OF* C*HICAGO,* 1:11-CV-01304, S*LIP* O*PIN.* D*OC.* 66 F*ILED:* 06/19/12 (N.D. IL E.D. 2012) ("G*OWDER*")

Lastly, Plaintiff submits that the District Court's ruling in *Gowder*, declaring a portion of the Chicago Gun Ordinance unconstitutionally void for vagueness, supports their position. Plaintiffs have argued, the strict scrutiny test is the correct standard to apply to the instant case because the Defendants actions and ordinance interfere with and ultimately and arbitrarily ban the advertising, marketing and sales of gun and thus dilutes, restricts, burdens and inevitably serves to curtail their and their customers' right to purchase and possess guns, a core enumerated constitutional right. See *NRA* and *NATO supra*. Following the Seventh Circuit's ruling in *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), District Judge Samuel Der-Yeghiayan's held in Gowder:

4

*...[t]he same Constitution that protects people's right to bear arms prohibits this type of indiscriminate and arbitrary governmental regulation. It is the opinion of this court that any attempt to dilute or restrict a core constitutional right with justifications that do not have a basis in history and tradition is inherently suspect."* Id at p. 23.

* * *

*…the strict scrutiny balancing test would be the most appropriate test to apply in the instant case, since "the right to possess guns is a core enumerated constitutional right"* and Section (b)(3)(iii) of the Chicago Firearm Ordinance completely restricts that right. *Heller II*, 670 F.3d at 1284 (Kavanaugh, dissenting); *see also Ezell*, 651 F.3d at 703 (stating that "laws imposing severe burdens get strict scrutiny"). Both *Heller I* and *McDonald* confirm that the right to keep and bear arms is a fundamental right under the Constitution. *Heller I*, 554 U.S. at 593-94; *McDonald*, 130 S.Ct. at 3036. *It is also well-established that the strict scrutiny test is generally "applied when government action impinges upon a fundamental right protected by the Constitution." Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983); *see also Doe v. Heck*, 327 F.3d 492, 519 (7th Cir. 2003)(stating that "[i]t is well established that when a fundamental constitutional right is at stake, courts are to employ the exacting strict scrutiny test"). Id. at p. 24. (Emphasis supplied)

## CONCLUSION

Plaintiffs respectfully submit the above-cited four (4) relevant case authorities, *NRA, More, NATO,* and *Gowder,* that were decided and reported since the filing of their Memorandum in Opposition to Defendants Motion to Dismiss (Doc. 36) on January 10, 2012 as supplements thereto.

                Respectfully submitted,

                TONY KOLE and GHOST INDUSTRIES, LLC, Plaintiffs,

                By */s/ Walter P. Maksym, Jr.*
                  Walter P. Maksym, Jr., their attorney

Walter P. Maksym, Jr.
Attorney for Plaintiffs
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (312) 218-4475
e-mail: wmaksym@gmail.com