**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TONY KOLE and GHOST INDUSTRIES, LLC, an Illinois limited liability company, ) ) ) Plaintiffs, ) ) v. ) ) VILLAGE OF NORRIDGE, an Illinois municipal ) corporation, ) ) Defendant. ) | Case No. 11 CV 3871 |

**SECOND AMENDED COMPLAINT**

**COME NOW** the Plaintiffs, Tony Kole (hereinafter "Kole") and Ghost Industries, LLC, an Illinois limited liability company (hereinafter "Ghost"), by and through undersigned counsel, and complain of the Defendant, Village of Norridge, an Illinois municipal corporation (hereinafter "the Village") as follows:

**INTRODUCTION**

1. In this action Plaintiffs bring their claims against the Defendant seeking the recovery of their lost profits, damages, equitable, declaratory, and other relief under, *inter alia*, 42 U.S.C. § 1983, 42 U.S.C. § 1988, *et. seq.*, the First, Second, and Fourteenth Amendments to the United States Constitution, and the Illinois Constitution, as the result of an Agreement between the parties that was forced on Plaintiffs and was the result of unconstitutional conditions. The Agreement, coupled with an Ordinance enacted by Defendant, serve to deprive Plaintiffs of their constitutional rights in the advertising and operation of their lawful retail sales firearms business, as well as directly causing Plaintiffs to suffer monetary damages. Ultimately,

the Ordinance will soon compel Plaintiffs to close their business or move it out of town, which also violates Plaintiffs' constitutional rights and causes monetary damages.

## THE PARTIES

2. Plaintiff Kole is a natural person and a citizen of the United States residing in Norridge, Illinois. He is the President and sole owner of the co-Plaintiff Ghost Industries, LLC. At all times relevant Kole possessed a valid State of Illinois Firearms Owner Identification Card (the "FOID Card") and is trained and experienced in the safety and use of various firearms or ammunition products.

3. Plaintiff Ghost is an Illinois limited liability company having its primary place of business in Norridge, Illinois. Ghost does business and engages in local, internet and interstate commerce as a duly federally licensed firearms and ammunition products dealer by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") pursuant to Title I, Gun Control Act of 1968 (the "GCA"), and pursuant to other applicable regulations and federal law. Ghost possesses a valid Federal Firearms License No. 3-36-031-01-4B-02885 (the "FFL"), a copy which is attached hereto as Exhibit "A."

4. Defendant Village is a municipal entity organized under the Constitution and laws of the State of Illinois.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. The Court has jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367.

6. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**STATEMENT OF FACTS**

7. In 2010, Plaintiffs decided, after extensive research, to start a business in the Village selling firearms to law enforcement officers, hunters, sportsmen, and other law-abiding citizens. At that time, Village had a home-rule ordinance permitting weapons dealers. Prior to securing and leasing a commercial space, Plaintiffs contacted the Village regarding any safety and other concerns the Village may have with the proposed business. Thereafter, a representative from the Village confirmed to Kole that his proposed business was permitted in the Village. The representative also provided Plaintiffs with relevant Village zoning requirements for the proposed firearms business.

8. In reliance on the confirmation and information from the Village, on or about November 16, 2010, Plaintiffs applied to the Village for a Weapons Dealers Business License under the Norridge, Illinois, Code of Ordinances, Chapter 22 - Businesses, Article VIII - Weapons Dealers (the "Original Weapons Dealer Ordinance"), a copy which is attached hereto as Exhibit "B," so Ghost could open and operate a gun shop. Ghost executed a lease at 7601 West Montrose Avenue, Suite 2, in Norridge and waited processing of its FFL application by the ATF and its weapons dealer business license by the Village.

9. On or about November 2, 2010, the ATF arranged a routine inspection of the leased premises so that it could issue a FFL to Plaintiffs. When *en route* to the inspection, the ATF agents informed Plaintiffs that the inspection was cancelled because the Village (A.) refused to give a routine approval to proceed; (B.) through its representative delayed issuance of a license and told Plaintiffs that the Village Present and Trustees would not allow firearms transfers on said premises.

