IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, *et al.*, | |
| Plaintiffs, | No. 11-CV-03871 |
| v. | Hon. Judge Thomas M. Durkin<br>U.S. District Judge |
| VILLAGE OF NORRIDGE, | |
| | Hon. Morton Denlow<br>U.S. Magistrate Judge |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**INTRODUCTION**

On November 16, 2010, Plaintiffs Tony Kole and Ghost Industries, LLC, filed an application with Defendant Village of Norridge (the "Village") for a Weapons Dealers Business License under the Norridge, Illinois, Code of Ordinances, Chapter 22- Businesses, Article VIII-Weapons Dealers (the "Original Weapons Dealer Ordinance"). (2d Am. Compl. ¶ 8). Less than two weeks (13 days) after applying for a local weapons dealer license, Plaintiffs entered into an agreement ("Operations Agreement" or "Agreement") with the Village of Norridge ("Village"), which ended the Village's application review and secured a license for two years. (2d Am. Compl. ¶ 13; Ex. C (Agreement dated November 29, 2010)). In the Agreement, Plaintiffs agreed to a series of limits on their operations. (*See e.g.*, 2d Am. Compl. Ex. C, ¶ 4 (limit signage to their internal office suite doors); ¶ 12 (inspections and limits on hours of operations)).

The Operations Agreement provides agreed delivery methods for the weapons, hours of operation, and limits on overnight storage of weapons in the dealership office. (2d Am. Compl., Ex. C, ¶¶ 1-2). Notably, in the Agreement Plaintiff Ghost Industries agrees that it "will not maintain a sales or retail display of firearms or ammunition on the Premises" and "will not post

EXHIBIT "A"

or erect any exterior signage indicating that its offices are located on the Premises . . . provided, however, that Ghost will be allowed to put its name on one or more interior door to Premises." (2d Am. Compl. Ex. C, ¶¶ 3-4). The parties understood that the license would be renewed annually for two years and would be expressly exempt from any subsequent repeal of the Village's Weapons Dealers Licensing ordinance for the term of its license. (2d Am. Compl., Ex. C, ¶ 13).

After the Village's 13-day review, Plaintiffs waited another six weeks before receiving their requisite Federal Firearms License (FFL) from the Bureau of Alcohol, Tobacco and Firearms (ATF). (2d Am. Compl., Ex. A (Federal Firearms License approved on January 18, 2011)). Even with a local permit, Ghost Industries could not have opened its gun dealership until Plaintiffs' FFL was issued on January 18, 2011. (2d Am. Compl., ¶ 15 (admitting that, during the Village review, plaintiffs "*waited processing* of their FFL application by the ATF.")）

On February 9, 2011, over two months after processing and approving Ghost Industries' license, the Village reviewed and revised its Weapons Dealers Licensing Ordinance. The Revised Ordinance phases out gun dealership licenses within the Village limits by 2013. (2d Am. Compl. Ex. D.) As stated in the Agreement, the Revised Ordinance expressly exempts Ghost Industries' for the duration of Ghost Industries' two-year license. (2d Am. Compl. Ex. D, Sec. 22-362 (exempting persons that are "currently licensed by the Village as a weapons dealer as of January 1, 2011.")) The Revised Ordinance still allows Plaintiffs to conduct online sales within the Village. (2d Am. Compl., ¶ 21). On June 7, 2011, Plaintiffs filed a complaint alleging injuries caused by the Village's 13-day Review, the Operations Agreement and Revised Ordinance, followed by a Second Amended Complaint currently before the Court.

**Overview of Plaintiffs' Second Amended Complaint**

In their Second Amended Complaint, Plaintiffs claim that the Village's 13-day review of their weapons dealership licensing application: 1) was the product of a conspiracy to "deter Plaintiffs' constitutionally-protected activity of operating a firearms store" (2d Am. Compl. ¶ 58); 2) caused Plaintiffs to "either be forced to close down or relocate outside of the Village" (*Id.*, ¶ 58); 3) created an "unlawful delay" and " withholding" of the license application (*Id.*, ¶¶, 15); and 4) led Plaintiffs to "reluctantly" succumb to sign the Agreement (*Id.*, ¶ 15).

Additionally, Plaintiffs claim that the Agreement, signed by Plaintiffs 13 days after submitting their application, is invalid and unconstitutional because it limits Plaintiffs' constitutional rights. (2d Am. Compl. ¶ 33.) Finally, Plaintiffs claim that the Revised Ordinance, although it expressly exempts Ghost Industries for the duration of its license, is unconstitutional and creates a "fear" that it could be applied to Ghost Industries at any time. (2d Am. Compl. ¶ 20.)

