**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TONY KOLE and GHOST INDUSTRIES, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11 CV 3871 |
| v. | ) ) | |
| VILLAGE OF NORRIDGE, an Illinois municipal corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS SECOND
AMENDED COMPLAINT**

COME NOW the Plaintiffs, TONY KOLE and GHOST INDUSTRIES, LLC, and submit

their Response to the Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.

**INTRODUCTION**

When new Plaintiff's counsel has become involved with this matter, the Court's Order of

April 19. 2013 (Doc. 79) was taken to heart.  From the First Amended Complaint to the current

Second Amended Complaint, claims were edited and streamlined, and in some instances dropped

altogether, according to the Court's rulings and advisories.  Now, the Second Amended

Complaint properly pleads its causes of action that Defendant acted unconstitutionally and

violated Plaintiffs' rights.  Defendants' Motion assumes facts and reads like an unsupported

Motion for Summary Judgment.  If Defendant wants to attempt to justify its restrictions and

imminent ban on firearms sales, the instant Motion is not the vehicle to do so.

Therefore, Defendant's Motion to Dismiss should be denied.

## *STATEMENT OF FACTS*

1.      Plaintiff Kole is a natural person and a citizen of the United States residing in Norridge, Illinois.  He is the President and sole owner of the co-Plaintiff Ghost Industries, LLC. At all times relevant Kole possessed a valid State of Illinois Firearms Owner Identification Card (the "FOID Card") and is trained and experienced in the safety and use of various firearms or ammunition products (*See* Second Amended Complaint (hereinafter "2AC") at par. 2).

2.      Plaintiff Ghost is an Illinois limited liability company having its primary place of business in Norridge, Illinois. Ghost does business and engages in local, internet and interstate commerce as a duly federally licensed firearms and ammunition products dealer by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") pursuant to Title I, Gun Control Act of 1968 (the "GCA"), and pursuant to other applicable regulations and federal law.  Ghost possesses a valid Federal Firearms License No. 3-36-031-01-4B-02885 (the "FFL"), a copy which is attached to the 2AC (*See* 2AC at par. 3).

3.      In 2010, Plaintiffs decided, after extensive research, to start a business in the Village selling firearms to law enforcement officers, hunters, sportsmen, and other law-abiding citizens.  At that time, Village had a home-rule ordinance permitting weapons dealers.  Prior to securing and leasing a commercial space, Plaintiffs contacted the Village regarding any safety and other concerns the Village may have with the proposed business.  Thereafter, a representative from the Village confirmed to Kole that his proposed business was permitted in the Village.  The representative also provided Plaintiffs with relevant Village zoning requirements for the proposed firearms business (*See* 2AC at par. 7).

4.      In reliance on the confirmation and information from the Village, on or about November 16, 2010, Plaintiffs applied to the Village for a Weapons Dealers Business License

under the Norridge, Illinois, Code of Ordinances, Chapter 22 - Businesses, Article VIII - Weapons Dealers (the "Original Weapons Dealer Ordinance"), a copy which is attached to the 2AC as Exhibit "B," so Ghost could open and operate a gun shop. Ghost executed a lease at 7601 West Montrose Avenue, Suite 2, in Norridge and waited processing of its FFL application by the ATF and its weapons dealer business license by the Village (*See* 2AC at par. 6).

5.      On or about November 2, 2010, the ATF arranged a routine inspection of the leased premises so that it could issue a FFL to Plaintiffs. When *en route* to the inspection, the ATF agents informed Plaintiffs that the inspection was cancelled because the Village (A.) refused to give a routine approval to proceed; (B.) through its representative delayed issuance of a license and told Plaintiffs that the Village Present and Trustees would not allow firearms transfers on said premises (*See* 2AC at par. 9).

6.      That, at all times relevant, the law regarding the individual right to purchase and possess firearms for lawful purposes was clearly established, as well as the right to use firearms for lawful purposes including self-defense and training (*See* 2AC at par. 10).

7.      Following the Village's refusal to issue the business license and the resulting canceled ATF inspection, Plaintiffs sent a letter to the Village demanding compensation for the financial damages Plaintiffs business had suffered. The Village ignored Plaintiffs' demand (*See* 2AC at par. 11).

