**FILED**
10/31/2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>VILLAGE OF NORRIDGE,<br><br>    Defendant. | No. 11-CV-03871<br><br>Hon. Judge Thomas M. Durkin<br>U.S. District Judge<br><br>Hon. Morton Denlow<br>U.S. Magistrate Judge |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**I. Plaintiffs Fail to State a Claim for Violation of any Second Amendment Rights**

 **a. The Village's Regulations are Presumptively Lawful Regulatory Measures**

  Guns are available for purchase in the Village of Norridge. Plaintiffs do not and cannot allege otherwise. Unlike in prior complaints, Plaintiffs now admit that firearms are readily available for purchase online. (2d Am. Compl., ¶ 21). As a result, the Village's motion to dismiss is biting at a new apple. Norridge residents and customers from across the United States can simply visit the Plaintiffs' website, www.ghostfirearms.com, and conveniently purchase handguns, long guns, and accessories from the comfort of their own home. Of course, gun sales are not allowed everywhere in the Village. Without violating the Second Amendment, gun sales are subject to "conditions and qualifications on the commercial sale of arms . . . ." which are considered "presumptively lawful" by the Supreme Court and do not amount to a categorical ban on possession. *Heller*, 554 U.S. 570, 626-27, n.26 (2008).

  Additionally, the Village is entitled to adopt laws prohibiting firearm possession in and around sensitive places. *Id.* at 626. Under the Agreement and Revised Ordinance, the Village of

**EXHIBIT "A"**

Norridge prescribes the conditions under which gun sales must be conducted, online rather than in physical storefronts near sensitive places in a densely-populated Village. Plaintiffs claim they could increase profits by operating a physical storefront in Norridge. (2d Am. Compl., ¶ 21). However, there is no Second Amendment right to increased profits from gun sales. *Kwong v. Bloomberg*, 723 F.3d 160, 167 (2d Cir. 2013) (citing *Nordyke v. King*, 644 F.3d 776, 787-88 (9th Cir. 2011)(before *reh'g en banc*).

Just as the Village does not have to permit gun sales to take place on street corners near schools, it can reasonably restrict in-person purchases in physical storefronts in a Village populated by many sensitive places. Therefore, the conditions for the sale of firearms in the Village set forth in the Agreement and Revised Ordinance are presumptively lawful regulatory measures. Having failed to state facts rebutting that presumption, Plaintiffs only make the unsupported allegation that the Village regulations are "burdensome" on an unrecognized "right of Ghost's would-be customers to purchase firearms through retail sales from Plaintiffs' business location in Norridge." (2d Am. Compl., ¶ 22-24, 27). No court has recognized such a right. The Second Amendment does not require a gun shop to be located in every town. Plaintiffs failed to identify any violation of the Second Amendment right to possess handguns for self-defense, and their claim should finally be dismissed with prejudice.

To be clear, unlike *Ezell*, *McDonald*, and *Heller*, this is not a case involving the right to possess firearms. *Ezell v. City of Chicago*, 651 F.3d 684, 690 (7th Cir. 2011); *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3021 (2010)(addressing "laws effectively banning handgun possession by almost all private citizens."); *D.C. v. Heller*, 554 U.S. 570, 574 (2008)("District of Columbia generally prohibits the possession of handguns.") In *Ezell*, the core Second Amendment right to possession was severely burdened because possession was directly

conditioned on range training, and the challenged ordinance simultaneously forbid range training everywhere in the City. 651 F.3d at 690. There are no such conditions on the right to possession in this case. Norridge residents are free to possess handguns for self-defense in the Village, and the Plaintiffs do not allege otherwise. While Plaintiffs may have standing for their would-be customers, Plaintiffs do not allege that any person has been unable to possess a handgun for self-defense in the Village. In fact, Plaintiffs plead no facts to show that any person has even been inconvenienced by the Agreement and Revised Ordinance in the possession of handguns in the Village. Plaintiffs' Second Amendment claim should be dismissed with prejudice.

