**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TONY KOLE and GHOST INDUSTRIES, LLC, an Illinois limited liability company, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| VILLAGE OF NORRIDGE, an Illinois municipal corporation, | ) ) ) ) |
| Defendant. | ) |

Case No. 11 CV 3871

**DECLARATION OF TONY KOLE**

I, TONY KOLE, am competent to state, and declare the following based on my own personal knowledge:

1. I am a citizen of the United States residing in Chicago, Illinois. I am the President and sole owner of the co-Plaintiff Ghost Industries, LLC. At all times relevant I possessed a valid State of Illinois Firearms Owner Identification Card (the "FOID Card") and I am trained and experienced in the safety and use of various firearms or ammunition products.

2. Ghost Industries, LLC is an Illinois limited liability company having its primary place of business in Norridge, Illinois. Ghost does business and engages in local, internet and interstate commerce as a duly federally licensed firearms and ammunition products dealer by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") pursuant to Title I, Gun Control Act of 1968 (the "GCA"), and pursuant to other applicable regulations and federal law. Ghost possesses a valid Federal Firearms License No. 3-36-031-01-4B-02885 (the "FFL"), a copy which I attached to my lawsuit.

3. In 2010, I decided, after extensive research, to start a business in the Village selling firearms to law enforcement officers, hunters, sportsmen, and other law-abiding citizens. At that time, Norridge had a home-rule ordinance permitting weapons dealers. Prior to securing and leasing a commercial space, I contacted the Village regarding any safety and other concerns it may have with the proposed business. Thereafter, a representative from the Village confirmed to me that my proposed business was permitted in the Village. The representative also provided me with relevant Village zoning requirements for the proposed firearms business.

4. In reliance on the confirmation and information from the Village, on or about November 16, 2010, I applied to the Village for a Weapons Dealers Business License under the Norridge, Illinois, Code of Ordinances, Chapter 22 - Businesses, Article VIII - Weapons Dealers (the "Original Weapons Dealer Ordinance"), so Ghost could open and operate a gun shop. Ghost executed a lease at 7601 West Montrose Avenue, Suite 2, in Norridge and waited processing of its FFL application by the ATF and its weapons dealer business license by the Village.

5. On or about November 2, 2010, the ATF arranged a routine inspection of the leased premises so that it could issue a FFL to Ghost. When en route to the inspection, the ATF agents informed me that the inspection was cancelled because the Village (A.) refused to give a routine approval to proceed; (B.) through its representative delayed issuance of a license and told me that the Village Present and Trustees would not allow firearms transfers on said premises.

6. Following the Village's refusal to issue the business license and the resulting canceled ATF inspection, I sent a letter to the Village demanding compensation for the financial damages my business had suffered. The Village ignored my demand.

7. Shortly thereafter, the Village's Attorney, Mark V. Chester, contacted me, purportedly on behalf of the Village and its officials. Chester acknowledged that my proposed

business was a lawful permitted occupation, and told me that regardless of that fact, the resistance and delay that the Village's President and Trustees were exerting regarding Ghost's ATF and Village business licenses were because "they wanted to protect their political careers - God forbid something should ever happen," and that the "reason this law [the Original Weapons Dealer Ordinance] was on the books is because a large retailer, K-Mart, had earlier approached the Village and lobbied its officials to permit the sale of firearms and ammunition in the Village or else it would relocate its store which would cause the Village to lose tax revenues," but eventually K-Mart voluntarily ceased selling and transferring firearms and ammunition, though the Original Weapons Dealer Ordinance remained in effect until February 11, 2011 and such business activities were, and continue to remain, lawful.

8. Despite knowing that Plaintiffs' business was permitted by Village Ordinance and was otherwise lawful, Village through its officials and representatives demanded, as a condition for the approval of my business license, that I execute an "Agreement Between the Village of Norridge & Ghost Industries, LLC" (hereinafter the "UVA" (Ultra Vires Agreement)), a copy of which is attached to the lawsuit. The UVA was not imposed on any other business licensee, and resulted in my being forced to comply with terms, conditions and restrictions on my ability to conduct business, as well as the waiver of my constitutional rights.

9. The UVA was forced upon me in order to prevent me from doing business, drive me out of business and deprive me of sales, profits and livelihood. The UVA's intent was to deny me the ability to acquire, obtain, advertise for sale, market, keep and bear arms.

10. Having no recourse and facing the certainty of the Village's continued unlawful delay and withholding of my business license, which also improperly undermined Ghost's ability to be approved for an FFL by the ATF, and which also improperly denied me the ability to

conduct my livelihood in the Village, I reluctantly succumbed to the Village's unconstitutional conditions and signed the UVA on November 29, 2010. I did not sign the UVA voluntarily, but was coerced into doing so, thus involuntarily giving up certain of my constitutional rights, as the only way I would get a business license.

11. After I signed the UVA, the Village revised the Norridge Weapons Dealers Licensing Ordinance by adopting and enacting "An Ordinance Repealing and Reenacting Chapter 22, Article VIII, and Amending Chapter 38, Section 22 of the Revised Municipal Code of the Village of Norridge - 2002 An Ordinance Reenacting Weapons Dealers Licensing and Amending Associated Fees and Penalties, Ordinance No. 1697-11" which was adopted on or about February 9, 2011 (hereinafter "the Revised Ordinance"), a copy of which is attached to the lawsuit.

