IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, *et al.*, | |
| Plaintiffs, | No. 11-CV-03871 |
| v. | Hon. Judge Thomas M. Durkin<br>U.S. District Judge |
| VILLAGE OF NORRIDGE, | Hon. Morton Denlow<br>U.S. Magistrate Judge |
| Defendant. | |

**RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

NOW COMES, Defendants Village of Norridge, by and through their attorneys Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., and for its Response in Opposition to Plaintiffs' Motion for Preliminary Injunction, state as follows:

**INTRODUCTION**

Plaintiffs' Motion addresses a fictional ban, which in no way resembles the Ordinance that will affect plaintiffs after November 30, 2013. Contrary to Plaintiffs' distortion, the Village of Norridge Ordinance ("Ordinance") at issue allows Norridge residents to purchase, own, and possess firearms within the Village limits. Plaintiff Tony Kole admits that Ghost Industries currently sells guns to Norridge residents, and will continue to sell guns to Norridge residents, in the comfort of their own home, over the internet, without any interference from the Ordinance. (Tony Kole Declaration, ¶ 16) (admitting that under the Ordinance, Ghost Industries will continue to "conduct online sales and ship [guns] from suppliers" to Norridge residents). The Second Amendment

rights outlined in possession cases like *Heller*, *McDonald* and *Ezell*—namely the right to possess weapons for self-defense—are in no way impaired as Norridge residents purchase guns over the internet, delivered to their home for their lawful use.

The Ordinance in question simply restricts the establishment of a *physical* gun shop in the Norridge commercial district. After November 30, 2013, Plaintiffs will no longer be able to sell guns from the storefront at 7601 W. Montrose. However, online sales and purchases will continue in Norridge unfettered. (Kole Dec., ¶ 16.) The notion that the Second Amendment requires in-person transactions in physical locations, rather than online transactions at home is absurd on its face and falls far short of the high bar needed to support a Preliminary Injunction.

Plaintiffs characterize the Ordinance as a limit on the customers' Second Amendment possession rights because, otherwise, there is no irreparable harm. Plaintiffs' alleged loss of revenue from its store front operations—which is wholly unsupported by Kole's Declaration—can be calculated and restored if proven to be an unlawful injury at the end of this case. A preliminary injunction is unnecessary to protect the loss of gun sales revenue. And, thus, the Motion distracts the Court with arguments targeting a fictional Ordinance, which bans all guns sales, period.

Plaintiffs may want to litigate the larger, unanswered questions associated with the emerging Second Amendment jurisprudence in this country. However, this is not the case or venue for such a challenge. The Second Amendment is alive and well in Norridge, and does not require the Village to allow Ghost Industries to sell firearms from a physical storefront 7601 W. Montrose, located less than 1,000 feet from three

schools (Ridgewood High School, Giles School, Academy of St. Priscilla) and three churches (Divine Savior Catholic Church, Acacia Park Lutheran Church, and Northside Arabic Church of the Nazarene). Plaintiffs provide no basis for granting a preliminary injunction to allow such in-person transactions while this case proceeds.

## STANDARD OF REVIEW

To obtain a preliminary injunction, a party must show that it has (1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits. *See Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir.2006); *Joelner v. Vill. of Wash. Park,* 378 F.3d 613, 619 (7th Cir.2004); *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992). If the moving party meets these threshold requirements, the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied. *Christian Legal Soc'y,* 453 F.3d at 859.

If the moving party meets these threshold requirements, the district court "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir.2001). The district court must also consider the public interest in granting or denying an injunction. *Id.* In this balancing of harms conducted by the district court, the court weighs these factors against one another "in a sliding scale analysis." *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir.2006). "The sliding scale approach is not mathematical in

3

nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.' " *Ty, Inc.*, 237 F.3d at 895–96 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir.1992)). Stated another way, the district court "sit[s] as would a chancellor in equity" and weighs all the factors, "seeking at all times to 'minimize the costs of being mistaken.' " *Abbott Labs.*, 971 F.2d at 12 (quoting *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir.1986)); *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 678 (7th Cir. 2012).

In the end, to prevail, Plaintiffs must demonstrate all four factors: 1) no adequate remedy at law; 2) irreparable harm; 3) reasonable likelihood of success; and 4) balancing of harms. *Id*. Taking each factor separately, it is clear that Plaintiffs fall woefully short of the high bar for preliminarily enjoining an ordinance that was adopted by duly elected representatives of the public.

