IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE, *et al.*, | |
| Plaintiffs, | No. 11-CV-03871 |
| v. | Hon. Judge Thomas M. Durkin<br>U.S. District Judge |
| VILLAGE OF NORRIDGE, | |
| Defendant. | |

**DEFENDANT'S SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTION TO DISMISS**

NOW COMES, Defendant Village of Norridge ("Defendant" or "Village"), by and through their attorneys Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., and for its Supplemental Brief in Support of Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion to Dismiss"), states as follows:

**INTRODUCTION**

As requested by the Court, the Village is submitting this supplemental brief to specifically address whether there is justification, in light of the Second Amendment, for the Village's prohibition on weapons dealerships set forth in Ordinance No. 1697-11 ("Ordinance"). Of course, Defendants do not have the ultimate burden of proof in this case. The legal question before the Court is whether Plaintiffs have sufficient legal authority for their unprecedented Second Amendment "right to sell" claim. As discussed below, there is no such authority and Plaintiffs' novel claim should be dismissed.

1

Conditions on commercial sales and buffers around sensitive areas are presumptively lawful under *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). To state a claim, Plaintiffs must allege facts rebutting this presumption and identifying "more than a *de minimis* effect upon his right." *Heller v. D.C.*, 670 F.3d 1244, 1253 (D.C. Cir. 2011); *See*, *United States v. Smoot*, 690 F.3d 215, 222 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 962, 184 L. Ed. 2d 747 (U.S. 2013)(criminal defendant failed to rebut validity of prohibition on felon firearm possession); *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012)(denial of motion to dismiss criminal charge affirmed where defendant "has not rebutted the presumption that the presumptively lawful regulatory measure of the long standing prohibition on felon firearm possession is unconstitutional as applied to him."); *United States v. Rhodes*, CRIM.A. 2:12-00010, 2012 WL 1981853 (S.D.W. Va. June 1, 2012)(same). Plaintiffs fail to demonstrate how the Village's Ordinance affects an individual's right to possess a firearm for self defense in the home, let alone a burden large enough to overcome the presumption.

More importantly, Plaintiffs have not cited, nor have Defendants found, a single case where a court invalidated a local ban on gun dealerships under the Second Amendment. As Defendant outlines in its companion briefs[1], the lack of case law on the issue impairs Plaintiffs' case, not the Village's defense. Moreover, to the extent that courts have addressed weapons dealer restrictions, the rulings support the Village's

---

[1] To save the Court's time, Defendant will not restate all of the arguments raised in its Memorandum in Support of its Motion to Dismiss and Reply Brief in Support of its Motion to Dismiss. These briefs expand on the arguments set forth in this Supplemental Brief, and Defendant in no way intends to supplant or in any way waive these existing arguments

regulations. For all of the reasons identified below, the Village's prohibition on weapons dealers is justified under the law and, more importantly, Plaintiff's Second Amendment claim is not. What little case law exists supports dismissal of Plaintiffs' claim.

**I.      Overview of Village of Norridge Ordinance No. 1697-11**

Before addressing the law, the Court must first understand the nature of the Ordinance and the context in which it operates. The Ordinance is a commercial gun regulation that was developed to address unique circumstances and challenges facing the Village of Norridge. The Village is a very small, dense community—a total of 1.81 square miles in area—which is mostly comprised of residential land uses. Within the Village's commercial district, there is a high density of "sensitive places," including numerous schools, daycare centers, government buildings, parks, and places of worship.

With sensitive land uses throughout the small downtown area, there is no suitable location for a physical gun dealership (online offices are allowed). In recognition of these unique circumstances, the Ordinance prohibits any person from engaging in the business of "selling, loaning, renting, exchanging, giving away, or otherwise transferring" any firearm "for consideration within the Village." (Ordinance, § 22-363.) To be clear, the Ordinance does not bar online commercial transactions between Village residents and weapons dealers, including Ghost Industries. Norridge residents can purchase and possess weapons within the Village without limit.

