IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONY KOLE and GHOST INDUSTRIES, LLC, an Illinois limited liability company,<br><br>                Plaintiffs,<br><br>v.<br><br>VILLAGE OF NORRIDGE, an Illinois municipal corporation,<br><br>                Defendant. | Case No. 11 CV 3871 |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs, TONY KOLE and GHOST INDUSTRIES, LLC, by and through LAW FIRM OF DAVID G. SIGALE, P.C., submit their Supplemental Memorandum in Support of their Motion for Preliminary Injunction.

### PRELIMINARY STATEMENT

On November 30, 2013, the Court requested supplemental briefing on the following legal question: whether the Defendant may ban gun sales within its municipal limits.

Defendant's Revised Ordinance banning the operation of gun stores flatly violates the Plaintiff's right to sell firearms, as well as the corollary rights to bear, and train with them.

### ARGUMENT

**Norridge's gun store ban violates Plaintiffs' Second Amendment rights.**

Defendant's position that (a.) there is no Second Amendment right to sell firearms; and that (b.) despite the Defendant's ban on "weapons dealers," Plaintiffs may nonetheless continue to sell firearms on-line from their Norridge address, is disingenuous and wrong.

Under a plain reading of the Defendant's ordinances, Plaintiffs are not allowed to conduct their business within the Village limits. While Defendant states its current reading is that Plaintiffs may conduct on-line sales using the Norridge address as some kind of virtual office, that is not how the ordinances read. If they did read that way, there would have been no need for the Village to include an April 30, 2013 sunset provision. However, even if Defendant's statements are taken on their face, it is unconstitutional to say Plaintiffs can have a Norridge business address, so long as they actually conduct business somewhere else. It is also unfair to force Plaintiffs to tell any local customers that they can purchase firearms from Plaintiffs, but they have to go to Plaintiff's competitors to pick them up. Defendant would not dare doing that with any other sort of business.

This case is analogous to *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002), when the Seventh Circuit struck down a ban on selling merchandise on the public way within 1000 feet of the United Center. In *Weinberg*, the City threatened to arrest the plaintiff for selling a book critical of the owner of the Chicago Blackhawks. The City "[s]uggested that Weinberg could distribute flyers advertising the sale of his book and include locations outside the 1000-foot radius of the United Center where the book may be purchased," but the Court rejected the argument, finding it would have required "Herculean efforts by Weinberg or his customers to complete the sale" *Id.* at 1042, & n.4. Placing a similar restriction on Plaintiffs is likewise violative of Plaintiffs' constitutional rights.

Defendant argues Plaintiffs have not cited to a case where a gun store ban was struck down, but Defendant has not cited to a case where a gun store ban was upheld. This is because none of the case law involves a gun store ban, apparently because the municipalities in those

cases have regulated gun stores instead of banning them.[1] Indeed, in the case law the Courts have implied, if not instructed, that an outright ban of gun stores would have been unconstitutional.

As far back as the Framers, Thomas Jefferson said "Our citizens have always been free to make, vend, and export arms. It is the constant occupation and livelihood of some of them." Thomas Jefferson, 6 Writings 252-53 (P. Ford ed. 1895).[2]

The early militia was made up of males capable of bearing arms, and the militia members exercised their right to private firearm possession. *See United States v. Miller*, 307 U.S. 174, 179 (1939) ("the Militia comprised all males physically capable of acting in concert for the common defense & [a]nd further & ordinarily when called for service these men were expected to appear *bearing arms supplied by themselves*") (emphasis added). If the militia members had to arm themselves, they must have been provided the means to do so, and therefore commercial firearms sales could not have been banned.

While the Supreme Court has noted that "laws imposing conditions and qualifications on the commercial sale of arms" are presumably acceptable (*See Heller*, 128 S.Ct. at 2817), which Plaintiffs do not contest, it is the outright ban of gun sales that is unconstitutional. If the Supreme Court wanted to allow the banning of commercial arms sales, it easily could have said

---

[1] In the *Second Amendment Arms v. City of Chicago* case pending before Judge Dow, 10 CV 4257, the Plaintiffs (including Plaintiff Kole) are challenging Chicago's ban on the sale of firearms; the City has answered that claim, while certain other claims are the subject of a pending Motion to Dismiss.
[2] See also CURWEN, SOME CONSIDERATIONS ON THE GAME LAWS 54 (1796) ("What law forbids the veriest pauper, *if he can raise a sum sufficient for the purchase of it*, from mounting his Gun on his Chimney Piece, with which he may not only defend his Personal Property from the Ruffian, but his Personal Rights, from the invader of them& .") (emphasis added) (quoted in *Heller*, 554 U.S. at 583 n.7); Laws of Virginia, February, 1676-77, VA. STAT. AT LARGE, 2 HENING 403 (1823) ("It is ordered that all persons have hereby liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony ....").

3

that in *Heller*, instead of the language it used. In no way can an outright ban be considered a "condition and qualification."