3

10. That, at all times relevant, the law regarding the individual right to purchase and possess firearms for lawful purposes was clearly established, as well as the right to use firearms for lawful purposes including self-defense and training.

11. Following the Village's refusal to issue the business license and the resulting canceled ATF inspection, Plaintiffs sent a letter to the Village demanding compensation for the financial damages Plaintiffs business had suffered. The Village ignored Plaintiffs' demand.

12. Shortly thereafter, the Village's Attorney, Mark V. Chester, contacted Kole, purportedly on behalf of the Village and its officials. Chester acknowledged that Plaintiffs' proposed business was a lawful permitted occupation, and told Kole that regardless of that fact, the resistance and delay that the Village's President and Trustees were exerting regarding Ghost's ATF and Village business licenses were because "they wanted to protect their political careers - God forbid something should ever happen," and that the "reason this law [the Original Weapons Dealer Ordinance] was on the books is because a large retailer, K-Mart, had earlier approached the Village and lobbied its officials to permit the sale of firearms and ammunition in the Village or else it would relocate its store which would cause the Village to lose tax revenues," but eventually K-Mart voluntarily ceased selling and transferring firearms and ammunition, though the Original Weapons Dealer Ordinance remained in effect until February 11, 2011 and such business activities were, and continue to remain, lawful.

13. Despite knowing that Plaintiffs' business was permitted by Village Ordinance and was otherwise lawful, Village through its officials and representatives demanded, as a condition for the approval of Plaintiffs' business license, that Plaintiffs execute an "Agreement Between the Village of Norridge & Ghost Industries, LLC" (hereinafter the "UVA" (*Ultra Vires* Agreement)), a copy of which attached hereto as Exhibit "C." The UVA was not imposed on

4

any other business licensee, and resulted in the Plaintiffs being forced to comply with terms, conditions and restrictions on their ability to conduct business, as well as the waiver of their constitutional rights.

14. The UVA was forced upon Plaintiffs in order to prevent them from doing business, drive them out of business and deprive them of their sales, profits and livelihood. The UVA's intent was to deny Plaintiffs the ability to acquire, obtain, advertise for sale, market, keep and bear arms.

15. Having no recourse and facing the certainty of the Village's continued unlawful delay and withholding of the Plaintiffs' business license, which also improperly undermined Ghost's ability to be approved for an FFL by the ATF, and which also improperly denied Plaintiffs the ability to conduct their livelihood in the Village, Plaintiffs reluctantly succumbed to the Village's unconstitutional conditions and signed the UVA on November 29, 2010. Plaintiffs did not sign the UVA voluntarily, but were coerced into doing so, thus involuntarily giving up certain of their constitutional rights, as the only way they would get their business license.

16. After Plaintiffs signed the UVA, the Village revised the Norridge Weapons Dealers Licensing Ordinance by adopting and enacting "An Ordinance Repealing and Reenacting Chapter 22, Article VIII, and Amending Chapter 38, Section 22 of the Revised Municipal Code of the Village of Norridge - 2002 An Ordinance Reenacting Weapons Dealers Licensing and Amending Associated Fees and Penalties, Ordinance No. 1697-11" which was adopted on or about February 9, 2011 (hereinafter "the Revised Ordinance"), a copy of which is attached hereto as Exhibit "D."

17. At the time the Revised Ordinance was adopted, the Village President stated, *inter alia*, "It's so strong, I don't think anybody would want to come here. We only have the one weapons business here [Ghost] that we are aware of."