**STANDARD OF REVIEW**

To state a claim, a complaint needs to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). To satisfy this standard, the allegations in the complaint must (1) describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests;" and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;'" *E.E.O.C. v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, (2007)). Specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 127 S.Ct. 1955 (2007).

3

This is Plaintiffs' third attempt to state claims in connection with the Agreement and Revised Ordinance. In addition to the 15 claims in the Amended Complaint previously dismissed, Plaintiff has withdrawn a duplicative First Amendment claim, a Fifth Amendment Claim, and a Fifth Amendment retaliation claim. This leaves a Second Amendment claim (Count I), Second Amendment retaliation claim (Count VI), a Dormant Commerce Clause claim (Count III), a First Amendment claim (Count IV), and a declaratory judgment claim (Count V), in addition to two new claims based on the Fourteenth Amendment—a substantive due process claim (Count II) and a retaliation claim (Count VII).

The Second Amended Complaint should be dismissed for failure to state a claim upon which relief could be granted. When ruling on a motion to dismiss under Rule 12(b)(6), courts accept all well-pleaded facts in the complaint as true, and draw all reasonable inferences from those facts in the plaintiff's favor. FED.R.CIV.P. 12(b)(6); *Tamayo v. Blagojevich,* 526 F.3d 1074 (7th Cir. 2008). However, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the courts.'" *Bell Atlantic Corp.,* 550 U.S. 544.

## DISCUSSION

Plaintiffs fail to identify a constitutional or legal injury caused by the Village's licensing of Ghost Industries' gun dealership or processing of its license application. The Second Amended Complaint fails to allege facts showing that the Village's 13-day review was anything but a standard—if not shortened—review of a licensing application, and the conclusory claims of a coerced agreement and sinister conspiracy lacks plausibility. Moreover, Plaintiffs fail to allege any injury caused by the Village's review, openly admitting that its opening was delayed by its

4

failure to obtain *federal* permits by the ATF. (2d Am. Compl. ¶ 8.) Plaintiffs also fail to allege facts demonstrating they could be entitled to relief under state law. Plaintiffs' claims are factually and legally unsupported and should be dismissed.

## I.   COUNT I (SECOND AMENDMENT) FAILS TO IDENTIFY A CONSTITUTIONAL DEPRIVATION WHICH WOULD ENTITLE PLAINTIFFS TO RELIEF

To set forth a viable § 1983 claim for violation of Plaintiffs' 2nd Amendment, plaintiffs must set forth facts that satisfy a two-part test outlined in *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011). First, Plaintiffs must show that the restricted activity is protected by the Second Amendment; and second, if the activity is protected, the Court must assess the strength of the government's justification for restricting or regulating activity within the scope of the Second Amendment right. *Id*. At 701-03; (Order, p. 13 (Apr. 19, 2013)).

### A.  Restricted Activity is Not Protected by the Second Amendment

Plaintiff's Second Amendment claim fails at the outset. The activity being restricted in this case—commercial sale of weapons in physical storefronts—is not protected under the Second Amendment. Unlike the facts in *Ezell*, *Heller*, and *McDonald*, Plaintiffs are not claiming that their Second Amendment right to possess firearms has been infringed. Individuals, including Plaintiffs, are allowed to possess firearms within the Village. Rather, citing an unrecognized Second Amendment "right to sell," Plaintiffs claim that the Village's limits on the sale of firearms somehow amounts to a Second Amendment violation. (2d Am. Compl. ¶ 32).

To be clear, there is no recognized 2nd Amendment "right to sell" firearms in commercial store fronts. Plaintiffs' conclusory allegations fail to demonstrate how the Village's prohibition on in-person sales substantially burdens the rights of Plaintiffs or their patrons. In fact, federal courts have reached the opposite conclusion. For example, in *United States v. Chafin*, the Fourth Circuit Court of Appeals recently rejected the "right to sell" argument, finding:

> [Plaintiff] has not pointed this court to any authority, and we have found none, that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm. Indeed, although the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm. *Cf. United States v. 12 200–Foot Reels of Super 8mm. Film,* 413 U.S. 123, 128, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) ("We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others."). Accordingly, [Plaintiff's] argument that [the criminal code on weapon sales] is unconstitutional under *Heller* must be rejected.

*United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011)(emphasis in original).