8.      Shortly thereafter, the Village's Attorney, Mark V. Chester, contacted Kole, purportedly on behalf of the Village and its officials. Chester acknowledged that Plaintiffs' proposed business was a lawful permitted occupation, and told Kole that regardless of that fact, the resistance and delay that the Village's President and Trustees were exerting regarding Ghost's ATF and Village business licenses were because "they wanted to protect their political

careers - God forbid something should ever happen," and that the "reason this law [the Original
Weapons Dealer Ordinance] was on the books is because a large retailer, K-Mart, had earlier
approached the Village and lobbied its officials to permit the sale of firearms and ammunition in
the Village or else it would relocate its store which would cause the Village to lose tax
revenues," but eventually K-Mart voluntarily ceased selling and transferring firearms and
ammunition, though the Original Weapons Dealer Ordinance remained in effect until February
11, 2011 and such business activities were, and continue to remain, lawful (*See* 2AC at par. 12).

9.      Despite knowing that Plaintiffs' business was permitted by Village Ordinance and
was otherwise lawful, Village through its officials and representatives demanded, as a condition
for the approval of Plaintiffs' business license, that Plaintiffs execute an "Agreement Between
the Village of Norridge & Ghost Industries, LLC" (hereinafter the "UVA" (*Ultra Vires*
Agreement)), a copy of which is attached to the 2AC Exhibit "C." The UVA was not imposed
on any other business licensee, and resulted in the Plaintiffs being forced to comply with terms,
conditions and restrictions on their ability to conduct business, as well as the waiver of their
constitutional rights (*See* 2AC at par. 13).

10.     The UVA was forced upon Plaintiffs in order to prevent them from doing
business, drive them out of business and deprive them of their sales, profits and livelihood. The
UVA's intent was to deny Plaintiffs the ability to acquire, obtain, advertise for sale, market, keep
and bear arms (*See* 2AC at par. 14).

11.     Having no recourse and facing the certainty of the Village's continued unlawful
delay and withholding of the Plaintiffs' business license, which also improperly undermined
Ghost's ability to be approved for an FFL by the ATF, and which also improperly denied
Plaintiffs the ability to conduct their livelihood in the Village, Plaintiffs reluctantly succumbed to

4

the Village's unconstitutional conditions and signed the UVA on November 29, 2010. Plaintiffs did not sign the UVA voluntarily, but were coerced into doing so, thus involuntarily giving up certain of their constitutional rights, as the only way they would get their business license (*See* 2AC at par. 15).

12.     After Plaintiffs signed the UVA, the Village revised the Norridge Weapons Dealers Licensing Ordinance by adopting and enacting "An Ordinance Repealing and Reenacting Chapter 22, Article VIII, and Amending Chapter 38, Section 22 of the Revised Municipal Code of the Village of Norridge - 2002 An Ordinance Reenacting Weapons Dealers Licensing and Amending Associated Fees and Penalties, Ordinance No. 1697-11" which was adopted on or about February 9, 2011 (hereinafter "the Revised Ordinance"), a copy of which is attached to the 2AC as Exhibit "D." (*See* 2AC at par. 16.)

13.     At the time the Revised Ordinance was adopted, the Village President stated, *inter alia*, "It's so strong, I don't think anybody would want to come here. We only have the one weapons business here [Ghost] that we are aware of." (*See* 2AC at par. 17.)

14.     The Original Weapons Dealers Ordinance, as amended by the Revised Ordinance, purports to allow Plaintiffs to operate their business in the Village, but a variety of its sections work to effectively prohibit Plaintiffs from fully operating by unjustifiably burdening their operation and use. Specifically, The UVA contained the following provisions to which Plaintiffs were forced to capitulate:

> a.     imposed a total ban on physical deliveries of firearms or ammunition on the premises - not even to Law Enforcement; and requiring that all deliveries sent from the Plaintiffs' premises be by unmarked packaging if the delivery is of a "used" firearm and shall be delivered in original packaging as provided by the manufacturer, wholesaler, or distributor if it is a "new" firearm and be in secure packaging sent via post office or courier to a licensed federal firearms dealer (FFD);

b.      imposed a total ban on storage of ammunition or firearms on the premises thereby requiring Plaintiffs needing to first receive payment from a customer, then order a weapon from their supplier, receive it, inventory, label and rush to send it out the same day; by prohibiting Plaintiffs from storing firearms or ammunition on the Premises overnight or longer than twelve (12) hours during any day and that any firearms in Plaintiffs' inventory on the premises will either be disabled by a locking device made for use on firearms or secured in a locked cabinet;