**b. The Village's Presumptively Lawful Regulatory Measures are Easily Justified because they Fall on the Distant Margins of the Core Second Amendment Right**

The threshold inquiry in this case is a "scope" question: Is the restricted activity protected by the Second Amendment in the first place? *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011). "If the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right . . . the law is not subject to further Second Amendment review." *Ezell v. City of Chicago*, 651 F.3d 684, 702-03 (7th Cir. 2011).

In this case, the restricted activity is the ability of "Ghost's would-be customers to purchase firearms through retail sales from Plaintiffs' business location in Norridge." (2d Am. Compl., ¶ 27). Such activity is not protected by the Second Amendment. The scope of the recognized Second Amendment right is the possession of firearms for self-defense. The right to purchase firearms at a particular storefront location (as opposed to on-line or in nearby gun shops) is unrecognized. Just as obscenity, defamation, fraud, and incitement are categorically outside the reach of the First Amendment, the Plaintiffs claimed right falls outside the scope of

the Second Amendment right, and the analysis can stop there. *Ezell*, 651 F.3d at 702-03. Plaintiffs Second Amendment claim should be dismissed.

Even if the Court proceeds to the second step of the *Ezell* framework, Plaintiffs Second Amendment claim fails.

> "*McDonald* emphasized that the Second Amendment 'limits[,] but by no means eliminates,' governmental discretion to regulate activity falling within the scope of the right. Deciding whether the government has transgressed the limits imposed by the Second Amendment—that is, whether it has 'infringed' the right to keep and bear arms—requires the court to evaluate the regulatory means the government has chosen and the public-benefits end it seeks to achieve. Borrowing from the Court's First Amendment doctrine, the rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right. . . . . [L]aws restricting activity lying closer to the margins of the Second Amendment right . . . may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right." *Ezell v. City of Chicago*, 651 F.3d 684, 703, 708 (7th Cir. 2011).

Plaintiffs' unrecognized right to purchase guns at a particular storefront location lies far from the core Second Amendment right to possess a handgun for self-defense. This is particularly true where the Agreement and Revised Ordinance are presumptively lawful regulatory measures. Accordingly, the challenged regulations in this case are easily justified under the less burdensome level of scrutiny due to presumptively lawful regulatory measures affecting conduct on the outer margins of the Second Amendment right.

In the only gun shop case cited by the parties, decided after briefing was completed on the Village's prior motions to dismiss, discovery was unnecessary to dismiss a gun shop owner's challenge to the government's conditions and qualifications on the commercial sale of arms, prohibiting gun shops near sensitive places. In *Teixeira v. Cnty. of Alameda*, a zoning ordinance prohibited firearm sales within 500 feet of "sensitive places such as schools and residences." C 12-03288 SI, 2013 WL 707043 (N.D. Cal. Feb. 26, 2013). In disposing of the claim at the first

4

step of the *Ezell* framework, the *Teixeira* court found the ordinance to be one of the legitimate "qualifications on the commercial sale of arms" contemplated by *Heller*, and "a restriction on gun sales and purchases in or near sensitive places." *Id.* at *6. There were no allegations that showed the "presumptively lawful Ordinance burdens, even slightly, plaintiffs' right to sell or purchase guns in Alameda County—a right which the U.S. Supreme Court has yet to recognize." *Id.* The Court also noted that the ordinance "is not a total ban on gun sales or purchases in Alameda County and therefore does not implicate the core right to possess a gun in the home for self-defense articulated in *Heller.*" *Id.* Here, Plaintiffs have not plead any facts to establish a burden on the Second Amendment right to possess a handgun for self-defense, and the availability of online sales means the Agreement and Revised Ordinance are not a total ban on gun sales and purchases in the Village..