12. At the time the Revised Ordinance was adopted, the Village President stated, inter alia, "It's so strong, I don't think anybody would want to come here. We only have the one weapons business here [Ghost] that we are aware of."

13. The Original Weapons Dealers Ordinance, as amended by the Revised Ordinance, purports to allow me to operate my business in the Village, but a variety of its sections work to effectively prohibit me from fully operating by unjustifiably burdening its operation and use. Specifically, The UVA contained the following provisions to which I was forced to capitulate:

    a. imposed a total ban on physical deliveries of firearms or ammunition on the premises - not even to Law Enforcement; and requiring that all deliveries sent from the business' premises be by unmarked packaging if the delivery is of a "used" firearm and shall be delivered in original packaging as provided by the manufacturer, wholesaler, or distributor if it is a "new" firearm and be in secure packaging sent via post office or courier to a licensed federal firearms dealer (FFD);

    b. imposed a total ban on storage of ammunition or firearms on the premises thereby requiring me to first receive payment from a customer, then order a weapon from their supplier, receive it, inventory, label and rush to send it out the same day; by prohibiting

me from storing firearms or ammunition on the Premises overnight or longer than twelve (12) hours during any day and that any firearms in Ghost's inventory on the premises will either be disabled by a locking device made for use on firearms or secured in a locked cabinet;

c.      imposed a total ban on the commercial display of my lawful products by prohibiting me from maintaining a sales or retail display of any firearms or ammunition on the premises;

d.      prohibited me from posting or erecting any exterior signage indicating to the public that its offices are located on the premises or indicating my business (*i.e.* weapons sales), requiring the limitation of interior signage to that required by state and federal law and only allowing me to put the Ghost Industries name on one or more interior door to premises;

e.      limited the amount of firearms Ghost received per month by requiring that I agree to receive no more than forty (40) long guns or hand guns at the Premises per month for the first twelve (12) months following the date of the UVA and the above-referenced amounts shall increase by ten (10) percent twelve (12) months, and twenty four (24) months thereafter, and to have no more than twenty (20) firearms in the premises at any one time;

f.      required that I agree to receive no more than four thousand (4,000) rounds of ammunition per month for the first twelve (12) months following the date of the UVA and the above-referenced amounts shall increase by ten (10) percent twelve (12) months and twenty four (24) months thereafter, and to have no more than one thousand (1,000) rounds on the premises at any one time.  Provided, however, larger quantities (not in excess of the monthly amount) may be on the premises for no longer than one (1) hour after they are delivered from the distributor, wholesaler or manufacturer;

g.      arbitrarily dictated that Village's only current weapons dealer (Ghost) must cease doing business no later than April 30, 2013;

h.      required that in the event that Ghost or I breach any of the conditions of the UVA and such breach is not cured within three (3) business days after the Village delivers written notice to Ghost or I specifying the breach, its license will become forfeit and I will cease doing business under that license.

i.      required that the Village will only renew my license twice provided that Ghost and I remain in compliance with the UVA and to exempt Ghost from any change in its business license ordinances and rules in any amendments the Village may make to its Code of Ordinances which directly or indirectly impacts my business under the Weapons Dealer License granted by the Village and requiring that the Village in the event it repeals its Weapons Dealer Ordinance within thirty six months of the execution of the UVA, will exempt the me from the repeal during that period.

14. As a result of the Revised Ordinance, coupled with the terms of the UVA, Ghost will be forced to close its business or relocate out of town as of November 30, 2013.

15. As a result of the above, I fear prosecution under the Revised Ordinance, arbitrary revocation of the license eventually issued to me by the Village, as well as interference, prohibition and the unlawful elimination of my otherwise lawful business activities, and reprisals by the Village, should I undertake such conduct in and about the Village or with respect to my suppliers and customers that may in any way be considered or construed by the Village to be a breach of said UVA or a violation of the Revised Ordinance.

16. As a direct and proximate result of Village's unlawful impositions, my business, and the expansion thereof, is essentially limited to only conducting online sales and shipping from suppliers and other out of area dealers, thereby resulting in the potential loss of tens of thousands of dollars in sales and thousands of dollars in profits per day.

17. The UVA and Revised Ordinance and burdensome requirements and restrictions contained in the Ordinances challenged in this complaint unjustifiably inhibit my efforts to advertise, and sell firearms from Ghost's business location in Norridge.

18. But for the enactments and burdensome requirements and restrictions contained in the UVA and Ordinances challenged in this complaint, I would advertise, and sell firearms from, my business location in Norridge, and my would-be customers in and around Norridge who wish to exercise their constitutionally-protected rights to purchase firearms for lawful purposes including self-defense and training would be able to purchase said firearms, and accompanying ammunition, from my business location in Norridge.

I declare under perjury that the foregoing is true and correct.

Executed this 20th day of November, 2013.

_____
Tony Kole

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com