## DISCUSSION

### I. PLAINTIFFS' MOTION LACKS THE REQUISITE EVIDENTIARY SUPPORT

Before reaching the requisite factors, the Motion fails for its lack of support. Plaintiffs' motion for preliminary injunction is unsupported by any evidence of the facts alleged. Unlike a complaint in the face of a motion to dismiss, the facts alleged in the Plaintiffs' motion for preliminary injunction are not taken as true. Plaintiffs' declaration in support of its motion is devoid of any evidence that any single person has been, or will be, unable to purchase a gun in the Village of Norridge. Of course, Plaintiffs have admitted the opposite is true. Plaintiffs continue to sell firearms on their website at

www.ghostfirearms.com, and Village residents may continue to purchase firearms from Plaintiffs or other online retailers, conveniently in their own homes, library, or from their smartphone or any other location with an internet connection. Plaintiffs do not demonstrate that they have even attempted to sell firearms from their terrestrial location in the Village, let alone enough guns to accrue the "tens of thousands of dollars in sales" in "potential losses" that Plaintiffs baldly allege. Plaintiffs' alleged injury is purely hypothetical, and does not merit preliminary injunctive relief.

### II. PLAINTIFFS' MOTION FAILS TO SATISFY THE NECESSARY FACTORS FOR A PRELIMINARY INJUNCTION

As outlined below, Plaintiffs' potential lost profits do not meet the high bar for a preliminary injunction.

#### A. Plaintiffs Will Not Suffer Irreparable Harm If In-Person, Storefront Sales Are Prohibited During The Duration Of This Lawsuit

Plaintiffs claim of irreparable harm centers on the purported loss of Second Amendment rights as a result of the Ordinance prohibition of physical gun shops. Yet, Plaintiffs provide no support for their claim that such a limit on commercial sales affects, in any meaningful way, the rights of Norridge residents to purchase, possess and use firearms for lawful self-defense. To be clear, firearm sales are not banned in the Village of Norridge, as Plaintiffs suggest. The Ordinance simply prescribes the conditions under which firearms sales must take place in the Village—online rather than in terrestrial stores. After November 30, 2013, Village residents will still be able to purchase firearms on Plaintiffs' website and from other online retailers. Those sales can

originate in the Village, and be delivered to locations in the Village, including direct delivery to residences where the right to self-defense is most acute.

Plaintiffs admit that online sales are permitted and actively used to connect Norridge residents to firearms. Yet, Plaintiffs attempt to preserve their "gun ban" theme by claiming that the Village's permission of gun sales over the internet is a "red herring and is no different from arguing that people can purchase them outside the Village, which is an argued [sic] that failed in *Ezell*." (Ptf. Brief, p. 16.) This analogy fails on its face. By nature, internet sales occur within the Village, and do not require residents to purchase guns outside the Village. Internet sales connect lawful gun purchasers to sellers directly, with absolutely no geographic barriers (i.e. requirement to leave your home, or municipality). Even if a resident did not have internet access, there are numerous locations throughout the Village that allow individuals to connect to the internet and access plaintiff Ghost Industries' website for gun purchases and home delivery. The notion that internet sales make gun purchases more difficult for Norridge residents is simply absurd on its face. Any claim that Ghost Industries cannot sell guns in Norridge is flatly disingenuous.

Moreover, without any citation, Plaintiffs attempt to analogize online gun sales to limits on adult uses. (Brief, p. 17.) This analogy also fails on its face. While *Ezell* makes analogies to the First Amendment in developing a framework for Second Amendment challenges, courts "are hesitant to import *substantive* First Amendment principles wholesale into Second Amendment jurisprudence. Indeed no court has done so." *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 91 (2d Cir. 2012) (emphasis in original,

internal citations omitted), cert. denied, 133 S. Ct. 1806, 185 L. Ed. 2d 812 (U.S. 2013). As the Second Circuit noted, in rejecting a substantive link to the First Amendment:

> We recognize that analogies between the First and Second Amendment were made often . . . . [and] have been made since the Founding. . . . Notably, these analogies often used the states' power to regulate firearms, which was taken as unassailably obvious, to support arguments in favor of upholding limitations on First Amendment rights. But it would be as imprudent to assume that the principles and doctrines developed in connection with the First Amendment apply equally to the Second, as to assume that rules developed in the Second Amendment context could be transferred without modification to the First. Endorsing that approach would be an incautious equation of the two amendments and could well result in the erosion of hard-won First Amendment rights. As discussed throughout, there are salient differences between the state's ability to regulate each of these rights.