Moreover, with a Federal Firearms License (FFL), a Norridge business or individual can receive the weapons they purchase in the comfort of their own home or business in Norridge.In fact, more than half of FFLs operate out of residential premises. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms, *Commerce in Firearms in the U.S.*, at 16 (Feb. 2000). If the purchaser does not have an FFL license, he or she could pick up their weapons purchases at the nearest FFL location. There are presently over 4,500 Federal Firearms Licensees in Illinois, and the Ordinance does not prohibit additional licensees from locating in the Village. Dep't of Treasury, Bureau of Alcohol, Tobacco, Firearms, & Explosives, *Commerce in Firearms in the U.S., Annual Statistical Update*, at 14 (Feb. 2013).At present, the burden is no different than the burden of picking up holiday gifts purchased online from Wal-Mart, Target or other retailers that lack Norridge locations.

While structured as a prohibition, the Ordinance's restrictions affect a far smaller area than most presumptively lawful commercial gun regulations. Norridge is not Chicago and should not be compared to Chicago when addressing the reasonableness of a municipal-wide prohibition. A prohibition in Norridge acts more as a local buffer than a far-reaching ban. While Plaintiffs repeatedly attempt to divorce the Ordinance from its context, the Court is charged with assessing the constitutionality of the Ordinance as it exists in Norridge. When viewed in the proper light, the Ordinance has significant support from federal courts across the county.

II. **Protections for Sensitive Places and Limits on Commercial Sales are Presumptively Lawful**

While outlining the bounds of the new Second Amendment, the U.S. Supreme Court, in *District of Columbia v. Heller*, expressly recognized that gun restrictions are "presumptively lawful." *Heller*, 554 U.S. 570, 626-27 (2008). For example, the Court identified laws protecting "sensitive areas" and "laws imposing conditions and qualifications on the commercial sale of arms" as presumptively lawful measures. *Id*. Moreover, the Court "hastened to add that it had listed 'these presumptively lawful regulatory measures only as examples'; the list was illustrative, 'not exhaustive.'" *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 193 (5th Cir. 2012) (quoting *Heller*, 554 U.S. at 626-27, n. 27). At no point did the Court exclude "bans" or "prohibitions" from the universe of presumptively lawful actions to protect sensitive areas. Rather, the Court left open the door for a range of presumptively lawful measures depending on the circumstances. *Id*.

### III. Justification for the Ordinances' Prohibition on "Weapons Dealers" Under the Second Amendment

As outlined in *Heller*, and later recognized in *McDonald v. City of Chicago* and *Ezell v. City of Chicago*, the Second Amendment guarantees an individual right to possess a firearm in the home for self defense. *See Heller*, 554 U.S. 570, 595, 628–30; *McDonald,* 130 S.Ct. 3020, 3036 (2010) ("[I]n *Heller,* we held that individual self-defense is 'the *central component* [ ]' of the Second Amendment right.") (emphasis in original); *Ezell*, 651 F.3d 684, 690 (7th Cir. 2011). The laws that have been struck down under the Second Amendment have prohibited or impaired an individual's ability to possess

5

weapons for self defense. *McDonald*, 130 S. Ct. at 3021 (addressing "laws effectively banning handgun possession by almost all private citizens."); *Heller*, 554 U.S. 570, 574 (2008)("District of Columbia generally prohibits the possession of handguns").

The Village's prohibition in no way infringes on any Norridge resident's Second Amendment right to possess any gun for self defense. Nevertheless, Plaintiffs seek to invalidate the Ordinance by expanding the "central component" of the Second Amendment (i.e. right of possession) to include a new constitutional "right to sell" guns through physical, commercial gun shops.

No court has extended the Second Amendment to include constitutional protection for commercial gun sales. Put another way, no court has rejected, on Second Amendment grounds, a municipal prohibition on gun dealerships, let alone one affecting an area the size of Norridge. Just the opposite, the only recent case addressing gun dealership regulations—*Teixeira v. Cnty. of Alameda*, C 12-03288 SI, 2013 WL 707043 (N.D. Cal. Feb. 26, 2013)—upheld a prohibition that would cover all of Norridge and more. In *Teixeira*, a zoning ordinance prohibited firearm sales within 500 feet of "sensitive places such as schools and residences." *Teixeira*, 2013 WL 707043 (N.D. Cal. Feb. 26, 2013). If applied in Norridge, the *Alameda* buffer would blanket the entire Village. The *Teixeira* court found the ordinance to be one of the legitimate "qualifications on the commercial sale of arms" contemplated by *Heller*, and "a restriction on gun sales and purchases in or near sensitive places." *Id.* at *6. Moreover, the Court noted that there was no evidence that the "presumptively lawful Ordinance