The Third Circuit has all but stated a gun sales ban is unconstitutional. "In order to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition. If there were somehow a categorical exception for these restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*." *United States v. Marzzarella*, 614 F.3d 85, 92, fn 8 (3rd Cir. 2010).

The Defendant relies on the wrongly-decided *Teixeira v. County of Alameda*, 2013 U.S. Dist. LEXIS 128435 (N.D.CA, 2013), where the District Court upheld a 500 foot distance from "sensitive areas" requirement for gun stores, but on the issue at bar *Teixeira* supports Plaintiffs. The District Court distinguished the regulation at issue from *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) and *Moore v. Madigan*, 702 F.3d 933 (7th Cir, 2012) precisely because both those cases dealt with categorical bans (firing ranges in *Ezell*, public carrying of firearms in *Moore*) rather than regulations. Of *Ezell*, the *Teixeira* Court stated: "*Ezell* is inapposite because, as the Seventh Circuit noted, '[t]he City's firing-range ban is not merely regulatory; it prohibits the law-abiding, responsible citizens of Chicago from engaging in target practice.' *Ezell*, 651 F.3d at 708. *Ezell* recognized the difference between a ban and 'laws that merely regulate rather than restrict, and modest burdens . . . may be more easily justified.' *Id*." *Teixeira*, 2013 U.S. Dist. LEXIS 128435 at 21-22. Likewise, of *Moore*, the *Teixeira* Court stated: "The plaintiffs' reliance on *Moore v. Madigan* is similarly misplaced because that case also involved a near-total ban, this time on carrying a gun in public." *Teixeira*, 2013 U.S. Dist. LEXIS 128435 at 22.

4

While *Ezell* and *Moore* may have been considered inapposite in *Teixeira*, in this case they are almost directly on point. Norridge has instituted a total ban on gun stores, with the only exception currently existing only due to this Court's recent ruling. The Defendant offers no constitutional reason why its ban should be upheld, and its main argument, that it is "unique," does not cut it. Further, its argument that the gun store ban is really just a "buffer" (Defendant's Supplemental Memorandum at p.4) cannot be taken seriously.

Plaintiffs do not claim that gun stores are beyond regulation. They can be regulated for the adverse secondary effects of noise, pollution, traffic, etc.… But a blanket prohibition on gun stores is beyond constitutional limitations. Norridge argues that there is nowhere in its 1.81 square miles that a gun store would fit in, but banning such a business outright is simply unlawful under *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986).

*Teixeira*'s flaw is that it failed to acknowledge that gun stores have no adverse secondary effects. In the adult bookstore context, for example, the stores are regulated not for their content but for adverse secondary effects. In *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288 (5th Cir. 2003), the Fifth Circuit held that "[g]iven the expansive reach of the ordinance in the instant case, we must require at least some substantial evidence of the secondary effects of establishments that sell adult products solely for off-site consumption. *See Alameda Books*, 525 U.S. at 438 ("The municipality's evidence must fairly support the municipality's rationale for its ordinance."). Otherwise, even ordinary bookstores and video stores with adult sections could be subjected to regulation that restricts their First Amendment rights without evidence that they cause "secondary effects." In order to meet the narrow tailoring requirement, the city was required to provide at least some substantial evidence of secondary effects specific to adult businesses that sell books or videos solely for off-site entertainment. *See Ward*, 491 U.S. at 799

(holding that government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals"). Because there is no such evidence in the record, we must strike down the zoning provision of Ordinance # 87443." *Encore Videos*, 330 F.3d at 295.

The same is true in the Second Amendment context, and baseless fear of speculative harm is not an adverse secondary effect. Guns are sold all over the United States, at hardware stores, sporting goods stores, Wal-Mart, and many other places. Gun stores do not pollute or otherwise degrade a neighborhood, and it is one of the few businesses where both the buyer and seller undergo stringent background checks.

Defendant argues its situation is unique, but there are countless "small" towns in the United States, and even in Illinois. If Norridge is allowed to ban gun sales due to its size, there is nothing that would prevent any village or town from doing the same, until only cities the size of Rockford or Chicago would be unable to make the argument (*See Interstate Circuit v. Dallas*, 390 U.S. 676, 684 (1968) (". . . what [Norridge] may constitutionally do, so many other cities and States")).

Using the Defendant's logic, there is nothing to stop Norridge (or any other similarly-sized municipality) from deciding that other uses, such as adult businesses or certain religious practices, simply cannot fit within its "unique" structure. Plaintiffs must be given the reasonable opportunity to open and operate somewhere within the Village limits, with the "reasonableness" determined by the secondary effects the Defendant is attempting to regulate, and the nature of the regulation. However, since there are no such secondary effects, and the Village is not even pretending it is engaged in regulation, the Defendant ban fails this standard miserably.