18. The Original Weapons Dealers Ordinance, as amended by the Revised Ordinance, purports to allow Plaintiffs to operate their business in the Village, but a variety of its sections work to effectively prohibit Plaintiffs from fully operating by unjustifiably burdening their operation and use. Specifically, The UVA contained the following provisions to which Plaintiffs were forced to capitulate:

> a. imposed a total ban on physical deliveries of firearms or ammunition on the premises - not even to Law Enforcement; and requiring that all deliveries sent from the Plaintiffs' premises be by unmarked packaging if the delivery is of a "used' firearm and shall be delivered in original packaging as provided by the manufacturer, wholesaler, or distributor if it is a "new" firearm and be in secure packaging sent via post office or courier to a licensed federal firearms dealer (FFD);
>
> b. imposed a total ban on storage of ammunition or firearms on the premises thereby requiring Plaintiffs needing to first receive payment from a customer, then order a weapon from their supplier, receive it, inventory, label and rush to send it out the same day; by prohibiting Plaintiffs from storing firearms or ammunition on the Premises overnight or longer than twelve (12) hours during any day and that any firearms in Plaintiffs' inventory on the premises will either be disabled by a locking device made for use on firearms or secured in a locked cabinet;
>
> c. imposed a total ban on the commercial display of Plaintiffs' lawful products by prohibiting Plaintiffs from maintaining a sales or retail display of any firearms or ammunition on the premises;
>
> d. prohibited Plaintiffs from posting or erecting any exterior signage indicating to the public that its offices are located on the premises or indicating the business of Plaintiffs (*i.e.* weapons sales), requiring the limitation of interior signage to that required by state and federal law and only allowing Plaintiffs to put its name on one or more interior door to premises;
>
> e. limited the amount of firearms Plaintiffs received per month by requiring that Plaintiffs agree to receive no more than forty (40) long guns or hand guns at the Premises per month for the first twelve (12) months following the date of the

UVA and the above-referenced amounts shall increase by ten (10) percent twelve (12) months, and twenty four (24) months thereafter, and to have no more than twenty (20) firearms in the premises at any one time;

f. required that Plaintiffs agree to receive no more than four thousand (4,000) rounds of ammunition per month for the first twelve (12) months following the date of the UVA and the above-referenced amounts shall increase by ten (10) percent twelve (12) months and twenty four (24) months thereafter, and to have no more than one thousand (1,000) rounds on the premises at any one time. Provided, however, larger quantities (not in excess of the monthly amount) may be on the premises for no longer than one (1) hour after they are delivered from the distributor, wholesaler or manufacturer;

g. arbitrarily dictated that Village's only current weapons dealer (Plaintiffs) must cease doing business no later than April 30, 2013;

h. required that in the event that Plaintiffs breach any of the conditions of the UVA and such breach is not cured within three (3) business days after the Village delivers written notice to the Plaintiffs specifying the breach, its license will become forfeit and Plaintiffs will cease doing business under that license.

i. required that the Village will only renew Plaintiffs' license twice provided that Plaintiffs remain in compliance with the UVA and to exempt Plaintiffs from any change in its business license ordinances and rules in any amendments the Village may make to its Code of Ordinances which directly or indirectly impacts Plaintiffs' business under the Weapons Dealer License granted by the Village and requiring that the Village in the event it repeals its Weapons Dealer Ordinance within thirty six months of the execution of the UVA, will exempt the Plaintiffs from the repeal during that period.

19. As a result of the Revised Ordinance, coupled with the terms of the UVA, Ghost will be forced to close its business or relocate out of town as of November 30, 2013.

20. As a result of the above, Plaintiffs fear prosecution under the Revised Ordinance, arbitrary revocation of the license eventually issued them by the Village, as well as interference, prohibition and the unlawful elimination of their otherwise lawful business activities, and reprisals by the Defendants, should they undertake such conduct in and about the Village or with respect to their suppliers and customers that may in any way be considered or construed by Defendants to be a breach of said UVA or a violation of the Revised Ordinance.

21. As a direct and proximate result of Village's unlawful impositions, Plaintiffs' business, and the expansion thereof, is essentially limited to only conducting online sales and shipping from suppliers and other out of area dealers, thereby resulting in the potential loss of tens of thousands of dollars in sales and thousands of dollars in profits per day.

22. The UVA and Revised Ordinance and burdensome requirements and restrictions contained in the Ordinances challenged in this complaint unjustifiably inhibit Kole's and Ghost's efforts to advertise, and sell firearms from Ghost's business location in Norridge.