The Fourth Circuit's holding is consistent with the U.S. Supreme Court's view in *Heller* and *McDonald*. Unlike restrictions on gun possession, restrictions on gun sales are "presumptively lawful." *McDonald,* 130 S.Ct. at 3036. Moreover, the Fourth Circuit's general framework on Second Amendment issues, post-*Heller*, has been expressly adopted by the Seventh Circuit. *Ezell*, 651 F.3d at 703-04 (adopting a "general framework" that "has been followed by the Third, *Fourth* and Tenth Circuits in other Second Amendment cases"). Therefore, while the Seventh Circuit has not reviewed a "right to sell" claim, their approach clearly signals rejection.

Under the above-referenced framework (i.e. *Ezell* review), the Seventh Circuit first "decide[s] whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee [i.e. possession of arms for self-defense] . . . . If it does not, [the court's] inquiry is complete." *Ezell*, 651 F.3d at 703-04 (citing *United States v. Marzzarella,* 614 F.3d 85, 89 (3d Cir. 2010)). As the Fourth Circuit recognized, the commercial sale of weapons is not "conduct falling within the scope of the Second Amendment's guarantee" of personal possession of arms for self-defense. *Id*; *Chafin*, 423 F. App'x at 344; *See also*, *McDonald,* 130 S.Ct. at 3036.

The Supreme Court's *Heller* and *McDonald* decisions further support the Village's restrictions on in-person commercial sales. In both cases, the Court ruled that "conditions and

qualifications on the commercial sale of arms," like the Village's prohibition of storefront sales, are "presumptively lawful regulatory measures." *Heller*, 554 U.S. 570, 626-27 (2008). Plaintiffs do not set forth any facts rebutting the accepted presumption that the Village's commercial restrictions are lawful. Courts have disposed of Second Amendment challenges based on a failure to rebut the validity of a presumptively lawful regulatory measure, such as "conditions and qualifications on the commercial sale of arms." *United States v. Smoot*, 690 F.3d 215, 222 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 962, 184 L. Ed. 2d 747 (U.S. 2013)(criminal defendant failed to rebut validity of prohibition on felon firearm possession); *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012)(denial of motion to dismiss criminal charge affirmed where defendant "has not rebutted the presumption that the presumptively lawful regulatory measure of the long standing prohibition on felon firearm possession is unconstitutional as applied to him."); *United States v. Rhodes*, CRIM.A. 2:12-00010, 2012 WL 1981853 (S.D.W. Va. June 1, 2012)(same). The Court need not decide what level of constitutional scrutiny to apply to the (as yet unarticulated) right to sell or purchase guns because as a threshold matter, Plaintiffs simply make no allegations sufficient to rebut the presumption of validity established in *Heller*. *See*, *Teixeira v. Cnty. of Alameda*, C 12-03288 SI, 2013 WL 707043 (N.D. Cal. Feb. 26, 2013)(gun shop owners' Second Amendment claim dismissed for failure to rebut presumptively lawful regulatory measure). Without these required allegations, Plaintiffs Second Amendment claim should be dismissed.

Finally, even if a right to sell guns existed—which it does not—the Agreement and Revised Ordinance allow gun sales on-line, preserving one's ability to buy and sell a handgun in the Village of Norridge. (2d Am. Compl. ¶ 21). There are no factual allegations in the Second Amended Complaint that the Village's presumptively lawful regulations burden, even slightly,

Plaintiffs' right to sell or purchase handguns to Village of Norridge residents on-line. Plaintiff's Second Amendment challenge should be dismissed for failure to plead any facts to rebut the presumed validity of the Agreement and Revised Ordinance.

### B. Village Restrictions Do No Burden Individuals' Right to Possess Firearms

Moreover, Plaintiffs do not allege that the commercial sale restrictions prevent individual customers from purchasing and possessing firearms. The Agreement and Revised Ordinance do not prohibit all sales of firearms. As the Plaintiffs' concede, the Agreement and the Revised Ordinance allow online sales of weapons in the Village, thus maintaining a clear avenue for interested individuals to purchase and possess a firearm. (2d Am. Compl. ¶ 21). The Agreement and Ordinance merely set limits on in-person gun sales at street front shops located within the 1.8-square miles of the Village of Norridge. While Plaintiffs baldly claim a Second Amendment violation, such conclusory allegations are insufficient to survive a motion to dismiss. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements").