c.      imposed a total ban on the commercial display of Plaintiffs' lawful products by prohibiting Plaintiffs from maintaining a sales or retail display of any firearms or ammunition on the premises;

d.      prohibited Plaintiffs from posting or erecting any exterior signage indicating to the public that its offices are located on the premises or indicating the business of Plaintiffs (*i.e.* weapons sales), requiring the limitation of interior signage to that required by state and federal law and only allowing Plaintiffs to put its name on one or more interior door to premises;

e.      limited the amount of firearms Plaintiffs received per month by requiring that Plaintiffs agree to receive no more than forty (40) long guns or hand guns at the Premises per month for the first twelve (12) months following the date of the UVA and the above-referenced amounts shall increase by ten (10) percent twelve (12) months, and twenty four (24) months thereafter, and to have no more than twenty (20) firearms in the premises at any one time;

f.      required that Plaintiffs agree to receive no more than four thousand (4,000) rounds of ammunition per month for the first twelve (12) months following the date of the UVA and the above-referenced amounts shall increase by ten (10) percent twelve (12) months and twenty four (24) months thereafter, and to have no more than one thousand (1,000) rounds on the premises at any one time.  Provided, however, larger quantities (not in excess of the monthly amount) may be on the premises for no longer than one (1) hour after they are delivered from the distributor, wholesaler or manufacturer;

g.      arbitrarily dictated that Village's only current weapons dealer (Plaintiffs) must cease doing business no later than April 30, 2013;

h.      required that in the event that Plaintiffs breach any of the conditions of the UVA and such breach is not cured within three (3) business days after the Village delivers written notice to the Plaintiffs specifying the breach, its license will become forfeit and Plaintiffs will cease doing business under that license.

i.      required that the Village will only renew Plaintiffs' license twice provided that Plaintiffs remain in compliance with the UVA and to exempt Plaintiffs from any change in its business license ordinances and rules in any amendments the Village may make to its Code of Ordinances which directly or indirectly impacts

Plaintiffs' business under the Weapons Dealer License granted by the Village and requiring that the Village in the event it repeals its Weapons Dealer Ordinance within thirty six months of the execution of the UVA, will exempt the Plaintiffs from the repeal during that period.

(*See* 2AC at par. 18.)

15. As a result of the Revised Ordinance, coupled with the terms of the UVA, Ghost will be forced to close its business or relocate out of town as of November 30, 2013 (*See* 2AC at par. 19).

16. As a result of the above, Plaintiffs fear prosecution under the Revised Ordinance, arbitrary revocation of the license eventually issued them by the Village, as well as interference, prohibition and the unlawful elimination of their otherwise lawful business activities, and reprisals by the Defendants, should they undertake such conduct in and about the Village or with respect to their suppliers and customers that may in any way be considered or construed by Defendants to be a breach of said UVA or a violation of the Revised Ordinance (*See* 2AC at par. 20).

17. As a direct and proximate result of Village's unlawful impositions, Plaintiffs' business, and the expansion thereof, is essentially limited to only conducting online sales and shipping from suppliers and other out of area dealers, thereby resulting in the potential loss of tens of thousands of dollars in sales and thousands of dollars in profits per day (*See* 2AC at par. 21).

18. The UVA and Revised Ordinance and burdensome requirements and restrictions contained in the Ordinances challenged in this complaint unjustifiably inhibit Kole's and Ghost's efforts to advertise, and sell firearms from Ghost's business location in Norridge (*See* 2AC at par. 22).

19.     But for the enactments and burdensome requirements and restrictions contained in the UVA and Ordinances challenged in this complaint, Plaintiffs would advertise, and sell firearms from, its business location in Norridge (*See* 2AC at par. 23), and their would-be customers in and around Norridge who wish to exercise their constitutionally-protected rights to purchase firearms for lawful purposes including self-defense and training would be able to purchase said firearms, and accompanying ammunition, from Plaintiffs' business location in Norridge (*See* 2AC at par. 24).

## ARGUMENT

### Count I - Defendant's severe limitations and impending prohibition on firearms sales and purchases within Village limits violate the Second Amendment rights of Plaintiffs and their customers.

The Court stated in April, 2013 (Doc. 79) that Plaintiffs' Second Amendment claims met the applicable pleading standards.  Plaintiffs assert they have improved upon those claims in Count I of the Second Amended Complaint.  Nevertheless, Defendant once again has moved to dismiss the claim.