Moreover, given that conditions on commercial sales are presumptively lawful regulatory measures, Plaintiffs must allege facts rebutting the presumption and identifying "more than a *de minimis* effect upon his right." *Heller v. D.C.*, 670 F.3d 1244, 1253 (D.C. Cir. 2011). Just as with presumptively lawful felon possession prohibitions, Plaintiffs must plead facts showing presumptively lawful conditions and qualifications on the commercial sale of arms burden the right to possess a handgun for self-defense. See *United States v. Smoot*, 690 F.3d 215, 222 (4th Cir. 2012) (criminal defendant failed to rebut validity of prohibition on felon firearm possession); *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012) (denial of motion to dismiss criminal charge affirmed where defendant "has not rebutted the presumption that the presumptively lawful regulatory measure of the long standing prohibition on felon firearm possession is unconstitutional as applied to him."); *United States v. Rhodes*, CRIM.A. 2:12-00010, 2012 WL 1981853 (S.D.W. Va. June 1, 2012)(same). Plaintiffs' attempt to distinguish

these cases based on the fact they deal with a criminal statute is unavailing because they still inform the Court's approach for presumptively lawful regulatory measures. Where Plaintiffs' claim fails to make the required showing, they have failed to rebut the validity of the Village's presumptively lawful conditions and qualifications on the commercial sale of arms near sensitive places, and their Second Amendment claim should be dismissed.

Whether due to their great distance from the core of the Second Amendment right, or their status as presumptively lawful regulatory measures, the Village's Agreement and Revised Ordinance are not subject to the intense scrutiny suggested by the Plaintiffs. In *U.S. v. Williams*, the Seventh Circuit put "the government through its paces in proving the constitutionality" of a "categorical ban" on felon firearm possession. 616 F.3d 685, 692 (7th Cir. 2010). In this case, however, we are much farther from the core of the Second Amendment right, where the Village's regulations only set conditions on commercial sales of firearms, and not their possession. Without citation to any authority, Plaintiffs claim that challenged regulation "transcends scrutiny, as there is no such level that could survive a constitutional challenge." (Resp. Mot. Dismiss. 9). On the contrary, in the face of forgiving and intense scrutiny, gun laws protecting sensitive places, such as the Village's, have been consistently upheld as a matter of law.[1] *Teixeira v. Cnty. of Alameda,* C 12-03288 SI, 2013 WL 707043, at \*6 (citing *Hall v. Garcia*, 2011 WL 995933, at \*5 (N.D.Cal. Mar.17, 2011)(upholding a regulation prohibiting gun

---

[1] The number of schools, government buildings, places of worship, and parks in the small Village of Norridge is a matter of common knowledge and can be accepted by judicial notice. *United States v. Hemphill*, 447 F. App'x 733, 736 (7th Cir. 2011) ; see, *United States v. Mendell*, 447 F.2d 639, 641 (7th Cir. 1971) (allowing judicial notice that certain landmarks exist). See Village of Norridge, Ill., "Community Map," *available at* http://www.villageofnorridge.com/UserFiles/pages/File/CommunityMap_24x36_20100120.pdf (identifying seven schools, seven government buildings, five places of worship, and two parks in or adjacent to the Village); U.S. Census, State & County QuickFacts, Norridge (village, Illinois), *available at* http://quickfacts.census.gov/qfd/states/17/1753377.html (Village land area is only 1.81 square miles.)