*Id.* The Court should decline Plaintiffs' invitation to apply substantive First Amendment principles related to adult uses in the Second Amendment context. (Brief, p. 14.) Unlike in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986), where the First Amendment protected the expression rights of *performers*, no court has recognized that the Second Amendment requires that "Plaintiffs must be given the reasonable opportunity to open and operate [a gun shop] somewhere within the Village limits." (Brief, p. 14). The Second Amendment is clearly focused on the individual's ability to access and possess firearms, not the seller's choice of sales location.

Moreover, the analogy distorts the facts in this case. Unlike the banned adult use performer, Plaintiffs have ample opportunity to sell as many guns as they wish to as many Village residents that desire them through their website. Unlike the First Amendment right to expression in the adult use context, the Second Amendment right to possession is unaffected by the Village limit on physical gun shops.

7

Plaintiffs' claim that alleged Second Amendment harms should be "presumed," as they are under the First Amendment, also fails. In looking at presumed harms under the First Amendment, *Ezell* only held that an infringement of the "right to possess firearms for protection," like First Amendment rights, could not be compensated by damages. *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). Here, firearms are readily available for online purchase in the Village and the right to possession remains uninfringed. Where access to purchase guns online is readily available, Plaintiffs alleged harms to individual self-defense rights against "criminal attack" or "tragic accident" are unavailing.

Finally, Plaintiffs claim that they would be able to make more money through sales at a Village storefront. Even if accepted as true, such interests are not protected by the United States Constitution. *Kwong v. Bloomberg*, 723 F.3d 160, 167 (2d Cir. 2013) (citing *Nordyke v. King*, 644 F.3d 776, 787-88 (9th Cir. 2011)(before *reh'g en banc*). As discussed further below, such financial injuries are routinely remedied through damages and do not require the extraordinary measure of imposing a preliminary injunction.

In sum, Plaintiffs attempt to turn this case into a claim about the Second Amendment right to possess firearms for self defense fails under Plaintiffs' own admissions. Plaintiffs' motion for a preliminary injunction is without proper support.

### B.  Plaintiffs Have An Adequate Remedy At Law

Stripped of the unsupported Second Amendment claims, Plaintiffs' injury is limited to the alleged loss of "tens of thousands of dollars" if physical gun shops are

8

prohibited during the pendency of this case. (Kole Dec., ¶ 16.) Plaintiffs have adequate legal remedies for such alleged damages. In fact, Plaintiffs are currently seeking such remedies in this case, and if successful, could theoretically recover all proven damages caused by the interruption in their operations at 7601 W. Montrose. Again, Plaintiffs have failed to provide any evidence that any losses in revenue would occur. Nevertheless, even if supporting evidence existed, it would not support imposition of a preliminary injunction. Given an adequate remedy at law, Plaintiffs' Motion for a Preliminary Injunction fails.

### C. Plaintiffs Have Failed To Show A Likelihood Of Success On The Merits

As outlined in Defendant's Motion to Dismiss, Plaintiffs' underlying claims are fatally flawed. Ultimately, Plaintiffs' case depends on the Court's assumption that the Agreement and Ordinance restrict the ability of Norridge residents to purchase and possess firearms. As Defendants repeatedly remind the Court - - this claim is plainly false. Again, the Village regulations merely prescribe the conditions under which firearm sales must be conducted in the Village. Plaintiffs do not challenge the Village's authority to place conditions on commercial sales and admit that such conditions are "presumably acceptable . . ." (Brief, p. 11) ("While the Supreme Court has noted that 'laws imposing conditions and qualifications on the commercial sale of arms' are presumably acceptable (See *Heller*, 128 S.Ct. at 2817), which Plaintiffs do not contest, it is the outright ban of the sale of arms that it unconstitutional.")

In any event, Plaintiffs' claim that the challenged regulation "transcends levels of scrutiny and is unconstitutional on its face" is unsupported by citation to any authority and completely disregards the framework for Second Amendment challenges established in *Ezell*. Under the *Ezell* framework, the Court would first consider whether the restriction affects the core right of possession in the Village regulations. It does not. Rather, Village regulations are "easily justified" presumptively lawful regulatory measures, and are not be subject to the intense scrutiny reserved for severe burdens on Second Amendment possession rights. *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011).

The limits on Plaintiffs' ability to sell weapons in a location of their choice similarly passes Second Amendment review. No court has recognized a Second Amendment "right to sell or purchase" a firearm in-person. Plaintiffs' try to create a "right to sell" by drawing comparisons to Action Target, Inc., in *Ezell*, and the Seventh Circuits' recognition of rights corollary to the right of possess (*i.e.* right to maintain proficiency).