6

burdens, even slightly, plaintiffs' right to sell or purchase guns in Alameda County—a right which the U.S. Supreme Court has yet to recognize." *Id.* The Court also noted that the ordinance "is not a total ban on gun sales or purchases in Alameda County and therefore does not implicate the core right to possess a gun in the home for self-defense articulated in *Heller*." *Id.*

Like Alameda County, the Village has a valid interest in insulating sensitive areas from guns. Within the small village there are numerous schools, daycare centers, government buildings, houses of worship and parks, all of which line residential areas which could be covered by a residential buffer. Moreover, like Alameda County, the Village does not ban all commercial purchases and sales. Purchasers can purchase online or travel to other areas of the surrounding county (like Alameda residents do) to purchase firearms in person. For all of the reasons outlined in *Teixeira*, the Village's restrictions are justified, whether or not they constitute a Village-wide prohibition.

Beyond *Teixeira*, the U.S Congress has supported buffers around sensitive areas, like the high school across the street from Ghost Industries. The Gun Free School Zones Act, which prohibits possession of a firearm that has moved in interstate commerce, within 1,000 feet of the grounds of a public, parochial, or private school, has survived numerous Second Amendment challenges. In finding a school zone to be a sensitive place, one District Court stated that "[i]t is beyond peradventure that a school zone, where [the defendant] is alleged to have possessed a firearm, is precisely the type of location of which *Heller* spoke. Indeed, *Heller* unambiguously forecloses a Second

7

Amendment challenge to that offense under any level of scrutiny." *United States v. Lewis*, 50 V.I. 995, 1000-01 (2008); *see*, *Hall v. Garcia*, 2011 WL 995933, at 5 (N.D.Cal. Mar.17, 2011)(upholding the Act under intermediate scrutiny, but noting that the regulation would survive "[u]nder any of the potentially applicable levels of scrutiny" because of the substantial government interest of protecting citizens from gun violence in sensitive spaces) and *Moore v. Madigan*, 702 F.3d 933, 947 (7th Cir. 2012)(Judge Williams mentions the Act in dissent, arguing "The Supreme Court tells us that a state can forbid guns in schools. That probably means it can forbid guns not just inside the school building, but also in the playground and parking lot and grassy area on its property too. And if a state can ban guns on school property, perhaps it can ban them within a certain distance of a school too.")

     The current of the law is flowing in Defendant's favor.Where there are no cases expressly upholding (or rejecting) a municipal-wide prohibition on weapons dealers, Plaintiffs' novel challenge is one of first impression. This case does not, however, need to address the "right to sell" concept on a larger, national level. As discussed above, Norridge is unique. The presumptively lawful protections in *Heller* and *Teixeira* would more than justify a municipal-wide prohibition in a place like Norridge. While such an approach may not work in Chicago, it does work in small, residential Villages like Norridge, where sensitive places are densely located throughout.

### IV. Distinguishing *Ezell v. City of Chicago*: Village Restrictions Do Not Burden an Individual's Right to Possess Firearms

Plaintiffs often point to *Ezell v. City of Chicago* as support for extending Second Amendment rights to gun dealing. In *Ezell*, plaintiffs challenged the City's ban on gun firing ranges. *Ezell*, 651 F.3d at 690. The court found that the Second Amendment right to possess a firearm included a corollary right to gain proficiency in using such firearms (i.e. a right to practice shooting a gun). *Id*. at 695. The City-wide ban on all firing ranges directly impacted the individual's ability to use a weapon for self defense, as envisioned in *Heller* and *McDonald*. *Id.* at 698. Moreover, the Court found that the City's ban left no alternative options for individuals to gain proficiency within the City limits. *Id*.

This case is not *Ezell*. Unlike a ban on gun ranges, the Village's prohibition on physical weapons dealers does not impact any individual's right to access, own, possess and use a weapon for self defense. As Plaintiffs concede, the Ordinance allows online sales of weapons in the Village, thus maintaining a clear avenue for interested individuals to purchase and possess a firearm. (2d Am. Compl. ¶ 21). The Ordinance merely prohibits *in-person* gun transactions at physical locations within the 1.8 square mile Village.