And while it is not within the Defendant's constitutional power to ban all gun stores, even doing so in a roundabout way is illegal. In *Martin v. Harrington & Richardson, Inc.*, 743 F.2d 1200 (7th Cir. 1984), the Seventh Circuit confronted the issue of strict tort liability for firearms manufacturers when a criminal caused injury with a handgun. The Court said "[i]mposing liability for the sale of handguns, which would in practice drive manufacturers out of business, would produce a handgun ban by judicial fiat in the face of the decision by Illinois to allow its citizens to possess handguns." *Id.* at 1204.

**Norridge's ban on firearms sales also infringes the right to purchase firearms.**

Closely related to the right to sell firearms, there is no doubt the purchase of firearms for self-defense implicates the Second Amendment. *See Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 850 (7th Cir. 2000) ("Plaintiffs' claim . . . is direct rather than derivative: every interstate sale has two parties, and entitlement to transact in alcoholic beverages across state lines is as much a constitutional right of consumers as it is of shippers – if it is a constitutional right at all."). In this case a constitutional right is clearly invoked. And while a categorical ban on the purchase of firearms transcends levels of scrutiny and is unconstitutional on its face, if means-ends scrutiny is employed, *Ezell* mandates that it be either strict scrutiny or near-strict scrutiny, as "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Ezell*, 651 F.3d at 708.

"The right to keep arms, necessarily involves the right to purchase them . . ." *Andrews v. State*, 50 Tenn. 165, 178 (1871); (S*ee also Dearth v. Holder*, 893 F.Supp.2d 59, 69 (D.D.C. 2012) (right to purchase firearm is a corollary to right to possess firearm for self-defense). Defendant argues that gun purchases are not banned because people can buy them on the

Internet. However, this is a red herring and is no different from arguing that people can purchase them outside the Village, which is an argued that failed in *Ezell*:

> In the First Amendment context, the Supreme Court long ago made it clear that "'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'" *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 76-77, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981) (quoting *Schneider v. State of New Jersey*, 308 U.S. 147, 163, 60 S. Ct. 146, 84 L. Ed. 155 (1939)). The same principle applies here. It's hard to imagine anyone suggesting that Chicago may prohibit the exercise of a free-speech or religious-liberty right within its borders on the rationale that those rights may be freely enjoyed in the suburbs. That sort of argument should be no less unimaginable in the Second Amendment context.

*Ezell*, 651 F.3d at 697.

But purchasing firearms is not like shopping at amazon.com or walmart.com, though Defendants do their best to equate the two. "Firearms are channeled through dealers to eliminate the mail order and the generally widespread commerce in them, and to insure that, in the course of sales or other dispositions by these dealers, weapons could not be obtained by individuals whose possession of them would be contrary to the public interest." *Huddleston v. United States*, 415 U.S. 814, 825 (1974). It is also patently unfair to require the Plaintiffs, as a condition of remaining in business, to have to send their customers to their competitors.

Defendant tries to compare on-line firearm shopping to holiday gift shopping from a website with no brick-and-mortar store in the Village, so that if the customer wanted to order from target.com or walmart.com, and there is no Target or Wal-Mart in Norridge, she could drive to a neighboring town to find a store to pick up the purchase (Defendant's Supplemental Memorandum at p.4). The two obvious problems with that analogy are (1.) Target and Wal-Mart are presumably not banned from the Village, and even if they are, those stores do not have a constitutional right to exist, and (2.) Target and Wal-Mart are not forced to tell their on-line

8

customers they have to go out of town and pick up their purchases at Meijer or Costco. Therefore, the situation is far from the same.

It is unfathomable that Defendant would even try to ban libraries, or houses of worship, or even adult bookstores, on the grounds that people can go to those places in another municipality, or that books, adult material and religious materials can be found on the Internet.

In addition to the right to sell firearms, law-abiding people are severely limited in their abilities to exercise their core Second Amendment right to self-defense, and to exercise their fundamental Second Amendment right to train with a firearm for the purpose of acquiring and maintaining proficiency in order to be able to engage in self-defense (*See Ezell*, 651 F.3d at 704), if they are unable to purchase a firearm. And just as the City of Chicago's defense that people could go train with a firearm in some other city was unpersuasive to the Seventh Circuit (*See Ezell*, 651 F.3d at 697 ("This reasoning assumes that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction. That's a profoundly mistaken assumption.")), so too should be any argument that it is acceptable to ban commercial firearms sales with the Defendant's borders, since people can purchase firearms, fundamentally protected for self-defense purposes, somewhere else.

**CONCLUSION**

The Defendant cannot ban gun stores completely from within its municipal limits. Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted, so that they may remain in business while this matter is being litigated.

Dated: December 10, 2013  Respectfully submitted,


By: /s/David G. Sigale
 David G. Sigale

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547/Fax 630.596.4445
dsigale@sigalelaw.com

## **CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1.  On December 10, 2013, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2.  Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

/s/ David G. Sigale
Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547/Fax 630.596.4445
dsigale@sigalelaw.com