23. But for the enactments and burdensome requirements and restrictions contained in the UVA and Ordinances challenged in this complaint, Plaintiffs would advertise, and sell firearms from, its business location in Norridge.

24. But for the enactments and burdensome requirements and restrictions contained in the UVA and Ordinances challenged in this complaint, Plaintiffs' would-be customers in and around Norridge who wish to exercise their constitutionally-protected rights to purchase firearms for lawful purposes including self-defense and training would be able to purchase said firearms, and accompanying ammunition, from Plaintiffs' business location in Norridge.

## COUNT I
## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

25. Paragraphs 1 through 24 are incorporated as though fully stated herein.

26. The Second Amendment, which applies against Defendant Village of Norridge by operation of the Fourteenth Amendment, secures the right to sell firearms through retail sales, to advertise the sale of firearms through retail displays, to advertise its business through exterior signage.

27. The Second Amendment, which applies against Defendant Village of Norridge by

operation of the Fourteenth Amendment, also secures the right of Ghost's would-be customers to purchase firearms through retail sales from Plaintiffs' business location in Norridge.

28. Village's laws effectively prohibit the operation of firearms dealers who wish to sell lawful firearms to the law-abiding public, by limiting the number of such permitted dealers to one (Ghost) and then banning them altogether after November 30, 2013. The firearms retail sales restriction and eventual ban and associated laws also impede gun ownership itself by barring permission to Ghost to market and sell its products, and inhibit the ability of Ghost's customers to purchase lawful firearms inherently necessary to the exercise of Second Amendment rights.

29. Village currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell and advertise the sale of arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Village's unconstitutional customs, policies, and practices.

30. Village currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell and advertise the sale of arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are also entitled to their actual monetary damages suffered as a result of Village's continued enforcement and maintenance of its unconstitutional customs, policies, and practices.

## COUNT II
## DENIAL OF SUBSTANTIVE DUE PROCESS
## U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983

31. Paragraphs 1 through 30 are incorporated as though fully stated herein.

32. The Fourteenth Amendment, which applies against Defendant Village of Norridge, secures Plaintiffs' fundamental property rights to their business license to own a retail sales firearms establishment, which also includes the fundamental rights to sell firearms through retail sales, to advertise the sale of firearms through retail displays, and to advertise its business through exterior signage. The Fourteenth Amendment also protects Plaintiffs' fundamental right to earn their livelihood in any lawful manner in which they choose.

33. Through arbitrary and capricious action on the part of the Village, Plaintiffs are unable to sell firearms through in-person sales, to have in-store displays of its products, or even to have exterior signage promoting its business. In addition, Plaintiffs will be forced to close or relocate out of the Village on November 30, 2013, due to the terms of the Revised Ordinance and UVA. These Village actions have resulted in a denial of Plaintiffs' Fourteenth Amendment substantive due process rights.

34. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.

35. Plaintiffs are also entitled to their actual monetary damages suffered as a result of Village's continued enforcement and maintenance of its unconstitutional customs, policies, and practices.

## COUNT III
## DORMANT COMMERCE CLAUSE
## U.S. CONST., ART. I, SEC. 8

36. Paragraphs 1 through 35 are incorporated as though fully stated herein.

37. Plaintiffs operate a reputable business whose product distributors and manufacturers are located in, *inter alia*, Illinois, Minnesota, Texas, Maryland, New York, Louisiana, Missouri, Ohio, Pennsylvania, Kansas, Arizona and Massachusetts and foreign counties such as Italy, Germany and Austria.

38. Even the few firearms that were manufactured in Illinois were wholesaled by the manufacturer to out-of-state distributors, and thus left the State of Illinois and then re-entered it before being acquired by Plaintiffs.

39. Virtually 100% of the firearms that Plaintiffs import, have sold, and sell physically crossed state lines and are marked *via* the Internet, the U.S. Mail, and telephonically.