### C. The Village Has Strong Justifications for Restricting Gun Shops in an Area Densely Populated with Sensitive Places

As discussed above, Plaintiffs' Second Amendment claims fail to survive the first step in *Ezell*. There is no need for the Court to explore the Village's justification any further. However, even if the Court did reach the second step—the Village's justification for the restrictions—it supports dismissal as a matter of law. The Village has strong justifications for its regulations serving its important public safety goals. In a community just 1.81 square miles in area with a high density of "sensitive places," including schools, government buildings, parks, and places of worship, the Village found it necessary to restrict in-person gun sales to reduce the accessibility

8

of guns near these sensitive places. The Village's interest in ensuring the safe sale of firearms near sensitive places is compelling, or at least substantial, and the Village's prohibition on in-person gun sales is narrowly tailored, and certainly substantially related, to the Village's public safety goal.

The validity of regulations restricting gun possession in areas around sensitive places is well-recognized. The Gun Free School Zones Act (which prohibits possession of a firearm that has moved in interstate commerce, within 1,000 feet of the grounds of a public, parochial, or private school) has survived more than one Second Amendment challenge. In finding a school zone to be a sensitive place, one District Court stated that "[i]t is beyond peradventure that a school zone, where [the defendant] is alleged to have possessed a firearm, is precisely the type of location of which *Heller* spoke. Indeed, *Heller* unambiguously forecloses a Second Amendment challenge to that offense under any level of scrutiny." *United States v. Lewis*, 50 V.I. 995, 1000-01 (2008). See also *Hall v. Garcia*, 2011 WL 995933, at 5 (N.D.Cal. Mar.17, 2011)(upholding the Act under intermediate scrutiny, but noting that the regulation would survive "[u]nder any of the potentially applicable levels of scrutiny" because of the substantial government interest of protecting citizens from gun violence in sensitive spaces) and *Moore v. Madigan*, 702 F.3d 933, 947 (7th Cir. 2012)(Judge Williams mentions the Act in dissent, arguing "The Supreme Court tells us that a state can forbid guns in schools. That probably means it can forbid guns not just inside the school building, but also in the playground and parking lot and grassy area on its property too. And if a state can ban guns on school property, perhaps it can ban them within a certain distance of a school too.")

Prohibitions on gun sales near sensitive places have also been upheld. For example, in Alameda County, California, the county zoning ordinance prohibits firearm sales within 500 feet

9

of "sensitive places such as schools and residences." *Teixeira v. Cnty. of Alameda*, C 12-03288 SI, 2013 WL 707043 (N.D. Cal. Feb. 26, 2013). In *Teixeira*, gun shop owners were ultimately denied a conditional use permit, and challenged the zoning ordinance based on the Second Amendment. The District Court granted the county's motion to dismiss, finding the zoning ordinance to be one of the legitimate "qualifications on the commercial sale of arms" contemplated by *Heller*, and "a restriction on gun sales and purchases in or near sensitive places." *Id.* at \*6. There were no allegations that showed the "presumptively lawful Ordinance burdens, even slightly, plaintiffs' right to sell or purchase guns in Alameda County—a right which the U.S. Supreme Court has yet to recognize." *Id.* The Court also noted that the ordinance "is not a total ban on gun sales or purchases in Alameda County and therefore does not implicate the core right to possess a gun in the home for self-defense articulated in *Heller.*" *Id.* While the *Teixeira* court disposed of the Second Amendment challenge to this presumptively lawful regulatory measure at the first step of the *Ezell* framework, the valid prohibition on gun sales near sensitive places in *Teixeira* justifies the Agreement and Revised Ordinance requiring gun sales to be completed online in a Village densely populated with sensitive places.

For all of the reasons set forth above, Plaintiffs challenge to the Village's restriction on in-person gun sales under the Second Amendment fails to state a viable cause of action. Given that the claims fail as a matter of law, Count I should be dismissed with prejudice.

II.     **PLAINTIFFS' COUNT II FAILS TO IDENTIFY SUBSTANTIVE DUE PROCESS VIOLATIONS, AND THUS FAILS TO STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF**

After two prior complaints, Plaintiffs have decided to pursue a substantive due process claim for the first time in their Second Amended Complaint, arguing that the Plaintiffs have been deprived of property rights in their business license, among other unrecognized "fundamental" rights to sell firearms and "to earn their livelihood in any lawful manner in which they choose." Where the Agreement and Revised Ordinance do not interfere with any constitutionally protected fundamental rights, the rational basis test applies. Under the rational basis test the Court must determine whether the Agreement and Revised Ordinance bear "'a rational relationship to legitimate legislative goals.' The Supreme Court has 'stressed that this standard of review is typically quite deferential; legislative classifications are 'presumed to be valid,' largely for the reason that 'the drawing lines that create distinctions is peculiarly a legislative task and an unavoidable one.' The rational basis review does not authorize 'the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.'" *Illinois Sporting Goods Ass'n v. Cnty. of Cook*, 845 F. Supp. 582, 588-89 (N.D. Ill. 1994)(internal citations omitted)(no likelihood gun shop owners will prevail on substantive due process claim).