As the Court noted, Plaintiffs have sufficiently pled their Second Amendment claim on their own behalf, as the Court stated its intention to "put the government through its paces to justify its regulatory efforts."  *See* Doc. 79 at p.16.  Though the Court has noted the full question of the Second Amendment's right to sell firearms will eventually have to be addressed, Defendant's Motion to Dismiss fails.  Though Defendant cites the qualifying phrase in *District of Columbia v. Heller*, 554 U.S. 570, 627-628 (2008), Defendant fails to point out that at the same time the *Heller* Court stated that prohibitions on firearm possession by felons and the mentally ill are presumptively lawful, the Court could have but did not exclude commercial firearm sales from protection.  Instead, the Court only referred to "conditions and qualifications," *Id.*, and even

those are subject to a level of constitutional scrutiny that is, at a minimum, higher than rational basis. Even the domestic violence offender in *United States v. Skoien*, 614 F3d 638, 641 (7th Cir. 2010) merited intermediate scrutiny in his legal challenge. *See also United States v. Williams*, 616 F.3d 685 (7th Cir. 2010) (intermediate scrutiny applied for felon's challenge). The Defendant's only argument seems to be the claim that there is no place for firearm sales in their town. However, that does not meet any level of scrutiny. Further, the current regulatory scheme, with the pled "unconstitutional conditions," includes a categorical ban that is about to begin next month that transcends scrutiny, as there is no such level that could survive a constitutional challenge. The *Heller* Court's comment about regulations implies, if not states, that commercial firearms sales, in some form, must be allowed to take place.

The Defendant makes citations to District Court cases from other jurisdictions, but this case is closer to the firing range ban in *Ezell*. This is also close to the unconstitutional violent video game ban in *Brown v. Merchants Entertainment Association,* 131 S.Ct. 2729 (2011). And just as ". . . disgust is not a valid basis for restricting expression[,]" *Id.* at 2738, unfounded fear and speculative imaginings about possible harms is not sufficient to infringe on Second Amendment rights. *See*, *e.g.*, *Ezell*, 541 F.3d at 709.

The Defendant's citations are inapplicable. For instance, the citation to *United States v. Smoot*, 690 F.3d 215 (4th Cir, 2012), *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012) and others are about criminal defendants challenging the prohibition on firearms possession by felons. *United States v. Chafin,* 423 F.App'x. 342 (4th Cir. 2011), is about an individual who purchased a firearm illegally and then sold it illegally to a friend who was ineligible to possess a firearm due to drug use. These cases have nothing to do with the present situation. Such a comparison by Defendant is at best misplaced, at worst a cheap *ad hominem* attack comparing

everyone who owns a firearm to a criminal.

The cite to *United States v. 12 200-Ft. Reels of Super 8mm Film*, 413 U.S. 123 (1973) is completely inapposite, because *Super 8mm* dealt with obscenity, which is **not** constitutionally protected. While the Defendant has made its feelings about firearms clear, it does not change the fact that they are constitutionally protected from the type of government action taken in this case.

Even the citation to *Teixeira v. County of Alameda*, 2013 U.S. Dist. LEXIS 128435 (N.D.CA) is inapposite. In *Teixeira*, the regulation was a zoning regulation. In this case, Plaintiffs allege that between the Ultra Vires Agreement, that was forced upon Plaintiffs under unconstitutional conditions, and the Revised Ordinance, that Plaintiffs and their customers have been unconstitutionally restricted in the exercise of fundamental rights. Defendant's argument that Plaintiffs can sell (and customers may purchase) firearms online is not sufficient, any more than it would be if the Village prohibited book sales but said people can still buy e-books for a Kindle, or if political speech was banned in public places in Norridge but people were told it was okay because people were still allowed to write blogs. This of course is even before Plaintiffs are literally banned out of existence at the end of November, 2013.

Law-abiding people are severely limited in their ability to exercise their core Second Amendment right to self-defense if they are unable to purchase firearms. Likewise, said people are severely limited in their ability to exercise their fundamental Second Amendment right to train with a firearm for the purpose of acquiring and maintaining proficiency in order to be able to engage in self-defense (*See Ezell*, 651 F.3d at 704), if they are unable to purchase a firearm. And just as the City of Chicago's defense that people could go train with a firearm in some other city was unpersuasive to the Seventh Circuit (*Id.* at 697), so too should be any argument that it is acceptable to ban commercial firearms sales with the Defendant's borders, since people can

purchase firearms, fundamentally protected for self-defense purposes, somewhere else.