possession within 1000 feet of a school under intermediate scrutiny, but noting that the regulation would survive "[u]nder any of the potentially applicable levels of scrutiny" because of the substantial government interest in protecting citizens from gun violence in sensitive spaces). See also *United States v. Lewis*, CRIM. 2008-45, 2008 WL 5412013 (D.V.I. Dec. 24, 2008)("*Heller* unambiguously forecloses a Second Amendment challenge to [school zone possession prohibition] under any level of scrutiny."); *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011)(national park, intermediate scrutiny); *Embody v. Ward*, 3:10CV-00126, 2011 WL 2971055 (M.D. Tenn. July 20, 2011)(state park); *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1229 (W.D. Wash. 2010)(city park); *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 136 (Va. 2011)(universities); *GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1317 (M.D. Ga. 2011)(place of worship, intermediate scrutiny). Plaintiffs do not have a constitutional right to engage in gun sales, and facilitate gun possession, at 7601 W. Montrose, less than 1,000 feet from Ridgewood High School, Giles School, Academy of St. Priscilla, Divine Savior Catholic Church, Acacia Park Lutheran Church, and Northside Arabic Church of the Nazarene. The Village's interest in ensuring the safe sale of firearms near sensitive places is compelling, or at least substantial, and the Village's prohibition on in-person gun sales is narrowly tailored, and certainly substantially related, to the Village's public safety goal. The regulations in the Revised Ordinance and the conditions in the Agreement are constitutional. The Plaintiffs' Second Amendment claim should be dismissed with prejudice.

## II.     Plaintiffs' Dormant Commerce Clause Fails as a Matter of Law

As outlined in Defendants' Motion, Plaintiffs' amended Dormant Commerce Clause claim fails on its face. As their lone rebuttal, Plaintiffs refer to the Court's previous ruling and suggest the Court "already denied the Defendants' Motion on the exact theory." (Response, p.

13.) Plaintiffs' reliance on the Court's previous analysis is mistaken. Plaintiffs' amended Count III contains a new admission that fundamentally alters their Dormant Commerce Clause claim: Ghost Industries can (and does) freely sell weapons in Norridge through its commercial website. (2nd Amend. Compl., ¶21.) As currently pled, and consistent with the Court's past rulings, Plaintiffs' Count III fails as a matter of law and should be dismissed with prejudice.

Contrary to Plaintiffs' claim, the Court's previous ruling did not categorically accept Plaintiffs' amended pleadings in the Second Amended Complaint. Rather, after finding no discrimination against interstate commerce, the Court left open the possibility that Plaintiffs could further amend Count III to provide grounds for an "undue burden" claim under the *Pike* Test. (Doc. 79, p.27 (suggesting that Plaintiff could state a plausible claim, if the Amended Complaint alleged facts demonstrating a substantial burden on interstate commerce); *see, Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Plaintiffs' Second Amended Complaint not only fails to allege such grounds, it admits that Plaintiffs continue to lawfully sell weapons in Norridge via the internet, in accordance with the Village's Ordinance and Agreement. (2nd Amend. Complaint, ¶21 (alleging that "Plaintiff's business, and the expansion thereof, is essentially limited to only conducting *online sales* and shipping from suppliers and other *out of area* dealers . . .")(emphasis added.))

Plaintiffs' admission that the Norridge Revised Ordinance and Operations Agreement in no way limit out-of-state commercial transactions with Norridge residents is fatal to their Dormant Commerce Clause claim. As Plaintiffs recognize, the Village allows in-state and out-of-state gun dealers and manufacturers to sell weapons to Norridge residents on the same terms. The Village Ordinance merely limits such transactions to the internet—where gun dealers from all states have equal access to the Norridge market.

8

Without any alleged facts or argument in support, Plaintiffs claim that the Village's regulation of in-state, local businesses (*i.e.* businesses with storefronts in Norridge) burdens out-of-state gun dealers and manufacturers. This claim is absurd on its face. If the Village's limit on downtown gun shops has any effect on out-of-state businesses, it is a positive effect. The Village limits local, in-person transactions between Illinois businesses and Illinois residents and creates an even playing field with out-of-state businesses and dealers. Even if accepted as true, Plaintiffs' claim that it purchases many of its guns from out of state dealers is of no constitutional significance. Such alleged facts do not support a cause of action and should be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 127 S.Ct. 1955 (2007) (must allege facts that state a viable cause of action).