However, as Plaintiffs' own cases recognized, corollary rights are not synonymous rights. In *Dearth v. Holder*, the court expressly rejected a nearly identical attempt to expand the Second Amendment:

> "Dearth essentially analogizes this case to *Ezell* by contending that, just as the right to maintain proficiency by training at a firing range, the right to purchase a firearm is an important corollary to exercising the core right to possess a firearm for self-defense. Even of the analogy is sound, the result is that the right to purchase is *only a corollary* to the right to possess a firearm for self-defense; the two rights *are not synonymous*. Nor could they be, given the distinction between the regulation of firearms possession

and the regulation of commercial firearms sales that was made by the Supreme Court in *Heller* and recognized by our Court of Appeals in *Heller II* . . . ."

893 F. Supp. 2d 59, 69 (D.D.C. 2012) (emphasis in original). In short, the right to sell guns, if such a right exists (which it does not), is not the same as the right to possess guns, and the two are not afforded the same protections. As plaintiffs recognize, the Village condition on the commercial sale of arms (i.e. only allowed online) is "presumptively acceptable".

As Plaintiffs recognized, the only relevant case cited by the Parties—where a gun shop challenged a similar restriction—rejects Plaintiffs' theory. In *Teixeira v. Cnty. of Alameda*, a zoning ordinance prohibited firearm sales within 500 feet of "sensitive places such as schools and residences." C 12-03288 SI, 2013 WL 707043 (N.D. Cal. Feb. 26, 2013). In disposing of the claim at the first step of the *Ezell* framework, the *Teixeira* court found the ordinance to be one of the legitimate "qualifications on the commercial sale of arms" contemplated by *Heller*, and "a restriction on gun sales and purchases in or near sensitive places." *Id.* at *6. There were no allegations that showed the "presumptively lawful Ordinance burdens, even slightly, plaintiffs' right to sell or purchase guns in Alameda County—a right which the U.S. Supreme Court has yet to recognize." *Id.* The Court also noted that the ordinance, like the Norridge Ordinance, "is not a total ban on gun sales or purchases in Alameda County and therefore does not implicate the core right to possess a gun in the home for self-defense articulated in *Heller*." *Id.* The validity of the gun shop regulations in Alameda County belie Plaintiffs attempt to classify the Village's regulations as "unusual."

11

The law is clear: Plaintiffs do not have a constitutional right to engage in gun sales at 7601 W. Montrose, less than 1,000 feet from Ridgewood High School, Giles School, Academy of St. Priscilla, Divine Savior Catholic Church, Acacia Park Lutheran Church, and Northside Arabic Church of the Nazarene. In the face of intense scrutiny, laws limiting gun stores near sensitive places, such as schools and churches, have been consistently upheld as a matter of law.[1] *Teixeira v. Cnty. of Alameda,* C 12-03288 SI, 2013 WL 707043, at *6 (citing *Hall v. Garcia*, 2011 WL 995933, at *5 (N.D.Cal. Mar.17, 2011)(upholding a regulation prohibiting gun possession within 1000 feet of a school under intermediate scrutiny, but noting that the regulation would survive "[u]nder any of the potentially applicable levels of scrutiny" because of the substantial government interest in protecting citizens from gun violence in sensitive spaces); *see also*, *United States v. Lewis*, CRIM. 2008-45, 2008 WL 5412013 (D.V.I. Dec. 24, 2008)("*Heller* unambiguously forecloses a Second Amendment challenge to [school zone possession prohibition] under any level of scrutiny."); *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011)(national park, intermediate scrutiny); *Embody v. Ward*, 3:10CV-00126, 2011 WL 2971055 (M.D. Tenn. July 20, 2011)(state park); *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1229 (W.D. Wash. 2010)(city park); *DiGiacinto v. Rector & Visitors of George*

---

[1] The number of schools, government buildings, places of worship, and parks in the small Village of Norridge is a matter of common knowledge and can be accepted by judicial notice. *United States v. Hemphill*, 447 F. App'x 733, 736 (7th Cir. 2011) ; see, *United States v. Mendell*, 447 F.2d 639, 641 (7th Cir. 1971) (allowing judicial notice that certain landmarks exist). See Village of Norridge, Ill., "Community Map," *available at* http://www.villageofnorridge.com/UserFiles/pages/File/CommunityMap_24x36_20100120.pdf (identifying seven schools, seven government buildings, five places of worship, and two parks in or adjacent to the Village); U.S. Census, State & County QuickFacts, Norridge (village, Illinois), *available at* http://quickfacts.census.gov/qfd/states/17/1753377.html (Village land area is only 1.81 square miles.)