In *Ezell*, there was no online equivalent which would serve the needs of the individual inside the City limits. The City's ban on gun ranges had a direct and real impact on individuals' ability to access gun ranges and practice shooting. In contrast, the Village's prohibition on physical weapons dealers does not limit an individual's ability to access, purchase and receive weapons for use inside the Village. The Court's

ruling in *Ezell* was based entirely on the direct and real impact that the ban had on individual residents in Chicago. 651 F.3d at 690**.** Given no equivalent impact, the analysis used in *Ezell* does not get off the ground in this case.

Additionally, the Ordinance cites "at least four other firearms dealers within close proximity to the Village in the suburbs of Lincolnwood, Elmwood Park, Des Plaines, and Melrose Park, who can serve Village residents' needs . . . ." The *Ezell*Court found that the availability of firing ranges communities neighboring Chicago could not be considered in evaluating the validity of the firing range ban because"[i]n the First Amendment context, the Supreme Court long ago made it clear that 'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'" *Id.* at 697 (citing *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 76–77, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)). However, *Schad* noted that the First Amendment could allow a complete ban on commercial public entertainment, a form of protected expression, in a residential community. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 7984, n.11 (1981) (Powell, J., concurring)("Mount Ephraim has failed altogether to justify its broad restriction of protected expression. This is not to say, however, that some communities are not free-by a more carefully drawn ordinance-to regulate or ban all commercial public entertainment.") (Stevens, J., concurring) ("I have no doubt that some residential communities may, pursuant to a carefully drawn ordinance, regulate or ban commercial public entertainment within their boundaries.") In the same way, The Second Amendment permits the Village of

Norridge, a small, densely-populated residential community with a high concentration of sensitive places, to prohibit in-person weapons sales within its borders, especially where firearms dealers are readily available in the relevant market area.

Finally, while Action Target (a gun range owner) was involved in the *Ezell* suit, the court's ruling was confined to the individual right to possess. The court did not recognize a separate corporate right to operate the range. Action Target, the gun range operator in *Ezell*, prevailed because it was financially injured by the City's ordinance, not because it had a separate constitutional right to operate gun ranges. *Id.* at 696.

Here, Plaintiffs are challenging the Village's weapons dealer prohibition based on a view that weapons dealers have a constitutional right to sell guns. Nothing in *Ezell* would support expanding constitutional rights beyond the individual right of possession and proficiency. Again, in Norridge, individuals can purchase guns online and receive direct shipments (with an FFL license). Physical gun shops are not necessary to connect individuals to guns in the modern economy.

**V. Conclusion**

For all of the reasons outlined above, Plaintiff's Second Amendment claim fails. Plaintiffs have the burden to identify an established Second Amendment right that is being infringed. Unless the Court dramatically expands the right articulated in *Heller*, *McDonald* and *Ezell* to establish a constitutional "right to sell guns," Plaintiffs have no grounds for a Second Amendment claim. Plaintiffs' Second Amendment challenge to

the Village's prohibition on in-person gun transactions is without any legal basis and should be dismissed.

                                        Respectfully submitted,

                                        /s/ Thomas G. DiCianni

Thomas G. DiCianni (ARDC #03127041)
tdicianni@ancelglink.com
Brent O. Denzin (ARDC #6294953)
bdenzin@ancelglink.com
Daniel J. Bolin (ARDC #6295932)
dbolin@ancelglink.com
*ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.*
Attorney for Defendants
140 South Dearborn Street, 6th Floor
Chicago, Illinois 60603
(312) 782-7606
(312) 782-0943 Fax

**CERTIFICATE OF SERVICE**

  The undersigned, one of the attorneys of record herein, hereby certifies that on December 10, 2013, the foregoing **Defendant's Supplemental Brief in Support of Motion to Dismiss** was electronically filed with the clerk of the U.S. District Court using the CM/ECF system, which will send notification of such filing to the following:

Walter Peter Maksym , Jr.
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Email: wmaksym@gmail.com

David G. Sigale
Law Firm of David G Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL  60137
Email:  dsigale@sigalelaw.com


  /s/  Thomas G. DiCianni
  THOMAS G. DiCIANNI, (ARDC# 03127041)
  One of the attorneys for Defendant

  ANCEL, GLINK, DIAMOND, BUSH,
  DICIANNI & KRAFTHEFER, P.C.
  140 South Dearborn Street, Sixth Floor
  Chicago, Illinois 60603
  Telephone: (312) 782-7606
  Facsimile: (312) 782-0943
  E-Mail: tdicianni@ancelglink.com