40. Thus, almost all of Plaintiffs' business comprises interstate commerce.

41. The Commerce Clause, contained in Article I, Section 8 of the Constitution, as interpreted by the Supreme Court and other applicable Courts, prohibits local regulation that affects interstate commerce when the burden on such commerce is clearly excessive to any putative local benefits. This aspect of the Commerce Clause is commonly referred to as the "Dormant Commerce Clause."

42. The restrictions of the UVA and/or the Revised Ordinance harm not only Plaintiffs, but also the out-of-state distributors and manufacturers of the Plaintiffs' products, as well as the consumers of said products who would have made purchases from Plaintiffs.

43. The restrictions of the UVA and/or the Revised Ordinance burden interstate commerce in an excessively restrictive manner with no local benefits, and thus violate the Dormant Commerce Clause of the Constitution.

44. Village currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell and advertise the sale of arms, in violation of the (Dormant) Commerce Clause to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Village's unconstitutional customs, policies, and practices.

45. Village currently under color of law deprives individuals and businesses, including the Plaintiffs, of their right to keep and bear and/or sell and advertise the sale of arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are also entitled to their actual monetary damages suffered as a result of Village's continued enforcement and maintenance of its unconstitutional customs, policies, and practices.

## COUNT IV
## VIOLATION OF FREEDOM OF SPEECH
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

46. Paragraphs 1 through 45 are incorporated as though fully stated herein.

47. The First Amendment, which applies against defendant Village of Norridge by operation of the Fourteenth Amendment, secures the right to advertise lawful and constitutionally protected commercial enterprises such as Plaintiffs' firearms business, especially *via* exterior signage to promote Ghost's Internet sales business.

48.     Additionally, if Plaintiffs were allowed to make on-premises firearms sales, which they are wrongfully prohibited from doing due to the UVA and Revised Ordinance, the First Amendment would protect the commercial speech of marketing, advertising, retail displays and exterior signage to promote those sales as well.

49.     By so burdening the marketing and operation of a firearms store within the Village limits, and by effectively banning Plaintiffs from using exterior signage to promote its lawful business, the Village is causing constitutional and other financial harms to Plaintiffs.

50.     Village currently under color of law deprives individuals, including the Plaintiffs, of their right to free speech, in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

51.     Plaintiffs also seek monetary damages for lost profits and income resulting from the Village's unconstitutional ban on Plaintiff's lawful advertising and marketing of its lawful business, most notably through the Village's prohibition on exterior signage.

## COUNT V
## DECLARATORY JUDGMENT
## 28 U.S.C. § 2201

52.     Paragraphs 1 through 51 are incorporated as though fully stated herein.

53.     The UVA and Revised Ordinance are against public policy and violative of Article I. §§ 1, 2, 4, 6, 12, 15, 22, 24, and Due Process, Equal Protection and takings clauses of the Illinois Constitution, thus rendering them unconstitutional, null and void *ab initio*, and unenforceable.

54. The Village should be enjoined *pendent lite* and permanently, as well as all persons in active concert or participation with them who receive actual notice of the injunction, from directly or indirectly by any means enforcing or prosecuting all of the provisions of the UVA and Revised Ordinance;

55. That by reason of the foregoing an actual controversy exists and Plaintiffs are therefore entitled to a judicial declaration of their rights and declaratory relief pursuant to 28 U.S.C. § 2201 in connection therewith because said UVA and Revised Ordinance are oppressive, illegal as violating Plaintiffs' fundamental constitutional rights, are against public policy, forced on Plaintiffs and adopted by Defendants in bad faith and are therefore null and void *ab initio*, and therefore unenforceable.

## COUNT VI
## RETALIATION
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

56. Paragraphs 1 through 55 are incorporated as though fully stated herein.

57. Under color of law, by enacting the Revised Ordinance after Plaintiffs obtained a business license and began engaging in protected Second Amendment activity, to wit, the sale of firearms and ammunition, the Village through its officials willfully and intentionally deprived Plaintiffs of their aforesaid rights under the U.S. Constitution in retaliation for Plaintiffs having been persistent in their attempt to exercise their fundamental Second Amendment right to sell firearms to in-person customers at its business location, which is a business with which the Village disapproved.