"The due process clause has been interpreted to place substantive as well as procedural restrictions on state action. Nowadays most of the substantive restrictions are based on liberties (such as liberty of speech and the press) protected by the Bill of Rights and held to be applicable to the states through the due process clause of the Fourteenth Amendment. No such liberty is claimed here. But the due process clause also places a residual substantive limitation on a state's depriving a person of life, liberty, or property: the deprivation must have a rational basis in some lawful interest of the state. This requirement is easy to satisfy, however, and is easily satisfied in

11

this case." *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1123 (7th Cir. 1983)(internal citations omitted)(deprivation of gun license not denial of substantive due process).

The Village may rightfully require the sale of guns to be conducted online, rather than in-person. "The sale of guns is fraught with both short-term and long-term danger to the public—or so at least . . . [municipal] authorities could rationally conclude, and no more is required to uphold the substantive validity of their action under the due process clause. The short-term danger is that the guns will be sold to criminals, children, and others who are, for excellent reasons, forbidden by law to have them; the long-term danger is that the circumstances of sale will encourage people to think of guns as weapons of aggression." *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1123 (7th Cir. 1983). The local public interest the Village seeks to serve by its Agreement and Revised Ordinance is to help limit or control the easy access to firearms and ammunition that exists in the Village today, and to lessen the degree of firearms-related violence that plagues our society. *Illinois Sporting Goods Ass'n v. Cnty. of Cook*, 845 F. Supp. 582, 589 (N.D. Ill. 1994). The Village reasonably determined that the location of gun shops in proximity to schools, public parks, and other sensitive areas sends a message that firearms are an acceptable part of everyday life. *Id.* The Village could reasonably believe that this message of acceptability could lead to further escalation of firearm violence in the Village. *Id.* Therefore, the Village determined that gun sales should be conducted online, rather than through face-to-face transactions in the Village. Although there may be differing opinions regarding whether this Agreement and Revised Ordinance will actually reduce the level of violence in the Village, Plaintiffs have not shown that it is irrational for the Village to believe that the gun shop prohibition will achieve its stated goals. *Id.* Based on the density of sensitive places in the Village, the Village's requirement for gun sales to be conducted online is a legitimate legislative

choice, that which should not be subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. *Id.* Plaintiffs plead no facts challenging the reasonableness of the Village's Agreement, and Revised Ordinance and, therefore, Plaintiffs' substantive due process claim (Count II) should be dismissed.

### III.   PLAINTIFFS' DORMANT COMMERCE CLAUSE CLAIM (COUNT III) FAILS TO STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

Despite negative treatment by the Court, Plaintiffs have repled a Dormant Commerce Clause claim, even though the Agreement and Revised Ordinance do not discriminate against interstate commerce. (*See*, Order 27 (Apr. 19, 2013)). As a result, Count III fails as a matter of law.

Under the Dormant Commerce Clause, state and local laws are generally analyzed under a two-tier approach. The first step is to determine whether the law "regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)(quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). A law is discriminatory if it involves "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* This first step is designed to ferret out laws that raise "the evils of 'economic isolation' and protectionism"—"where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." *Philadelphia v. New Jersey*, 437 U.S. 617, 623-24 (1978).

The second step is to apply the balancing test from *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970):

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then

the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, an on whether it could be promoted as well with a lesser impact on interstate activities. (Citation omitted)

The Seventh Circuit has explained that "a plaintiff has a steep hill to climb" to meet this standard, *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010), and likened it to "normal rational-basis" review. *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131-32 (7th Cir. 1995)("[L]aws that affect commerce without any reallocation among jurisdictions—that do not give local firms any competitive advantage over those located elsewhere—are constitutional if supported by a mere rational basis."); *see also, Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 126, 98 S.Ct. 2207, 2214  (1978) ("[t]he fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of *discrimination* against interstate commerce."); *Cavel, Int'l, Inc. v. Madigan*, 500 F.3d 551, 556 (7th Cir. 2007); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 938 (N.D. Ill. 2012).