Plaintiffs also have standing to litigate this claim on their would-be customers' behalf. *See Ezell v. City of Chicago*, 651 F.3d 684, 696 (2011) (Action Target has standing to challenge Chicago firing range ban on behalf of its customers); *See also* Doc. 79 at p.15. In addition to Plaintiffs being required to obtain an FFL and being subject to federal, state and local regulation, Plaintiffs' customers would be required to complete federal background checks and obtain an Illinois FOID card, with its accompanying requirements. Plaintiffs are therefore ". . . the 'law-abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under *Heller*." *Ezell*, 652 F.3d at 708.

The Court has already ruled on these issues. Defendant is improperly trying to take a second bite at the exact same apple. The Motion to dismiss Plaintiffs' Second Amendment claims should be denied.

## <u>Count II – Plaintiffs' Complaint states a claim for violations of substantive due process.</u>

"A right is fundamental if it is 'sufficiently basic to the livelihood of the Nation.'" *McBurney v. Cuccinelli*, 780 F.Supp.2d 439, 447 (E.D. Va. 2011) (quoting *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 388 (1978)) "The Supreme Court of the United States has held that certain rights are fundamental, including the rights to: (1) practice a trade or profession, . . ." *McBurney*, 780 F.Supp.2d at 447 (citing *Toomer v. Witsell*, 334 U.S. 385, 403 (1948)). "The right to pursue a lawful calling has long been recognized as a fundamental right . . . ." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 95 (2d Cir. 2003). This dates back more than one hundred years. *See Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897) ("The 'liberty' mentioned in [the Fourteenth Amendment] . . . is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to

live and work where he will; [and] to earn his livelihood by any lawful calling; to pursue any livelihood or avocation . . . ").

In addition, as noted above, Plaintiffs maintain there are fundamental rights to purchase, and therefore commensurately to sell, firearms. Therefore, in either case Plaintiff has properly alleged that Defendant's UVA and Revised Ordinance unconstitutionally restrict (and imminently ban) Plaintiffs' and others' fundamental rights. Therefore, despite Defendant's assertions to the contrary, the rational basis test has no place in this matter. Rather, as fundamental rights are impacted by Defendant's unconstitutional actions, strict scrutiny must be applied. But this is at least one step beyond a Motion to Dismiss in any event.

However, Plaintiffs must respond to the "rational basis" offered by Defendant. Defendant cites *Baer v. City of Wauwatosa*, 716 F.2d 1117 (7th Cir. 1983) as authority for the speculative and hypothetical dangers of firearms as a rational basis ("guns will get sold to criminals, children, and others who are, for excellent reasons, forbidden by law to have them . . . ") (*See* Defendant's Memorandum at p.12), but *Baer*, besides being a pre-*District of Columbia v. Heller* and *McDonald v. City of Chicago* case, involved a felon who allowed minors into his gun store for the purpose of having sexual relation with said minors in the store. It is little wonder why the municipality wanted Mr. Baer out of the firearms business; it is quite another to impute such despicable behavior to everyone in the industry. The Village President is alleged to have said that his Ordinance was so strong no one would want to come to the Defendant Village (*See* 2AC at par. 17).

Of course, one would expect this to be the mentality when Defendant's argument is the fear that people may think that firearms ". . . are an acceptable part of everyday life." (*See* Defendant's Memorandum at p.12). The fact is, their possession is a fundamental individual

12

right, both inside the home (*See Heller* and *McDonald*) and outside the home (*See Moore v. Madigan*, 702 F.3d 933 (7th Cir, 2012). Defendant's irrational argument that Plaintiffs' business will escalate firearm violence "that plagues our society" is exactly the type of non-argument fear-mongering that seeks to inflame without providing any factual support. Defendant then turns the argument on Plaintiffs, asserting they have not disproven Defendant's beliefs. While Plaintiffs, if given the opportunity, intend to do exactly that, this only underscores how these issues are not appropriate for disposal on a Motion to Dismiss. Further, Plaintiffs plead many facts challenging the complete unreasonableness of the Defendant's forced UVA and Revised Ordinance; in fact, the Second Amended Complaint explains thoroughly how the multiple restrictions and imminent ban burden Plaintiffs' and their customers' constitutional rights without meeting any level of scrutiny, must less the strict scrutiny that is required here. The Motion to Dismiss Count II must be denied.