Contrary to Plaintiffs' theory, the Dormant Commerce Clause does not require local governments to allow unlimited sales of goods that originate from other states. *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1131-32 (7th Cir. 1995)("[L]aws that affect commerce without any reallocation among jurisdictions—that do not give local firms any competitive advantage over those located elsewhere—are constitutional if supported by a mere rational basis."); *see also, Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 126 (1978) ("[t]he fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of *discrimination* against interstate commerce."); *Cavel, Int'l, Inc. v. Madigan*, 500 F.3d 551, 556 (7th Cir. 2007); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 938 (N.D. Ill. 2012). Local governments can limit local business operations, as long as these limits do not improperly target interstate sales. *Id.; see also, Buck v. People of State of Cal.,* 343 U.S. 99, 102-03 (1952) (holding local licensing restrictions on taxicabs constitutional because they affect all companies, in-state and out-of-state, equally); *Illinois*

*Restaurant Ass'n v. City of Chicago,* 492 F. Supp. 2d 891, 899 (N.D. Ill. 2007)(upholding City's ban on sale of foie gras, which originated from out-of-state, in City restaurants because the local ban does not "govern foie gras *production* or *pricing* [and] [t]hus, it neither regulates nor discriminates against interstate commerce.")

In practice, local ordinances routinely limit the number of goods a business is able to sell to local customers, including goods that originated out-of-state. For example, limits on hours of operation for grocery stores will limit the quantity of goods sold each day. Some of those goods will come from Illinois; some will come from other states. These non-discriminatory local measures are not barred by the U.S. Constitution's Commerce Clause.

There is no need for a *Pike* analysis in this case. To warrant a *Pike* analysis, Plaintiffs are required to set forth sufficient facts to demonstrate a substantial interstate burden. *Bell Atlantic Corp.*, 550 U.S. at 554-56 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Here, Plaintiffs' allegations do not identify any limit on the ability for out-of-state business to sell their products in Norridge—only limits on Illinois business selling guns through local storefronts. Plaintiffs have failed to state such a claim.

### III. Plaintiffs Fail to Set Forth a Viable Substantive Due Process Claim

Plaintiffs' Substantive Due Process claim advances three fundamentally flawed theories: 1) Plaintiffs have a constitutional right to engage in any occupation that it chooses; 2) the Village's limit on physical gun shops near sensitive areas (which are found throughout the Village's one-mile commercial district) is arbitrary and without a rational basis; and 3) the

Fourteenth Amendment's Due Process Clause requires strict scrutiny for laws that involve guns. (2nd Amend. Compl., ¶¶32-33; Response, p. 11-12.) All three theories fail on their face.

First, Plaintiffs claim the Village has denied their right to "practice a trade or profession." (Response, p.11.) At the same time, Plaintiffs now admit they freely conduct sales to customers across the country, including the residents of Norridge, via the internet. (2nd Amend. Compt. ¶27.) Citing the Privileges and Immunities Clause, Plaintiffs claim that they have a constitutional right to sell guns in any location, including downtown Norridge. The Privileges and Immunities clause create no such right. Count II fails as a matter of law.

The Privileges and Immunities Clause prohibits state laws that distinguish between residents and non-residents as to "those fundamental rights 'bearing upon the vitality of the Nation as a single entity,' such as ... the pursuit of common callings, the ownership and disposition of privately held property, and access to the courts." *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 383 (1978); *see United Bldg. & Constr. Trades Council of Camden Cnty. v. Mayor & Council of City of Camden*, 465 U.S. 208, 218–19 (1984); *Experience Hendrix, L.L.C. v. HendrixLicensing.com*, LTD, 766 F. Supp. 2d 1122, 1141 (W.D. Wash. 2011). Here, as their lone support for Count II, Plaintiffs rely on Privileges and Immunities Clause cases related to "common calling." (Response, pp. 11-12.) In "common calling" cases—including both of the cases cited by Plaintiffs—out-of state residents challenge state or local laws that bar out-of-state individuals from certain trades or professions. (Response, p. 11)(citing *McBurney v. Cuccinelli*, 780 F.Supp. 439, 447 (E.D. Va. 2011) (addressing limit on out-of-state FOIA requests) and *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 95 (2nd Cir. 2003) (addressing New York's state limit on out of state fishing operations.))  Despite citing these cases, Plaintiffs do not allege any facts which support a "common calling" claim. Illinois residents and non-Illinois

residents are treated equally under the Village's Ordinance and Plaintiffs make no allegation to the contrary.