*Mason Univ.*, 281 Va. 127, 136 (Va. 2011)(universities); *GeorgiaCarry.Org, Inc. v. Georgia*, 764 F. Supp. 2d 1306, 1317 (M.D. Ga. 2011)(place of worship, intermediate scrutiny).

Plaintiffs attempt to discard the holding in *United States v. Chafin* as "a cheap *ad hominem* attack equating all firearms owners to criminals," is hollow. Background facts aside, the Fourth Circuit Court of Appeals in *Chafin* took direct aim at the notion that the Second Amendment includes a "right to sell" guns:

> [Plaintiff] has not pointed this court to any authority, and we have found none, that remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm. Indeed, although the Second Amendment protects an individual's right to bear arms, it does not necessarily give rise to a corresponding right to sell a firearm. *Cf. United States v. 12 200–Foot Reels of Super 8mm. Film,* 413 U.S. 123, 128, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) ("We have already indicated that the protected right to possess obscene material in the privacy of one's home does not give rise to a correlative right to have someone sell or give it to others."). Accordingly, [Plaintiff's] argument that [the criminal code on weapon sales] is unconstitutional under *Heller* must be rejected.

*United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011)(emphasis in original).

Regardless of the facts, Plaintiffs have no constitutional right to sell guns at 7601 W. Montrose. Their claims will ultimately fail.

### D. The Village's Public Health and Safety Interests Outweigh Any Temporary Loss in Revenue for Ghost Industries

While Plaintiffs disagree, the United States Congress shares the Villages' concern that physical gun stores present any danger to the neighboring schools, churches and other recognized "sensitive places." 18 U.S.C. § 922(q) (Gun Free School Zones Act of 1990. In order to limit gun transactions near sensitive places, the Village has the

authority and responsibility to pass laws that protect public health, safety and welfare. Plaintiffs are asking this Court to suspend a law that was passed by elected officials in Norridge and designed to promote public health and welfare, simply to preserve "potential" profits from their storefront across the street from a busy high school. Even if Plaintiffs faced legitimate financial injuries—which remains unsupported—such injuries pale in comparison to the harm suffered by the Village when its power to enact laws is negated and the public's wishes with regard to the location of gun sales is ignored. When balancing public safety and profits, public safety prevails.

## CONCLUSION

For all of the above reasons, Plaintiffs' Motion for a Preliminary Injunction is wholly unsupported and should be denied.

Respectfully submitted,

/s/ Thomas G. DiCianni

Thomas G. DiCianni (ARDC #03127041)
tdicianni@ancelglink.com
Brent O. Denzin (ARDC #6294953)
bdenzin@ancelglink.com
Daniel J. Bolin (ARDC #6295932)
dbolin@ancelglink.com
*ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.*
Attorney for Defendants
140 South Dearborn Street, 6th Floor
Chicago, Illinois 60603
(312) 782-7606
(312) 782-0943 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, individually and as President and Manager of Ghost Industries, LLC, and GHOST INDUSTRIES, LLC, an Illinois limited liability company,<br><br>     Plaintiffs,<br><br> v.<br><br>VILLAGE OF NORRIDGE, an Illinois municipal corporation, RONALD A. OPPEDISANO, individually and as President of the Village of Norridge, JAMES J. JOBE, Chief of Police of the Village of Norridge, JUDITH D. BERNARDI, Clerk of Village of Norridge, URSULA A. KUCHARSKI, DENNIS H. STEFANOWICZ, DOMINIC SULIMOWSKI, DOMINIC S. FALAGARIO, JACQUELINE GREGORIO, AND ROBERT MARTWICK, individually and as Trustee of the Village of the Norridge and MARK V. CHESTER, individually and as Village Attorney of the Village of Norridge,<br><br>     Defendants. | No. 11-CV-03871<br><br>Hon. Judge Thomas M. Durkin<br>U.S. District Judge<br><br>Hon. Morton Denlow<br>U.S. Magistrate Judge |

## **CERTIFICATE OF SERVICE**

  The undersigned, one of the attorneys of record herein, hereby certifies that on November 25, 2013, the foregoing **RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following:

Walter Peter Maksym , Jr.
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Email: wmaksym@gmail.com

David G. Sigale
Law Firm of David G Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL  60137
Email:  dsigale@sigalelaw.com

/s/  Thomas G. DiCianni
THOMAS G. DiCIANNI, (ARDC# 03127041)
One of the attorneys for Defendant

ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:	(312) 782-7606
Facsimile:	(312) 782-0943
E-Mail: tdicianni@ancelglink.com

\\agdom1\files\users\DHincks\Mydocs\Hincks\1. TGD\Kole\Prelim Inj Response.doc  1340000.0001