58. The deprivation of Plaintiffs' rights is very likely to deter Plaintiffs' constitutionally-protected activity of operating a firearms store, especially since the Village

wrote the Revised Ordinance such that as of November 30, 2013, Plaintiffs will either be forced to close down or relocate outside of the Village.

59. The Revised Ordinance is causally linked to Plaintiffs' constitutionally-protected activities – as the sole weapons dealer in the Village, there is literally no one else to whom the restrictions and prohibitions in the Revised Ordinance could be referring. Also, if Plaintiffs were not engaging in the protected activity of firearms sales, Village would never have passed the Revised Ordinance.

60. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. The Village through its officials did thereby harm and continue to harm Plaintiffs and that such harm includes loss of profits, good will and other ongoing damages.

61. Plaintiffs' injuries were proximately caused by said Defendants' actions and policy-level decisions, including the custom and practice of deliberate indifference and efforts to thwart their rights by preventing them from engaging in, and driving them out of, a lawful business licensed by Federal Law.

## COUNT VII
## RETALIATION
## U.S. CONST., AMEND. XIV, 42 U.S.C. § 1983

62. Paragraphs 1 through 61 are incorporated as though fully stated herein.

63. The Fourteenth Amendment, which applies against Defendant Village of Norridge, secures Plaintiffs' fundamental property rights to their business license to own a retail sales firearms establishment, which also includes the fundamental rights to sell firearms through retail sales, to advertise the sale of firearms through retail displays, and to advertise its business through exterior signage.

64. Under color of law, by enacting the Revised Ordinance after Plaintiffs obtained a business license and began engaging in protected Fourteenth Amendment activity, to wit, the fundamental rights to sell firearms through retail sales, and the assertion of its rights to advertise the sale of firearms through retail displays, and to advertise its business through exterior signage; The Village, through its officials, willfully and intentionally deprived Plaintiffs of their aforesaid rights under the U.S. Constitution in retaliation for Plaintiffs having been persistent in their attempt to exercise their fundamental Second Amendment right to sell firearms to in-person customers at its business location, which is a business with which the Village disapproved.

65. The deprivation of Plaintiffs' rights is very likely to deter Plaintiffs' constitutionally-protected activity of operating a firearms store, especially since the Village wrote the Revised Ordinance such that as of November 30, 2013, Plaintiffs will either be forced to close down or relocate outside of the Village.

66. The Revised Ordinance is causally linked to Plaintiffs' constitutionally-protected activities – as the sole weapons dealer in the Village, there is literally no one else to whom the restrictions and prohibitions in the Revised Ordinance could be referring. Also, if Plaintiffs were not engaging in the protected activity of firearms sales, Village would never have passed the Revised Ordinance.

67. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. The Village through its officials did thereby harm and continue to harm Plaintiffs and that such harm includes loss of profits, good will and other ongoing damages.

68. Plaintiffs' injuries were proximately caused by said Defendants' actions and policy-level decisions, including the custom and practice of deliberate indifference and efforts to

thwart their rights by preventing them from engaging in and driving them out of a lawful business licensed by Federal Law.

### PRAYER FOR RELIEF

Plaintiffs request judgment be entered in their favor and against Defendant as follows:

1. An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing all offending sections of the UVA and Revised Ordinance listed above, or any other law, as against the ordinary marketing, operation and use of retail firearms sales businesses;

2. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

3. Declaratory relief consistent with the requested injunction;

4. Monetary damages in an amount to fully compensate Plaintiffs for the lost business due to the deprivation of their civil rights;

4. Costs of suit; and

5. Any other further relief as the Court deems just and appropriate.

Dated: July 9, 2013                           Respectfully submitted,

                                                    David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547/Fax 630.596.4445

                                                    By:    /s/David G. Sigale
                                                           David G. Sigale