In its April 2013 Order, the Court concluded that Plaintiffs' claim failed under the first step and that "Plaintiffs cannot show that the Agreement or Revised Ordinance discriminates against interstate commerce." (Order, 27 (Apr. 19, 2013)). As to the second step, Plaintiffs have not alleged facts sufficient to state a claim that will satisfy the *Pike* test. Specifically, Plaintiffs fail to identify any impact or burden on interstate sales—let alone a "clearly excessive" burden— imposed by the Village's Agreement or Revised Ordinance. However, since the Court has already decided that that Agreement and Revised Ordinance do not discriminate against interstate commerce, the *Pike* test does not apply, and further fact-finding as to Plaintiffs' dormant commerce claim is unnecessary. *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1134 (7th Cir. 1995)("[P]laintiffs never alleged that Chicago's ordinance

discriminates against interstate commerce in any way, *Pike* was never activated, and a trial was therefore unnecessary." (Rovner, J., concurring)).

Plaintiffs fail to identify a single provision in either the Operations Agreement or Revised Ordinance that affects or limits interstate commerce in any way. *See*, *Nat'l Paint & Coatings Ass'n*, 45 F.3d at 1131. The Revised Ordnance only impacts in-person sales between Illinois gun dealers and individuals in Illinois. (2d Am. Compl., Ex. D (Norridge, Ill. Code § 22-362)). Local restrictions on commerce between local business and local residents are well within the bounds of the Commerce Clause. *Buck v. People of State of Cal.,* 343 U.S. 99, 102-03, 72 S.Ct. 502, 504 (1952)(holding local licensing restrictions on taxicabs constitutional because they affect all companies, in-state and out-of-state, equally); *Illinois Restaurant. Ass'n v. City of Chicago,* 492 F. Supp. 2d 891, 899 (N.D. Ill. 2007)(upholding City's ban on sale of foie gras in City restaurants because the local ban does not "govern foie gras *production* or *pricing* [and] [t]hus, it neither regulates nor discriminates against interstate commerce.")

In this case, Plaintiffs focus on the interstate transaction between Ghost Industries and out-of-state suppliers. Such transactions are unrestricted and unaffected by the Agreement and Revised Ordinance. The Village in no way limits Ghost Industries ability to contract with out-of-state suppliers for firearm purchases. Rather, the Village limits the in-person transaction between Illinois gun shops (regardless of where they receive their firearms) and Illinois customers. If Ghost Industries decides not to purchase firearms from out-of-state suppliers, it is an internal business decision—not a requirement imposed by the Village of Norridge. Even if plaintiffs could demonstrate an impact on suppliers—which, again is caused by Ghost Industries internal business decisions—the impact in no way favors commerce from one state over another or

discriminates against non-Illinois businesses. *See*, *Nat'l Paint & Coatings Ass'n*, 45 F.3d at 1131; *Illinois Rest. Ass'n,* 492 F. Supp. 2d at 899.

Even if the *Pike* test were activated, the alleged burden on interstate commerce is not excessive in relation to the substantial local benefits provided by the Village's important regulations promoting the safe sale of firearms. Plaintiffs state no facts to support their bare conclusion that the Agreement and Revised Ordinance have "no local benefits." (2d Am. Comp. ¶ 43). As discussed throughout this Motion, the Village unquestionably has a legitimate local public safety interest in regulating the manner of gun sales within its borders. Even if all alleged facts are accepted, Plaintiffs have failed to state a claim for relief under *Pike*, and the Dormant Commerce Claim should be dismissed.

## IV. COUNT IV FAILS TO IDENTIFY A VIOLATION OF FREEDOM OF SPEECH, AND THUS FAILS TO STATE GROUNDS ENTITLING PLAINTIFFS TO RELIEF

The Court previously dismissed Plaintiffs commercial speech claim for the Agreement's ban on retail displays and Plaintiffs' prior restraint claim. In their Second Amended Complaint, Plaintiffs restate their First Amendment claim, focusing on the Agreement's prohibition on exterior signage. Specifically, Plaintiffs claim that the prohibition prevents Plaintiffs from promoting their website for internet gun sales.

As discussed in prior Motions, the First Amendment protects commercial speech but ultimately "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562-63 (1980). An advertisement for the Plaintiffs' website is not a kind of on-premise sign that is entitled to the protections for commercial speech under the First Amendment. The Village may permit on-site commercial signs, while prohibiting signs for off-site commercial sales because the Village could reasonably conclude that a commercial

enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available at that location than it has in using or leasing its available space for the purpose of advertising commercial enterprises located online. See *Metromedia, Inc.* v. *City of San Diego*, 453 U.S. 490, 512 (1981). A voluminous record is unnecessary to justify the Village's common-sense restrictions on off-premise signs. *Lavey v. City of Two Rivers*, 171 F.3d 1110, 1116 (7th Cir. 1999). Limits on off-premise advertising have been accepted by courts as furthering substantial legitimate traffic, aesthetic, and public safety goals. *Lavey*, 171 F.3d at 1116.