**Count III – Defendant has violated the Dormant Commerce Clause.**

The Court has already denied the Defendant's Motion on the exact theory of which the Defendants again complain (Doc. 79 at p.27). The Plaintiffs, in turn, added the exact language directed by the Court to this Count of the Second Amended Complaint. It is a mystery why Defendant is making the same unsuccessful argument again, when Plaintiffs have followed the Court's instructions exactly.

As previous, Plaintiffs allege that the "Ultra Vires Agreement" and the Revised Ordinance violate the Dormant Commerce Clause because ". . . the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Department of Revenue v. Davis*, 553 U.S. 328, 338-339 (2008) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This point has already been litigated with regard to the First Amended

Complaint. By following the Court's instructions, Plaintiffs have improved the pleading of this claim. The Defendant's Motion as to Count III should be once again denied.

**Count IV – The Defendants' ban on advertising of Plaintiffs' firearms business violates Plaintiffs' First Amendment rights.**

The Court has ruled (Doc. 79 at pp.29-30) that Plaintiffs stated a claim for violations of their First Amendment rights as they pertain to prohibitions on exterior signage to advertise and promote their business. The Court stated that a factual record is necessary to determine if the restriction is narrowly tailored to serve a substantial interest, and if, as Defendant asserts, Plaintiffs agreed to the restriction. *Id.* Therefore, the Court denied a similar motion to dismiss in its last Opinion. *Id.* at 30.

Defendant's argument that Plaintiffs are entitled to advertise everywhere except at their own location smacks of hypocrisy, and in fact makes the restriction of on-site advertising all the more irrational and arbitrary. That commercial speech may be afforded less protection that other types of protected expression does not mean it is afforded no protection at all. The *Heller* Court stated:

> "Obviously, the same [rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms. *See United States v. Carolene Products Co.*, 304 U.S. 144, 152, n 4, 58 S. Ct. 778, 82 L. Ed. 1234 (1938).
> . . .
>
> If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect.

*District of Columbia v. Heller*, 554 U.S. 570, 628, fn 27 (2008).

As the analysis of Second Amendment restrictions has been favorably analogized to analyses of the First Amendment (*See*, *e.g.*, *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011)), once can conclude that, at a minimum, intermediate scrutiny applies. This seems to be the standard the Court applied when denying the similar motion in April. Defendant offers nothing more than bald-faced conclusions, a hypothetical "parade of horribles," and a request for this Court to rubber-stamp its rational-basis requests. This Court should decline such an invitation for the reasons it has previously given.

As with the other claims, Count IV has been streamlined and tailored to exactly match the parameters of the Court's April 19, 2013 Opinion. It is meritless and disingenuous for Defendant to argue exactly the same Motion when the Court has already approved Plaintiffs' claim. Since Plaintiff eliminated everything from the First Amendment claim the Court dismissed in its last opinion, the Court should now deny Defendant's repetitive and baseless Motion, and the Motion to Dismiss Count IV should be denied.

**Count V – Plaintiff properly pleads a state claim for declaratory judgment.**

Count V was previously Pendant Count I. The Court denied a Motion to Dismiss this Count, provided Plaintiffs plead the claim under the federal declaratory judgment Act (28 U.S.C. § 2201) instead of under the State declaratory judgment statute (735 ILCS 5/2-701). Indeed this is how the Court construed the claim in the first place (*See* Doc. 79 at 43-44). Since Plaintiffs did this, the Motion to Dismiss Count IV should be denied.

Defendant argues that where the Illinois Constitution and federal Constitution have similar provisions, that where there is no federal right pled, then the commensurate State constitution provision should be dismissed. But Plaintiffs assert the opposite view: where the

Plaintiffs have pled a federal claim, the commensurate State constitutional claim should be upheld.

As to Plaintiffs' claim under Article I, Section 2, Defendant's argument against equal protection is another example, replete throughout Defendant's Memorandum, of attempting to try the case at the Motion to Dismiss stage. Defendant assumes there is no fundamental right and that rational basis applies in order to allow any of its ordinances to gain automatic Court approval. However, there are plenty of fundamental rights being trampled upon by the Defendant, and rational basis, Defendant's apparent bread-and-butter, is actually off the table altogether. Rather, a level of strict scrutiny, or near-strict scrutiny, applies to analyzing Defendant's unconstitutional infringements. Further, Plaintiff's Second Amended Complaint states clearly what Defendant did to violate Plaintiffs' constitutional rights, and which rights were violated.