The "common calling" cases cited in Plaintiffs' Response do not support the theory advanced in Count II—that Illinois gun dealers have a constitutional right to establish retail gun shops in any Illinois town they choose. Plaintiffs attempt to stretch the Privileges and Immunities Clause to cover local limits on local businesses fails on its face. Local governments routinely place local limits on specific categories of commercial activity (*e.g.* liquor sales). Business owners often find barriers to pursuing their "trade or profession" in certain municipalities (*i.e.* no open liquor licenses), and are forced to set up their business elsewhere. Plaintiffs do not cite any authority that identifies a constitutional right to conduct one's chosen business in any local municipality that one wishes—certainly not under the Privileges and Immunities Clause.

Second, Plaintiffs allege that the Village's limit on retail gun shops in downtown Norridge lacks a rational basis. This argument fails as a matter of law. Laws establishing "gun-free zones" around sensitive areas consistently survive rational basis—and intermediate scrutiny, for that matter—as a matter of law. (*Supra*, Reply p. 7). Plaintiffs may disagree with the Village's concerns about the sensitive areas that mark Norridge's small commercial district. However, the law is clear. Gun-free zones have a substantial relationship to an important government interest (let alone, a rational basis). Plaintiffs' challenge to the law's long-standing protection of sensitive areas fails on its face.

Finally, citing the impact on guns, Plaintiffs attempt to import Second Amendment heightened scrutiny into their substantive due process claim. As discussed above, substantive due process clause protects individuals from arbitrary and capricious action—it does not provide a right to bear arms. Plaintiffs have already set forth a Second Amendment claim, which imposes

its own standard of review and judicial scrutiny. Plaintiffs' perceived right to bear arms does not create a distinct substantive due process claim. Count II fails as a matter of law and should be dismissed.

**IV. Plaintiffs Concede and Abandon their Declaratory Judgment Claim**

In their Response, Plaintiffs concede dismissal of their Declaratory Judgment action as it relates to Article I §§ 6 (search and seizure), 12 (right to access) and "any claim based on the takings clause of the Illinois Constitution," which would presumably include § 15 (eminent domain). (Response, p. 16.) Further, Plaintiffs provide no argument to rebut Defendants' legal challenge to claims relating to Article I §§ 1 (inalienable rights), 12 (right to access), or 24 (retained rights). Given Plaintiffs' outright concession or abandonment of the above grounds for Declaratory Judgment, Count V now appears to only focus on § 2 (due process and equal protection), 4 (freedom of speech) and 22 (right to bear arms). With the exception of equal protection, Count V mirrors Plaintiffs constitutional claims expressed in other counts. For the same reasons Counts I (Second Amendment), II (Substantive Due Process) and IV (First Amendment) fail, Plaintiffs request for Declaratory Judgment on such grounds fails.

Plaintiffs' claim for declaratory judgment on equal protection grounds is unique to Count V and was directly challenged in Defendants' Motion to Dismiss. Plaintiffs' equal protection claim fails to identify the classification it is challenging and, thus, fails to state a claim. *In re Jonathon C.B.*, 2011 IL 107750, 958 N.E.2d 227, 252, as modified on denial of reh'g (Nov. 28, 2011). Plaintiffs do not suggest the Agreement and Revised Ordinance targets any protected class or category of individuals. The action is related to clear legislative purpose of protecting surrounding, sensitive uses (i.e. schools, daycares, government buildings, etc.) from downtown gun sales, and applies to all residents and businesses evenly. Plaintiffs fail to address, let alone

rebut, the above ground for dismissal. (Response, p. 16.) Instead, Plaintiffs attempt to support an equal protection claim by arguing that the Ordinance impacts "fundamental rights" and deserves heightened scrutiny—a common theme in their Response. (*Id.*) Such allegations do not support the necessary elements of an equal protection claim. Plaintiffs have failed to state grounds for declaratory judgment on any of the constitutional grounds listed in the Second Amended Complaint. Given no viable cause of action (even accepting all alleged facts as true), Count V should be dismissed in its entirety.