Additionally, it should be noted that the Plaintiffs do not contend that they are unable to advertize anywhere in the Village, just at the location where they agreed to prohibit exterior signage. The First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, and a restriction on expressive activity may be valid if the remaining modes of communication are adequate. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984). Plaintiffs may purchase billboards or conduct advertizing for their online business almost anywhere in the Village; the Agreement simply does not allow Plaintiffs to post an exterior sign for their off-site business at that location. The regulation is content-neutral, as Plaintiffs do not allege that the Village disagrees with whatever message might be conveyed; rather, the exterior signage prohibition at that location is a mere time, place, and manner restriction justified without reference to the content of any sign, which the Plaintiffs have yet to produce. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The Village's esthetic interests are sufficiently substantial to provide an acceptable justification for a content-neutral prohibition against exterior signs at that location.

*Vincent*, 466 U.S. at 807. Accordingly, Plaintiffs' First Amendment claim fails as a matter of law, and should be dismissed with prejudice.

## V. PLAINTIFFS' DECLARATORY JUDGMENT CLAIM (COUNT V) FAILS TO IDENTIFY STATE LAW GROUNDS ENTITLING PLAINTIFFS TO RELIEF

Count V restates a claim for declaratory relief under Article I §§ 1 (inalienable rights), 2 (due process and equal protection), 4 (freedom of speech), 6 (search and seizure), 12 (right to access), 15 (eminent domain), 22 (right to bear arms, subject to police power), 24 (retained rights), and Due Process, Equal Protection and takings clauses of the Illinois Constitution. Given that the above-referenced protections in the Illinois Constitution mirror the Federal Constitutional protections addressed in prior counts, Count V should be similarly dismissed. (See, Order, 44 (Apr. 19, 2013) (The Court noting that "[t]o the extent that the rights guaranteed by the Illinois Constitution mirror the federal Bill of Rights, the Court's rulings on Plaintiffs' federal claims may well resolve some of these state law issues").

Indeed, Illinois courts follow the "limited lockstep" approach for interpreting cognate provisions of our state and federal constitutions. *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673 ¶ 47 (internal citations omitted). Under this approach, when the language of the provisions within the Illinois and federal constitutions is nearly identical, departure from the United States Supreme Court's construction of the provision will generally be warranted only if the court finds in the language of the Illinois constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of the Illinois constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned. *Id.* Each and every section of the Illinois Constitution cited by the Plaintiffs is nearly identical to their federal counterparts, and Plaintiffs

make no allegations to suggest that these provisions of the Illinois Constitution should be construed more broadly than their federal counterparts.

Plaintiffs' declaratory judgment claim should be dismissed for the same reasons Plaintiffs' federal Due Process, First and Second Amendment claims in the Second Amended Complaint should be dismissed, as stated above. The Illinois Due Process Clause and Free Speech protections mirror the Federal Constitutional protections. In fact, the language of Illinois' right to bear arms is more limited than its federal counterpart because it is expressly "subject only to the police power . . . ." (Article I § 22). Having failed to set forth viable Federal Constitutional claims, Plaintiffs' similarly fail to set forth Illinois Constitutional claims.

Plaintiffs' Article I § 6 (search and seizure) claim should also be dismissed because the Court already determined that Plaintiffs cannot raise a plausible federal Fourth Amendment claim. (Order, 21 (Apr. 19, 2013)). Once again, Plaintiffs allege a "takings clause" violation without any supporting facts. This is now Plaintiffs third chance to explain their claim under the Fifth Amendment or its Illinois counterparts (Order, 10 n.4 (Apr. 19, 2013), and by failing to do so in their Second Amended Complaint, the claim should finally be dismissed with prejudice.

Plaintiffs claim under Article I, § 1 of the Illinois Constitution also fails. The right follow any of the common occupations of life is an inalienable right; however, it is well established that the right to liberty, property, and the pursuit of happiness is subject to the reasonable exercise of the police power of the states. *Frazer v. Shelton*, 320 Ill. 253, 265, 150 N.E. 696, 701 (1926). As explained above, the Village's Agreement and Revised Ordinance are a reasonable exercise of the police power, and Plaintiffs' claim on this basis should be dismissed.