However, Plaintiffs concede the argument about Article I, Section 6 of the Illinois Constitution, and acknowledge they cannot state a claim if the Court has ruled they cannot state a federal Fourth Amendment claim. Further, Plaintiffs agree with Defendant's reading of Article I, Section 12 and seek to dismiss it from Count V. Finally, Plaintiffs withdraw from Count V any claim based on the takings clause of the Illinois Constitution.

With that said, the remainder of Count V states a claim, and the Motion to Dismiss should be denied.

**Count VI – Plaintiffs' Second Amendment retaliation claim is not duplicative of the federal Second Amendment claim.**

The Court has already ruled that this claim satisfied the pleading requirements (*See* Doc. 79 at p. 34). Specifically, the Court wrote that: ". . . to maintain a retaliation claim, Plaintiffs would have to plausibly allege that they engaged in constitutionally protected activity, that they

16

suffered a deprivation that would likely deter protected activity in the future, and a causal connection between the two." *Id.* at 33 (quoting *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010)).

A bit later, the Court wrote that: ". . . Plaintiffs have sufficiently alleged that they engaged in a constitutionally protected activity. They have also alleged retaliatory action by Defendants." *See* Doc. 79 at p.34. Obviously, Plaintiffs will be required to litigate and prove their allegations, but this case is not at that stage yet.

Further, as with the rest of the Second Amended Complaint, Count VI was tailored to address the Court's Opinion and instructions. As with others of Plaintiffs' claims in the Second Amended Complaint, it is baffling why Plaintiffs are responding yet again to the same Motions and meritless arguments.

However, if the Court determines that Plaintiffs' Count VI is duplicative of Plaintiffs' Count I, Plaintiffs will roll the Count VI arguments into the Count I Second Amendment argument in general. However, the Court has stated that despite the potential for duplicity, Plaintiffs' retaliation Count based on the Second Amendment states a claim. The Motion to Dismiss Count VI should be denied.

### Count VII - Plaintiffs' Fourteenth Amendment retaliation claim is not duplicative of the federal Fourteenth Amendment claim.

Defendant correctly notes that Plaintiffs' Count VII, which alleges retaliation for the exercise of fundamental Fourteenth Amendment substantive due process rights, is related to Count II. Assuming the Court finds that Count II states a claim, then Count VII must as well. Like Count VI above, Count VII alleges the exercise of a constitutional right by Plaintiffs, retaliation by Defendant, and a causal link between the two. Like in the discussion of Count VI, above, if the Court determines that Plaintiffs' Count VII is duplicative of Plaintiffs' Count II,

Plaintiffs will roll the Count VII arguments into the Count II Fourteenth Amendment argument in general.

Plaintiff's Count VII (and Count II) stem from the Court's April 19, 2013 Opinion regarding their Fifth Amendment claim (*See* Doc. 79 at p.34). Though Plaintiffs determined that a Fourteenth Amendment claim was more correct than a Fifth Amendment claim, Plaintiffs point out that otherwise as to Count VII they followed the Court's instructions, where Plaintiffs were told to plead a Fifth Amendment retaliation claim in a ". . . separate count with a short and plain statement . . . ." *Id.* This is exactly what Plaintiffs did in the Second Amended Complaint. To the extent Plaintiff has pled substantive rights protected by the Fourteenth Amendment, then Count VII should be denied.

## **CONCLUSION**

Plaintiffs took care to model the Second Amendment Complaint based upon the Court's April 19, 2013 Opinion. The Second Amendment Complaint was edited, narrowed in focus, and now meets the federal pleading standards by properly stating causes of action. In light of the above, the Court should deny Defendant's Motion.

WHEREFORE, the Plaintiffs, TONY KOLE and GHOST INDUSTRIES, LLC, respectfully request this Honorable Court to deny Defendants' Motion in its entirety, and to order Defendants to file an Answer to Plaintiffs' Second Amended Complaint, and to grant Plaintiffs any and all relief deemed just and proper.

Respectfully submitted,

_____/s/ David G. Sigale_____
One of the Attorneys for Plaintiffs

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

19

## <u>CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING</u>

The undersigned certifies that:

      1.      On October 15, 2013, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

      2.      Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                   _____/s/ David G. Sigale_____
                                   One of the Attorneys for Plaintiffs