**V.      Defendants' Basis for Limiting Signs for Off-Site Operations is Well-Established as a Matter of Law**

Plaintiffs claim their Second Amended Count IV (First Amendment Violation) already survived dismissal in the Court's April 19, 2013 Order. (Response, p. 14.) It did not. Addressing a far different First Amendment claim, the Court previously ruled that more information was needed to determine whether the Village's limit on exterior signage was supported by a "substantial" Village interest. (Doc. 79, pp. 29-30.) The Court did not address the legal support for such a finding as a matter of law. As discussed in Defendants' Motion, the Village's interest in exterior signage—based on aesthetics alone—has been consistently recognized as a "substantial" government interest as a matter of law and could be decided by this Court as a matter of law  Plaintiffs' amended Count IV fails and can be rejected as a matter of law.

From U.S. District Courts to the U.S. Supreme Court, "it is well settled law that the state may legitimately exercise its police powers to advance its aesthetic interests." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S. Ct. 2118, 2129 (1984). This includes limits on exterior signs for off-site commercial sales, including on-line sales. *Kennedy v. Avondale Estates, Ga.*, 414 F. Supp. 2d 1184, 1202 (N.D. Ga. 2005) (barring real estate signs that feature an agent's website address). Given that the Village's

interests have been accepted as "substantial" as a matter of law, Plaintiffs' amended Count IV should be denied as a matter of law.

In Response, Plaintiffs cite Second Amendment cases—*Heller* and *McDonald*—and, without support, claims the limit on off-site commercial activity is "irrational and arbitrary." (Response, p. 14-15.) Plaintiffs provide no rebuttal to the above legal basis, or the clear legal trend in the U.S. Supreme Court and Seventh Circuit allowing limits on off-site advertising. *See*, *Metromedia, Inc.* v. *City of San Diego*, 453 U.S. 490, 512 (1981); *Lavey v. City of Two Rivers*, 171 F.3d 1110, 1116 (7th Cir. 1999). Tellingly, Plaintiffs do not even attempt to support their claim under the *Central Hudson* test, as is necessary to state a commercial speech claim. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562-63 (1980). To state a First Amendment claim, Plaintiffs must set forth the requisite elements of a First Amendment claim—not another recitation of the protections that guns receive under the *Heller* decision. Having failed to do so, Plaintiffs' Count IV should be dismissed.

**VI.    Plaintiffs' Retaliation Claims Fails as a Matter of Law**

In their Second Amended Complaint, Plaintiffs provide new admissions that Plaintiffs are able to sell weapons to Norridge residents with or without a streetfront retail shop. (2nd Amend. Compl. ¶21.) As discussed above, this admission clearly undercuts Plaintiffs' Second Amendment and Fourteenth Amendment claims. Plaintiffs' retaliation claims are duplicative of or, at a minimum, strongly related to their substantive Second Amendment and Fourteenth Amendment claims. Given that there is no underlying constitutional violation, Plaintiffs related claims for retaliation similarly fail.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully request this Court dismiss Plaintiffs' Second Amended Complaint.

/s/ Thomas G. DiCianni

Thomas G. DiCianni (ARDC #03127041)
tdicianni@ancelglink.com
Brent O. Denzin (ARDC #6294953)
bdenzin@ancelglink.com
Daniel J. Bolin (ARDC #6295932)
dbolin@ancelglink.com
***ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.***
Attorney for Defendants
140 South Dearborn Street, 6th Floor
Chicago, Illinois  60603
(312) 782-7606
(312) 782-0943 Fax