Plaintiff also fails to state a claim under Article I, § 12 (right to access). As has been repeatedly stated, section 12 does not create a constitutional right to a certain remedy, or

mandate that a certain remedy be provided in any specific form; rather, it merely expresses a general statement of philosophy. *Schultz v. Lakewood Elec. Corp.*, 362 Ill. App. 3d 716, 724 (1st Dist. 2005). Plaintiffs' claim for substantive relief based on this section should be dismissed. In the same way, Plaintiff cannot state a claim under Article I, § 24 (retained rights)("The enumeration in this Constitution of certain rights shall not be construed to deny or disparage others retained by the individual citizens of the State."), which is a rule of construction, rather than a source of substantive relief. As a result, this claim should be dismissed.

Finally, Plaintiffs seek declaratory relief under Equal Protection clause of the Illinois constitution. (Article I § 2). In conducting an equal protection analysis, Illinois courts apply the same standards under the United States Constitution and the Illinois Constitution. *In re Jonathon C.B.*, 2011 IL 107750, 958 N.E.2d 227, 252, as modified on denial of reh'g (Nov. 28, 2011), cert. denied, 133 S. Ct. 102, 184 L. Ed. 2d 47 (U.S. 2012)(internal citations omitted). The equal protection clause guarantees that similarly situated individuals will be treated in a similar fashion, unless the government can demonstrate an appropriate reason to treat them differently. *Id.* The equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people, but it does prohibit the government from doing so on the basis of criteria wholly unrelated to the legislation's purpose. *Id.* Where fundamental rights are not at issue, Illinois courts apply rational basis scrutiny and consider whether the challenged classification bears a rational relationship to a legitimate governmental purpose. *Id.*

Plaintiffs' equal protection claim fails at the outset because it does not even identify the classification it is challenging. As discussed above, the Agreement and Revised Ordinance merely limit in-person sales of firearms without targeting any class or category of individuals.

The action is related to clear legislative purpose of protecting surrounding, sensitive uses (i.e. schools, daycares, government buildings, etc.) from downtown gun sales, and applies to everyone evenly. For this reason, and for all the reasons stated above, Plaintiffs' claim for declaratory judgment should be dismissed.

## VI. PLAINTIFFS' SECOND AMENDMENT RETALIATION CLAIM (COUNT VI) IS NOT A SEPARATE AND DISTINCT CAUSE OF ACTION, BUT RATHER IS DUPLICATIVE OF PLAINTIFFS' SECOND AMENDMENT CLAIM

Plaintiffs have restated a retaliation claim focusing on the Second Amendment. To maintain a retaliation claim, Plaintiffs would have to plausibly allege that they engaged in constitutionally protected activity, that they suffered a deprivation that would likely deter protected activity in the future, and a causal connection between the two. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010). The Court previously suggested that this claim is duplicative of the Plaintiffs' Second Amendment claim (Order, 33 (Apr. 19, 2013)), and Plaintiffs' realleged claim does nothing to change the analysis. For this reason, and for the reasons stated in support of dismissal of Plaintiffs' Second Amendment claim (Count I), Plaintiffs' Second Amendment retaliation claim (Count VI) should be dismissed.

## VII. PLAINTIFFS' FOURTEENTH AMENDMENT RETALIATION CLAIM (COUNT VII) IS NOT A SEPARATE AND DISTINCT CAUSE OF ACTION, BUT RATHER IS DUPLICATIVE OF PLAINTIFFS' FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

Finally, Plaintiffs state a new claim alleging retaliation under the Fourteenth Amendment. Just as Plaintiffs' Second Amendment retaliation claim is duplicative of their Second Amendment Claim, Plaintiffs' Fourteenth Amendment retaliation claim (Count VII) is duplicative of Plaintiffs' Fourteenth Amendment substantive due process claim (Count II). Plaintiffs' Fourteenth Amendment retaliation claim should be dismissed because the Plaintiffs cannot state a claim Fourteenth Amendment due process claim, as stated above.

**CONCLUSION**

For all of the foregoing reasons, defendants respectfully request this Court dismiss Plaintiffs' Second Amended Complaint.

/s/ Thomas G. DiCianni

_____

Thomas G. DiCianni (ARDC #03127041)
tdicianni@ancelglink.com
Brent O. Denzin (ARDC #6294953)
bdenzin@ancelglink.com
Daniel J. Bolin (ARDC #6295932)
dbolin@ancelglink.com
***ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.***
Attorney for Defendants
140 South Dearborn Street, 6th Floor
Chicago, Illinois 60603
(312) 782-7606
(312) 782-0943 Fax